UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROGER TODD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:19-cv-00085-JMS-DLP |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, INC., and | ) | |
| DEUTSCHE BANK NATIONAL TRUST CO., | ) | |
| as Trustee for NovaStar Mortgage Funding | ) | |
| Trust, Series 2007-1, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DEFENDANT OCWEN LOAN SERVICING, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF ROGER TODD'S SECOND AMENDED COMPLAINT</u>

Defendant Ocwen Loan Servicing, LLC ("Defendant"), incorrectly named in the caption as Ocwen Loan Servicing, Inc., through its undersigned counsel, responds to Plaintiff Roger Todd's ("Plaintiff") Second Amended Complaint as follows:

### INTRODUCTION

1.      Through no fault of his own, Todd lives in fear of losing his home despite making over 87 consecutive timely and adequate monthly mortgage payments. This is because the recipient of the funds has and continues to hold him in a manufactured state of default. In so doing, and in abusively attempting to collect amounts Todd does not actually owe, Ocwen has violated nearly every consumer protection statute in existence and blatantly disregarded Orders and protections put in place by judges within this very district.

<u>ANSWER:</u>      **Denied.**

## PARTIES, JURISDICTION, AND VENUE

2.      Todd is the owner of real property and improvements located at and commonly known as 8800 E. Washboard Road, Solsberry, Indiana 47459 (the "Home").

**ANSWER:**      **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

3.      Todd purchased the Home on or about April 16, 2002, as his primary residence and financed that purchase by a loan evidenced by a note (the "Note") and a mortgage allegedly securing the Note (the "Mortgage") (collectively, the "Loan").

**ANSWER:**      **Defendant admits that Plaintiff executed the subject note in favor of Novastar Mortgage, Inc. on April 16, 2002 and that Plaintiff took out the subject loan. Defendant also admits that Plaintiff granted a mortgage on the subject property on April 16, 2002 in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), "solely as nominee for Lender . . . and Lender's successors and assigns." Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.**

4.      The Loan was originated by NovaStar Mortgage, Inc., ("NovaStar") and subsequently placed in a mortgage-backed security guaranteed by Fannie Mae.

**ANSWER:**      **Defendant admits that Novastar Mortgage, Inc. originated the subject loan. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.**

5.      Ocwen has been a "servicer" of Todd's mortgage as that term is defined by 12 U.S.C. § 2605(i)(2).

2

**ANSWER:** **Defendant admits it serviced the subject loan but lacks knowledge or information sufficient to form a belief as to the truth of the allegation that it was a "servicer" as that term is defined by 12 U.S.C. § 2605(i)(2) and denies that allegation on that basis.**

6.    Ocwen is a wholly owned and operated subsidiary of Ocwen Financial Corporation and is a limited liability company incorporated under the laws of the State of Delaware.

**ANSWER:** **Defendant admits that it is a Delaware limited liability company and a wholly owned subsidiary of Ocwen Financial Corporation.**

7.    Ocwen is one of the largest non-bank mortgage servicers in the United States. Ocwen services mortgage loans in all 50 states, including Indiana.

**ANSWER:** **Defendant admits that it services mortgage loans in all 50 states, including Indiana. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.**

8.    At all times relevant herein, Ocwen acted and acts as the agent of, and loan servicer for, Deutsche Bank. As a loan servicer, Ocwen is a partial assignee of the Loan.

**ANSWER:** **Defendant admits that it serviced the subject loan. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.**

3

9.    Deutsche Bank is the trustee for NovaStar.  Deutsche Bank is a federally chartered National Bank with a primary business location of 60 Wall Street, New York, New York 10005.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

10.    Jurisdiction of claims against Ocwen and Deutsche Bank are conferred by 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et seq*. (the "RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. (the "FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and the Truth In Lending Act, 15 U.S.C. § 1639 (the "TILA").  This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (the "CFPB"), which became effective on January 10, 2014, and specifically, 12 C.F.R. §1024.35 and §1024.36 of Regulation X.

**ANSWER:    Defendant admits this Court generally has jurisdiction over claims asserted under RESPA, the FDCPA, the TCPA, and TILA.  Defendant, however, denies Plaintiff has valid claims under any of those statutes and denies all liability.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the above paragraph and denies those allegations on that basis.**

11.    This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. §1367.

**ANSWER:    Defendant denies Plaintiff has valid claims under any federal laws or statutes and thus denies the allegations in the above paragraph.**

4

12. Venue is proper pursuant to 28 U.S.C. § 1391 because the property that is the subject of the action, the Home, is located in this District.

**ANSWER:** **Defendant does not dispute venue.**

## SUMMARY OF FEDERAL CLAIMS

### The RESPA & Reg. X

13. RESPA, originally enacted in 1974, was designed to ensure consumers in real estate transactions receive timely information on the nature and costs of the loan settlement process and to protect them from abusive lending practices.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

14. The Cranston-Gonzalez National Affordable Housing Act of 1990 expanded the scope of RESPA by addressing mortgage servicer practices.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

15. In response to evidence of additional servicer abuses during the preceding mortgage crisis, RESPA was amended in 2010 by the Dodd-Frank Act to further expand on the aforementioned protections.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

16. RESPA's provisions relating to loan servicing are to be construed liberally so as to carry out the statue's remedial consumer protection purpose. *Medrano v. Flagstaff Bank*, 704 F.3d 661, 665 (9th Cir. 2012).

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

304247492v1 1018199

17.     In January of 2013, the CFPB issued several final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Act, Public Law No. 111- 203, 124 Stat. 1376 (2010).

**ANSWER:     Defendant admits that the CFPB issued regulations regarding RESPA in January 2014.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the above paragraph and denies those allegations on that basis.**

18.     Specifically, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

**ANSWER:     Defendant admits that the CFPB issued regulations regarding RESPA which became effective on January 10, 2014.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the above paragraph and denies those allegations on that basis.**

19.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. §1024.2(b).

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

20.     Ocwen is subject to the aforesaid regulations and does not qualify for the "small servicers" exception, as such term is defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender," as such term is defined in 12 C.F.R. §617.700.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

304247492v1 1018199

21.     Todd asserts a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches of the specific rules set forth under Regulation X.

**ANSWER:     Defendant admits Plaintiff brings a RESPA claim in this action but denies that it violated RESPA and denies all liability.  Defendant denies any remaining allegations in the above paragraph.**

<u>The FDCPA</u>

22.     Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C §1692a.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

23.     The FDCPA applies to debt collectors, not original creditors.  Ocwen is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as it obtained servicing rights to the Loan and began servicing the Loan after it was in default.

**ANSWER:     Defendant admits that the FDCPA applies only to debt collectors, not original creditors.  Defendant admits that is became the servicer of the subject loan on or around April 2, 2012.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.**

24.     Todd is a "consumer" as defined by 15 U.SC. § 1692a(3), and the Loan is a debt as defined by 15 U.SC. § 1692A(4).

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

304247492v1 1018199

25. Todd asserts a private right of action under the FDCPA pursuant to 15 U.S.C. §1692k, for Ocwen's willful or deliberately indifferent conduct in connection with collection of the Loan.

**ANSWER: Defendant admits that Plaintiff brings a FDCPA claim in this action but denies it violated the FDCPA and denies all liability. Defendant denies any remaining allegations in the above paragraph.**

The FCRA

26. United States Congress has found that the banking system is dependent on fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

27. The Consumer Data Industry Association (the "CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services. The CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

28. Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works to develop,

304247492v1 1018199

maintain and enhance industry-standard reporting formats and guidelines. In cooperation with Trans Union LLC, Experian Information Services, LLC, Experian Information Solutions, Inc., and Innovis Data Solutions, Inc., the CDIA publishes the Metro 2 reporting standards (the "Metro 2 Standards") to assist data furnishers like Ocwen with compliance requirements under the FCRA. The CDIA's reporting products are used in more than nine billion transactions each year. *See* http://www.cdiaonline.org/about/index.cfm?unItemNumber=515.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

29. The uniform adoption and implementation of the Metro 2 Standards is the primary vehicle by which Credit Reporting Agencies ("CRAs") and data furnishers ensure that they are following their duties to ensure that they maintain complete and accurate information under the FCRA.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

30. The Metro 2 Standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

31. The major national CRAs – Trans Union LLC, Experian Information Services, LLC, and Experian Information Solutions, Inc., – also collaborated and developed a browser-based software system that allows the CRAs to electronically notify furnishers easily and quickly of disputed credit reporting information, and for furnishers

9

to easily and quickly respond to such disputes following investigation. The system is commonly referred to as e-OSCAR and was designed to be Metro 2 compliant. *See* http://www.e-oscar.org/.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

32. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Dataform ("AUD") processing, as well as other various related data reporting processes.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

33. ACDVs are notifications initiated by a CRA, and transmitted to a furnisher, in response to a consumer dispute. ACDVs are the primary method the CRAs use to fulfill their statutory obligation to notify furnishers of disputed information of consumers' disputes.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

34. One such entity that regularly reviews consumer reports, and uses the data contained therein, is the Fair Isaac Corporation. The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit risk scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 Standards.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

10

35.     FICO scores are calculated from five main categories of credit data in a consumer's credit report.  Those categories, and their weighted values, are as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and, mix of accounts/types of credit accounts for 10% of a consumer's FICO score.  *See* www.myfico.com/credit-education/whats-in-your-credit-score/.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

36.     The cost of credit (*e.g.*, interest rates, fees, etc.), the availability of credit, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's FICO score.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

37.     Inaccurate or incorrect credit reporting often results in a lower FICO score, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.  The improper reporting of a mortgage tradeline has a particularly adverse effect on a consumer like Todd's credit score as it represents the largest and oldest active debt obligation in his credit history.

11

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

38.     Ocwen regularly and in the ordinary course of business furnished information to one or more consumer reporting agency about Todd's transactions and is therefore a "furnisher" as that term is used in 15 U.S.C.A. § 1681s-2.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and them on that basis.**

39.     Todd asserts a private right of action under the FCRA pursuant to 15 U.S.C.A. § 1681s-2(b) for Ocwen's willful or deliberately indifferent acts and omissions in reporting information regarding the Loan and in failing to conduct reasonable investigate disputed information.

**ANSWER:** **Defendant admits Plaintiff brings a FCRA claim but denies it violated the FCRA and denies all liability.**

<u>The TCPA</u>

40.     The TCPA was enacted to protect individuals from the harassment, annoyance and abuse of unsolicited telephone calls made to their cellphones through the use of automatic telephone dialing systems ("ATDS") or automated/pre-recorded voices ("Robocalls").

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

41.     To accomplish this purpose, the TCPA authorizes a "person" to bring a private cause of action against callers who make "any call using an automatic telephone dialing system or prerecorded voice to any telephone number assigned to a ….cellular telephone..." *See* 47 U.S.C. §227(b)(1)(A)(iii).  The TCPA's definition of an automatic

12

telephone dialing system includes a "predictive dialer." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012).

**ANSWER:** **Defendant denies that the TCPA's definition of an ATDS includes a "predictive dialer." Defendant admits that the TCPA permits individuals to bring private actions under certain circumstances but denies Plaintiff has a valid TCPA claim and denies that it violated the TCPA. Defendant admits that the above paragraph quotes a portion of the TCPA but denies the above paragraph accurately reflects or characterizes the TCPA when taken as a whole and states that the above quotation omits certain statutory text of the TCPA. Defendant also denies that the above allegations accurately describe the basis for bringing a TCPA claim due to the omitted portions of the statutory text of the TCPA.**

42. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

43. On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or pre-recorded message to a wireless

304247492v1 1018199

number by a creditor or on behalf of a creditor are permitted only if the calls are made with the "prior express consent" of the called party.  In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

**ANSWER:**    **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

44.    The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that the number was provided during the transaction that resulted in the debt owed." FCC Declaratory Ruling, 23 F.C.C.R. at 564-65 (¶10).

**ANSWER:**    **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

45.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Ocwen to demonstrate that Todd gave his express consent to Ocwen to use an autodialer to call his cell phone within the meaning of the statute.  *See* FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).  However, even when consent is determined to have been given, it can be revoked.

**ANSWER:**    **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

46.    Directly as well as through its subsidiaries, contractors and agents, Ocwen employs hundreds of persons at various call centers throughout the country.  These calling centers use automatic telephone dialing systems and computerized account

304247492v1 1018199

information to track, record, and maintain the hundreds of thousands of debts collected by Ocwen.

**ANSWER:** **Defendant admits it calls it customers, but denies the remaining allegations in the above paragraph.**

47.     A significant portion of Ocwen's business operations are dedicated to servicing consumer loans that are in default, foreclosure, or were involved in a bankruptcy proceeding.

**ANSWER:** **The term "significant" is undefined, vague, and ambiguus such that Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

48.     Ocwen's regular business practices include making repeated phone calls, as well as sending notices, statements, bills, and other written correspondence to persons like Todd who it believes responsible for paying allegedly past due amounts.  Part of Ocwen's strategy for servicing consumer loans involves the use of an ATDS and/or Robocalls.

**ANSWER:** **Defendant admits that it calls its customers and that it sends its customers various notices, statements, and other correspondence.  Defendant denies the remaining allegations in the above paragraph.**

49.     Ocwen uses ATDS equipment and software that has the capacity to store or produce telephone numbers to be called and which includes auto-dialers and predictive dialers.

**ANSWER:** **Denied.**

304247492v1 1018199

50.     Ocwen has made calls using an ATDS and/or Robocalls to Todd's cellular telephone even though he did not provide express prior consent to receive such calls, or Todd revoked any alleged consent thereafter.

**ANSWER:     Denied.**

Todd's Chapter 13 Bankruptcy Proceeding

51.     On March 4, 2011, Todd filed a bankruptcy case pursuant to Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Indiana, Case No. 11-80256-JJG-13 (the "Bankruptcy Case").

**ANSWER:     Admitted.**

52.     Todd filed the Bankruptcy Case to cure all pre-petition defaults on the Loan.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

53.     Shortly after filing, Todd proposed a Chapter 13 Plan (the "*Chapter 13 Plan*"), which was amended on April 19, 2011.  [Filing No. 16].

