UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROGER TODD,<br><br>    Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, INC., and DEUTSCHE BANK NATIONAL TRUST CO., as Trustee for NovaStar Mortgage Funding Trust, Series 2007-1,<br><br>    Defendant. | Case No. 2:19-cv-00085-JMS-DLP |

**DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO QUASH THE SUBPOENA FOR RONALD M. FARIS' DEPOSITION AND FOR PROTECTIVE ORDER AND INCORPORATED BRIEF IN SUPPORT**

Defendant Ocwen Loan Servicing, LLC ("Defendant"), incorrectly named in the caption as Ocwen Loan Servicing, Inc., through its undersigned counsel, respectfully requests that the Court quash the subpoena that Plaintiff Roger Todd ("Plaintiff") issued for the deposition of Ronald M. Faris ("Mr. Faris"), Ocwen Financial Corporation's former chief executive officer ("CEO"), and enter a protective order to prevent Plaintiff from deposing him. In support, Defendant states as follows:

**INTRODUCTION**

Without providing any notice to or conferring with Defendant, Plaintiff served a subpoena on Mr. Faris attempting to compel him to appear for deposition on November 25, 2019. Mr. Faris is the former CEO of Ocwen Financial Corporation. Ocwen Financial

Corporation was Defendant's parent company until Defendant merged with and into PHH Mortgage Corporation.[1]  Plaintiff claims he is entitled to depose Mr. Faris.  Plaintiff is wrong.

Plaintiff's attempt to depose Mr. Faris amounts to outright harassment of a high-level executive—without any calculated benefit or relevant reason to take his deposition.  It also is an abuse of discovery and an improper attempt to leverage/force a favorable settlement and unnecessarily drive up attorneys' fees and costs.  Courts recognize the harassing and abusive nature of subpoenaing or seeking to depose high-level executives, such as Mr. Faris, and afford such executives a heightened level of protection.  It is thus well-settled that a party cannot depose a high-level executive, such as Mr. Faris, unless that party shows the executive has ***unique, first-hand knowledge*** of the facts at issue, which the party first tried to obtain through less-intrusive means.  Neither is true here.  Mr. Faris, as the CEO of Defendant's former parent company, was not involved in the day-to-day servicing of the Plaintiff's mortgage loan at issue (the "Loan") and thus has no unique, first-hand knowledge of the facts at issue as alleged in Plaintiff's Second Amended Complaint (i.e., the operative complaint and referred to herein as the "Complaint").  Plaintiff's attempt to depose Mr. Faris also fails because Plaintiff has not yet exhausted less-intrusive means to obtain the information he purportedly seeks to obtain from Mr. Faris.  Discovery still is in the preliminary stages.  The parties have not yet completed written discovery, nor has Plaintiff attempted to determine if Mr. Faris has any unique, first-hand knowledge of the facts at issue through written discovery requests.  On top of that, Plaintiff has not yet deposed Defendant's 30(b)(6) or any other lower-level employees (i.e., lower than the level of CEO).  In fact, the parties have not yet conducted any depositions.  Under these

---

[1] PHH Mortgage Corporation became the successor by merger to Ocwen Loan Servicing, LLC earlier this year.

circumstances, Plaintiff's attempt to depose Mr. Faris is improper and the Court should quash the subpoena for his deposition and enter a protective order to protect Mr. Faris—a nonparty—from Plaintiff's harassment.

The parties have "met and conferred" regarding Mr. Faris' deposition on multiple occasions and are at an impasse, which necessitated this motion.

