**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Terre Haute Division**

| | | | |
|---|---|---|---|
| ROGER TODD, | ) | | |
| | ) | | |
| *Plaintiff*, | ) | | |
| | ) | | |
| v. | ) | **Case No.** | 2:19-cv-85-JMS-DLP |
| | ) | | |
| OCWEN LOAN SERVICING, INC., and | ) | | |
| DEUTSCHE BANK NATIONAL TRUST CO., as | ) | | |
| Trustee for NovaStar Mortgage Funding Trust, | ) | | |
| Series 2007-1, | ) | | |
| | ) | | |
| *Defendants*. | ) | | |

## REQUEST FOR PRODUCTION OF DOCUMENTS TO OCWEN

Plaintiff, Roger Todd ("Todd"), by counsel, requests that Defendant, Ocwen Loan

Servicing, LLC ("Ocwen"), produce the following documents and tangible things within its or its

attorney's possession, custody or control, pursuant to Rule 34 of the Federal Rules of Trial

Procedure.  The documents and things are to be produced within thirty days at the offices of

Clark Quinn Moses Scott & Grahn, LLP, 320 N. Meridian St., Suite 1100, Indianapolis, Indiana

46204, while any product or components are to be produced at a mutually convenient time and

place within thirty days.

## DEFINITIONS

1. "Loan" means collectively the note and mortgage alleged in paragraph 3 of *Plaintiff's First

    Amended Complaint and Demand for Jury Trial*.

2. "Bankruptcy Case" means the bankruptcy case filed by Todd pursuant to Chapter 13 of the

    United States Bankruptcy Code on March 4, 2011, in the United States Bankruptcy Court for

    the Southern District of Indiana, Case No. 11-80256-JJG-13.

Exhibit A

3. "Deutsche Bank" means the Defendant, Deutsche Bank National Trust Co., as Trustee for NovaStar Mortgage Funding Trust, series 2007-1.

## **REQUESTS FOR PRODUCTION**

1. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, invoices or other documents referring to, relating to and/or justifying each and every assessed fee, expense and/or charge shown in the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

RESPONSE:


2. Full and complete copies of all invoices, notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying the following fees and expenses assessed during the Bankruptcy Case:  broker price opinion ("BPO") on October 24, 2014 ($121.00), attorney fees for the "Review of Plan/Notice of Appearance on June 6, 2013 ($150.00), and "Prior Servicer Fees" on June 6, 2014 ($1,471.71), July 8, 2014 ($519.82), and September 8, 2014 ($68.75).

RESPONSE:


3. As reflected by the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*, full and complete copies of all invoices, notices, notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying the following fees and expenses assessed after the Bankruptcy Case:

Exhibit A

| Provider | Description | Date of Service | Amount |
|----------|-------------|-----------------|--------|
| Altisource | Ocwen BPO | 06/21/2016 | $110.00 |
| Altisource | No Contact Inspection | 8/3/2016 | $13.25 |
| Altisource | No Contact Inspection | 12/14/2016 | $13.25 |
| Altisource | No Contact Inspection | 12/27/2016 | $13.25 |
| Altisource | No Contact Inspection | 1/16/2016 | $13.25 |
| Altisource | Exterior Property Inspection | 2/14/2016 | $13.25 |
| Altisource | Exterior Property Inspection | 3/16/2016 | $13.25 |
| Altisource | Exterior Property Inspection | 4/18/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 5/19/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 6/19/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 7/24/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 8/3/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 12/14/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 12/27/2016 | $14.50 |
| Altisource | Exterior Property Inspection | 1/16/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 2/14/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 3/16/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 4/18/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 5/19/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 6/19/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 7/24/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 8/25/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 9/26/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 10/28/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 11/28/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 12/28/2017 | $14.50 |
| Altisource | Exterior Property Inspection | 1/29/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 3/2/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 4/2/2018 | $14.50 |
| Altisource | Ocwen BPO | 4/5/2018 | $110.00 |
| Altisource | Exterior Property Inspection | 4/30/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 6/5/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 7/10/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 7/31/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 9/4/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 10/3/2018 | $14.50 |
| Altisource | Exterior Property Inspection | 11/9/2018 | $14.50 |

RESPONSE:

4. Full and complete copies of all notes, reports, memoranda, statements, entries, emails,

   electronic messages, or other documents referring to, relating to and/or justifying each of the

Exhibit A

following balances in Suspense as reflected by the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*:  $2,417.68 on or about November 7, 2012; $5,263.43 on or about May 6, 2013; $2,868.13 on or about February 9, 2015; $874.17 on or about July 5, 2016; $1,941.18 on or about August 29, 2016; and $26,975.16 on or about November 15, 2016.

