# NICK WOOTEN, LLC
## Attorney at Law

Nicholas H. Wooten, JD, LLM, CAM, MFP, CWM, AFA, CPM
nick@nickwooten.com

Telephone:
(833) 937-6389

November 7, 2019

Delivered via email only to the Court and all Counsel

Honorable Doris L. Pryor
mjpryor@insd.uscourts.gov

> RE: Roger Todd v. Ocwen Loan Servicing, et al.
> Case No. 2:19-cv-00085-JMS-DLP (S.D. of Ind.)
> Response to Defendant's Position Statement Regarding Plaintiff's Request for "Risk Convergence Reports"

Your Honor,

Here is how the Risk Convergence Reports were explained by the CFPB in their litigation with Ocwen that began in April 2017:

> "Since 2014, Ocwen has also tracked its regulatory violations, risk areas, and other failures in spreadsheets named "Risk Convergence Reports." Each regulatory violation, risk item, or failure identified in the report includes a description of the issue, the date Ocwen identified the issue, whether the issue is dependent on Altisource [the vendor who licensed RealServicing to Ocwen][1], the status of any technology fix or other operational remediation, and other information.
>
> Each item in the Risk Convergence Reports is assigned a risk rating, ranging from "R1" to "R5." "R1" is the highest risk rating, which Ocwen defines as: "Potential adverse impact of over $5 million"; "Actual or high possibility for fraud, waste or abuse"; "Breach of company policy or procedures (frequent, repeat, or disregarding policy)"; "Noncompliance with

---

[1] Inserted for context and clarity.

Mailing Address: 5125 Burnt Pine Drive, Conway, Arkansas 72034

Exhibit M

> the law or regulation"; or "Material errors or irregularities are a reasonable possibility."
>
> According to Ocwen's list of items in the Risk Convergence Report, the items often resulted from and have continued due to REALServicing failures or system limitations. When, for example, Ocwen conducted its first on-site audit of Altisource and REALServicing in 2014, Ocwen auditors concluded that, although 70 percent of the items contained within the Risk Convergence Report related to "technology projects and enhancements" that Altisource was responsible for, little progress was being made to resolve the items due to Altisource's "lack of priority."
>
> As of August 2015, Ocwen had catalogued 2,803 issues on its Risk Convergence Report. Of those 2,803 issues, Ocwen assigned the highest risk rating, "R1," to more than 550 issues, many of which resulted from REALServicing's deficiencies."

Ocwen has never challenged the CFPB's description of these reports as inaccurate. As this description clearly shows, these reports reveal Ocwen is tracking its own "regulatory violations, risk areas, and other failures" in spreadsheets. These reports were not required by the consent decrees. Ocwen created these reports in an effort to "lasso the storm" of Ocwen's risk management nightmares during this time frame when Ocwen was fighting for its survival.

The risk rating is Ocwen's own internal opinion of the severity of the issue identified. The contents of these reports goes to Ocwen's knowledge of the issues that existed with its mortgage servicing platform and how those issues would impact the consumers whose mortgage loans were serviced by Ocwen.

These reports are highly relevant and probative evidence of Ocwen's knowledge of the scope and severity of the problems with REALServicing and how those problems would harm consumers whose loans Ocwen serviced. These reports are highly relevant to the issue of generalized, widespread consumer harm, lack of mistake, and the requisite knowledge and involvement of Ocwen's executives and Board of Directors for the imposition of punitive damages under Indiana, Seventh Circuit and Supreme Court jurisprudence.

Mailing Address: 5125 Burnt Pine Drive Conway, Arkansas 72034

Exhibit M

As to burden, my understanding is that these reports were generated monthly and circulated among the highest levels of Ocwen's management and executives. Under the scope of Plaintiff's proposed request Ocwen would be required to produce approximately 45 spreadsheets. Given the seriousness of the subject matter of these reports it is obvious that Ocwen has immediate and ready access to these documents. Therefore, Ocwen would not experience any burden or difficulty in producing these Risk Convergence Reports with little to no effort. In fact, it should be clear that Ocwen could have provided these materials in less time than it took Ocwen to frame an objection to their production.

These documents are also protected against dissemination and disclosure by the Court's protective order. Todd's counsel is further willing to agree that these documents be treated as "attorney's eyes only" until they can be reviewed and an agreement reached as to which portions of these reports bear directly on the failings of REALServicing in this case.

Sincerely,

*Nick Wooten*

Mailing Address: 5125 Burnt Pine Drive Conway, Arkansas 72034

Exhibit M