UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROGER TODD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:19-cv-00085-JMS-DLP |
| v. ) | |
| ) | |
| OCWEN LOAN SERVICING, INC., and ) | |
| DEUTSCHE BANK NATIONAL TRUST CO., ) | |
| as Trustee for NovaStar Mortgage Funding ) | |
| Trust, Series 2007-1, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT OCWEN LOAN SERVICING, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Ocwen Loan Servicing, LLC ("Defendant"), incorrectly named in the caption as Ocwen Loan Servicing, Inc., through its undersigned counsel, respectfully submits this response in opposition to Plaintiff Roger Todd's motion compel.

## INTRODUCTION

The bankruptcy court in Plaintiff's most recent bankruptcy proceeding entered a discharge order in that action on July 23, 2016 and terminated that action on September 13, 2016.[1] *See* Sec. Am. Compl., ¶69; Docket Report for Case Number 11-80256-JJG-13 (Bankr. S.D. Ind.) The crux of Plaintiff's claims in this case relate to Defendant's alleged improper attempts to collect amounts discharged in bankruptcy, failure to properly complete a bankruptcy reconciliation following the termination of the bankruptcy action, and failure to adequately respond to Plaintiff's correspondence dated May 21, 2018, July 24, 2018, November 8, 2018, December 10, 2018, and January 29, 2019 (the "Correspondence"). *See generally* Sec. Am. Compl.

---

[1] Plaintiff also filed for bankruptcy in 1999.

Despite the above timeframe and limited issues involved in this case, Plaintiff, through his second set of requests for production, requested that Defendant "produce all Risk Convergence Reports created between January 1, 2014 and August 31, 2016." Plf.'s Sec. Set of Req. for Prod., Doc. 67, Exhibit K. Plaintiff also asks the Court to compel Defendant to conduct a company-wide email search from January 1, 2013 through today for any email containing any of the twelve key words he provided—none of which have any bearing on this case. *See generally* Plf.'s Mot. to Comp., Doc. 67. Defendant objects to both requests on the basis that they are overly broad, unduly burdensome, seek information not relevant to the claims or defenses in this matter, are not proportional to the needs of this case, seek information protected by the self-critical analysis privilege, and seek information protected by Rule 408 of the Federal Rules of Evidence. For the below reasons, these objections are proper and the Court should deny Plaintiff's motion to compel in its entirety. The Court should also deny Plaintiff's request for attorneys' fees.

## ARGUMENT

I. **Plaintiff's Request that Defendant Produce "All Risk Convergence Reports" Is Overly Broad, Not Proportional to the Needs of this Case, and Seeks Information Not Relevant to the Claims or Defenses in this Matter.**

Rule 26 of the Federal Rules of Civil Procedure permits the discovery of nonprivileged matters that are relevant to a party's claim or defense and proportional to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Fed. R. Civ. P. 26; *Trupp v. Roche Diagnostics Corp.*, 2019 U.S. Dist. LEXIS 87764, *3-4 (S.D. Ind. 2019).

The discovery rules are not a ticket to an unlimited, never-ending exploration of every

conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 U.S. Dist. LEXIS 2712, *4-5 (N.D. Ill.1994). "Parties are entitled to a reasonable opportunity to investigate the facts—and no more." *Id*. "Experience has demonstrated that the discovery rules can be and sometimes are abused, and there is presently an ongoing effort to curb such abuses." *Id*. at 3. The U.S. Supreme Court has cautioned that the requirement of Rule 26(b)(1), that the material sought in discovery be "relevant," should be firmly applied and that "judges should not neglect their power to restrict discovery . . ." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Failure to exercise this control results in needless and enormous costs to the litigants. Judicious use of the court's case-management authority during a litigation can help to check over-lawyering and limits on discovery "can effectively channel the efforts of counsel before excessive time and resources are expended." *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014).

