UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Terre Haute Division

| | |
|---|---|
| ROGER TODD, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   Case No.   2:19-cv-85-JMS-DLP |
| | ) |
| OCWEN LOAN SERVICING, LLC., and | ) |
| DEUTSCHE BANK NATIONAL TRUST CO., as | ) |
| Trustee for NovaStar Mortgage Funding Trust, | ) |
| Series 2007-1, | ) |
| | ) |
| *Defendants*. | ) |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL**

Plaintiff Roger Todd ("Todd"), by and through undersigned counsel, respectfully submits this reply in further support of his Motion to Compel:

## Introduction

Todd asks the Court to compel Ocwen to produce its Risk Convergence Reports and email correspondence responsive to a search for the following [non-exact] search terms ("Email Correspondence"): (4) Metric Remediation; (5) Metric 1.A; (6) Metric 2.A; (7) Metric 2.B; (8) Metric 2.C; (9) Metric 4.C; (10) Metric 5.A; (11) Metric 5.E; (12) Metric Failure; (13) QWR Responses; (14) IRG Testing Results; and (15) Bankruptcy Compliance. Todd seeks these documents and the information contained therein in an effort to establish Ocwen's knowledge of the systemic servicing deficiencies alleged to be the cause of the allegations complained of, and its deliberate refusal to take necessary action to correct them. Ocwen does not dispute the search terms are representative of general or specific categories of loan servicing deficiencies it

1

previously identified or that were monitored for compliance purposes. These servicing deficiencies, broken down by representative metric/search term, include:

>Metric 1.A = Foreclosure sale in error;
>Metric 2.A = Affidavit of Indebtedness (AOI) preparation errors;
>Metric 2.B = Proof of Claim (POC) errors;
>Metric 2.C = Motion for Relief from Stay (MRS) affidavit errors;
>Metric 4.C = Reconciliation of certain waived fees;
>Metric 5.E = Affidavit of Indebtedness Integrity;

Ocwen objects to each of these requests, contending they are overly broad, unduly burdensome, are not proportional to the needs of this case, seek information protected by the self-critical analysis privilege, and seek information protected by Rule 408 of the Federal Rules of Evidence. Ocwen also contends, despite failing to do so previously during any of the various Discovery Conferences conducted by the Court, the email correspondence was never formally requested.

## **Argument**

**I. Todd's Requests For the Risk Convergence Reports and Email Correspondence Are Sufficiently Narrow, Proportional to the Needs of this Case, and Relevant to the Claims at Issue.**

As detailed previously, the sought after Risk Convergence Reports and Email Correspondence are probative of Ocwen's prior knowledge of systemic deficiencies with REALServicing akin to those complained of by Todd. In turn, the "reasonableness" or nature of Ocwen's statutorily mandated investigations and conduct can only be adequately assessed by taking into account this knowledge. While the focus of these proceedings may be a single loan, Ocwen should not be permitted to defend its conduct as an isolated incident or as if it occurred in a vacuum.

With regard to Ocwen's contention production of the requested documents would be unduly burdensome, it continues to rely entirely upon bare conclusory assertions - it provides no substance, no affidavit, nor any other demonstrative evidence in support. *See, e.g. Bitler Inv. Venture II, LLC. v. Marathon Ashland Petroleum LLC,* 2007 U.S. Dist. LEXIS 29159 (N.D. Ind. 2007) (stating that a party resisting discovery must "adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome.").

Nonetheless, in light of Ocwen's recent representation it cannot conduct a broad Google type search using the terms above, Todd would offer to further reduce the scope and burden of his request by limiting the search to the same "custodians" whose email accounts were searched previously for Search Terms Nos. 1-3 and by eliminating the following terms: (4) Metric Remediation; (12) Metric Failure; (13) QWR Responses; and (14) IRG Testing Results.

## II. Rule 408 of the Federal Rules of Evidence Is Wholly Inapplicable To The Risk Convergence Reports.

Ocwen also argues that Todd's requests for the Risk Convergence Reports Correspondence are improper as production would run afoul of F.R.E. 408. However, it is important to again note the Risk Convergence Reports were prepared and kept in the ordinary course of business, not in anticipation of litigation. Ocwen does not deny the documents were generated before, during, and after any particular proceeding. *See, e.g.*, *United States v. Adlam*, 134 F.3d 1194 (2d Cir. 1998) (Documents created as a result of the discovery opponent's ordinary course of business, as a result of a prior dispute, or that should have been created irrespective of litigation are not under the protection of the work product doctrine.);

Ocwen suggests that Federal Rule of Evidence 408 protects the Risk Convergence Reports, as they relate to "various consent decrees," which are allegedly protected by Rule 408.