**ANSWER:     Defendant admits that Plaintiff, through counsel, filed a proposed, amended Chapter 13 plan on April 19, 2011.**

54.     On September 13, 2011, the Bankruptcy Court entered an *Order Confirming Amended Chapter 13 Plan Filed April 19, 2011*.  [Filing No. 40].

**ANSWER:     Admitted.**

55.     Pursuant to the confirmed *Chapter 13 Plan*, Todd was to make regular monthly payments of $990.00 to the Chapter 13 Trustee, from which Ocwen would receive approximately $583.57 per month to maintain the monthly payments it was owed,

16

plus an additional sum to address all arrearage (originally estimated by Todd to be $20,000.00).

**ANSWER:** **Defendant denies that the confirmed Chapter 13 Plan required Plaintiff to make payments of $990 the Chapter 13 Trustee. The confirmed Chapter 13 Plan required Plaintiff to make one payment to the trustee for $990. It then required Plaintiff to make payments to the trustee for $1,138, of which $83.57 was the "Estimated Current Monthly Installment" regarding the subject loan. The Chapter 13 Plan noted that this amount could "be adjusted based on claim and/or notice." Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the above paragraph and denies those allegations on that basis.**

56.     Ocwen appeared in the Bankruptcy Case and participated by means of the filing of its *Proof of Claim* (Claim No. 4 dated March 14, 2011) [Claim Filing No. 4-1] on behalf of Deutsche Bank.

**ANSWER:** **Denied.**

57.     The *Proof of Claim* asserted a secured claim in the amount of $77,640.83 and an arrearage claim of $22,106.24 which included: (a) escrow charges of $324.65; (b) pre-petition attorney fees and costs of $2,205.28; (c) property preservation fees of $60.00; (d) inspection fees of $118.50; (e) appraisal fees of $120.00; and (f) a breach fee of $7.00.

**ANSWER:** **Admitted.**

58.     On November 16, 2011, Ocwen's predecessor in interest, Saxon Mortgage Services, Inc., filed a *Notice of Payment Change*. [Filing No. 42].

304247492v1 1018199

**ANSWER:** **Defendant admits that Saxon Mortgage Services, Inc. filed a notice of payment change on November 16, 2011. Defendant denies the remaining allegations in the above paragraph.**

59.     This was the only Notice of Payment Change filed during the Bankruptcy Case.

**ANSWER:** **Admitted.**

60.     From March 4, 2011 to April 12, 2017, Todd made timely and adequate payments to the Trustee in accordance with the terms of the Chapter 13 Plan.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

61.     A true and accurate copy of the Trustee's payment ledger reflecting the amounts and date of disbursements to Ocwen is attached hereto as "Exhibit A".

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

62.     On May 2, 2016, the Chapter 13 Trustee filed a *Notice of Final Cure Payment* [Doc. 123] pursuant to FRBP § 3002.1(f), stating the amount to cure the prepetition default ($22,106.24 in arrearage) had been paid in full and that Todd had completed all payments required under the Chapter 13 Plan.

**ANSWER:** **Defendant admits that Trustee Donald L. Decker filed a notice of final cure payment on May 2, 2016, Doc. 123.**

63.     On May 13, 2016, Ocwen filed a *Response to Notice of Final Cure Payment* under Claim Number 8 on the Claims Register, "[agreeing] that the Debtor(s)

304247492v1 1018199

have paid in full the amount required to cure the prepetition default on the creditor's claim."

**ANSWER:** **Denied.**

64. Also on May 13, 2016, Ocwen filed an *Addendum To Response To The Notice of Final Cure* stating, "once [payment in the amount of $486.04, written on check #280695, issued by the Trustee] has been received, Debtor will be due for his May 1, 2016 payment.

**ANSWER:** **Denied.**

65. Thus, under the penalties for perjury, Ocwen affirmed that upon receipt of the aforementioned payment Todd was current with all post-petition payments consistent with §1322(b)(5) of the Bankruptcy Code including all fees, charges, expenses, escrow, and costs.

**ANSWER:** **Denied.**

66. On May 6, 2016, by Personal Money Order No. 110848, Todd mailed payment of $574.00 to Ocwen for application to his May 1, 2016, installment payment as required and as described above. The payment was accepted by Ocwen and applied to the Loan.

**ANSWER:** **Defendant admits a payment posted to the subject loan on or around May 6, 2016 in the amount of $574.00. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.**

304247492v1 1018199

67.     A true and accurate copy of the Personal Money Orders paid to Ocwen by Todd for his May, June, and July of 2016 payment obligations are attached hereto as "Exhibit B".

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

68.     On July 23, 2016, an *Order of Discharge* was entered.  [Filing No. 131].

**ANSWER:     Defendant admits an Order of Discharge was entered on July 23, 2016 in Plaintiff's bankruptcy proceeding.**

69.     In accordance with the *Chapter 13 Plan, Order of Discharge, Notice of Final Cure Payment,* and *Response to Notice of Final Cure Payment*, the Loan was to be reinstated according to the original terms and any right of Ocwen or Deutsche Bank to recover any amounts alleged to have arisen prior to filing was thereby extinguished.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

70.     Thereafter, Todd continued making timely and adequate monthly installments to Ocwen as obligated.

**ANSWER:     Denied.**

Ocwen's Servicing Misconduct – Fees

71.     Sometime in June of 2018, Todd obtained an exact reproduction of the life of loan mortgage transactional history ("Life of Loan History") for the Loan from the system of record used by Ocwen.  The Life of Loan History reflects the current mortgage balance, the date of receipt and application of all payments, the date of assessment for any late fees or charges, and the recording of any corporate advances for any legal fees or

charges, including without limitation property inspection fees, legal fees, escrow fees, processing fees or any other collateral charges.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

72.     A review of the Life of Loan History reveals a myriad of unexplainable and errant servicing conduct.

**ANSWER:** **Denied.**

73.     A true and accurate copy of the current Life of Loan History is attached hereto as "<u>Exhibit C</u>".

**ANSWER:** **Defendant admits Exhibit C to the Complaint is copy of the subject loan's transaction history and/or payment history as of December 31, 2018.**

74.     During the course of the Bankruptcy Case, Ocwen assessed fees and expenses to the Loan.

**ANSWER:** **Defendant admits only those allegations in the above paragraph that correctly and accurately describe the contents of the subject loan's payment/transaction history. Defendant expressly denies any allegations in the above paragraph that mischaracterize or misstate the contents of same.**

75.     The fees and expenses include without limitation a broker price opinion ("BPO") on October 24, 2014 ($121.00), attorney fees for the "Review of Plan/Notice of Appearance on June 6, 2013 ($150.00), and "Prior Servicer Fees" on June 6, 2014 ($1,471.71), July 8, 2014 ($519.82), and September 8, 2014 ($68.75).

**ANSWER:** **Defendant admits only those allegations in the above paragraph that correctly and accurately describe the contents of the subject loan's payment/transaction**

304247492v1 1018199

history. **Defendant expressly denies any allegations in the above paragraph that mischaracterize or misstate the contents of same.**

76. Ocwen did not provide notice of these fees or expenses to the Bankruptcy Court as required by FRBP § 3002.1.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

77. After the Bankruptcy Case and the entry of the *Order of Discharge*, Ocwen continued to assess expenses to the Loan despite Todd being legally and factually current. These expenses include, but are not limited to, the following:

| Provider | Description | Date of Service | Amount |
|---|---|---|---|
| Altisource | Ocwen BPO | 06/21/2016 | $110.00 |
| Altisource | No Contact Inspection | 8/3/2016 | $13.25 |
| Altisource | No Contact Inspection | 12/14/2016 | $13.25 |
| Altisource | No Contact Inspection | 12/27/2016 | $13.25 |
| Altisource | No Contact Inspection | 1/16/2016 | $13.25 |
| Altisource | Exterior Property Inspection | 2/14/2016 | $13.25 |
| Altisource | Exterior Property Inspection | 3/16/2016 | $13.25 |
| Altisource | Exterior Property Inspection | 4/18/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 5/19/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 6/19/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 7/24/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 8/3/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 12/14/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 12/27/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 1/16/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 2/14/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 3/16/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 4/18/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 5/19/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 6/19/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 7/24/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 8/25/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 9/26/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 10/28/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 11/28/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 12/28/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 1/29/2018 | $14.50 |

304247492v1 1018199

| Provider | Description | Date of Service | Amount |
| --- | --- | --- | --- |
| Altisource | Exterior Property Inspection | 3/2/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 4/2/2018 | $14.50 |
| Altisource | Ocwen BPO | 4/5/2018 | $110.00 |
| Altisource | Exterior Property Inspection | 4/30/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 6/5/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 7/10/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 7/31/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 9/4/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 10/3/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 11/9/2018 | $14.50 |

**ANSWER:** **Denied.**

78.     A true and accurate copy of an Invoice for each service described above is attached hereto as "Exhibit D".

**ANSWER:**     **Defendant admits Exhibit D to the Complaint includes copies of the referenced invoices.**

79.     By information and belief, the Exterior Property Inspection[s] described above were not actually performed.  Among other things, the Home is not accessible or visible from Washboard Road.

**ANSWER:**     **Defendant denies that the referenced inspections were not performed. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.**

80.     Neither Ocwen nor Deutsche Bank provided Todd "notice at the time of or prior to any inspection specifying reasonable cause for the inspection" as set forth in the Mortgage.

**ANSWER:**     **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

23

81. Ocwen has also assessed, and continues to assess, a "Certified Mail Cost" of $6.53 to the Loan for each Notice of Default it mails to Todd.

**ANSWER:** **Denied.**

82. As further detailed below, and despite his exhaustive efforts to get Ocwen to stop, it has mailed Todd a Notice of Default every month since November of 2016.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

Ocwen's Servicing Misconduct – Misapplication of Payments & Missing Funds

83. In addition to the fees described above, the Life of Loan History reflects that during the Bankruptcy Case and thereafter, Ocwen maintained a large surplus balance in Suspense. The highest balances include $2,417.68 on or about November 7, 2012, $5,263.43 on or about May 6, 2013, $2,868.13 on or about February 9, 2015, $874.17 on or about July 5, 2016, $1,941.18 on or about August 29, 2016, and $26,975.16 on or about November 15, 2016.

**ANSWER:** **Denied.**

84. Each amount referenced in the immediately preceding paragraph exceeds any monthly payment obligation Todd has ever owed on his Loan.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph because Plaintiff's meaning and reference to "monthly payment obligation . . . ever owed on his Loan" is vague and ambiguous and subject to different meanings and interpretations. Defendant denies the allegations in the above paragraph on this basis.**

85. Ocwen's retention of funds in excess of a regular payment amount in Suspense, instead of properly applying these funds to principal, interest, and escrow as

304247492v1 1018199

contractually and legally obligated, caused it to charge Todd with fees and additional interest without basis.

**ANSWER:**     **Denied.**

86.     Ocwen's retention of funds in Suspense in excess of his regular monthly payment amount for extended periods of time deprived Todd of the time value of that money as Ocwen did not pay interest towards the balance.

**ANSWER:**     **Denied.**

87.     On or about July 6, 2015, Ocwen reversed payments totaling $1,944.12 previously paid from Suspense.

**ANSWER:**     **Defendant admits that reversals and/or adjustments posted to the subject account on July 6, 2015 but denies the above paragraph sets forth the correct amount of the posted reversals and/or adjustments.**

88.     However, the $1,944.12 was not returned to Suspense or applied elsewhere.

**ANSWER:**     **Denied.**

89.     To date, Ocwen cannot account for the $1,944.12.

**ANSWER:**     **Denied.**

90.     On or about July 22, 2015, Ocwen reversed payments totaling $972.06 previously paid from Suspense.

**ANSWER:**     **Defendant admits that reversals and/or adjustments posted to the subject account on July 22, 2015 but denies the above paragraph sets forth the correct amount of the posted reversals and/or adjustments.**

304247492v1 1018199

91. However, only $569.16 of the $972.06 was returned to Suspense. The remaining $402.90 was applied elsewhere.

**ANSWER:** **Defendant lacks knowledge or information at this time sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

92. To date, Ocwen cannot account for the missing $402.90.

**ANSWER:** **Denied.**

93. On August 6, 2015, Ocwen performed a "BK Escrow Adjustment" resulting in the transfer of $569.16 from Suspense. The $569.16 was not transferred to Todd's escrow account, used to pay taxes or insurance, or returned to Suspense.

**ANSWER:** **Defendant admits a "Bankruptcy Escrow Adjustment" posted to the subject account on August 6, 2015 but denies the remaining allegations in the above paragraph.**

94. To date, Ocwen cannot account for the $569.16.

**ANSWER:** **Denied.**

95. On August 2, 2016, Ocwen posted Todd's payment of $600.00 as a Suspense payment but his Suspense balance did not increase.

**ANSWER:** **Defendant admits a "Suspense Payment" posted to the subject account on August 2, 2016 but denies the remaining allegations in the above paragraph.**

96. To date, Ocwen cannot account for the $600.00.

**ANSWER:** **Denied.**

97. On January 4, 2017, Ocwen increase the principal balance of the Loan by $4,343.35.

304247492v1 1018199

**ANSWER:** **Denied.**

98.     To date, Ocwen has offered no explanation for why it increased the principal balance of the Loan.

**ANSWER:** **Denied.**

99.     The Note does not contain language permitting a unilateral increase to the principal portion of the Loan.

**ANSWER:** **Defendant denies that it unilaterally increased the principal balance owed on the subject loan. Answering further, Defendant admits only those allegations in the above paragraph that correctly and accurately set forth and/or describe the contents of the subject note. Defendant expressly denies any allegations in the above paragraph that mischaracterize or misstate the contents of the subject note.**

100.     Todd did not agree to any increase to the principal balance of the Loan.

**ANSWER:** **Defendant denies that is unilaterally increased the principal balance on the subject loan and denies the allegations in the above paragraph.**

101.     Todd did not receive any notice of Ocwen's intent to unilaterally increase the principal balance of the Loan.

**ANSWER:** **Defendant denies that it unilaterally increased the principal balance on the subject loan. Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the above paragraph and denies those allegations on that basis.**

102.     Beginning on February 2, 2017, Ocwen increased the principal and interest portion of Todd's monthly payment obligation from $435.51 to $488.15. This

304247492v1 1018199

increase was not preceded or accompanied by a notice of payment change or increased interest rate.