## ARGUMENT

**I.     Plaintiff's Attempt to Depose Mr. Faris Is Improper and the Court Should Quash the Subpoena Plaintiff Issued for His Deposition and Enter a Protective Order to Prevent His Deposition.**

Discovery is not limitless. The Federal Rules of Civil Procedure empower courts to limit discovery if the discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *Murillo v. Kohl's Corp.*, 2016 U.S. Dist. LEXIS 144053, *7 (E.D. Wis. 2016); Fed. R. Civ. P. 26(b)(2)); Fed. R. Civ. P. 26(c) and (d). The Federal Rules of Civil Procedure also empower courts to limit the scope and set the sequence of discovery. Fed. R. Civ. P. 26(c) and (d); *Dune/and Dialysis LLC v. Anthem Ins. Co., Inc.*, 2010 U.S. Dist. LEXIS 33599, *4 (N.D. Ind. Apr. 6, 2010). In particular, and relevant here, Rule 26(c) of the Federal Rules of Civil Procedure empowers courts to "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense[,]" which includes prohibiting a party from taking a deposition. Fed. R. Civ. P. 26(c)(1).

When deciding whether to exercise their discretion to limit discovery, courts should do so with the understanding that the fundamental principle of Rule 26(b)(1) of the Federal Rules of Civil Procedure is "that lawyers must size and shape their discovery requests to the requisites of a case." *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016). This is even

more true following the 2015 amendments to Rule 26(b)(1), which emphasized the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. Discovery is intended to provide the parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id*.

Where a party seeks the deposition of a high-level executive (a so-called "apex" deposition)—as is the case here—courts have "observed that such discovery creates a tremendous potential for abuse or harassment." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 262-263 (N.D. Cal. 2012). In fact, "[v]irtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 U.S. Dist. LEXIS 8295, *8 (N.D. Cal. 2007).

The Seventh Circuit has also weighed in on the issue. In *Patterson v. Avery Dennison Corp.*, the Seventh Circuit noted that deposing "a high-ranking executive in a multinational corporation . . . would have been a quite costly and burdensome means" for determining whether he had information bearing on the claims in the case. 281 F.3d 676, 681 (7th Cir. 2002). The *Patterson* court also observed in that case that the plaintiff seeking to depose the executive failed to first take advantage of other less expensive and less intrusive methods of discovery, which casted "serious doubt" over her claim that the executive had information "that was more than marginally relevant to her civil action." *Id*. at 682. The *Patterson* court then affirmed the district court's decision not to permit the deposition. *Id*.

Courts have developed a framework to determine whether a deposition of a high-level executive is appropriate—recognizing the tremendous potential for abuse or harassment

associated with subpoenaing or noticing a high-level executive's deposition. This framework commonly is referred to as the "apex doctrine." *Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 U.S. Dist. LEXIS 68940, *3-4 (D. Colo. 2011) (the "apex doctrine developed as courts recognized that high ranking and important executives can easily be subjected to unwarranted harassment and abuse and should therefore be protected"). The "apex doctrine" seeks to prevent high-level executives "from being run through the wringer of civil discovery, when they do not have personal knowledge of the relevant facts; in other words, to protect apex employees from annoyance, embarrassment, oppression, or undue burden or expense . . ." *Murillo v. Kohl's Corp.*, 2016 U.S. Dist. LEXIS 144053, *8 (E.D. Wis. 2016).

Under the "apex doctrine," a deposition of a high-level executive is inappropriate where any of the following circumstances exist: (1) the executive has no unique, personal knowledge of the facts at issue; (2) the information sought from the executive can be obtained from other witnesses; (3) the information sought from the executive can be obtained through alternative, less-intrusive discovery methods; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company. *Murillo*, 2016 U.S. Dist. LEXIS 144053 at 8; *Naylor Farms, Inc.*, 2011 U.S. Dist. LEXIS 68940 at 4.

Here, Plaintiff's attempt to depose Mr. Faris is improper because: 1) he has not yet exhausted less-intrusive discovery methods to try to obtain the information he purportedly seeks from Mr. Faris and 2) Mr. Faris played no role in the day-to-day servicing of Plaintiff's Loan and thus has no unique, first-hand knowledge of the facts at issue as alleged in the Complaint—all of which specially relate to the individual servicing of Plaintiff's Loan.

1018199\304614523.v1

### A. Plaintiff Has Not Exhausted Less-Intrusive Means to Try to Obtain the Information He Purportedly Seeks from Mr. Faris.