RESPONSE:

5.  As reflected by the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*, full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying Ocwen's reversal of payments totaling $1,944.12 on or about July 6, 2015, which had previously paid from Suspense.

RESPONSE:

6.  Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying why Ocwen's reversal of payments totaling $1,944.12 on or about July 6, 2015, previously paid from Suspense, were not returned to Suspense or applied elsewhere.

RESPONSE:

Exhibit A

7. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying the current whereabouts of the reversal of payments totaling $1,944.12 on or about July 6, 2015.

RESPONSE:

8. As reflected by the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*, full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying Ocwen's reversal of payments totaling $972.06 on or about July 22, 2015, which had previously been paid from Suspense.

RESPONSE:

9. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying why $402.90 of Ocwen's reversal of payments totaling $972.06 on or about July 22, 2015, funds previously moved from Suspense, were not returned to Suspense or applied elsewhere.

RESPONSE:

10. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying the current whereabouts of the $402.90 of Ocwen's reversal of payments totaling $972.06 on or about July 22, 2015, previously moved from Suspense but not applied elsewhere as set forth above.

Exhibit A

RESPONSE:

11. As reflected by the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*, full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying why Ocwen's "BK Escrow Adjustment" on August 6, 2015, resulted in the transfer of $569.16 from Suspense that was not transferred to Todd's escrow account, used to pay taxes or insurance, or returned to Suspense.

RESPONSE:

12. As reflected by the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*, full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying why on August 2, 2016, Ocwen posted Todd's payment of $600.00 as a Suspense payment but his Suspense balance did not increase.

RESPONSE:

13. As reflected by the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*, full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying why on January 4, 2017, Ocwen increase the principal balance of the Loan by $4,343.35.

Exhibit A

RESPONSE:

14. As reflected by the Life of Loan History attached as "Exhibit C" to the *Plaintiff's First Amended Complaint and Demand for Jury Trial*, full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying why beginning on February 2, 2017, Ocwen increased the principal and interest portion of Todd's monthly payment obligation from $435.51 to $488.15.

RESPONSE:

15. Full and complete copies of each and every notice of payment change or notice of interest rate change sent by Ocwen to Todd in connection with Ocwen's increase of the principal and interest portion of Todd's monthly payment obligation from $435.51 to $488.15 beginning on February 2, 2017.

RESPONSE:

16. An up to date and exact reproduction of the life of loan mortgage transactional history for this loan on the system of record used by the servicer. For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any legal fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, legal fees, escrow fees, processing fees or any other collateral

Exhibit A

charge. Also, to the extent this life of loan transactional history includes numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

RESPONSE:

17. Copies of any and all servicing notes related to Ocwen's servicing of the loan at issue herein.

RESPONSE:

18. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying why during the Bankruptcy Case from April of 2011 to November of 2011 Ocwen applied $163.64 to escrow from each payment it received from Todd via the Trustee as opposed to applying $97.54 to escrow per Ocwen's *Proof of Claim* and the *Chapter 13 Plan* filed in the Bankruptcy Case.

RESPONSE:

19. Full and complete copies of each and every Notice of Payment Change for the escrow increase described in the immediately preceding request.

RESPONSE:

20. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying why during the Bankruptcy Case from December of 2011 to August of 2012, Ocwen applied $163.64 to

Exhibit A

escrow from each payment it received from Todd via the Trustee as opposed to applying

$0.01 per the Notice of Payment Change filed by Ocwen on November 16, 2011.

RESPONSE:


21. A complete statement of the amount of money which the Borrower must pay to cure any

alleged outstanding default(s) on this loan and itemizing the components of that cure

payment figure including principal, accrued interest, late fees, corporate advances, legal fees

and any other fees and charges included in the sum required to cure any outstanding

default(s).