In fact, Judge Doris L. Pryor explained in *Trupp* that "[d]iscovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy." 2019 U.S. Dist. LEXIS 87764 at 4 (S.D. Ind. 2019). Judge Pryor also explained that "Federal Rule 26(b), describing the scope and limits of discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process." *Id*. at 5.

    A.    **"All Risk Convergence Reports" Are Not Relevant.**

Consistent with the above principles, courts frequently restrict discovery based on relevancy objections. *See West v. Miller*, 2006 U.S. Dist. LEXIS 56243, *6-8 (N.D. Ill. Aug. 11, 2006) (denying a motion to compel because party that filed the motion failed to meet its burden to establish the information sought was relevant); *see also Balderston v. Fairbanks Morse*

*Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003); *Diak v. Dwyer, Costello, and Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994). And, where a party moves to compel production of documents that party—including Plaintiff here—carries the initial burden of establishing that the requested documents are relevant. *West*, 2006 U.S. Dist. LEXIS 56243 at 6-8.

Here, Plaintiff does not and cannot meet his burden to establish that "all Risk Convergence Reports" from January 2014 through August 31, 2016" are relevant. There is a reason for this: they are not.

This is a simple case. It involves a single mortgage loan (i.e., "Plaintiff's Loan" or the "Loan") and a single plaintiff (i.e., Plaintiff). Defendant's liability entirely hinges on whether Defendant erred in the day-to-day servicing of Plaintiff's Loan—nothing more. More specifically, liability hinges on whether Defendant improperly sought to collect amounts discharged in bankruptcy, failed to properly complete a bankruptcy reconciliation following the termination of the bankruptcy action, and failed to adequately respond to the Correspondence Plaintiff alleges he submitted to Defendant from May 21, 2018 through January 29, 2019. *See generally* Sec. Am. Compl.

Whether or not Defendant, through the "Risk Convergence Reports," tracked potential "regulatory violations" regarding other loans or its compliance with various consent decrees, consent judgments, and/or settlements it entered into with state and federal regulators has no bearing on this case and sheds no light on whether Defendant violated the various state and federal statutes Plaintiff alleges it violated with respect to Plaintiff's Loan. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893-894 (2d. Cir. 1976) ("a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . and not be used as evidence in subsequent litigation between

that corporation and another party" and has "***no possible bearing***" on the action) (emphasis added). This especially is true because Plaintiff seeks "Risk Convergence Reports" as far back as January 2014—more than five years before he filed this action, more than four years before Plaintiff sent the first of his Correspondence on May 21, 2018, and more than two and half years before the bankruptcy court terminated Plaintiff's bankruptcy in September 2016. And, even more true, because Plaintiff seeks "all Risk Convergence Reports," including those that have nothing to do with Plaintiff's Loan or the issues involved in this case (i.e., whether Defendant improperly sought to collect amounts discharged in bankruptcy, failed to properly complete a bankruptcy reconciliation following the termination of the bankruptcy action, and failed to adequately respond to the Correspondence). Finally, the "Risk Convergence Reports" a more global self-analysis of Defendant's operations. They are not loan specific. In fact, Plaintiff does not Plaintiff represent or claim his Loan is the subject of any reports

Neither Plaintiff nor his counsel are state or federal regulators and they cannot use alleged regulatory violations regarding the servicing of other loans to form the basis of Plaintiff's claims against Defendant regarding Plaintiff's Loan. They also cannot use the "Risk Convergence Reports," which Plaintiff represented to the Court track Defendant's compliance with various consent decrees, consent judgments, or settlements it entered into with state or federal regulators, to form the basis of any claim against Defendant regarding Plaintiff and Plaintiff's Loan. *See* Plf.'s October 25, 2019 Outline of Discovery Dispute, attached hereto as Exhibit A. Put simply, liability does not hinge on whether Defendant improperly serviced other loans, violated certain regulations with respect to other loans, or violated various consent decrees, consent judgments, or settlements. In fact, any alleged violation of the various consent decrees, consent judgments, or settlements or any other alleged regulatory violation as to other

loans (i.e., not Plaintiff's Loan) has no bearing on this case. *See Ross v. Am. Red Cross*, 2012 U.S. Dist. LEXIS 77475, *9-11 (S.D. Ohio 2012) (explaining that the consent decree at issue did not create a private right of action and excluding such). The single question at issue is whether Defendant improperly serviced **_Plaintiff's Loan_** in violation of the various state and federal statutes on which Plaintiff bases his claims. Nothing else.