3

*See* Def. Ocwen Loan Servicing, LLC's Resp. in Opp'n to Plf.'s Mot. To Comp., Doc 78, at 7. However, Ocwen is wrong, as the Risk Convergence Reports are documents evidencing Ocwen's internal monitoring; they are not settlement discussions protected by Rule 408 and exist independently of any regulatory action or requirement. Ocwen primarily relies upon two cases in support of this argument: *Washtenaw Cty. Emples. Ret. Sys. v. Walgreen Co.*, 2019 U.S. Dist. LEXIS 198978 (N.D. Ill. 2019) and *Allison v. Goodyear Tire & Rubber Co*., 2010 U.S. Dist. LEXIS 85917 (E.D. Pa. 2010).

In *Washtenaw*, the plaintiffs sought to compel documents provided to the Securities and Exchange Commission ("SEC"). Specifically, the documents consisted of three PowerPoint presentations and one "white paper" submitted to the SEC during discussions leading to a September 2018 settlement of the SEC's investigation into the defendants. In *Allison*, the defendant in an asbestos action filed a letter brief requesting certain discovery, namely statements of exposure contained in settlement releases executed by the plaintiff as to other defendants.

In both cases, the documents at issue were barred from discovery under implications of Rule 408. However, the Risk Convergence Reports are very different than the documents in *Washtenaw* and *Allison*. In *Washtenaw*, the documents were produced in preparation of a specific settlement. In *Allison*, the discovery sought was contained in actual settlement releases. Here, however, the Risk Convergence Reports are not settlement documents at all and could not conceivably be portrayed as constituting settlement discussions.  As detailed previously, Ocwen was using Risk Convergence Reports to monitor regulatory exposure *before* any particular regulatory action and they continue[d] to be created and utilized long *after* any particular regulatory action.

4

### III. The Court Should Decline Ocwen's Invitation to Recognize A Self-Critical Analysis Privilege.

Ocwen continues to push for the recognition of a self-critical analysis privilege to protect against it having to produce the Risk Convergence Reports. Specifically, it asks the Court to follow the holding in *Tice v. American Airlines, Inc.*, 192 F.R.D. 270 (N.D. Ill. 2000) and ignore that seventeen years later the very same court itself declared the self-critical analysis privilege to be "dead" in *Lund v. City of Rockford*, 2017 U.S. Dist. LEXIS 196202 (N.D. Ill. 2017) because the latter is not binding. This request is patently illogical. Beyond *Tice*, Ocwen cites to *Coates v. Johnson & Johnson*, 756 F. 2d 524, 551 (7th Cir.), which unsurprisingly was also considered in Lund and specifically referenced in support of the the following: "[i]n the Seventh Circuit, the case law [regarding self-critical analysis privilege] is all over the lot. Initially, it is important to note that the Seventh Circuit, itself, has **not** recognized the self-critical analysis privilege." *Lund*, 2017 U.S. Dist. LEXIS at *24 (citing *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985)).

However, should the Court be inclined to find some portion of the Risk Convergence Reports are entitled to so form of privilege or protection beyond the Protective Order, Todd would respectfully suggest they be tendered to the Court for an *in camera* review and appropriate redactions.

### Conclusion

For all the reasons set forth above, Todd respectfully requests the Court enter an Order compelling Ocwen to produce the Risk Convergence Reports and Email Correspondence, to him directly or to the Court for an *in camera* review, within ten (10) days of the Court's order on this motion.

5

        Respectfully submitted,

/s/ *Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
Fax: (317) 687-2344
tcohron@clarkquinnlaw.com

 */s/ Nick Wooten*
Nick Wooten
**Nick Wooten, LLC**
5125 Burnt Pine Drive
Conway, Arkansas 72034
nick@nickwooten.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 25, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David M. Schultz
Joseph D. Kern
**HINSHAW & CULBERTSON**
dshultz@hinshawlaw.com
dkern@hinshawlaw.com
*Counsel for Defendants*

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30