**ANSWER:** **Denied.**

103.    The Note does not contain language permitting an increase to the principal portion of Todd's month payment obligations.

**ANSWER:** **Denied.**

104.    To date, Ocwen has offered no explanation for why it increased the principal and interest portion of Todd's monthly payment obligation.

**ANSWER:** **Denied.**

Ocwen's Servicing Misconduct – Mismanagement of Escrow Account

105.    At the time it assumed the servicing of the Loan, Ocwen was required to perform an audit of the loan history to verify its accuracy.

**ANSWER:** **Denied.**

106.    Pursuant to the RESPA, if the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall notify the borrower not less than annually of any shortage of funds in the escrow account.  12 U.S.C. § 2609(b).

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

107.    During the Bankruptcy Case, Ocwen failed to perform an annual escrow analysis.

**ANSWER:** **Denied.**

304247492v1 1018199

108.     During the Bankruptcy Case, Ocwen failed to notify Todd or the Trustee (at least once during the escrow account computation year) of any escrow shortage or deficiency.  *See In re Laskowski*, 384 B.R. 518, 534 (Bankr. N.D. Ind. 2008).

**ANSWER:     Denied.**

109.     Ocwen also failed to perform an escrow analysis before seeking repayment of the deficiency.  *See* 24 C.F.R. § 3500.17(f)(5).

**ANSWER:     Denied.**

110.     Pursuant to the RESPA, any servicer that has established or continued an escrow account in connection with a federally related mortgage loan shall submit to the borrower for which the escrow account has been established or continued a statement clearly itemizing, for each period not greater than every 12 months, the amount of the borrower's current monthly payment, the portion of the monthly payment being placed in the escrow account, the total amount paid into the escrow account during the period, the total amount paid out of the escrow account during the period for taxes, insurance premiums, and other charges (as separately identified), and the balance in the escrow account at the conclusion of the period. 12 U.S.C. § 2609(c)(2)(A)(B).

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

111.     Pursuant to Fed. R. Bankr. P. 3002.1(b), all mortgage servicers are required to file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment.  This "Notice of Mortgage Payment Change" is included in Official Form 410S1.

304247492v1 1018199

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

112.    One of the purposes of the notice requirements contained in 12 U.S.C. § 2609 and Fed. R. Bankr. P. 3002 is to prevent a servicer from "sand-bagging" a borrower with an unanticipated escrow arrearage or an increase in monthly escrow payment.  This is particularly relevant in the context of borrowers in bankruptcy or who are otherwise experiencing financial hardship.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

113.    From April of 2011 to November of 2011, Ocwen applied $163.64 to escrow from each payment it received from Todd (via the Trustee).

**ANSWER:** **Denied as Defendant did not begin servicing the subject loan until 2012.**

114.    Per its own *Proof of Claim* and the confirmed *Chapter 13 Plan*, $97.54 was to be applied to escrow.

**ANSWER:** **Denied as Defendant did not file the referenced Proof of Claim nor did it service the subject loan at the time the referenced Proof of Claim was filed.**

115.    This escrow increase was not accompanied by a Notice of Payment Change or an escrow analysis suggestive of an increase to Todd's property taxes or other expense.

**ANSWER:** **Denied.**

116.    From December of 2011 to August of 2012, Ocwen applied $163.64 to escrow from each payment it received from Todd (via the Trustee).  Per the Notice of

304247492v1 1018199

Payment Change filed by Ocwen November 16, 2011, $0.01 was to be applied to escrow. [Doc. 42].

**ANSWER:** **Denied as Defendant did not begin servicing the subject loan until 2012.**

117. Despite the foregoing escrow applications being in excess of what was mandated, the Life of Loan History reflects that Ocwen's illegal conduct nonetheless caused a negative escrow balance to exist almost continuously throughout the Bankruptcy Case and even after discharge. The most negative balances include -$5,217.85 on or about October 6, 2012, - $7,124.90 on June 6, 2013, -$3,206.63 on or about May 9, 2016 (four days before Ocwen filed the *Response to Notice of Final Cure Payment*), and -$815.25 on or about January 4, 2017.

**ANSWER:** **Denied.**

118. The negative escrow balance would not have occurred, or could have been timely addressed, had Ocwen performed requisite escrow analyses or otherwise fulfilled its statutory notice requirements.

**ANSWER:** **Denied.**

119. An escrow account is a form of trust account.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

120. Ocwen had no right or authority to credit or debit funds from escrow outside the requirements of the Loan or without Todd's informed consent.

**ANSWER:** **Plaintiff's reference to "outside the requirements of the Loan" is a vague and ambiguous (and undefined) terms such that Defendant lacks knowledge or**

304247492v1 1018199

**information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

121. By maintaining a negative escrow balance, Ocwen caused Todd to pay amounts he was not required to pay, depriving him of the time value of that money, and caused him to incur fees, penalties and/or interest that he would not have otherwise.

**ANSWER:** **Denied.**

122. In addition, by allowing and failing to disclose the negative escrow balance at and following the conclusion of the Bankruptcy Case, Ocwen violated the automatic stay and discharge injunction ordered therein, depriving Todd of the fresh start to which he was entitled.

**ANSWER:** **Denied.**

Ocwen's Attempts to Collect Amounts Not Owed – Written Correspondence

123. On or about November 8, 2016, Ocwen forwarded a Mortgage Account Statement to Todd, seeking immediate payment of $14,256.83.

**ANSWER:** **Defendant admits if forwarded a mortgage statement dated November 8, 2016 but denies the remaining allegations in the above paragraph.**

124. A true and accurate copy of the Mortgage Account Statement described above is attached hereto as "Exhibit E".

**ANSWER:** **Admitted (less the highlighting and other markings on Exhibit E).**

125. On November 8, 2016, Ocwen mailed to Todd a Delinquency Notice, claiming he was "798 days delinquent" and seeking immediate payment of $14,449.12.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated November 8, 2016 but denies the referenced correspondence sought immediate payment and denies any allegations that misstate the contents of the referenced correspondence.**

32

304247492v1 1018199

126. A true and accurate copy of the Delinquency Notice is attached hereto as "Exhibit F".

**ANSWER:** **Admitted (less the highlighting on Exhibit F).**

127. On November 8, 2016, Todd was not 798 days delinquent.

**ANSWER:** **Admitted.**

128. On or about December 14, 2016, Ocwen rejected Todd's monthly payment and directed correspondence to him titled "Funds Returned."

**ANSWER:** **Admitted.**

129. A true and accurate copy of the correspondence titled "Funds Returned," dated December 14, 2016, is attached hereto as "Exhibit G".

**ANSWER:** **Admitted.**

130. On January 6, 2017, Ocwen mailed Todd correspondence proclaiming him to be in default. The letter also stated that if Todd were to remain in default for thirty more days he could lose his home.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated January 6, 2017 but denies the above paragraph accurately characterizing the correspondence when taken as a whole. Defendant thus denies any allegations in the above paragraph that mischaracterize, misrepresent, or misquote such correspondence.**

131. Also on January 6, 2017, Ocwen mailed Todd a Notice of Default, seeking immediate payment of $1,951.93.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated January 6, 2017 but denies but denies the remaining allegations in the above paragraph.**

304247492v1 1018199

132.    On January 10, 2017, four days later, Ocwen mailed Todd a Delinquency Notice, seeking immediate payment of $2,624.20.

**ANSWER:    Defendant admits it forwarded the referenced correspondence dated January 10, 2017, which was dated four days after the January 6, 2017 correspondence referenced above.  Defendant denies the remaining allegations in the above paragraph.**

133.    Just fifteen days later, Ocwen mailed to Todd a Notice of Default, dated January 25, 2017, seeking immediate payment of $1,384.96 to avoid foreclosure.

**ANSWER:    Defendant admits it forwarded the referenced correspondence dated January 25, 2017 but denies the remaining allegations in the above paragraph.**

134.    A true and accurate copy of the Notice of Default, dated January 25, 2017, is attached hereto as "Exhibit H".

**ANSWER:    Admitted.**

135.    Ocwen mailed to Todd a Delinquency Notice, dated February 15, 2017, seeking immediate payment of $1,522.97.

**ANSWER:    Defendant admits it forwarded the referenced correspondence dated February 15, 2017 but denies the remaining allegations in the above paragraph.**

136.    Ocwen mailed to Todd a Notice of Default, dated February 24, 2017, seeking immediate payment of $870.48.

**ANSWER:    Defendant admits it forwarded the referenced correspondence dated February 24, 2017 but denies the remaining allegations in the above paragraph.**

137.    Ocwen directed correspondence to Todd, dated March 13, 2017, stating: "We have not received your 02/01/2017 through 03/01/2017 mortgage payments."

304247492v1 1018199

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated March 13, 2017 but denies the remaining allegations in the above paragraph.**

138.    Ocwen mailed to Todd a Delinquency Notice, dated March 20, 2017, seeking the immediate payment of $1,608.49.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated March 20, 2017 but denies the remaining allegations in the above paragraph.**

139.    Ocwen mailed to Todd a Delinquency Notice, dated March 28, 2017, seeking the immediate payment of $956.00.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated March 28, 2017 but denies the remaining allegations in the above paragraph.**

140.    Ocwen mailed to Todd a Delinquency Notice, dated April 18, 2017, seeking the immediate payment of $1,694.01.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated April 18, 2017 but denies the remaining allegations in the above paragraph.**

141.    Ocwen mailed Todd a Pre-Foreclosure Notice, dated April 27, 2017, as required by Indiana law before the initiation of any foreclosure proceeding.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated April 27, 2017 but denies any allegations in the above paragraph that misstate its contents.**

142.    A true and accurate copy of the Pre-Foreclosure Notice is attached hereto as "Exhibit I".

**ANSWER:** **Admitted.**

143.    Ocwen mailed to Todd a Notice of Default, dated April 27, 2017, seeking immediate payment of $1,041.52.

304247492v1 1018199

**ANSWER:** Defendant admits it forwarded the referenced correspondence dated April 27, 2017 but denies the remaining allegations in the above paragraph.

144. Ocwen mailed to Todd a Delinquency Notice, dated May 22, 2017, seeking immediate payment of $1,770.01.

**ANSWER:** Defendant admits it forwarded the referenced correspondence dated May 22, 2017 but denies the remaining allegations in the above paragraph.

145. Three days later, Ocwen mailed to Todd a Notice of Default, dated May 25, 2017, seeking immediate payment of $1,113.79.

**ANSWER:** Defendant admits it forwarded the referenced correspondence dated May 25, 2017 but denies the remaining allegations in the above paragraph.

146. Ocwen mailed to Todd a Notice of Default, dated June 28, 2017, seeking immediate payment of $1,205.54.

**ANSWER:** Defendant admits it forwarded the referenced correspondence dated June 28, 2017 but denies the remaining allegations in the above paragraph.

147. Ocwen mailed to Todd a Notice of Default, dated July 25, 2017, seeking immediate payment of $1,268.29.

**ANSWER:** Defendant admits it forwarded the referenced correspondence dated July 25, 2017 but denies the remaining allegations in the above paragraph.

148. Ocwen mailed to Todd a Notice of Default, dated September 27, 2017, seeking immediate payment $1,402.61.

**ANSWER:** Defendant admits it forwarded the referenced correspondence dated September 27, 2017 but denies the remaining allegations in the above paragraph.

304247492v1 1018199

149.     Ocwen mailed to Todd a Notice of Default, dated October 25, 2017, seeking immediate payment of $1,465.72

**ANSWER:     Defendant admits it forwarded the referenced correspondence dated October 25, 2017 but denies the remaining allegations in the above paragraph.**

150.     Ocwen mailed to Todd a Notice of Default, dated November 29, 2017, seeking immediate payment of $1,473.08

**ANSWER:     Defendant admits it forwarded the referenced correspondence dated November 29, 2017 but denies the remaining allegations in the above paragraph.**

151.     Ocwen mailed to Todd a Notice of Default, dated December 27, 2017, seeking immediate payment of $1,439.00.

**ANSWER:     Defendant admits it forwarded the referenced correspondence dated December 27, 2017 but denies the remaining allegations in the above paragraph.**

152.     Ocwen mailed correspondence to Todd, dated January 2, 2018, and titled "Assistance Options May Be Available," stating the account was past due for the November 1, 2017, through January 1, 2018, payments and that the total amount owed was $2,032.18.

**ANSWER:     Defendant admits it forwarded the referenced correspondence dated January 2, 2018 but denies any allegations in the above paragraph that misstate or mischaracterize its contents.**

153.     A true and accurate copy of the document titled "Assistance Options May Be Available," dated January 2, 2018, is attached hereto as "Exhibit J".