The "apex doctrine" requires Plaintiff to first exhaust less-intrusive discovery methods before seeking to depose Mr. Faris. *Nucap Indus. v. Robert Bosch LLC*, 2017 U.S. Dist. LEXIS 201458, *8-14 (N.D. Ill. 2017); *K.C.R. v. County of Los Angeles*, 2014 U.S. Dist. LEXIS 98279, *10 (C.D. Cal. July 11, 2014); *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 U.S. Dist. LEXIS 17766, *17-18 (S.D. Cal. 2018). He has not done so—nor has he established that he cannot obtain all information needed to prove his claims through written discovery or the depositions of Defendant's 30(b)(6) corporate representative or other employees. Plaintiff has not issued any written discovery in which he attempted to determine if Mr. Faris has any knowledge regarding the facts at issue as alleged in the Complaint or to determine if he had any direct involvement in the day-to-day servicing of the Loan, had any communications with anyone regarding the Loan, or prepared any documents regarding the Loan. On top of that, Plaintiff has not yet deposed Defendant's 30(b)(6) corporate representative or any of its lower-level employees (i.e., those lower than the CEO level). If and when he does, the testimony and information provided at such depositions may negate the need for Mr. Faris' deposition altogether. This is one reason the "apex doctrine" requires a party to first utilize less-intrusive discovery methods, such as written discovery and/or deposing a 30(b)(6) corporate representative, before seeking to depose a high-level executive.

Put simply, Plaintiff's attempt to depose Mr. Faris before he fully utilizes written discovery and deposes Defendant's 30(b)(6) corporate representative and/or lower-level employees is improper (in fact it is improper altogether). This is well-settled. *Nucap Indus.*, 2017 U.S. Dist. LEXIS 201458 at 8-14 (preventing the deposition of a high-level executive in part because the plaintiff did not first seek written discovery regarding the high-level executive's

alleged involvement in, or knowledge of, the acts giving rise to its claims); *K.C.R.*, 2014 U.S. Dist. LEXIS 98279 at 10 ("courts generally refuse to allow the immediate deposition of a high level executive . . . before the testimony of lower level employees with more intimate knowledge of the case has been secured"); *Rembrandt Diagnostics, LP*, 2018 U.S. Dist. LEXIS 17766 at 17-18 (preventing the deposition of a high-level executive in party because the plaintiff did not satisfy the burden of showing that it first exhausted other, less-intrusive discovery methods before seeking to depose the executive).

It also is well-settled that a party cannot skip the critical step—as Plaintiff attempts to do here—of first exhausting less-intrusive means of discovery, including, but not limited to, deposing a defendant's 30(b)(6), before seeking to depose a high-level executive. *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (the Fifth Circuit upheld the district court's requirement that the plaintiff first depose other witnesses before being able to depose the defendant's company president); *Baine v. General Motors*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (preventing the deposition of a high-level executive where the corporate deposition had not yet been taken).

### B. Mr. Faris Has No Unique, First-Hand Knowledge of the Facts at Issue in the Complaint.

Plaintiff's attempt to depose Mr. Faris also fails because Mr. Faris has no **_unique, first-hand knowledge_** of the facts at issue as alleged in the Complaint. Where a party seeks to depose a high-level executive, that party—including Plaintiff here—must first demonstrate that the proposed deponent has unique, personal knowledge of the facts at issue. *Earthy, LLC v. BB&HC, LLC*, 2017 U.S. Dist. LEXIS 167200, *10-11 (N.D. Ill. 2017) ("a high-ranking executive should only be subpoenaed when the party seeking discovery has shown that the executive has personal knowledge of the facts at issue in the case, and such knowledge is unique

and not available from other sources"). A high-level executive has "unique personal knowledge" only if he or she has information that cannot be had "through interrogatories, deposition of a designated [corporate] spokesperson, or deposition testimony of other persons." *Naylor Farms, Inc.*, 2011 U.S. Dist. LEXIS 68940 at 10-11. In short, "unique personal knowledge must be truly unique" and not available from other sources. *Id*.