RESPONSE:


22. Full and complete copies of all notes, reports, memoranda, statements, entries, emails,

electronic messages, or other documents referring or relating to each and every telephone call

regarding the Loan made by a representative of Ocwen to Todd, including **without**

**limitation** the following telephone calls to Todd:

    a.  On January 31, 2018 at approximately 6:12 p.m. Eastern Time.

    b.  On February 13, 2018, at approximately 2:24 p.m. Eastern Time.

    c.  On February 16, 2018 at approximately 3:04 p.m. Eastern Time.

    d.  On March 2, 2018 at approximately 5:29 p.m. Eastern Time.

    e.  On March 9, 2018 at approximately 12:52 p.m. Eastern Time.

    f.  On March 15, 2018 at approximately 4:12 p.m. Eastern Time.

    g.  On March 22, 2018 at approximately 9:32 p.m. Eastern Time.

    h.  On March 27, 2018 at approximately 6:56 p.m. Eastern Time.

Exhibit A

i.  On April 3, 2018 at approximately 12:26 p.m. Eastern Time.

j.  On April 6, 2018 at approximately 2:56 p.m. Eastern Time.

k.  On April 11, 2018 at approximately 12:55 p.m. Eastern Time.

l.  On April 19, 2018 at approximately 2:20 p.m. Eastern Time.

m.  On April 23, 2018 at approximately 2:58 p.m. Eastern Time.

n.  On April 24, 2018 at approximately 12:26 p.m. Eastern Time.

o.  On April 25, 2018 at approximately 11:37 a.m. Eastern Time.

p.  On April 26, 2018 at approximately 10:06 a.m. Eastern Time.

q.  On April 27, 2018 at approximately 10:41 a.m. Eastern Time.

r.  On May 2, 2018 at approximately 11:38 a.m. Eastern Time.

s.  On May 3, 2018 at approximately 10:27 a.m. Eastern Time.

t.  On May 4, 2018 at approximately 11:00 p.m. Eastern Time.

u.  On May 5, 2018 at approximately 4:26 p.m. Eastern Time.

v.  On May 10, 2018 at approximately 10:30 a.m. Eastern Time.

w.  On May 11, 2018 at approximately 11:38 a.m. Eastern Time.

x.  On May 15, 2018 at approximately 9:39 a.m. Eastern Time.

y.  On May 19, 2018 at approximately 10:40 a.m. Eastern Time.

z.  On May 26, 2018 at approximately 9:48 a.m. Eastern Time

aa. On June 8, 2018 at approximately 11:43 a.m. Eastern Time.

bb. On June 12, 2018 at approximately 11:44 a.m. Eastern Time.

cc. On June 15, 2018 at approximately 11:45 a.m. Eastern Time.

dd. On June 19, 2018 at approximately 3:28 p.m. Eastern Time.

ee. On June 22, 2018 at approximately 11:34 p.m. Eastern Time.

Exhibit A

ff.  On June 26, 2018 at approximately 5:54 p.m. Eastern Time.

gg. On July 2, 2018 at approximately 5:54 p.m. Eastern Time.

hh. On July 9, 2018 at approximately 11:55 a.m. Eastern Time.

ii.  On July 12, 2018 at approximately 11:12 a.m. Eastern Time.

jj.  On July 16, 2018 at approximately 1:56 p.m. Eastern Time.

kk. On July 19, 2018 at approximately 12:54 p.m. Eastern Time.

ll.  On July 24, 2018 at approximately 11:11 a.m. Eastern Time.

mm.    On July 27, 2018 at approximately 12:24 p.m. Eastern Time.

nn. On August 9, 2018 at approximately 9:26 a.m. Eastern Time.

oo. On August 16, 2018 at approximately 10:06 a.m. Eastern Time.

pp. On August 21, 2018 at approximately 10:19 a.m. Eastern Time.

qq. On August 24, 2018 at approximately 10:04 a.m. Eastern Time.

rr.  On August 28, 2018 at approximately 11:32 a.m. Eastern Time.

ss.  On August 31, 2018 at approximately 5:24 p.m. Eastern Time.

tt.  On September 5, 2018 at approximately 11:42 a.m. Eastern Time.

uu. On September 10, 2018 at approximately 12:30 p.m. Eastern Time.

vv. On September 13, 2018 at approximately 10:46 a.m. Eastern Time.

ww.    On September 19, 2018 at approximately 12:28 p.m. Eastern Time.

xx. On September 24, 2018 at approximately 3:22 p.m. Eastern Time.

yy. On September 27, 2018 at approximately 12:28 p.m. Eastern Time.

zz. On October 2, 2018 at approximately 12:51 p.m. Eastern Time.

aaa.    On October 5, 2018 at approximately 12:47 p.m. Eastern Time.

bbb.    On October 10, 2018 at approximately 4:34 p.m. Eastern Time.