In his motion, Plaintiff references a case entitled S*accameno v. Ocwen Loan Servicing, LLC*, 373 F. Supp. 3d. 609, 647 (N.D. Ill. 2019). In doing so, Plaintiff improperly represents to the Court that the court in *Saccameno* "confronted" the issue of whether the Court should compel Defendant to produce the "Risk Convergence Reports." But, the "Risk Convergence Reports" were not at issue in *Saccameno*, were not requested in discovery in *Saccameno*, and were not produced in *Saccameno*. Plaintiff's reliance on that case thus is misplaced.[2]

### B.   Plaintiff's Request for "[A]ll Risk Convergence Reports" Is Overly Broad.

As explained, Plaintiff requested that Defendant "produce all Risk Convergence Reports created between January 1, 2014 and August 31, 2016." This request amounts to a request that Defendant produce any and all reports regarding any potential regulatory violation—regardless of the issues involved for almost a three-year period. Plaintiff's request seeks reports dating back more than five years before he filed this action in February 2019—and well before his many of his claims could have accrued based on the applicable statutes of limitations. For example, the FDCPA has a one-year statute of limitations. 15 U.S.C. § 1692k(d). Plaintiff's request also seeks reports that pre-date the termination date of his bankruptcy (i.e., September

---

[2] Plaintiff also mentions that *Saccameno* resulted in a $3.5 million jury verdict in favor of the plaintiff in that case. On November 27, 2019, the Seventh Circuit reduced that verdict to approximately $1.1 million. *See Monette E. Saccameno v. Ocwen Loan Servicing, LLC*, case number 19-1569, *25 (7th Cir. 2019).

2016) by more than two and half years and pre-date his May 21, 2018 correspondence (i.e., the first correspondence Plaintiff alleges Defendant inadequately investigated and responded to)—by more than four years. Plaintiff's request thus is overly broad and goes well beyond the scope of permissible discovery under Rule 26 of the Federal Rules of Civil procedure. *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527 (N.D. Ga. 2012) (declining to enforce broad discovery of documents without limitations where requests were "like a bulldozer that levels an entire hill in the hopes of finding some specks of gold").

**II.     Rule 408 of the Federal Rules of Evidence Protects the "Risk Convergence Reports."**

Plaintiff represented to the Court that Defendant prepared the "Risk Convergence Reports" to track "compliance with its legal obligations under various consent decrees [it] entered [into] with numerous State and Federal Regulators." *See* Plf.'s October 25, 2019 Outline of Discovery Dispute, Ex. A. Rule 408 of the Federal Rules of Evidence prohibits the use of settlements and/or comprises as evidence against a party. Consent orders, decrees, and/or judgments are settlements and/or comprises within the meaning of Rule 408. *Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP*, 2006 U.S. Dist. LEXIS 65840, *17-18 (S.D. Ind. 2006) ("A consent decree, like any settlement, is inadmissible under Federal Rule of Evidence 408."). Accordingly, Plaintiff cannot use the "Risk Convergence Reports" as evidence against Defendant as they relate to "various consent decrees"—rendering his request improper. *Bowers v. NCAA*, 563 F. Supp. 2d 508, 535-36 (D.N.J. 2008) (excluding consent decree entered into with the Department of Justice); *Wilson v. Parisi*, 2009 U.S. Dist. LEXIS 3970, *9 (M.D. Pa. 2009) (excluding consent decrees with various state regulators); *Ely v. Cabot Oil & Gas Corp.*, 2014 U.S. Dist. LEXIS 180162,*46-47 (M.D. Pa. 2014) (excluding consent decrees entered into with a state regulator and noting "it would be error to rely on evidence of the consent orders").