**ANSWER:     Admitted.**

304247492v1 1018199

154. Ocwen mailed correspondence to Todd, dated January 4, 2018, seeking the 11/1/2017 through 1/1/2018 payments.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated January 4, 2018 but denies the remaining allegations in the above paragraph.**

155. Ocwen mailed to Todd a Notice of Default, dated January 24, 2018, seeking immediate payment of $1,446.68.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated January 24, 2018 but denies the remaining allegations in the above paragraph.**

156. Ocwen mailed to Todd a Notice of Default, dated March 27, 2018, seeking immediate payment of $1,461.40.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated March 27, 2018 but denies the remaining allegations in the above paragraph.**

157. Ocwen mailed to Todd correspondence, dated April 24, 2018, and titled "Assistance Options May Be Available," claiming the account was past due for the March and April payments in the amount of $585.56 each.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated April 24, 2018 but denies any allegations in the above paragraph that misstate, mischaracterize, or misquote such correspondence.**

158. Ocwen mailed to Todd a Notice of Default, dated May 30, 2018, seeking immediate payment of $1,586.12.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated May 30, 2018 but denies the referenced correspondence sought "immediate payment" and denies any remaining allegations in the above paragraph.**

304247492v1 1018199

159. A true and accurate copy of the Notice of Default, dated May 30, 2018, is attached hereto as "Exhibit K".

**ANSWER:** **Admitted (less the highlighting on Exhibit K).**

160. Ocwen mailed to Todd a Notice of Default, dated June 27, 2018, seeking immediate payment of $1,593.48.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated June 27, 2018 but denies the referenced correspondence sought "immediate payment" and denies any remaining allegations in the above paragraph.**

161. A true and accurate copy of the Notice of Default, dated June 27, 2018, is attached hereto as "Exhibit L".

**ANSWER:** **Admitted (less the highlighting on Exhibit L).**

162. Ocwen mailed to Todd a Notice of Default, dated July 25, 2018, seeking immediate payment of $1,593.54 and stating: "In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 08/31/2018, at the address listed on page four of this notice."

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated July 25, 2018 but denies the referenced correspondence sought "immediate payment" and denies any allegations that misstate the contents of the referenced correspondence.**

163. A true and accurate copy of the Notice of Default, dated July 25, 2018, is attached hereto as "Exhibit M".

**ANSWER:** **Admitted.**

164. Ocwen mailed to Todd correspondence, dated July 30, 2018, and titled "Assistance Options May Be Available," stating the account was due for 6/1/2018

through 7/1/2018, in the amount of $585.56 each.  The total amount due as of the date of the letter was $1,593.54.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

165.    Ocwen mailed to Todd a Notice of Default, dated August 24, 2018, seeking immediate payment of $1,593.31.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated August 24, 2018 but denies it sought "immediate payment" and denies any remaining allegations in the above paragraph.**

166.    A true and accurate copy of the Notice of Default, dated August 24, 2018, is attached hereto as "Exhibit N".

**ANSWER:** **Admitted.**

167.    Ocwen mailed to Todd a Notice of Default, dated September 25, 2018, seeking immediate payment of $1,593.08.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated September 25, 2018 but denies it sought "immediate payment" and denies any remaining allegations in the above paragraph.**

168.    A true and accurate copy of the Notice of Default, dated September 25, 2018, is attached hereto as "Exhibit O".

**ANSWER:** **Admitted.**

169.    Ocwen mailed to Todd a Notice of Default, dated October 26, 2018, seeking immediate payment of $1,592.85.

304247492v1 1018199

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated October 26, 2018 but denies it sought "immediate payment" and denies any remaining allegations in the above paragraph.**

170.    A true and accurate copy of the Notice of Default, dated October 26, 2018, is attached hereto as "Exhibit P".

**ANSWER:** **Admitted.**

171.    Ocwen mailed to Todd a Notice of Default, dated December 12, 2018, seeking immediate payment of $2,177.89 and stating, "Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security, foreclosure by judicial proceeding and sale of the Property."

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated December 12, 2018 but denies it sought "immediate payment" and denies any allegations in the above paragraph that misstate the contents of the referenced correspondence.**

172.    A true and accurate copy of the Notice of Default, dated December 12, 2018, is attached hereto as "Exhibit Q".

**ANSWER:** **Admitted (less the highlighting on Exhibit Q).**

173.    Ocwen mailed to Todd a Notice of Default, dated On January 4, 2019, seeking immediate payment of $2,206.38 and stating: "Mortgage payments on the above referenced account are past due, which has cause a default under the terms of the Mortgage or Deed of Trust.

**ANSWER:** **Defendant admits it forwarded the referenced correspondence dated January 4, 2019 but denies it sought "immediate payment" and denies any allegations in the above paragraph that misstate the contents of the referenced correspondence.**

304247492v1 1018199

174.    A true and accurate copy of the Notice of Default, dated January 4, 2019, is attached hereto as "Exhibit R".

**ANSWER:**    **Admitted (less the highlighting on Exhibit R).**

175.    Each Notice of Default and Delinquency Notice set forth above sought immediate payment of amounts Todd did not owe and threatened foreclosure.

**ANSWER:**    **Denied.**

176.    Each Notice of Default and Delinquency Notice set forth above contained false and misleading statements in that Todd was not in default or even delinquent.

**ANSWER:**    **Denied.**

177.    Many of the notices described above occurred after Ocwen had been notified, on numerous occasions, of its errors and despite Todd's pleas for the letters to stop.

**ANSWER:**    **Denied.**

178.    Each Notice of Default and Delinquency Notice exacerbated the emotional distress caused to Todd by Ocwen's servicing errors and failure to correct said errors.

**ANSWER:**    **Denied.**

179.    Each Notice of Default set forth above was sent via certified mail, the cost of which was assessed to the Loan.

**ANSWER:**    **Denied.**

Ocwen's Attempts to Collect Amounts Not Owed – Calls

180.    From January to December of 2018, Ocwen or its agents caused collection calls to be made to Todd's cellphone including, but not limited to, the following:

- On January 31, 2018 at approximately 6:12 p.m. EST;
- On February 13, 2018 at approximately 2:24 p.m. EST;

304247492v1 1018199

- On February 16, 2018 at approximately 3:04 p.m. EST;
- On March 2, 2018 at approximately 5:29 p.m. EST;
- On March 9, 2018 at approximately 12:52 p.m. EST;
- On March 15, 2018 at approximately 4:12 p.m. EST;
- On March 22, 2018 at approximately 9:32 p.m. EST;
- On March 27, 2018 at approximately 6:56 p.m. EST;
- On April 3, 2018 at approximately 12:26 p.m. EST;
- On April 6, 2018 at approximately 2:56 p.m. EST;
- On April 11, 2018 at approximately 12:55 p.m. EST;
- On April 19, 2018 at approximately 2:20 p.m. EST;
- On April 23, 2018 at approximately 2:58 p.m. EST;
- On April 24, 2018 at approximately 12:26 p.m. EST;
- On April 25, 2018 at approximately 11:37 a.m. EST;
- On April 26, 2018 at approximately 10:06 a.m. EST;
- On April 27, 2018 at approximately 10:41 a.m. EST;
- On May 2, 2018 at approximately 11:38 a.m. EST;
- On May 3, 2018 at approximately 10:27 a.m. EST;
- On May 4, 2018 at approximately 11:00 p.m. EST;
- On May 5, 2018 at approximately 4:26 p.m. EST;
- On May 10, 2018 at approximately 10:30 a.m. EST;
- On May 11, 2018 at approximately 11:38 a.m. EST;
- On May 15, 2018 at approximately 9:39 a.m. EST;
- On May 19, 2018 at approximately 10:40 a.m. EST;
- On May 26, 2018 at approximately 9:48 a.m.;
- On June 8, 2018 at approximately 11:43 a.m. EST;
- On June 12, 2018 at approximately 11:44 a.m. EST;
- On June 15, 2018 at approximately 11:45 a.m. EST;
- On June 19, 2018 at approximately 3:28 p.m. EST;
- On June 22, 2018 at approximately 11:34 p.m. EST;
- On June 26, 2018 at approximately 5:54 p.m. EST;
- On July 2, 2018 at approximately 5:54 p.m. EST;
- On July 9, 2018 at approximately 11:55 a.m. EST;
- On July 12, 2018 at approximately 11:12 a.m. EST;
- On July 16, 2018 at approximately 1:56 p.m. EST;
- On July 19, 2018 at approximately 12:54 p.m. EST;
- On July 24, 2018 at approximately 11:11 a.m. EST;
- On July 27, 2018 at approximately 12:24 p.m. EST;
- On August 9, 2018 at approximately 9:26 a.m. EST;
- On August 16, 2018 at approximately 10:06 a.m. EST;
- On August 21, 2018 at approximately 10:19 a.m. EST;
- On August 24, 2018 at approximately 10:04 a.m. EST;
- On August 28, 2018 at approximately 11:32 a.m. EST;
- On August 31, 2018 at approximately 5:24 p.m. EST;
- On September 5, 2018 at approximately 11:42 a.m. EST;

304247492v1 1018199

- On September 10, 2018 at approximately 12:30 p.m. EST;
- On September 13, 2018 at approximately 10:46 a.m. EST;
- On September 19, 2018 at approximately 12:28 p.m. EST;
- On September 24, 2018 at approximately 3:22 p.m. EST;
- On September 27, 2018 at approximately 12:28 p.m. EST;
- On October 2, 2018 at approximately 12:51 p.m. EST;
- On October 5, 2018 at approximately 12:47 p.m. EST;
- On October 10, 2018 at approximately 4:34 p.m. EST;
- On October 15, 2018 at approximately 12:40 p.m. EST;
- On October 18, 2018 at approximately 11:22 p.m. EST;
- On October 23, 2018 at approximately 1:07 p.m. EST;
- On October 26, 2018 at approximately 11:50 a.m. EST;
- On October 31, 2018 at approximately 12:11 p.m. EST;
- On November 6, 2018 at approximately 12:39 p.m. EST;
- On November 13, 2018 at approximately 11:54 p.m. EST;
- On December 10, 2018 at approximately 12:52 p.m. EST;

**ANSWER:** **Defendant admits that it called Plaintiff at various times regarding the subject loan. Defendant denies Plaintiff's characterization of these calls as "collection calls" and Defendant denies it made each of the alleged calls in the above paragraph to Plaintiff's cellphone. Defendant also denies that the alleged calls violated any laws and denies all liability for such calls.**

181. Ocwen did not have Todd's consent to use an automatic telephone dialing system and/or artificial or prerecorded voice in making the calls to his cellphone set forth above.

**ANSWER:** **Denied.**

182. Ocwen placed, or cause to be placed, calls to Todd on his cellphone using an artificial and/or pre-recorded voice. When Todd answered the phone, he heard a message stating that the call was intended to reach him about "an important business matter" or some other purposes and inviting him to press one of the enumerated digits before connecting him to an Ocwen representative.

44

**ANSWER:** **Denied as to the first allegation in the above paragraph. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies them on that basis.**

183. On many occasions, Todd notified Ocwen of its error in treating him as if he was in default and requested that Ocwen cease calling his cellphone.

**ANSWER:** **Denied.**

184. Each call set forth above was designed to collect upon amounts Todd did not owe to Ocwen.

**ANSWER:** **Denied.**

185. Each call set forth above exacerbated the emotional distress caused to Todd by Ocwen's servicing errors and failure to correct said errors.

**ANSWER:** **Denied.**

Todd's Efforts to Seek Information from Ocwen and have Errors Corrected

186. In July and August of 2017, Todd communicated many if not all of the errors and described herein to Ocwen.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

187. By letter dated August 24, 2017, Ocwen responded to Todd's Notice of Error by "de-escrowing the loan for insurance" yet continued to earmark $106.93 of his monthly installment payments to escrow despite a surplus of approximately $3,582.00.

**ANSWER:** **Defendant admits it responded to certain concerns Plaintiff expressed regarding the subject loan via the referenced correspondence dated August 24, 2017. Defendant further admits that the referenced correspondence noted that $106.93 of Plaintiff's monthly payment would be escrowed for property taxes.**

304247492v1 1018199

188. A true and accurate copy of Ocwen's response, dated August 24, 2017, bearing Todd's contemporaneous notes and highlighted for ease of reference, is attached hereto as "Exhibit S".

**ANSWER:** **Admitted (less the highlighting and other markings on Exhibit S).**

189. Had Ocwen conducted a reasonable investigation into the errors previously identified by Todd, it would have ceased applying additional funds to escrow and/or relinquished the aforementioned surplus to Todd.

**ANSWER:** **Denied.**

190. Had Ocwen conducted a reasonable investigation into the errors previously identified by Todd, or taken reasonable action in response thereto, it would not have continued to maintain "Lenders Placed Insurance" on the Home let alone attempt to pass the costs of "Lenders Placed Insurance" on to Todd despite the fact he maintained his own policy of insurance on the Home.

**ANSWER:** **Denied.**

191. Ocwen's failure to conduct a reasonable investigation or take action to address the errors identified by Todd, caused him emotional distress, and deprived him of access to, and the time-value of, the surplus escrow funds. It also caused Todd to expend additional time and resources attempting to get the errors corrected.

**ANSWER:** **Denied.**

192. In or around August of 2017, Todd provided Ocwen with information and documents sufficient to form the basis of a Notice of Error.

**ANSWER:** **Denied.**

304247492v1 1018199

193.     Specifically, Todd notified Ocwen of errors with his unpaid principal balance, the property inspection and other fees being charged to the Loan, the amount of funds being earmarked and applied from his monthly installment payments towards taxes and insurance, and with the its placed of the Loan in a delinquency/default status.

**ANSWER:     Defendant admits Plaintiff expressed certain concerns regarding the subject loan which Defendant addressed through correspondence dated August 24, 2017 and September 26, 2017.     Defendant denies any remaining allegations in the above paragraph.**

194.     In addition, Todd asked Ocwen to investigate those errors, correct them, and provide an explanation of its findings and/or changes.

**ANSWER:     Denied.**

195.     Ocwen responded to Todd's Notice of Error by letter dated September 26, 2017.

**ANSWER:     Defendant admits it responded to certain concerns Plaintiff expressed regarding the subject loan via the referenced correspondence dated September 26, 2017.**

196.     A true and accurate copy of Ocwen's correspondence, dated September 26, 2017, is attached hereto as "Exhibit T".

**ANSWER:     Admitted (less the highlighting on Exhibit T).**

197.     Within the response, Ocwen partially addressed the errors related to the Lender Placed Insurance by again claiming the account had been "updated as non-escrow" (the same thing Todd was told a month earlier), but did nothing to address the errors relative to the false default/delinquent status of the Loan, the incorrect unpaid

304247492v1 1018199

principal balance, the ongoing fees being assessed to the Loan, or the amount of funds still be earmarked to taxes and insurance from his monthly payments.