Courts routinely enter protective orders to prevent depositions of high-level of executives where the party seeking to depose the executive fails to show that the executive has unique, personal knowledge of the facts at issue. *Murillo*, 2016 U.S. Dist. LEXIS 144053 at 14 (preventing the deposition of a high-level executive because the plaintiff failed to show she had unique, firsthand knowledge of the facts at issue and finding her deposition unduly burdensome, disruptive, and disproportionate to the needs of the litigation); *Nucap Indus.*, 2017 U.S. Dist. LEXIS 201458 at 8-14 (preventing the deposition of a high-level executive because he had no involvement in the actions giving rise to the plaintiff's claims at issue); *Berning v. UAW Local 2209*, 242 F.R.D. 510, 514 (N.D. Ind. 2007) (quashing subpoena for high-level executive's deposition and nothing that high-level executives are "particularly vulnerable to unwarranted harassment and abuse" and that they the "right to be protected from such harassment); *Rembrandt Diagnostics, LP*, 2018 U.S. Dist. LEXIS 17766 at 17-18 (preventing the deposition of high-level executive because the plaintiff did not satisfy the burden of showing that the executive had "unique first-hand, non-repetitive knowledge" of the facts at issue).

Here, Plaintiff does not and cannot demonstrate that Mr. Faris has unique, first-hand knowledge of the facts at issue as alleged in the Complaint. There is a reason for this: he has none. This case involves the alleged wrongful servicing of a single mortgage loan (i.e., Plaintiff's Loan). Plaintiff's claims primarily arise from Defendant's alleged misapplication of

his monthly mortgage payments and/or Defendant's alleged failure to respond to the notices of error ("NOEs") and request for information ("RFI") at issue in the Complaint. Mr. Faris is the former CEO of Ocwen Financial Corporation.[2] As CEO of Ocwen Financial Corporation, Mr. Faris had no day-to-day involvement in the servicing of Plaintiff's Loan. Mr. Faris played no role in allegedly misapplying Plaintiff's monthly payments nor did he play any role in responding to Plaintiff's NOEs or RFI at issue. A plain reading of Defendant's responses to Plaintiff's NOEs and RFI, which Plaintiff attached to the Complaint, confirms Mr. Faris did not prepare such responses. Put another way, Mr. Faris was "removed from the daily subjects of the litigation" (i.e., the individual servicing of Plaintiff's Loan)—making his deposition inappropriate. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 U.S. Dist. LEXIS 8295, *8 (N.D. Cal. 2007) ("When a high-ranking executive 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition of the official is improper.").

The written discovery the parties conducted to date further confirms Mr. Fairs' was "removed from the daily subjects of the litigation," was not involved in the day-to-day servicing of Plaintiff's Loan, and has no unique, first-hand knowledge regarding Plaintiff's Loan or the facts at issue in the Complaint. Defendant produced approximately 700 pages of servicing notes. These notes reflect the day-to-day activity on the Loan and include account notes and/or comments entered by the individuals involved in the day-to-day servicing the Loan. The servicing notes also reference Plaintiff's NOEs and RFI at issue and Defendant's handling of such upon receipt. Importantly, the servicing notes identify, by name or initial, the individuals involved in the day-to-day servicing of the Loan, including those involved in the handling of

---

[2] Ocwen Financial Corporation was Defendant's parent company until Defendant merged with and into PHH Mortgage Corporation. PHH Mortgage Corporation became the successor by merger to Ocwen Loan Servicing, LLC earlier this year.

Plaintiff's NOEs and RFI at issue. Mr. Faris' name ***does not*** appear anywhere in the servicing notes.

Defendant also produced call logs and call recordings. The call logs reflect the calls Defendant made to Plaintiff and those Plaintiff to Defendant. The call recordings are recordings of the calls between Plaintiff and Defendant. Mr. Faris is not on any of the call recordings and the call logs confirm he never attempted to call Plaintiff.

Finally, Plaintiff does not reference Mr. Faris in the Complaint nor allege he had any involvement regarding the day-to-day servicing of his Loan or that he played any role in the specific conduct as alleged in the Complaint that form the basis of Plaintiff's claims. *See generally* Plf.'s Second Amended Complaint.