Exhibit A

ccc.    On October 15, 2018 at approximately 12:40 p.m. Eastern Time.

ddd.    On October 18, 2018 at approximately 11:22 p.m. Eastern Time.

eee.    On October 23, 2018 at approximately 1:07 p.m. Eastern Time.

fff.    On October 26, 2018 at approximately 11:50 a.m. Eastern Time.

ggg.    On October 31, 2018 at approximately 12:11 p.m. Eastern Time.

hhh.    On November 6, 2018 at approximately 12:39 p.m. Eastern Time.

iii.  On November 13, 2018 at approximately 11:54 p.m. Eastern Time.

jjj.  On December 10, 2018 at approximately 12:52 p.m. Eastern Time.

RESPONSE:


23. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring or relating to Todd consenting or withdrawing consent to receive calls to his cellular phone regarding the Loan from a representative of Ocwen.

RESPONSE:


24. Full and complete copies of all policies, practices, and procedures regarding Ocwen's use of automatic dialing systems, predictive dialers, and equipment with the capacity to dial telephone numbers without human intervention implemented or followed by Ocwen during the past 5 years.

RESPONSE:

Exhibit A

25. Documents that identify the owner, manufacturer, installer, make and/or model of any and all automatic dialing systems, predictive dialers and equipment with the capacity to dial telephone numbers without human intervention used by representatives of Ocwen to call Todd in connection with the Loan.

RESPONSE:

26. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying the following:

    a. The Mortgage Account Statement forwarded to Todd on or about November 8, 2016, which is attached as "Exhibit E" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*, seeking immediate payment of $14,256.83.

    b. The Delinquency Notice mailed to Todd on November 8, 2016, which is attached as "Exhibit F" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*, seeking immediate payment of $14,449.12.

    c. The correspondence directed to Todd on or about December 14, 2016, entitled "Funds Returned," which is attached as "Exhibit G" to *Plaintiff's First Amended Complaint and Demand for Jury Trial.*

    d. The January 6, 2017, letter mailed to Todd by Ocwen stating he is default and stating that if he remains in default he will lose his home.

    e. The Notice of Default, seeking immediate payment of $1,951.93, mailed by Ocwen to Todd on January 6, 2017.

    f. The Delinquency Notice, seeking immediate payment of $2,624.20, mailed by Ocwen to Todd on January 10, 2017.

Exhibit A

g.   The Delinquency Notice, seeking immediate payment of $1,384.96 to avoid foreclosure, mailed by Ocwen to Todd on January 25, 2017, which is as "Exhibit H" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

h.   The Delinquency Notice, seeking immediate payment of $1,522.97, mailed by Ocwen to Todd, dated February 15, 2017.

i.   The Notice of Default, seeking immediate payment of $870.48, mailed by Ocwen to Todd, dated February 24, 2017.

j.   The correspondence to Todd, dated March 13, 2017, stating: "We have not received your 02/01/2017 through 03/01/2017 mortgage payments."

k.   The Delinquency Notice, seeking immediate payment of $1,608.49, mailed by Ocwen to Todd, dated March 20, 2017.

l.   The Delinquency Notice, seeking immediate payment of $956.00, mailed by Ocwen to Todd, dated March 28, 2017.

m.   The Delinquency Notice, seeking immediate payment of $1,694.01, mailed by Ocwen to Todd, dated April 18, 2017.

n.   The Pre-Foreclosure Notice mailed by Ocwen to Todd, dated April 27, 2017, which is attached as "Exhibit I" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

o.   The Notice of Default, seeking immediate payment of $1,041.52, mailed by Ocwen to Todd, dated April 27, 2017.

p.   The Delinquency Notice, seeking immediate payment of $1,770.01, mailed by Ocwen to Todd, dated May 22, 2017.