7

This is especially true here given some of the consent decrees Plaintiff attempts to put at issue by virtue of the "Risk Convergence Reports" included language that made clear they could not be used as evidence against Defendant for any purpose.  They also included language that made clear Defendant made no admissions by entering into them.  Thus, Plaintiff's attempt to use such "various consent decrees," and in turn the "Risk Convergence Reports" related to same, against Defendant violates the plain terms of the "various consent decrees."  *Ross*, 2012 U.S. Dist. LEXIS 77475 at 9-11 (excluding consent decree entered into with the United States in a prior litigation where no admissions were made by virtue of entering into the consent decree as irrelevant and substantially prejudicial).

The policy behind Rule 408 (i.e., to promote settlements) supports Defendant's objection.  Conversely, Plaintiff's attempt use the "Risk Convergence Reports" against Defendant runs contrary to the policy behind Rule 408 (i.e., it would discourage settlements for fear that such settlements and the tracking of compliance with such may later be used against a settling party).  *See Meyer v. Ward*, 2017 U.S. Dist. LEXIS 70431 (N.D. Ill. 2017) (allowing the use of consent decrees "would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements."); *Washtenaw Cty. Emples. Ret. Sys. v. Walgreen Co.*, 2019 U.S. Dist. LEXIS 198978, *7  (N.D. Ill. 2019) (recognizing that allowing discovery on materials protected by Rule 408 would have "a chilling effect on future settlement discussions" with regulators as parties would have reason to be concerned that their statements or settlements "would be discovere in . . . private litigation.")

Plaintiff suggests that the Court cannot prohibit discovery on the "Risk Convergence Reports" under Rule 408.  *See* Plf.'s Mot. to Comp., Doc. 67, at 16.  Plaintiff is wrong.  *See Washtenaw Cty. Emples. Ret. Sys.*, 2019 U.S. Dist. LEXIS 198978 at 25 (barring discovery of

materials protected under Rule 408 and denying a motion to compel production of such materials); *Rhines v. United States*, 2014 U.S. Dist. LEXIS 106381, *10-11 (M.D.Pa. 2014) (denying discovery as to settlement agreements); *Allison v. Goodyear Tire & Rubber Co.*, 2010 U.S. Dist. LEXIS 85917, *2-6 (E.D. Pa. 2010) (denying production of materials protected by Rule 408); *Dutton v. Todd Shipyards Corp.*, 2009 U.S. Dist. LEXIS 107936, *2 (E.D. Pa. 2009) (same). And, whereas here, Plaintiff cannot establish any compelling reason why he must have the "Risk Convergence Reports" protected by Rule 408, prohibiting discovery of such materials is even more appropriate. *Washtenaw Cty. Emples. Ret. Sys*, 2019 U.S. Dist. LEXIS 198978 at 24-25.

### III. The Self-Critical Analysis Privilege Bars Production of the "Risk Convergence Reports."

The self-critical analysis privilege has been recognized as a qualified privilege which protects from discovery certain critical self-appraisals. *Reichhold Chems. v. Textron*, 157 F.R.D. 522, 524-525 (N.D. Fla. 1994). It allows individuals or businesses to candidly assess their compliance with regulatory and legal requirements without creating evidence that may be used against them by their opponents in future litigation. *Id.*; *see also Tice v. American Airlines, Inc.*, 192 F.R.D. 270, 272 (N.D. Ill. 2000). The rationale for the doctrine is that such critical self-evaluation fosters the compelling public interest in observance of the law. *Id*. "The privilege protects an organization or individual from the Hobson's choice of aggressively investigating accidents or possible regulatory violations, ascertaining the causes and results, and correcting any violations or dangerous conditions, but thereby creating a self-incriminating record that may be evidence of liability, or deliberately avoiding making a record on the subject (and possibly leaving the public exposed to danger) in order to lessen the risk of civil liability." *Reichhold*, 157 F.R.D. at 524-525. The self-critical analysis privilege is analogous to, and based on the

9

same public policy considerations as Rule 407 of Federal Rules of Evidence, which excludes evidence of subsequent remedial measures. *Id*.