**ANSWER:** **Defendant admits it addressed Plaintiff's concerns regarding "Lender Placed Insurance." Defendant denies the remaining allegations in the above paragraph.**

198. For instance, Ocwen acknowledged an escrow surplus of $3,582.05 yet: i) refused to refund any portion of it to Todd because it alleged he had not made his August 2017 or September 2017 payments; *ie*., that the Loan was delinquent, and ii) continued to earmark $106.93 of each Todd's monthly payments to escrow despite the large surplus and despite acknowledging that Todd's 2016 property tax obligation was only $634.87.

**ANSWER:** **Defendant admits only those allegations in the above paragraph that correctly and accurately describe the content of the referenced correspondence dated September 26, 2017. Defendant denies any allegations that misstate or mischaracterize its contents.**

199. In addition, Ocwen continued to contend the property inspection fees and certified mail cost fees "are valid on the loan."

**ANSWER:** **Defendant admits only those allegations in the above paragraph that correctly and accurately describe the content of the referenced correspondence dated September 26, 2017. Defendant denies any allegations that misstate or mischaracterize its contents.**

200. Other parts of Ocwen's response were contradictory. For example, the response implies Ocwen took action in response to Todd's notice of errors, but very plainly states the necessary corrections it took, following an investigation, occurred "on

304247492v1 1018199

01/04/2017" and, therefore, despite the fact the balance "was" reflecting inaccurately "as of this date the unpaid principal balance on the loan is $46,966.94 which is valid."

**ANSWER:**   **Denied.**

201.    In sum, Ocwen conducted no further investigation into nor took any action to correct Todd's issues with the principal balance of the Loan, instead opting to rely upon actions taken in excess of seven months *before* it received Todd's correspondence in or around August of 2017.

**ANSWER:**   **Denied.**

202.    Had Ocwen conducted a reasonable investigation, or taken reasonable action, it would have corrected the false default/delinquency of the loan, ceased earmarking $106.93 from each of Todd's monthly payments towards escrow, ceased assessing the Loan property inspection fees, and refunded the surplus escrow balance.

**ANSWER:**   **Denied.**

203.    Ocwen's failure to conduct a reasonable investigation or take action to address the errors identified by Todd, caused him: i) emotional distress (particularly the alleged delinquency/default status) in the form of anxiety, frustration, and even anger; ii) deprived him of access and time-value of the surplus escrow funds; and iii) caused him to expend additional time and resources attempting get the aforementioned items corrected.

**ANSWER:**   **Denied.**

204.    Thereafter, Todd attempted on numerous occasions to get Ocwen to correct its errors, stop treating the Loan as if it were in default or delinquency, stop inundating him with collection calls, stop assessing the Loan with property inspection fees, and stop mishandling his escrow account, before finally contacting an attorney.

**ANSWER:    Denied.**

205.    Each attempt was unsuccessful and caused Todd additional emotional distress.

**ANSWER:    Denied.**

206.    By letter dated May 21, 2018, Todd directed correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 1") in hopes of obtaining documents necessary to ascertain the cause of his alleged default.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

207.    A true and accurate copy of RFI No. 1 is attached hereto as "Exhibit U".

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

208.    Ocwen received RFI No. 1 on May 29, 2018, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 9414810699945031711943.

**ANSWER:    Defendant admits it received the correspondence dated May 21, 2018 on or around May 29, 2018.  Defendant denies any remaining allegations in the above paragraph.**

209.    In response to RFI No. 1, Ocwen sent correspondence dated June 7, 2018, acknowledging receipt and including a Payoff Quote.

**ANSWER:    Defendant admits it sent the referenced acknowledgment letter and also sent a payoff quote dated June 7, 2018.**

304247492v1 1018199

210.    In response to RFI No. 1, Ocwen send correspondence dated June 8, 2018, including a copy of the Life of Loan History described above.

**ANSWER:    Defendant admits it forwarded the referenced correspondence dated June 8, 2018 in response to Plaintiff's correspondence.**

211.    Ocwen did not provide Todd with the requested copies of: (i) its servicing notes; (ii) an accurate payoff statement; or (iii) all credit reporting data and e-Oscar AUD's provided to any credit bureau.

**ANSWER:    Plaintiff did not specifically request all of the documents referenced in the above paragraph in his correspondence dated May 21, 2018 and thus Defendant admits it did not provide all of the documents referenced in the above paragraph in its correspondence dated June 8, 2018.  However, as stated in its correspondence dated June 8, 2018, Defendant provided and/or arranged to provide certain documents and information to Plaintiff.  Defendant also states that it timely provided Plaintiff with various documents and information regarding the subject loan at various other times (including on earlier occasions) and denies any allegations that it violated RESPA or any other applicable laws or regulations.**

212.    Ocwen's failure to provide the documents set forth above caused Todd an informational injury and caused him to expend addition time and resources preparing disputes and the correspondence detailed below.

**ANSWER:    Denied.**

213.    Specifically, if Todd had been provided the documents he requested and was legally entitled to receive, he would have been better able to respond to the alleged

304247492v1 1018199

default by highlighting information contained therein and/or provide Ocwen with an even more detailed description of the errors it apparently could not identify itself.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

214.    Following an initial review of the Life of Loan History, and in response to Ocwen's failure to provide documents or reasonably investigate Todd's previous notices of errors, Todd directed correspondence titled "Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 1"), dated July 24, 2018, for: (i) failing to apply payments as contractually obligated, a defined error as set forth in 12 C.F.R. § 1024.35(b)(1); (ii) failing to provide a payoff statement within seven business days as required by 12 C.F.R. 1024.36(d)(2); (iii) failing to provide an accurate payoff statement (the statement's good until date had already expired and included improper and unreasonable fees) as required by 1026.36(c) of Reg. Z and 12 C.F.R. 1024.35(b)(6) ; and (iv) failing to adequately respond to an RFI within thirty business days when it failed to provide all information pertaining to the reporting of Todd's payments to any credit reporting agency.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

215.    In the event it were to determine no error had occurred, NOE No. 1 also requested that Ocwen provide all documents relied upon in reaching that determination as required by Reg. X, 12 C.F.R. §§ 1024.35(e)(1).

**ANSWER:** **Defendant admits only those allegations in the above paragraph that correctly and accurately describe the content of the referenced correspondence dated July 24, 2018. Defendant denies any allegations that misstate or mischaracterize its contents.**

304247492v1 1018199

**Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the above paragraph and denies those allegations on that basis.**

216.    A true and accurate copy of NOE No. 1 is attached hereto as "<u>Exhibit V</u>".

**<u>ANSWER:</u>    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

217.    By and through NOE No. 1, Todd's numerous communications with Ocwen representatives and previous submissions to them, Todd brought errors to Ocwen's attention and requested that the errors be investigated and corrected.

**<u>ANSWER:</u>    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

218.    Ocwen received NOE No. 1, at the address it designated for receipt of such notices, on July 28, 2018, as evidenced by USPS Certified Mail Tracking No. 9414810699945032996943.

**<u>ANSWER:</u>    Defendant admits it received the referenced correspondence dated July 24, 2018 correspondence on or around July 28, 2018.  Defendant denies any remaining allegations in the above paragraph.**

219.    Ocwen did not acknowledge receipt of NOE No. 1 within five business days as required by 12 C.F.R. 1024.36(d)(2).

**<u>ANSWER:</u>    Denied.**

220.    Thereafter, Ocwen took no action to correct any of the distinct errors identified in NOE No. 1. Instead, by letter dated August 13, 2018, Ocwen responded to NOE No. 1 with largely boilerplate language, an incomplete history of its correspondence with Todd, a recitation of actions it claimed to have taken months and years previously

304247492v1 1018199

(but that did not result in any corrective action), contradictory and false statements, and pages of information defining processes and items unrelated to the errors identified.

**ANSWER:** **Defendant denies it took no action. Defendant admits it sent Plaintiff the referenced correspondence dated August 13, 2018. Defendant denies the remaining allegations in the above paragraph.**

221. A true and accurate copy of Ocwen's response to NOE No. 1 is attached hereto as "<u>Exhibit W</u>".

**ANSWER:** **Admitted (less the highlighting on Exhibit W).**

222. For instance, Ocwen's response to NOE No. 1 states, "[o]n 01/24/2017, we received payment of $600.00, which was placed in suspense account, as it was not sufficient to satisfy one contractual payment."

**ANSWER:** **Defendant admits that its referenced correspondence dated August 13, 2018 includes the quoted language in the above paragraph.**

223. Unless Ocwen unilaterally increased Todd's monthly payment obligation without basis or notice, the quotation contained in immediately preceding paragraph is false.

**ANSWER:** **Denied.**

224. A payment of $600.00 *exceeded* Todd's contractual payment for January or February of 2017.

**ANSWER:** **Denied.**

225. Ocwen's response also does not entail any explanation for why a payment dated on December, 31, 2016, and mailed immediately thereafter, was not "received" or applied until January 24, 2017.

304247492v1 1018199

**ANSWER:** Defendant admits only those allegations in the above paragraph that correctly and accurately describe the content of the referenced correspondence dated August 13, 2018. Defendant denies any allegations that misstate or mischaracterize its contents. Answering further, Defendant states that Plaintiff did not explicitly express and/or sufficiently express the above concern in his referenced correspondence dated July 24, 2018.

226. Any reasonable investigation into the errors alleged by and through NOE No. 1 would have uncovered the errors alleged therein and resulted in some action being taken to address them.

**ANSWER:** Denied.

227. Thereafter, Ocwen did not provide the documents or information it relied on in reaching its determination within fifteen business as required by Reg. X, 12 C.F.R. § 1024.36(e)(4).

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.

228. Because of Ocwen's failure to reasonably investigate or correct the errors identified in NOE No. 1 and following a more thorough review of the Life of Loan History, Todd directed correspondence to Ocwen titled "Second Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 2"), dated November 8, 2018, for: (i) failing to apply payments as contractually obligated, a defined error as set forth in 12 C.F.R. § 1024.35(b)(2); (ii) failing to perform an escrow analysis in violation of 12 C.F.R. § 1024.17(c) and 12 U.S.C. § 2609(a); (iii) imposing improper and unreasonable fees, a defined error as set forth in 12 C.F.R. § 1024.35(B)(5); (iv) failing to adequately

304247492v1 1018199

investigate or respond to NOE No. 1, or correct errors in violation of 12 C.F.R. § 1024.35(e); (v) failing to adequately respond to RFI No. 1 when it failed to provide the requested information pertaining to the reporting of Todd's payments to credit reporting agencies; and (vi) failing to acknowledge receipt of NOE No. 1 within five business days as required by 12 C.F.R. § 1024.36(d)(2).

**ANSWER:** **Defendant denies that it failed to reasonably investigate or address the concerns Plaintiff expressed in his correspondence dated July 24, 2018. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.**

229. A true and accurate copy of NOE No. 2 is attached hereto as "Exhibit X".

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

230. In the event it determined no error had occurred, NOE No. 2 also requested Ocwen provide all documents relied upon in reaching that determination pursuant to Reg. X, 12 C.F.R. § 1024.35(e)(1).

**ANSWER:** **Defendant admits only those allegations in the above paragraph that correctly and accurately describe the content of the referenced correspondence dated November 8, 2018. Defendant denies any allegations that misstate or mischaracterize its contents.**

231. In addition, NOE No. 2 requested Ocwen: (i) acknowledge in writing the Loan is current with no outstanding amounts; (ii) refund to Todd any charges and fees not approved in the Bankruptcy Case; (iii) fix the errors with Todd's escrow account and perform a new escrow analysis; (iv) produce copies of all documents or screenshots

56

relative to the alleged property inspections charged to the Loan; and (v) provide a copy all credit reporting data and/or e-Oscar AUD's provided to or received from any credit reporting agency with regard to the loan.

**ANSWER:** **Defendant admits only those allegations in the above paragraph that correctly and accurately describe the content of the referenced correspondence dated November 8, 2018. Defendant denies any allegations that misstate or mischaracterize its contents.**

232. Ocwen received NOE No. 2 on November 12, 2018, at the address it designated for receipt of such notices, as evidenced by USPS Certified Mail Tracking No. 70172620000078866530.

**ANSWER:** **Defendant admits it received the correspondence date November 8, 2018 on or around November 12, 2018. Defendant denies any remaining allegations in the above paragraph.**

233. Ocwen did not acknowledge receipt of NOE No. 2 within five business days as required by 12 C.F.R. 1024.36(d)(2), nor notify Todd that the errors identified therein had been corrected.

**ANSWER:** **Denied.**

234. Ocwen took no action to correct any of the distinct errors identified in NOE No. 2.

**ANSWER:** **Denied.**

235. Instead, by letter dated December 10, 2018, Ocwen responded to NOE No. 2 by stating: (i) "On 11/16/2018, we performed Bankruptcy reconciliation and it was determined that all payments received during active bankruptcy are applied correctly and

304247492v1 1018199

the account was current"; (ii) "Currently, fees and expenses of $581.50 are outstanding on the loan, which are valid"; and (iii) "The surplus funds of $3,552.44 were not refunded as the account was contractually delinquent."

**ANSWER:** **Defendant admits it responded to Plaintiff's correspondence dated November 8, 2018 through correspondence dated December 10, 2018. Defendant admits only those allegations in the above paragraph that correctly and accurately describe the content of its correspondence dated December 10, 2018. Defendant denies any allegations that misstate or mischaracterize its contents.**

236.     If Ocwen had performed a "Bankruptcy reconciliation" it would have determined the account was *and is* current.

**ANSWER:** **Denied.**

237.     Likewise, if Ocwen had determined the account was current it should have refunded the surplus escrow funds and acknowledged error in not doing so.

**ANSWER:** **Denied.**

238.     The rest of Ocwen's' response to NOE No. 2 was largely a template containing boilerplate language not responsive to the specific notices of error. *See Lage v. Ocwen Loan Servicing, LLC.*, 2015 WL 7294854, at *13 (S.D. Fla. Nov. 19, 2015) ("The sending of a template or form letter which fails to substantively address concerns raised by the borrower's inquiry does not satisfy the servicer's obligations under Regulation X's error resolution procedures").