In sum, Mr. Faris, in his capacity of CEO of Defendant's parent company (or in any capacity), was not involved in the day-to-day servicing the Loan—and Plaintiff cannot point to a single document or communication showing otherwise. He thus lacks any first-hand knowledge of the facts at issue as alleged in the Complaint—much less unique knowledge that Plaintiff cannot otherwise obtain through less intrusive means (i.e., through written discovery and/or deposing Defendant's 30(b)(6) corporate representative and lower-level employees). Plaintiff's attempt to depose him is thus improper and nothing more than an attempt to abuse discovery to harass a high-level executive—with the hope of leveraging/forcing a favorable settlement and/or for the purposes of unnecessarily driving up attorneys' fees and costs. *Nucap Indus.*, 2017 U.S. Dist. LEXIS 201458 at 8-14 (preventing the deposition of a high-level executive because he had no involvement in the actions giving rise to the plaintiff's claims at issue); *Murillo*, 2016 U.S. Dist. LEXIS 144053 at14-15 (preventing the deposition of a high-level executive because the executive had no unique, personal knowledge of the facts at issue); *Rembrandt Diagnostics, LP*,

2018 U.S. Dist. LEXIS 17766 at *17-18 (preventing the deposition of a high-level executive because the plaintiff did not satisfy the burden of showing that the executive had "unique first-hand, non-repetitive knowledge" of the facts at issue).

The protections of the "apex doctrine" continue to apply to Mr. Faris although he no longer is Ocwen Financial Corporation's CEO. This is well-settled. *Conforto v. Mabus*, 2014 U.S. Dist. LEXIS 199192, *23 (S.D. Cal. 2014) ("Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office."); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 365 (D.R.I. 1985) (holding that the magistrate erred in allowing the deposition of Lee Iacocca, the former Chairman of Chrysler Corp.); *Gauthier v. Union Pac. R. Co.*, 2008 U.S. Dist. LEXIS 47199, *14 (E.D. Tex. 2008) (quashing the deposition of a former executive); *Rembrandt Diagnostics, LP* , 2018 U.S. Dist. LEXIS 17766 at 17 (applying the "apex doctrine" and precluding the deposition of a former executive).

In an attempt to get around the fact that Mr. Faris had no day-to-day involvement in the servicing of Plaintiff's Loan and thus no unique, first-hand knowledge of any facts relevant to this case, Plaintiff likely will attempt to try to confuse the Court by generally referring to various "consent decrees and orders" that Defendant entered into with various state and federal regulators. These "consent decrees and orders" are not at issue and not relevant to Plaintiff' claims. In fact, Plaintiff does not reference or mention them in the Complaint. As explained, this case involves the alleged wrongful servicing of a single mortgage loan (i.e., Plaintiff's Loan). Plaintiff asserts a number of claims under various state and federal statutes, but they all primarily arise from Defendant's alleged misapplication of his monthly mortgage payments and/or Defendant's alleged failure to respond to the NOEs and RFI at issue to Plaintiff's liking. The "consent decrees and orders" Plaintiff likely will refer to—in a last ditch effort to try to

convince the Court it should allow Mr. Faris' deposition—are not needed to prove his claims or any element of his claims. Even if they were, Plaintiff's attempt to depose Mr. Faris on this basis still fails because Plaintiff cannot establish that he first attempted to obtain the information he seeks regarding the various "consent decrees and orders" through less-intrusive means or that Mr. Faris has unique, first-hand knowledge of such "consent decrees and orders" that no other lower-level employee can attest to.