Exhibit A

q.  The Notice of Default, seeking immediate payment of $1,113.79, mailed by Ocwen to Todd, dated May 25, 2017.

r.  The Notice of Default, seeking immediate payment of $1,205.54, mailed by Ocwen to Todd, dated June 28, 2017.

s.  The Notice of Default, seeking immediate payment of $1,268.29, mailed by Ocwen to Todd, dated July 25, 2017.

t.  The Notice of Default, seeking immediate payment of $1,402.61, mailed by Ocwen to Todd, dated September 27, 2017.

u.  The Notice of Default, seeking immediate payment of $1,465.72, mailed by Ocwen to Todd, dated October 25, 2017.

v.  The Notice of Default, seeking immediate payment of $1,473.08, mailed by Ocwen to Todd, dated November 29, 2017.

w.  The Notice of Default, seeking immediate payment of $1,439.00, mailed by Ocwen to Todd, dated December 27, 2017.

x.  The correspondence Ocwen mailed to Todd, dated January 2, 2018 and titled "Assistance Options May Be Available," stating the Loan was past due for the November 1, 2017, through January 1, 2018, payments and that the total amount owed was $2,032.18, which is attached as "Exhibit J" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

y.  The correspondence Ocwen mailed to Todd dated January 4, 2018, seeking the 11/1/2017 through 1/1/2018 payments on the Loan.

z.  The Notice of Default, seeking immediate payment of $1,446.68, mailed by Ocwen to Todd, dated January 24, 2018.

Exhibit A

aa.  The Notice of Default, seeking immediate payment of $1,461.40, mailed by Ocwen to Todd, dated March 27, 2018.

bb.  The correspondence Ocwen mailed to Todd, dated April 24, 2018, and titled "Assistance Options May Be Available," stating the Loan was past due for the March and April payments in the amount of $585.56 each.

cc.  The Notice of Default, seeking immediate payment of $1,586.12, mailed by Ocwen to Todd, dated May 30, 2018, which is attached as "Exhibit K" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

dd.  The Notice of Default, seeking immediate payment of $1,593.48, mailed by Ocwen to Todd, dated June 27, 2018, which is attached as "Exhibit L" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

ee.  The Notice of Default, seeking immediate payment of $1,593.54 and stating: "In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 08/31/2018, at the address listed on page four of this notice," mailed by Ocwen to Todd, dated July 25, 2018, which is attached as "Exhibit M" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

ff.  The correspondence Ocwen mailed to Todd, dated July 30, 2018, and titled "Assistance Options May Be Available," stating the account was due for 6/1/2018 through 7/1/2018, in the amount of $585.56 each.

gg.  The Notice of Default, seeking immediate payment of $1,593.31, mailed by Ocwen to Todd, dated August 24, 2018, which is attached as "Exhibit N" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

Exhibit A

hh. The Notice of Default, seeking immediate payment of $1,593.08, mailed by Ocwen to Todd, dated September 25, 2018, which is attached as "Exhibit O" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

ii. The Notice of Default, seeking immediate payment of $1,592.85, mailed by Ocwen to Todd, dated October 26, 2018, which is attached as "Exhibit P" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

jj. The Notice of Default, seeking immediate payment of $2,177.89 and stating, "Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security, foreclosure by judicial proceeding and sale of the Property," mailed by Ocwen to Todd, dated December 12, 2018, which is attached as "Exhibit Q" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

kk. The Notice of Default, seeking immediate payment of $2,206.38 and stating: "Mortgage payments on the above referenced account are past due, which has cause a default under the terms of the Mortgage or Deed of Trust," mailed by Ocwen to Todd, dated January 4, 2019, which is attached as "Exhibit R" to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

RESPONSE:


27. Full and complete copies of all credit reporting data and/or e-Oscar AUD's provided to any credit reporting agency with regard to the loan at issue herein.

RESPONSE:

17

Exhibit A

28. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying Ocwen's response to Todd's "NOE No. 1," which response is identified in paragraphs 220 and 221 of the *Plaintiff's First Amended Complaint and Demand for Jury Trial* and attached thereto as "Exhibit W."

RESPONSE:


29. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying Ocwen's response to Todd's "NOE No. 2," which response is identified in paragraphs 235 and 239 of the *Plaintiff's First Amended Complaint and Demand for Jury Trial* and attached thereto as "Exhibit Y."