The self-critical analysis privilege was developed and intended to encourage companies to voluntarily engage in candid and often times critical internal investigations of their own possible wrongdoings. *Tice*, 192 F.R.D. at 272. This, in-turn, benefits the public at large through safer and/or better products and business practices. The fundamental purpose of the privilege thus is to "protect from disclosure documents containing candid and potentially damaging self-criticism." *Id*. The privilege "is grounded on the premise that disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law." *Id*.

For the privilege to apply in cases like Plaintiff's instant action, courts generally consider whether: (1) the information sought resulted from a critical self-analysis undertaken by the party seeking protection; (2) the public has a strong interest in preserving the free flow of the type of information sought; (3) the information is of the type whose flow would be curtailed if discovery were allowed; and (4) the requested documents were prepared with the expectation that they would be kept confidentiad and have in fact been kept confidential. *Tice*, 192 F.R.D. at 272-273.

In *Tice*, the defendant conducted a "top-to-bottom self-analysis of its operations." *Tice*, 192 F.R.D. at 272-273. The plaintiff in *Tice* requested the reports that resulted from the "self-analysis." *Id*. The *Tice* court found held that the requested reports resulted from a self-critical analysis undertaken by the defendant, that the public had a strong interest in preserving the free flow of such reports, that production of the reports would somewhat curtail such flow, and that the defendant prepared such reports with the expectation that they would be kept confidential.

*Id*. 272-274.  The *Tice* court then barred production of such reports.  *Id*.  The *Tice* court's holding is well-reasoned.

Here, like in *Tice*, all four factors courts consider when determining whether to apply the self-critical analysis privilege are present.  In fact, Plaintiff's own statements provide the Court with all the information needed to establish the first element of the privilege is satisfied.  In particular, Plaintiff states as follows in his motion: 1) that Defendant "tracks its regulatory violations, risk areas, and other failures in spreadsheets called "Risk Convergence Reports"; 2) that "[e]ach regulatory violation, risk item, or failure identified in the report includes a description of the issue, the date [Defendant] identified the issue, the status of any technology fix or other operational remediation, and other information"; and 3) that the "Risk Convergence Reports" were the result of Defendant's "own efforts to evaluate the scope of its risk with respect to its servicing operations" (i.e., voluntary and self-critical).  Plf.'s Mot. to Compel, Doc. 67, at 2, 14.  The public has a strong interest to encourage mortgage loan services like Defendant to engage in such a self-critical analysis because such an analysis results in better servicing practices and business operations.  This, in-turn, benefits the public at large as it helps ensure Defendant (and other mortgage loan servicers) service mortgage loans in accordance with state and federal laws and deliver the highest level of service they can.  If courts order the production of reports and documents resulting from such a self-critical analysis—including the "Risk Convergence Reports" at issue—it would result in companies not conducting such an analysis out of fear that any information from the analysis would be used against them in litigation.  Rather than benefit the public at large, this would have the opposite effect.  Mortgage loan servicing operations, standards, and business practices would stay the same (potentially worsen) rather than improve.  Finally, Defendant prepared the "Risk Convergence Reports" with the

expectation that they would be kept confidential, not made available to the public, and not produced in litigation. And, to Defendant's knowledge, they have never been produced in any civil litigation.

Plaintiff suggests the self-critical privilege is "dead" by referring to *Lund v. City of Rockford*. 2017 U.S. Dist. LEXIS 196202 (N.D. Ill. 2017). The privilege is not dead. And, *Lund*, is not binding on this Court and this Court should not follow *Lund*. Instead, this Court should follow the courts that have recognized the privilege, and then, apply the privilege. *See Tice*, 192 F.R.D. at 272; *Reichhold Chems.*, 157 F.R.D. at 524-525, 527.