**ANSWER:** **Denied.**

239.     A true and accurate copy of Ocwen's response to NOE No. 2 is attached hereto as "Exhibit Y".

304247492v1 1018199

**ANSWER:** **Admitted (less the highlighting in Exhibit Y).**

240.    Each of the statements quoted in Paragraph 204 are false.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

241.    Ocwen's response to NOE No. 2 is contradicted by its Notices of Default and the Life of Loan History it provided in response to RFI No. 1. *See Guccione v. JPMorgan Chase Bank*, 2015 WL 1968114 (N.D. Cal. May 1, 2015)(servicer's response that there was no error with escrow account contradicted by three documents sent to the borrower each stating that a different escrow amount was owed.); *see, also, Wilson v. Bank of Am.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014)(Plaintiff sufficiently alleged that servicer did not conduct a reasonable investigation of her notices of error where the servicer sent her response with contradictory explanations for why the actions she requested were not taken).

**ANSWER:** **Denied.**

242.    Any reasonable investigation into the errors alleged in NOE No. 2 would have uncovered the alleged errors and resulted in some action being taken to address them.

**ANSWER:** **Denied.**

243.    Thereafter, Ocwen did not provide the requested documents or information it relied upon in reaching its apparent determination that no error occurred within fifteen business as required by Reg. X, 12 C.F.R. § 1024.36(e)(4).

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

244.    By letter dated December 5, 2018, Todd directed correspondence to Ocwen captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 3") seeking: (i) copies of all notices of payment change; (ii) copies of all notes created by Ocwen personnel reflecting communications with the Borrower; and (iii) copies of all information or documents in accordance with a notice of error provided from Borrower to Ocwen.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

245.    A true and accurate copy of RFI No. 3 is attached hereto as "Exhibit Z".

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

246.    Ocwen received RFI No. 3 on December 11, 2018, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078861344.

**ANSWER:    Defendant admits it received correspondence on or around December 12, 2018.  Defendant denies any remaining allegations in the above paragraph.**

247.    On December 10, 2018, Todd directed correspondence to Ocwen titled "Third Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 3"), notifying Ocwen of errors including: (i) failing to promptly credit other payments made by Todd (during and after bankruptcy) not identified previously, instead placing them in suspense for extended periods of time, in violation of Reg. Z, 12 C.F.R. § 1026.36(c)(1) and/or 15 U.S.C. § 1639f; (ii) improperly imposing *additional* fees not previously identified, in violation of 12 C.F.R. § 1024.35(b); (iii) failing to send Interest Rate and/or Payment

304247492v1 1018199

Change Notices in violation of Reg. Z, 12 C.F.R. 1026.20(c) & (d); and (iv) failing to acknowledge receipt of NOE No. 2 within five business days as required by 12 C.F.R. § 1024.36(d)(2).

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

248. A true and accurate copy of NOE No. 3 is attached hereto as "Exhibit AA".

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

249. In the event it determined no error had occurred, NOE No. 3 also requested that Ocwen provide all documents relied upon in reaching that determination pursuant to Reg. X, 12 C.F.R. § 1024.35(e)(1).

**ANSWER:** **Defendant admits only those allegations in the above paragraph that correctly and accurately describe the content of Plaintiff's referenced correspondence dated December 10, 2018. Defendant denies any allegations that misstate or mischaracterize its contents.**

250. In addition, NOE No. 3 specifically disputed that Todd is, or has ever been, delinquent since his discharge from bankruptcy.

**ANSWER:** **Denied.**

251. In addition, NOE No. 3 requested Ocwen: (i) credit Todd's loan account the improper charges identified therein; (ii) properly credit Todd's payments and refund any improper interest incurred/assessed as a result of those errors; and (iii) cause all

304247492v1 1018199

credit reporting agencies to change their reporting of the Loan reflect it as current starting in March of 2015.

**ANSWER:** **Defendant admits only that Plaintiff made such requests in his correspondence dated December 10, 2018. Defendant denies it was obligated to grant Plaintiff his requested relief and expressly denies any allegations of wrongdoing in the above paragraph.**

252. Ocwen received NOE No. 3 on December 13, 2018, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078861368.

**ANSWER:** **Defendant admits it received correspondence on or around December 14, 2018. Defendant denies any remaining allegations in the above paragraph.**

253. Ocwen did not acknowledge receipt of NOE No. 3 within five business days as required by 12 C.F.R. 1024.36(d)(2) nor did it take any action to correct the distinct errors identified therein.

**ANSWER:** **Denied.**

254. Thereafter, Ocwen did not provide any of the documents it relied upon in concluding no error had occurred.

**ANSWER:** **Denied.**

255. Instead, by letter dated December 31, 2018, Ocwen responded to NOE No. 3 (and presumably RFI No. 3) by restating the information it provided in response to NOE No. 2, including additional boilerplate language not responsive to the errors identified in NOE No. 3, and containing contradictory terms.

304247492v1 1018199

**ANSWER:** Defendant admits it responded to Plaintiff's referenced correspondence through its correspondence dated December 31, 2018. Defendant denies the remaining allegations in the above paragraph.

256. Ocwen did not and has not produced copies of all notes created by its personnel reflecting communications with Todd about the Loan.

**ANSWER:** **Admitted.**

257. Any reasonable investigation into the errors alleged by and through NOE No. 3 would have uncovered the errors alleged therein and resulted in some action being taken to address them.

**ANSWER:** **Denied.**

258. A true and accurate copy of Ocwen's response to NOE No. 3 and is attached hereto as "Exhibit BB".

**ANSWER:** **Admitted (less the highlighting on Exhibit BB).**

259. Finally, having tried resolve the issues identified herein for over two years, Todd directed correspondence to Ocwen captioned "Fourth Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 4"), dated January 29, 2019, for: (i) failing to accept a timely and adequate payments as contractually obligated when it rejected Todd's December 2018 payment; (ii) increasing his principal balance; (iii) failing to appropriately investigate the errors identified in NOE No. 1 and NOE No. 2; (iv) assessing impermissible and unreasonable fees; and (v) mismanaging his escrow account.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

304247492v1 1018199

260.     A true and accurate copy of NOE No. 4 is attached hereto as "Exhibit CC".

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

261.     Ocwen received NOE No. 4 on February 4, 2019, at the address it designated for receipt of such notices, as evidenced by USPS Certified Mail Tracking No. 70172620000078861504.

**ANSWER:     Defendant admits it received correspondence on or around February 4, 2019.  Defendant denies any remaining allegations in the above paragraph.**

262.     To date, Ocwen has failed to provide a sufficient response to RFI No. 1 or RFI No. 3, and has failed to reasonably investigate or correct the errors identified in NOE No. 1, NOE No. 2, NOE No. 3, or NOE No. 4.

**ANSWER:     Denied.**

263.     Any reasonable investigation into the errors alleged by and through NOE No. 1, NOE No. 2, NOE No. 3, or NOE No. 4 would have uncovered the errors alleged therein and resulted in some action being taken to address them.

**ANSWER:     Denied.**

264.     Each failure exacerbated the emotional distress caused to Todd by Ocwen.

**ANSWER:     Denied.**

265.     By failing to acknowledge or provide information requested by Todd, failing to adequately investigate his notices of errors or take action to address them, and refusing to stop its collection attempts, Ocwen has and continues to violate 12 C.F.R. § 1024.35(e).

304247492v1 1018199

**ANSWER:**    **Denied.**

### Impact On, And Damage To, Todd

266.    Due to the actions of Ocwen, before and after receipt of actual notice on numerous occasions, Todd remains in a false and worsening "default" status, continues to receive false and harassing communications, and is still suffering from a wrongfully suppressed FICO score. He cannot obtain credit at rates relative to his real credit risk and cannot refinance his home.

**ANSWER:**    **Denied.**

267.    Ocwen's unlawful and wrongful acts and omissions have caused Todd to suffer emotionally, financially, and even physically. He has experienced loss of sleep, anxiety, and frustration over Ocwen's refusal to correct the problems described herein and its continued threat of foreclosure. *See Johnston v. Bank of America, NA.*, 173 F. Supp. 2d 809 (N.D. Ill. 2001) (possibility of wrongful foreclosure sufficient to state emotional distress damages); *see, also, Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 941 (7th Cir. 2005) ("We have no doubt that anyone would suffer emotional harm from losing his or her home, or even from facing such a possibility").

**ANSWER:**    **Denied.**

268.    The aforementioned emotional distress was magnified by the events described herein having occurred over such an extended period of time, and with such repetition, despite Todd's earnest attempts to have the errors and omissions addressed and following what he believed was to be a fresh start following the conclusion of his bankruptcy proceedings.

**ANSWER:**    **Denied.**

304247492v1 1018199

269.    Furthermore, Ocwen's refusal to correct the problems described herein, or cease its collection efforts, after receipt of actual notice of its errant conduct on numerous occasions, caused Todd to incur additional actual damage in the form of time away from work, travel expenses, loss of time while on the phone with Ocwen representatives, and costs associated with the investigation and preparation of Notices of Errors, follow-up Requests for Information, and other dispute letters.

**ANSWER:**    **Denied.**

270.    In addition, because of the false "default" status on the Loan, Ocwen has imposed and continues to impose unwarranted fees.   Eventually, the combination will very likely snowball into a foreclosure proceeding. This further exacerbates the emotional distress Ocwen has forced upon Todd.

**ANSWER:**    **Denied.**

<u>Ocwen's Pattern & Practice of Illegal Conduct</u>

271.    Ocwen has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of RESPA and Regulation X.

**ANSWER:**    **Denied.**

272.    Herein, that pattern and practice entails dozens of servicing errors, abusive and unjustified collection practices, and a continued refusal to correct the servicing errors.

**ANSWER:**    **Denied.**

273.    In addition, at the time of the filing of this Complaint, Ocwen has had at least 11,075 consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products. Each such complaint is filed and

66

cataloged in the CFPB's publicly accessible online database, which can be located at the following hyperlink: http://www.consumerfinance.gov/complaintdatabase/.

**ANSWER:** **Defendant admits the CFPB's online database accessible at the above hyperlink reflects 11,075 consumer complaints regarding Defendant and "loan modification, collection, foreclosure" regarding mortgages. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the accuracy of the CFPB's database and denies any allegations regarding such on that basis. Defendant also lacks knowledge or information sufficient to form a belief as to the truth of the any remaining allegations in the above paragraph and denies those allegations on that basis.**

274. On April 20, 2017, the CFPB filed suit against Ocwen in the Federal District Court for the Southern District of Florida (Case No. 9:17-cv-80495) ("CFPB Lawsuit").

**ANSWER:** **Admitted but denies the CFPB lawsuit has any bearing on this case.**

275. Paragraph 33 of the CFPB contains a possible explanation for Ocwen's pattern and practice of unlawful behavior:

"As set forth in greater detail below, Ocwen has serviced loans and collected upon debts based on inaccurate and incomplete borrower loan information. Ocwen has often input inaccurate and incomplete information, or failed to input accurate or complete information, about borrowers' loans into its REALServicing system of record. Even when the information in REALServicing has been accurate, REALServicing has generated inaccurate information about borrowers' loans due to system deficiencies. Because of these system deficiencies, Ocwen has had to rely upon manual processes and workarounds that have themselves resulted in errors in borrowers' loan information."

**ANSWER:** **Defendant denies it engaged in a pattern and practice of unlawful behavior and thus denies the allegations in the above paragraph.**

67

276.     Paragraph 69 of the CFPB Complaint is further suggestive of a pattern and practice of unlawful behavior:

"Ocwen's use of inaccurate and incomplete information resulting from its boarding of inaccurate and incomplete information into REALServicing, REALServicing's deficiencies, and Ocwen's error-prone manual processes has caused or is likely to have caused borrowers substantial harm, and resulted in Ocwen communicating, orally and in writing, information to borrowers that it knew or had a reason to know was inaccurate."

**ANSWER:     Defendant denies it engaged in a pattern and practice of unlawful behavior and thus denies the allegations in the above paragraph.**

277.     On February 5, 2015, Ocwen was sued by Monette E. Saccameno in the United States District Court for the Northern District of Illinois (Case No. 1:15-cv-01164) under nearly identical facts as set forth herein. That case, concluded on June 21, 2018, resulted in punitive damages being assessed against Ocwen for its abhorrent and continued pattern of conduct.

**ANSWER:     Defendant admits Monette E. Saccameno filed the above referenced lawsuit against it and that the jury awarded punitive damages.   Defendant denies the remaining allegations in the above paragraph and denies the Saccameno lawsuit has any bearing on this case.**

278.     On October 27, 2014, Ocwen was sued by Keith Snyder in the United States District Court for the Northern District of Illinois (Case No. 1:14-cv-08461) for widespread violations of the TCPA, pre-dating the allegations contained herein. Though the terms were recently rejected by the Court, the parties had reached a tentative settlement agreement involving calls made to approximately 1,685,757 different cellphone numbers using auto-dialers and/or pre-recorded messages.

304247492v1 1018199

**ANSWER:** Defendant admits Keith Snyder field the above referenced lawsuit against it. Defendant admits the parties in that reached a class action settlement in that case, which the parties are still in the process of finalizing. Defendant denies any remaining allegations in the above paragraph.

COUNTS I: Breach of Contract (Against Deutsche Bank)

279.     Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER:** Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.

280.     The Loan is an enforceable contract between Todd and Deutsche Bank, and Ocwen as the servicer of the loan acted as the agent of Deutsche Bank.

**ANSWER:** Plaintiff does not direct his breach of contract claims towards Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant admits the subject note and mortgage are valid and enforceable contracts. Defendant admits it serviced the subject loan. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph and denies those allegations on that basis.