Plaintiff's anticipated reference to the "consent decrees and orders" to attempt to convince the Court to allow Mr. Faris' deposition also fails because Plaintiff seeks to use the "consent decrees and orders" against Defendant in violation of Rule 408 of the Federal Rules of Evidence, which prohibits the use of settlements and/or comprises as evidence against a party. Consent orders, decrees, and/or judgments are comprises within the meaning of Rule 408. *Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP*, 2006 U.S. Dist. LEXIS 65840, *17-18 (S.D. Ind. 2006) ("A consent decree, like any settlement, is inadmissible under Federal Rule of Evidence 408."). Accordingly, Plaintiff cannot use any "consent decrees or judgments" as evidence against Defendant—rendering his attempt to depose Mr. Faris about them improper. *Bowers v. NCAA*, 563 F. Supp. 2d 508, 535-36 (D.N.J. 2008) (excluding consent decree entered into with the Department of Justice); *Wilson v. Parisi*, 2009 U.S. Dist. LEXIS 3970, *9 (M.D. Pa. 2009) (excluding consent decrees with various state regulators); *Ely v. Cabot Oil & Gas Corp.*, 2014 U.S. Dist. LEXIS 180162,*46-47 (M.D. Pa. 2014) (excluding consent decrees entered into with a state regulator and noting "it would be error to rely on evidence of the consent orders"). The policy behind Rule 408 (i.e., to promote settlements) supports Defendant's position. Conversely, Plaintiff's attempt use the "consent decrees and orders" against Defendant runs contrary to the policy behind Rule 408 (i.e., it would discourage

settlements for fear that such settlements may later be used against a settling party). *Meyer v. Ward*, 2017 U.S. Dist. LEXIS 70431 (N.D. Ill. 2017) (allowing the use of consent decrees "would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements.")

Plaintiff's anticipated reference to the "consent decrees and orders" to attempt to convince the Court to allow Mr. Faris' deposition next fails because Plaintiff seeks to use the "consent decrees and orders" as propensity evidence to cast Defendant as a bad actor or to prove Plaintiff's claims based on alleged earlier bad acts that have nothing to do with this case or the claims involved. This violates Rule 404 of the Federal Rules of Evidence, which prohibits such evidence. This is especially true considering the "consent decrees and orders" Plaintiff likely will refer to expressly stated Defendant ***made no admissions by agreeing to those decrees***. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893-894 (2d Cir. 1976) ("a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . and not be used as evidence in subsequent litigation between that corporation and another party" and has "no possible bearing" on the action).

Finally, Plaintiff's anticipated reference to the "consent decrees and orders" to attempt to convince the Court to allow Mr. Faris' deposition fails because Plaintiff's attempt to use those "consent decrees and orders" amounts to a back-door attempt to bring a private right of action under such and/or an attempt to enforce such. Neither Plaintiff nor his counsel are state or federal regulators—nor are they charged with enforcing the "consent decrees or orders." In fact, Plaintiff has no authority to enforce the "consent decrees or orders" and any alleged violation of the "consent decrees or orders" cannot form the basis of any claim against Defendant by

Plaintiff. *See Ross*, 2012 U.S. Dist. LEXIS 77475 at 9-11 (explaining that the consent decree at issue did not create a private right of action and excluding such).

## CONCLUSION

For the foregoing reasons, the Court should quash the subpoena for Mr. Faris' deposition and enter a protective order to prevent his deposition.

                Respectfully submitted,

                HINSHAW & CULBERTSON LLP


        By:  */s/ Joseph D. Kern*
                David M. Schultz
                Joseph D. Kern
                Hinshaw & Culbertson, LLP
                151 North Franklin Street
                Suite 2500
                Chicago, IL 60606
                T: 312-704-3000
                F: 312-704-3001
                E-mail: dschultz@hinshawlaw.com
                E-mail: jkern@hinshawlaw.com

## CERTIFICATE OF SERVICE

    I, Joseph D. Kern, an attorney, certify that on November 13, 2019, caused to be served a copy of the foregoing **DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO QUASH THE SUBPOENA FOR RONALD M. FARIS' DEPOSITION AND FOR PROTECTIVE ORDER** by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

- ☒ ECF
- ☐ Facsimile
- ☐ UPS
- ☐ U.S. Mail
- ☐ E-Mail
- ☐ Messenger Delivery

To:   All Parties of Record

*/s/ Joseph D. Kern*
Joseph D. Kern