RESPONSE:


30. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying Ocwen's response to Todd's "NOE No. 3," which response is identified in paragraphs 255 and 258 of the *Plaintiff's First Amended Complaint and Demand for Jury Trial* and attached thereto as "Exhibit BB."

RESPONSE:


31. Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to Todd's "NOE No. 4," which

Exhibit A

is identified in paragraphs 259 and 260 of the *Plaintiff's First Amended Complaint and Demand for Jury Trial* and attached thereto as "Exhibit CC."

RESPONSE:


32. A full and complete copy of all servicing agreements, servicing contracts, or other memoranda setting forth or describing the terms, limitations, and/or scope of Ocwen's servicing duties as they relate to Deutsche Bank and the Loan.

RESPONSE:


33. A full complete copy of Ocwen's entire servicing file relative to the Loan, including without limitation a full and complete copy of all servicing notes, collection notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents generated in connection with the servicing of this loan as well as all correspondence and documents directed to Todd or received by Ocwen from Todd, including without limitation all recordings of all telephone calls between Todd and any representative of Ocwen.

RESPONSE:

Exhibit A

34. Full and complete records of all payments and all disbursements related to the Loan, including without limitation all transaction histories, account reconciliation histories, bankruptcy reconciliation histories, life of loan histories, and monthly statements.

RESPONSE:


35. Full and complete copies of all servicing manuals, memoranda, notes, polices, and employee training materials related to reviewing, analyzing, and responding to Notices of Errors pursuant to 12 C.F.R. §1024.35 and/or responding to any other correspondence from a borrower regarding concerns or potential errors with their loans.

RESPONSE:


36. Full and complete copies of any and all contracts and vendor policies that Ocwen has with any outside entity or vendor that Ocwen utilizes for the mailing of any notices related to the Loan, including without limitation for mailing acknowledgments of, or responses to, Notices of Error pursuant to 12 C.F.R. § 1024.35.

RESPONSE:

Exhibit A

37. A full and complete copy of the employment file of each Ocwen employee who was personally involved in the investigation or review of Todd's various Notices of Error or other written correspondence provided by Todd or on Todd's behalf, the preparation of any response to Todd's various Notices of Error or written correspondence, was a party to any telephone conversation with Todd, or was otherwise tasked by Ocwen to correct any errors associated with the Loan.

RESPONSE:


38. Full and complete copies of any and all documents relating to policies or directives of Ocwen regarding treatment of loans and mortgage accounts of debtors involved in a Chapter 13 bankruptcy, including without limitation any post-petition payment application policies and directives.

RESPONSE:


39. Full and complete copies of any and all documents relating to policies or directives regarding collection procedures for loans or mortgage accounts that were involved in a Chapter 13 bankruptcy, including without limitation policies or directives directly affecting the Loan.

RESPONSE:

Exhibit A

40. Copies of any and all consumer complaints provided to Ocwen from the Consumer Financial

    Protection Bureau related to the issue characterized by the Consumer Financial Protection

    Bureau's Consumer Complaint Database as "Loan modification, collection, foreclosure"

    during the time period from January of 2018 to the present.

    RESPONSE:


41. Copies of any and all of Ocwen's responses to the consumer complaints produced in

    response to the immediately preceding request.

    RESPONSE:


42. Each and every document identified in any response to any interrogatory served by Todd in

    this lawsuit.

    RESPONSE:


43. A copy of each and every exhibit you intend to use at trial on this matter.

    RESPONSE:

Exhibit A

Respectfully submitted,

*/s/ Mike P. Maxwell, Jr.*
Mike P. Maxwell, Jr. No. 10875-49
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
Fax: (317) 687-2344
mmaxwell@clarkquinnlaw.com
tcohron@clarkquinnlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served by first class United States mail, postage prepaid, this 16th day of May, 2019 to:

David M. Schultz
Joseph D. Kern
Hinshaw & Culbertson
151 North Franklin Street Suite 2500
Chicago, IL 60606
dshultz@hinshawlaw.com
jkern@hinshawlaw.com
Telephone: (312) 704-3000
*Counsel for Defendants*

*/s/ Mike P. Maxwell, Jr.*
Travis W. Cohron, No. 29562-30
Michael P. Maxwell, Jr., No. 10875-49

**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
tcohron@clarkquinnlaw.com
mmaxwell@clarkquinnlaw.com

Exhibit A