Plaintiff next suggests that the Seventh Circuit does not recognize the self-critical analysis privilege. Plf.'s Mot. to Compel, Doc. 67, at 12. This suggestion, without more, is misleading. The Seventh Circuit has not yet squarely addressed the privilege one way or the other. It has not declared the privilege "dead," contrary to Plaintiff's suggestion. In fact, in *Coates v. Johnson & Johnson*, the Seventh Circuit explain that the "prevailing view" is that self-critical portions of affirmative action plans are privileged. 756 F.2d 524, 551 (7th Cir. 1985).

**IV. The Court Should Deny Plaintiff's Motion to Compel as to the Email Correspondence.**

Plaintiff requests that the Court compel Defendant to produce all email correspondence from January 1, 2013 through today containing any of the following twelve terms: (4) Metric Remediation; (5) Metric 1.A; (6) Metric 2.A; (7) Metric 2.B; (8) Metric 2.C; (9) Metric 4.C; (10) Metric 5.E; (11) Metric 5.A; (12) Metric Failure; (13) QWR Responses; (14) IRG Testing Results; and (15) Bankruptcy Compliance. Plf.'s Mot. to Compel, Doc. 67, at 5. Plaintiff offers no context for these search terms other than to state that they may "identify any internal management and executive communications regarding mortgage servicing standards set out in Ocwen identified 'Metrics' that are directly relevant to the facts at issue." *Id*. at 17. Plaintiff's

request fails for the below reasons and the Court should deny his motion to compel as to the email correspondence accordingly.

> **A.   Plaintiff Never Requested the Email Correspondence in any Request for Production He Issued in this Case.**

Plaintiff's request first fails because a plain reading of Plaintiff's first and second sets of requests for production confirms he never requested such emails. *See generally* Plaintiff's First and Second Sets of Requests of Production, Doc. 67, Exhibits B & K. Plaintiff directs the Court to RFPs 22, 28, 29, 30, 31, 38, and 39 in support of his motion. Plf.'s Mot. to Compel, Doc. 67, at 3. Below are those requests:

**RFP 22**
Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring or relating to each and every telephone call regarding the Loan made by a representative of Ocwen to Todd, including without limitation the following telephone calls to Todd . . .

**RFP 28**
Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying Ocwen's response to Todd's "NOE No. 1," which response is identified in paragraphs 220 and 221 of the Plaintiff's First Amended Complaint and Demand for Jury Trial and attached thereto as "Exhibit W."

**RFP 29**
Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying Ocwen's response to Todd's "NOE No. 2," which response is identified in paragraphs 235 and 239 of the Plaintiff's First Amended Complaint and Demand for Jury Trial and attached thereto as "Exhibit Y."

**RFP 30**
Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to and/or justifying Ocwen' s response to Todd's "NOE No. 3," which response is identified in paragraphs 255 and 258 of the Plaintiff's First Amended Complaint and Demand for Jury Trial and attached thereto as "Exhibit BB."

**RFP 31**
Full and complete copies of all notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to Todd's "NOE No. 4," which is identified in paragraphs 259 and 260 of the Plaintiff's First Amended Complaint and Demand for Jury Trial and attached thereto as "Exhibit CC."

**RFP 38**
Full and complete copies of any and all documents relating to policies or directives of Ocwen regarding treatment of loans and mortgage accounts of debtors involved in a Chapter 13 bankruptcy, including without limitation and post-petition payment application policies and directives.

**RFP 39**
Full and complete copies of any and all documents relating to policies or directives regarding collection procedures for loans or mortgage accounts that were involved in a Chapter 13 bankruptcy, including without limitation policies or directives directly affecting the Loan.

*See generally* Plaintiff's First Set of Requests of Production, Doc. 67, Exhibits B.