281.     A true and accurate copy of the Note and Mortgage are attached hereto as "Exhibit DD".

**ANSWER:** Denied as Exhibit DD does not appear to include a copy of the subject note.

282.     Deutsche Bank, by its own acts and omissions and by the acts and omissions of its agent, Ocwen, is in material breach of the Loan in the following respects: (i) Failure to accept Todd's mortgage payments; (ii) failure to credit and apply Todd's

304247492v1 1018199

payments as contractually obligated; (iii) assessment of unauthorized and unreasonable late fees, legal fees, costs, and property inspection fees; (iv) placing the loan in default and inaccurately reporting the same to credit reporting agencies; and (v) their general failure to conduct their affairs in good faith.

**ANSWER:** **Plaintiff does not direct his breach of contract claims towards Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

283. Todd has fully performed his obligations pursuant to the Loan.

**ANSWER:** **Plaintiff does not direct his breach of contract claims towards Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

284. Todd has not excused or waived Deutsche Bank's obligations to perform pursuant to the Loan.

**ANSWER:** **Plaintiff does not direct his breach of contract claims towards Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

285. Deutsche Bank, by its own acts and omissions and by the acts and omissions of its agent, Ocwen, has failed to exercise due care in the servicing of the Loan and owed Todd a duty to handle escrow properly, to adjust payments to recover escrow shortage and to provide him notice of any such shortage. Deutsche Bank, by its own acts and omissions and by the acts and omissions of its agent, Ocwen, breached that duty to Todd and acted in an oppressive and abusive manner by declining to apply Todd's tender

of payments unfairly, in bad faith and without reason and by otherwise misapplying those payments.

**ANSWER:** **Plaintiff does not direct his breach of contract claims towards Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

286. Deutsche Bank's acts and omissions have caused Todd concrete actual damage and injury as set forth the preceding allegations.

**ANSWER:** **Plaintiff's does not direct his breach of contract claims towards Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

## COUNT II: Violations of the TCPA
## (Against Ocwen)

287. Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER:** **Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

288. Ocwen and/or its affiliates, agents, and/or other persons or entities acting on its behalf, placed non-emergency phone calls to Todd's cellphone using an automatic telephone dialing system, and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

**ANSWER:** **Denied.**

289. These calls occurred on or after October 7, 2017, and continued through December of 2018.

304247492v1 1018199

**ANSWER:** **Defendant admits it called Plaintiff during the time it serviced the subject loan, including during the above referenced time period. Defendant denies such calls violated the TCPA or any other laws. Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the above paragraph and denies those allegations on that basis.**

290. Ocwen and/or its affiliates, agents, and/or other persons or entities acting on its behalf, made these calls despite having knowledge that no consent had been given.

**ANSWER:** **Denied.**

291. In addition, or in the alternative, Ocwen and/or its affiliates, agents, and/or other persons or entities acting on its behalf, continued placing these calls despite Todd's demand they stop and despite his revocation of any alleged consent.

**ANSWER:** **Denied.**

292. As a result of the foregoing acts and violations, Todd is entitled to an award of $500.00 in statutory damages for each and every call placed in violation of 47 U.S.C. § 227 (b)(1)(A)(iii) pursuant to 47 U.S.C. § 227(b)(3)(B).

**ANSWER:** **Denied.**

293. In the alternative, as result of the foregoing willful and knowing violations of the TCPA, Todd is entitled to an award of up to $1,500.00 in statutory damages for each and every call placed in violation of 47 U.S.C. § 227 (b)(1)(A)(iii) pursuant to U.S.C. § 227(b)(3).

**ANSWER:** **Denied.**

304247492v1 1018199

## COUNT III: Violations of the RESPA
## (Against Ocwen)

294.    Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER:**    **Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

295.    By its acts and omissions, Ocwen has numerous times and in numerous different ways violated the RESPA with respect to the Loan, including, but in no way limited to, those of which it was notified, each time it did any of the following: (i) failed to apply payments as contractually obligated as set forth in 12 C.F.R. § 1024.35(b)(1); (ii) failed to provide a payoff statement within seven business days as required by 12 C.F.R. 1024.36(d)(2); (iii) failed to provide an accurate payoff statement as required by 1026.36(c) of Reg. Z and 12 C.F.R. 1024.35(b)(6); (iv) failed to perform an escrow analysis in violation of 12 C.F.R. § 1024.17(c) and 12 U.S.C. § 2609(a); (v) imposed improper and unreasonable fees as set forth in 12 C.F.R. § 1024.35(B)(5); (vi) failed to adequately investigate or respond to NOE No. 1, or correct errors in violation of 12 C.F.R. § 1024.35(e); (vii) failed to adequately respond to RFI No. 1; (viii) failed to acknowledge receipt of NOE No. 1 within five business days as required by 12 C.F.R. § 1024.36(d)(2); (ix) failed to promptly credit payments made by Todd (during and after bankruptcy), instead placing them in suspense for extended periods of time, in violation of Reg. Z, 12 C.F.R. § 1026.36(c)(1) and/or 15 U.S.C. § 1639f; (x) failed to send Interest Rate and/or Payment Change Notices in violation of Reg. Z, 12 C.F.R. 1026.20(c) & (d); (xi) failed to acknowledge receipt of NOE No. 2 within five business days as required by 12 C.F.R. § 1024.36(d)(2); (xii) increased Todd's principal balance;

73

(xiii) failed to appropriately investigate the errors identified in NOE No. 1 and NOE No. 2; and (xiv) mismanaged Todd's escrow account.

**ANSWER:** **Denied.**

296. 12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

**ANSWER:** **Defendant admits that the above paragraph quotes a portion of 12 C.F.R. § 1024.35(a), but denies it violated that regulation.**

297. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

**ANSWER:** **Defendant admits that the above paragraph quotes a portion of Comment 1 regarding 12 C.F.R. § 1024.35, but denies it violated that regulation.**

298. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its

74

determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

**ANSWER:** **Defendant admits that the above paragraph quotes portions of 12 C.F.R. § 1024.35(e)(1), but denies that it violated that regulation.**

299.    Ocwen failed to correct specifically detailed errors or conduct a reasonable investigation.

**ANSWER:** **Denied.**

300.    NOE No. 1, NOE No. 2, NOE No. 3, and NOE No. 4, each meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

301.    Todd has alleged by and through NOE No. 1, NOE No. 2, NOE No. 3, and NOE No. 4, that Ocwen has committed in numerous distinct errors pursuant to 12 C.F.R. §1024.35(b)(2) by failing to provide all of the information and/or documentation requested by and through the Requests for Information submitted and its failure to investigate or correct the multiple servicing errors raised.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

302.    Ocwen's actions are a pattern and practice of behavior in conscious disregard for the rule of law and Todd's rights.

**ANSWER:** **Denied.**

304247492v1 1018199

## COUNT IV: Violation of the FDCPA, 15 U.S.C. §1692k
## (Against Ocwen)

303.     Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER:     Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

304.     Todd is a "consumer" as defined by 15 U.S.C. § 1692a(3).

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

305.     Ocwen took the actions described above in an attempt to collect a debt represented by the Loan.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

306.     Ocwen violated 15 U.S.C. §1692(e)(2) when they repeatedly misrepresented the character, amount, or legal status of the Loan. Ocwen misrepresented to Todd that he was in default on the Loan and that he was obligated to maintain an escrow account for the Loan in an incorrect amount that Ocwen knew or had reason to know was in contravention of the terms of the Loan.

**ANSWER:     Denied.**

307.     Ocwen violated 15 U.S.C. §1692(e)(5) by threatening to take an action – commence foreclosure proceedings against Todd – that cannot legally be taken as Todd has fully satisfied any and all obligations under the terms of the Loan.

**ANSWER:     Denied.**

304247492v1 1018199

308. Ocwen violated 15 U.S.C. §1692(e)(10) when they used false representations, through false Loan statements that the Loan was past-due and in default and deceptive means to attempt to collect the Loan.

**ANSWER:** **Denied.**

309. Ocwen violated 15 U.S.C. §1692f(1) by attempting to collect and collecting amounts (including interest, fees, charges, or expenses incidental to the principal obligation) that were not expressly authorized by the Loan or permitted by law via the Bankruptcy Case or Chapter 13 Discharge by (i) misrepresenting the status of the debt; (ii) attempting to collect fees and costs for which notice was not provided in the Bankruptcy Case; (iii) misrepresenting amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening foreclosure; (vi) assessing improper fees; (vii) assessing escrow overdraft charges and improper corporate advances in restatement letters and payoff letters; and (viii) reporting false information by reporting the loan delinquent to the credit bureaus.

**ANSWER:** **Denied.**

310. Ocwen violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt including but not limited to its harassing calls and letters.

**ANSWER:** **Denied.**

311. Todd has been harmed by, and continues to suffer from harm resulting from, the unfair and deceptive practices of Ocwen in wrongfully breaching the Loan and in making misrepresentations to further effectuate their wrongdoing.

**ANSWER:** **Denied.**

304247492v1 1018199

## COUNT V: Violation of the Fair Credit Report Act, 15 U.S.C.A. § 1681c-1
## (Against Ocwen)

312. Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER: Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

313. Sometime in August of 2018, Todd obtained a copy of his consumer credit report as published by Experian.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

314. The report contained inaccurate information provided by Ocwen. Specifically, the Experian credit report reflected that the Loan was past due in the amount of $993, that the term of the Loan was "31 years" and that its balance as of July 2018 was $46,959.00.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

315. Ocwen's reporting was also inaccurate and misleading because it does not comply with the CDIA's Metro 2 Standards.

**ANSWER: Denied.**

316. Failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). *See Gillespie v. Experian Info. Servs., LLC.*, No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

304247492v1 1018199

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

317.    In a letter dated August 27, 2018, Todd disputed the inaccurate and misleading information to Experian and advised Experian of the specific facts that rendered the reporting inaccurate and misleading. A copy of the dispute letter is attached hereto as "Exhibit EE".

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

318.    Todd also disputed the inaccurate and misleading information in NOE No. 1.

**ANSWER:** **Denied.**

319.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Ocwen of Todd's dispute within five business days of receiving Todd's dispute, to forward all relevant information and any documents included with Todd's dispute for Ocwen to review, to conduct a reasonable reinvestigation of the disputed information, and to thereafter correct the tradeline or delete it from Todd's consumer file.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

320.    Experian timely notified Ocwen of Todd's dispute in accordance with 15 U.S.C.A. § 1681i.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

304247492v1 1018199

321. In response, within a document dated September 6, 2018, Experian advised Todd that it had researched his dispute, obtained additional information from Ocwen, and that per Ocwen the status was being reporting correctly. However, Experian provided a copy of the tradeline as reported that reproduced the errors identified by Todd in his original dispute letter. Specifically, the tradeline still failed to indicate that the Loan was and is current and with no arrears. A copy of the Experian reinvestigation report is attached as "Exhibit FF".

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

322. Ocwen had a duty to investigate the dispute and accurately report their findings to Experian.

**ANSWER:** **Defendant admits under certain circumstances the FCRA imposes certain obligations on it, which may include an obligation to investigate an apparent dispute received from a consumer reporting agency and report back to the consumer reporting agency regarding its investigation into the apparent dispute. Answering further, Defendant denies it violated the FCRA.**

323. In addition, following its receipt of NOE No. 1, Ocwen was not to report adverse payment information to any credit reporting agency pursuant to 12 C.F.R. § 1024.35(i).

**ANSWER:** **Denied.**

324. As a result of the foregoing, Ocwen willfully violated 15 U.S.C.A. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Todd's dispute directly and from Experian, and/or by failing to review all

304247492v1 1018199

relevant information provided by the consumer reporting agencies, and/or by failing to appropriately report the results of its investigations, and/or by failing to appropriately modify, and/or delete the inaccurate information.

**ANSWER:    Denied.**

325.    As a result of Ocwen's violation of 15 U.S.C.A. § 1681s-2(b), Todd has suffered actual damage including but not limited to emotional distress (including aggravation, anxiety, and loss of rest), the continued suppression of his FICO credit score, loss of time, loss of credit opportunity, an informational injury, certain out of pocket expenses incurred while trying to obtain corrections after his initial dispute, and a guarantee of further future financial harm if the information is not corrected. Therefore, Todd is entitled to recover actual damages under 15 U.S.C.A. § 1681n and 1681o.

**ANSWER:    Denied.**

326.    Ocwen's actions and omissions were willful, and caused Todd concrete injury as set forth above, rendering it liable for punitive damages and statutory damages pursuant to 15 U.S.C.A. § 1681n.

**ANSWER:    Denied.**

**COUNTS VI, VII, & VIII: Violation of the Discharge Injunction, 11 U.S.C. § 524(i), Automatic Stay, & Fed. R. Bankr. P. Rule 3002.1(G)**

327.    Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER:    Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

304247492v1 1018199

328.     As evidence by the Life of Loan History, and despite its attestations to the contrary, Ocwen seeks to collect upon alleged escrow deficiencies, charges, or other amounts existing previous to discharge.

**ANSWER:     Denied.**

329.     Where, as here, a debtor performs under a confirmed Chapter 13 Plan and makes all required post-petition payments, said debtor must be current – unless there has been a misapplication of payments or other error committed by the secured creditor.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

330.     Todd fully performed under his confirmed Chapter 13 Plan and made all post-petition payments as required.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

331.     Despite Todd having fulfilled all obligations of the Bankruptcy Case, Ocwen has collected, and continues to seek to collect upon, alleged debt obligations predating and in contravention of the *Order of Discharge*.

**ANSWER:     Denied.**

332.     Any alleged escrow deficiency, fees, or amounts claimed to be due, is the result of Ocwen's own failure to perform an annual escrow analysis, apply payments as contractually and legally obligated, or provide notice to the Trustee during the Bankruptcy Case as required by Fed. R. Bankr. P. Rule 3002.1(g).

**ANSWER:     Denied.**

304247492v1 1018199

333.    Ocwen's actions are a willful and ongoing attempt to collect a discharged debt and otherwise frustrate the purpose of the *Order of Discharge*.