A plain reading of each of the above requests confirms Plaintiff never requested or mentioned the emails he now asks the Court to compel Defendant to produce. *See generally* Plaintiff's First and Second Sets of Requests of Production, Doc. 67, Exhibits B & K. A plain reading of all of Defendant's other requests confirms the same. *Id*. As such, the Federal Rules of Civil Procedure do not impose any obligation on Defendant to produce the requested email correspondence—nor should the Court compel such production.

This is not the first time Plaintiff asked the Court to order Defendant to produce documents it did not request based on an improper reading of his own requests. Plf.'s Mot. to Compel, Doc. 67, at 5-6. The Court may recall that Plaintiff also incorrectly represented to the Court that he requested the "Risk Convergence Reports" he now seeks in his first set of requests for production. *Id*. After a conference with the Court, the Court determined he did not. *Id*. Plaintiff then issued the second set requests for production in which he requested the "Risk Convergence Reports." *Id*. But, in his second set of requests for production, he still did not request that Defendant produce the email correspondence he now asks the Court to compel. Put simply, there is nothing for the Court to compel because Defendant did not issue a request pursuant to Rule 34 of the Federal Rules of Civil Procedure for the emails he now seeks.

14

      **B.**      **Plaintiff's Request Is Overly Broad, Not Proportional to the Needs of the Case, Unduly Burdensome, and Seeks Information Not Relevant to the Claims or Defenses.**

Even if the Court construes one of the above requests as asking for the email correspondence Plaintiff now seeks, the Court should still deny his motion because the request is overly broad, not proportional to the needs of the case, unduly burdensome, and seeks information not relevant to the claims or defenses in this matter. The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia*, 1994 U.S. Dist. LEXIS 2712 at 4-5. The fundamental principle of Rule 26(b)(1) of the Federal Rules of Civil Procedure is "that lawyers must size and shape their discovery requests to the requisites of a case." *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016). This is even more true following the 2015 amendments to Rule 26(b)(1), which emphasized the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. Discovery is intended to provide the parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id*.

Here, Plaintiff asks the Court to compel production of "all" emails over an almost seven-year time period that include any of the following terms: (4) Metric Remediation; (5) Metric 1.A; (6) Metric 2.A; (7) Metric 2.B; (8) Metric 2.C; (9) Metric 4.C; (10) Metric 5.E; (11) Metric 5.A; (12) Metric Failure; (13) QWR Responses; (14) IRG Testing Results; and (15) Bankruptcy Compliance. Plaintiff made no effort to limit his request in scope or time to comply with Rule 26 of the Federal Rules of Civil Procedure. Plaintiff also made no attempt to limit the search to Defendant's employees who appear in the servicing notes regarding Plaintiff's Loan and/or those involved in the day-to-day servicing of Plaintiff's Loan. Plaintiff's requests amounts to a

company-wide search of every email box for every employee that worked for Defendant for an almost seven-year period and to produce every single email that includes any one of the twelve keywords Plaintiff offered. This includes searching the email boxes of current and former employees that had no involvement in the servicing of Plaintiff's Loan or the facts at issue. This search also request the production of emails as far back as seven-years, including those that do not relate to Plaintiff's Loan or the facts at issue. It is left to one's imagination how Plaintiff's instant request could be more broad: it is the exact type of request the Federal Rules of Civil Procedure prohibit. *Alig-Mielcarek*, 286 F.R.D. at 527 (declining to enforce broad discovery of documents without limitations where requests were "like a bulldozer that levels an entire hill in the hopes of finding some specks of gold").