**ANSWER:    Denied.**

334.    Ocwen's conduct constitutes a gross violation of the discharge injunction as it had actual knowledge that Todd was previously involved in bankruptcy, was to be deemed contractually current, that certain fees were disallowed, and thereafter protected from any direct or indirect collection actions for discharged debts. *See Ridley v. M & T Bank (In re Ridley)*, 572 B.R. 352 (Bankr. E.D. Okla. 2017).

**ANSWER:    Denied.**

335.    Ocwen's actions were willfull and caused Todd concrete injury as set forth above, rendering it liable for punitive damages. This Court has authority to enter sanctions for such conduct.  *See, e.g. Romanucci & Blandin, LLC. v. Lempesis*, 2017 WL 4402643, at 6-7 (N.D. Ill. May 4, 2017); *see, also,* 3 William L. Norton Jr. & William L. Norton III, Norton Bankrutpcy [sic] Law and Practice § 58:2 (3d ed. 2017) ("A majority of courts also allow punitive damages in appropriate cases for a violation of the discharge injunction although, unlike the statue governing violations of the automatic stay, punitive damages are not specifically mentioned in Code § 524.6").

**ANSWER:    Denied.**

336.    Todd alleges that in order to carry out this provision of the Bankruptcy Code and maintain its integrity, vital to the protection of Chapter 13 debtors who have paid as required, this Court must permit a punitive damage instruction and impose other sanctions against Ocwen for its willful, blatant, and continued disregard for the rule of law and the authority of the United States Bankruptcy Court.

304247492v1 1018199

**ANSWER:** **Denied.**

**COUNT IX: Violation of the Truth In Lending Act, 15 U.S.C. §1601,** *et seq*
**(Against Deutsche Bank)**

337.    Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER:** **Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

338.    Todd asserts a private right of action under 15 U.S.C. § 1640(a) for: i) Deutsche Bank's breach of its duty to send interest rate and payment change notices pursuant to 15 U.S.C. § 1638a and Reg. Z, 12 C.F.R. § 1026.20(c) and (d); ii) Deutsche Bank's breach of its duty to promptly credit payments pursuant to 15 U.S.C. § 1639f and Reg. Z, 12 C.F.R. § 1026.36(c)(1); and iii) Deutsche Bank's breach of its duty to send periodic mortgage statements pursuant to 15 U.S.C. § 1638(f) and Reg. Z, 12 C.F.R. § 1026.41.

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

<u>Failure to Provide Accurate Periodic Mortgage Statements</u>

339.    12 C.F.R. §1026.41(a) requires that a servicer must provide the consumer a periodic statement meeting the requirements of 12 C.F.R. §1026.41 for each billing cycle of the transaction.

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant**

84

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that bais.

340.    12 C.F.R. §1026.41(d) provides that the required periodic billing statements shall include information including the amount due, an explanation of the amount due, delinquency information, and account information including the current outstanding principal balance and interest rate.

**ANSWER:**    **Plaintiff does not direct his TILA claim against Defendant.  As such, no response by Defendant is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

341.    From approximately November of 2017 through today, Ocwen acting on behalf of Deutsche Bank, failed to provide accurate periodic billing statements to Todd in violation of 15 U.S.C. § 1639f .

**ANSWER:**    **Plaintiff does not direct his TILA claim against Defendant.  As such, no response by Defendant is required.  To the extent a response is required, denied.**

342.    The knowing failure to transmit accurate information through the periodic billing statements wholly defeated the purpose of such statements, that is, to properly provide accurate disclosures to Todd of his obligation on the Loan.

**ANSWER:**    **Plaintiff does not direct his TILA claim against Defendant.  As such, no response by Defendant is required.  To the extent a response is required, denied.**

343.    Deutsche Bank's actions in causing or otherwise facilitating these monthly statements to be sent out with facially inaccurate information are a violation of TILA.

304247492v1 1018199

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

<u>Failure to Promptly Credit Payments</u>

344. 15 U.S.C. § 1639f (a) provides that, "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer."

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant admits the above quotes a portion of 15 U.S.C. § 1639f (a) but denies it violated that section.**

345. Ocwen, acting on behalf of Deutsche Bank, has failed to credit payments (made directly and via disbursements made by the Trustee) to the Loan as of the date of receipt and the its delay in crediting those payments has resulted in charges to Todd.

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

346. 12 C.F.R. §1026.36(c)(1)(ii) provides that if a servicer retains a partial payment in a suspense or unapplied funds account (rather than credits or returns it), then the servicer must (1) disclose on the periodic statement the total amount retained in such suspense or unapplied funds account and (2) when sufficient funds accumulate to cover a full payment, promptly credit the retained funds to the oldest outstanding payment

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant**

304247492v1 1018199

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.

347. Ocwen, acting on behalf of Deutsche Bank, has failed to properly disclose amounts held in suspense or, when sufficient funds accumulated to cover one of his full payments, promptly credit the retained funds to the oldest outstanding payment.

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

348. The Loan was deemed current by an order of the bankruptcy court in his prior bankruptcy case, Todd has made every payment after that, yet Ocwen has refused to acknowledge that his loan is current or appropriately apply his payments. "[Todd has] also alleged that the amounts that [Ocwen] told him would cure his 'defaults' ranged from [$3,345.95] in October of [2017] to [$7,000] as of August of [2018]." *In re Cawood*, 577 B.R. 538 (Bankr. E.D. Tenn., Sept. 29, 2017).

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

Failure to Send Payment Change and Interest Rate Notices

349. 15 U.S.C.A. § 1638b states, "During the 1-month period that ends 6 months before the date on which the interest rate in effect during the introductory period of a hybrid adjustable rate mortgage adjusts or resets to a variable interest rate or, in the case of such an adjustment or resetting that occurs within the first 6 months after consummation of such loan, at consummation, the creditor or servicer of such loan shall provide a written notice, separate and distinct from all other correspondence to the consumer, that includes the following: (1) Any index or formula used in making adjustments to or resetting the interest rate and a source of information about the index or

304247492v1 1018199

formula; (2) an explanation of how the new interest rate and payment would be determined, including an explanation of how the index was adjusted, such as by the addition of a margin; (3) a good faith estimate, based on accepted industry standards, of the creditor or servicer of the amount of the monthly payment that will apply after the date of the adjustment or reset, and the assumptions on which this estimate is based; (4) a list of alternatives consumers may pursue before the date of adjustment or reset, and descriptions of the actions consumers must take to pursue these alternatives, including – (A) refinancing, (B) renegotiation of loan terms, (C) payment forbearances, and (D) pre-foreclosure sales; (5) the names, addresses, telephone numbers, and Internet addresses of counseling agencies or programs reasonably available to the consumer that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a State housing finance authority (as defined in section 1441a-1 of Title 12); and (6) the address, telephone number, and Internet address for the State housing finance authority (as so defined) for the State in which the consumer resides.

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant admits the above paragraph quotes or references portions of 15 U.S.C. § 1638a(b).**

350.    12 C.F.R. § 1026.20(c) requires that a creditor, assignee, or servicer of an adjustable-rate mortgage shall provide consumers with disclosures, as described in this paragraph (c), in connection with the adjustment of interest rates pursuant to the loan contract that results in a corresponding adjustment to the payment.

304247492v1 1018199

**ANSWER:** Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant admits the above paragraph quotes or references portions of 12 C.F.R. § 1026.20(c).

351. Section 1026.20(c)(1)(i) defines an adjustable rate mortgage as, "a closed-end consumer credit transaction secured by the consumer's principal dwelling in which the annual percentage rate may increase after consummation."

**ANSWER:** Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant admits the above paragraph quotes or references portions of Section 1026.20(c)(1)(i).

352. The Home is Todd's principal dwelling.

**ANSWER:** Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.

353. The Loan is an adjustable rate mortgage.

**ANSWER:** Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, admitted.

354. Deutsche Bank, via its agent Ocwen, failed to provide Todd with notice before making changes to the principal and interest portions of his monthly payment obligations as further described herein.

**ANSWER:** Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.

304247492v1 1018199

355. Deutsche Bank's actions are a pattern and practice in conscious disregard of the rule of law and Todd's rights as a borrower.

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, Defendant denies any allegations in the above paragraph directed towards it.**

356. Deutsche Bank's failure to provide notice caused Todd emotional distress, including but not limited to confusion, an informational injury, and deprived him of the benefit of portions of his monthly payments made in excess of what was owed to pay down his principal balance.

**ANSWER:** **Plaintiff does not direct his TILA claim against Defendant. As such, no response by Defendant is required. To the extent a response is required, denied.**

### COUNT X: Violation of Indiana's Crime Victim's Relief Act § 34-24-3-1(Conversion) (Against Ocwen)

357. Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER:** **Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

358. The Indiana Crime Victim's Relief Act ("ICVRA") provides relief to persons who suffer a pecuniary loss based on violation(s) of the provisions of Article 43 of Indiana's Criminal Code. A criminal conviction is not necessary to maintain an action under the ICVRA; rather, the plaintiff need only prove a violation of the relevant criminal prohibition by a preponderance of evidence in order to pursue civil penalties against the defendant under the act. *See Meridian Financial Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1060 (S.D. Ind. 2011).

90

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

359.    "A person who knowingly or intentionally exerts unauthorized control over property of another person" commits Conversion under Indiana Code § 35-43-4-2(b).

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

360.    Ocwen has knowingly or intentionally exerted unauthorized control over funds rightfully belonging to Todd in the amounts of: (i) $1,944.12 (on July 6, 2015); and (ii) $402.90 (on July 22, 2015).

**ANSWER:** **Denied.**

361.    Ocwen had no legal right or claim to the amounts described above nor can it account for them.

**ANSWER:** **Denied.**

362.    Ocwen has failed or refused to return the funds to Todd or apply them to the Loan.

**ANSWER:** **Denied.**

363.    As a result of Ocwen's conversion, Todd was damaged and seeks an award of actual damages, treble damages, costs and attorney's fees as set forth by the Indiana Crime Victim's Act, Indiana Code § 34-24-3-1.

**ANSWER:** **Denied.**

304247492v1 1018199

**COUNT XI: Violation of the Ind. Deceptive Consumer Sales Act, I.C. § 14-5-0.5, *et seq***
**(Against Ocwen)**

364.     Todd incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

**ANSWER:     Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

365.     The Indiana Deceptive Consumer Sales Act ("DCSA") is a consumer protection s statute designed to "protect consumers from suppliers who commit deceptive and unconscionable acts."

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

366.     Todd is a consumer, the Loan and servicing of the Loan is a consumer transaction, and Ocwen is a supplier as defined by I.C. 24-5-0.5-3(A)(3), I.C. 24-5-0.5-2(a)(1), and I.C. 24-5-0.5-2(a)(1)(A)-(C).

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

367.     Ocwen has contractual privity with Todd as a partial assignee of the Loan. It has been assigned and has agreed to undertake obligations for servicing the Loan.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph and denies them on that basis.**

368.     Ocwen has committed willful unfair and deceptive acts, both uncured and incurable, via the conduct alleged herein including but not limited to claiming amounts to be due which were not, by assessing fees and charges improperly, and by declaring a default and initiating the Foreclosure Case when there was not a legitimate basis to do so.

304247492v1 1018199

**ANSWER:** **Denied.**

369.    Ocwen provided notice to Ocwen of its willful unfair and deceptive acts via NOE No. 1, NOE No. 2, NOE No. 3, NOE No. 4, and his various other attempts to have Ocwen correct the issued identified herein.

**ANSWER:** **Denied.**

370.    Ocwen has failed to cure its willful unfair and deceptive acts despite receiving notice, as set forth above.

**ANSWER:** **Denied.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel, and/or unclean hands.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by his failure to mitigate damages.

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Defendant did not cause Plaintiff's alleged harm.  Plaintiff's alleged harm was caused by the acts and/or omissions and/or negligence and/or intentional conduct of other parties.

### Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff's own acts and/or omissions caused the harm he allegedly suffered or contributed to the harm he allegedly suffered.

304247492v1 1018199

## Fifth Affirmative Defense

Any alleged damages sustained by Plaintiff must be reduced, diminished, and/or barred in proportion to the wrongful conduct of persons or entities other than Defendant, including Plaintiff's own conduct and/or other parties, under the principles of equitable allocation, recoupment, setoff, proportionate responsibility, and/or comparative fault.

## Sixth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because he lacks standing.

## Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statute of limitations for such claims.

## Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part because Plaintiff consented to Defendant making the alleged calls.

## Ninth Affirmative Defense

Plaintiff's claims are barred in whole or in part because Defendant had a good-faith basis to believe that Plaintiff consented to Defendant making the alleged calls.

## Tenth Affirmative Defense

Defendant denies it violated the FDCPA. However, to the extent it did, Defendant affirmatively states that any alleged violations of the FDCPA were not intentional and resulted from a *bona fide error* notwithstanding the maintenance of procedures reasonably adapted to avoid such errors. In particular, Defendant maintains procedures regarding the handling of accounts subject to bankruptcy and/or a prior bankruptcy.

304247492v1 1018199

## Reservation of Rights

Defendant reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure and any other defenses at law or in equity that may now or in the future be available based on discovery or other factual investigations concerning this case.

WHEREFORE, Defendant respectfully requests that this Court enter judgment in its favor and award it its attorneys' fees and costs in defending this action along with any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Defendant demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: */s/ Joseph D. Kern*
     David M. Schultz
     Joseph D. Kern
     Hinshaw & Culbertson, LLP
     151 North Franklin Street
     Suite 2500
     Chicago, IL 60606
     T: 312-704-3000
     F: 312-704-3001
     E-mail: dschultz@hinshawlaw.com
     E-mail: jkern@hinshawlaw.com

304247492v1 1018199

## CERTIFICATE OF SERVICE

I, Joseph D. Kern, an attorney, certify that on August 27, 2019, caused to be served a copy of the foregoing **DEFENDANT OCWEN LOAN SERVICING, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF ROGER TODD'S SECOND AMENDED COMPLAINT** by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

☒ ECF
☐ Facsimile
☐ UPS
☐ U.S. Mail
☐ E-Mail
☐ Messenger Delivery


To:   All Parties of Record


*/s/ Joseph D. Kern*
Joseph D. Kern

96