The overly broad nature of Plaintiff's request, partially touched upon above, also seeks information not relevant to the claims or defenses involved or proportional to the needs of this case. Plaintiff does not and cannot establish how every single email from January 1, 2013 through today that contains one of the following twelve terms: (4) Metric Remediation; (5) Metric 1.A; (6) Metric 2.A; (7) Metric 2.B; (8) Metric 2.C; (9) Metric 4.C; (10) Metric 5.E; (11) Metric 5.A; (12) Metric Failure; (13) QWR Responses; (14) IRG Testing Results; and (15) Bankruptcy Compliance is relevant to the claims or defenses or proportional to the needs of the case. Plf.'s Mot. to Compel, Doc. 67, at 5. In fact, Plaintiff makes no attempt to even explain how such emails are relevant and proportional other than to conclusorily state that they may "identify any internal management and executive communications regarding mortgage servicing standards set out in Ocwen identified 'Metrics' that are directly relevant to the facts at issue." *Id*. at 17. Even if true, Plaintiff still fails to offer the who, what, when, where, how, and why as to the relevancy to this case. For example, one can only guess how an email from January 2013

containing the single term Metric 5.A is relevant to this case—when such email does not mention or reference Plaintiff, his Loan, or the subject property and was not sent or received by an employee involved in the day-to-day servicing of the Loan. Plaintiff bears the initial burden to establish that the information he seeks to compel is relevant to the claims or defenses in this case. *West*, 2006 U.S. Dist. LEXIS 56243 at 6-8 (denying a motion to compel because the party that filed the motion failed to meet its burden to establish the information sought was relevant). Plaintiff comes nowhere close to meeting this burden as to his request for the purported email correspondence.

Finally, contrary to Plaintiff's conclusory assertion, retrieving all emails on a company-wide basis over an almost seven-year time period that contain any of the twelve keywords Plaintiff offered, is difficult and expensive. Defendant has already represented to Plaintiff that Defendant does not have the capability to conduct a keyword search using such terms similar to how you would conduct a Google search. Defendant's capabilities are limited to conducting searches of email boxes of specific current or former employees (i.e., custodians). Plaintiff has not offered to identify any current or former employees email boxes he requests Defendant to search regarding the email correspondence that is the subject of the instant motion.

Aside from the time and expense of trying to retrieve emails on a company-wide basis over an almost seven-year time period, the burden does not stop there. Upon retrieval of such emails (assuming they can all even be retrieved), Defendant would then have to devote significant employee time and effort, as well as substantial attorney time and effort, reviewing those emails to determine if they include privileged communications, confidential information, propriety information, or information protected by the work-product doctrine.

  **C.**  **Plaintiff's Request for the Purported Emails Also Fails for the Same or Similar Reasons that His Request for the "Risk Convergence Reports" Fails.**

As explained above, Plaintiff offers no context or justification for choosing the keywords he chose. Defendant thus is left to guess as to how they are relevant to this action or the nature of such emails. But, based on Plaintiff's casual reference to the information he purports the emails contain, it appears the information relates to a self-critical analysis conducted by Defendant or Defendant's compliance with various consent decrees, consent judgments, or settlements Defendant reached with state or federal regulators. As such, the Court should deny Plaintiff's motion pursuant to Rule 408 of the Federal Rules of Evidence and the self-critical analysis privilege for the same or similar reasons it should deny Plaintiff's motion as to the "Risk Convergence Reports."

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to compel and request for attorneys' fees.

              Respectfully submitted,

              HINSHAW & CULBERTSON LLP

          By: */s/ Joseph D. Kern*
              David M. Schultz
              Joseph D. Kern
              Hinshaw & Culbertson, LLP
              151 North Franklin Street
              Suite 2500
              Chicago, IL 60606
              T: 312-704-3000
              F: 312-704-3001
              E-mail: dschultz@hinshawlaw.com
              E-mail: jkern@hinshawlaw.com

## CERTIFICATE OF SERVICE

    I, Joseph D. Kern, an attorney, certify that on December 11, 2019, caused to be served a copy of the foregoing **DEFENDANT OCWEN LOAN SERVICING, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

☒ ECF
☐ Facsimile
☐ UPS
☐ U.S. Mail
☐ E-Mail
☐ Messenger Delivery

To:    All Parties of Record

    */s/ Joseph D. Kern*
    Joseph D. Kern