UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

ROGER TODD                    )
                              )
              Plaintiff,      )
                              )
vs.                           )  CAUSE NO.
                              )  2:19-cv-00085-JMS-DLP
OCWEN LOAN SERVICES, INC.     )
And DEUTSCHE BANK NATIONAL    )
TRUST CO., as Trustee for     )  December 11, 2019
NovaStar Mortgage Funding     )
Trust Series 2007-1           )
                              )
              Defendants.)


Before the

HONORABLE DORIS L. PRYOR


TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE


COURT TRANSCRIBER:        Jodie Franzen, RPR
                          United States District Court
                          46 East Ohio Street
                          Room 309
                          Indianapolis, Indiana 46204


*PROCEEDINGS TAKEN BY ELECTRONIC SOUND RECORDING*

APPEARANCES


FOR THE PLAINTIFF:  Mr. Nicholas H. Wooten
                    ATTORNEY AT LAW
                    5125 Burnt Pine Drive
                    Conway, Arkansas 72034
                    nick@nickwooten.com.



                    Mr. Travis W. Cohron
                    CLARK QUINN MOSES SCOTT & GRAHN LLP
                    320 North Meridian Street
                    Suite 1100
                    Indianapolis, Indiana 46204
                    tchoron@clarkquinnlaw.com



FOR THE DEFENDANTS: Mr. Joseph D. Kern
                    HINSHAW & CULBERTSON, LLP
                    151 North Franklin
                    Suite 2500
                    Chicago, Illinois 60606
                    jkern@hinshawlaw.com

```
 1                      (In camera)
 2            THE COURT:  Good afternoon.  This is Judge
 3    Pryor, cause number 2:19-cv-85, Todd versus Ocwen
 4    Loan Servicing, et. al.
 5            And Mr. Cohron and Mr. Wooten, how are you
 6    both?
 7            MR. WOOTEN:  I'm good, Your Honor.
 8            MR. COHRON:  I'm good, Judge.  How are
 9    you?
10            THE COURT:  Doing well, thank you.
11            Mr. Kern, how are you?
12            MR. KERN:  I'm well, thank you.
13            THE COURT:  We're wanting to pick up
14    today, there were a few outstanding items that the
15    Court had raised in regards to our previous
16    discovery calls right before Thanksgiving.  The
17    first was the payment reconciliation history.  I had
18    given Mr. Kern until December 10th to determine if
19    any information was available regarding that what
20    I'll call the last column or the last payment date
21    change.
22            Mr. Kern, if you will address, that first.
23            MR. KERN:  Yes, Your Honor.  So since that
24    last call we have been working to figure out if this
25    information was retrievable.  What was previously
```

1    discussed was the fact that Ocwen had switched its

2    servicing platform, and the question was whether it

3    can go in and access its prior systems to get this

4    data and generate a payment reconciliation history

5    in the same format we had provided but with this

6    extra column.  It looks like we cannot produce that

7    exact history in the form that we previously

8    provided, but it looks like -- and I'm waiting to

9    confirm -- it looks like we will be able to provide

10   the data that would appear in that column but in a

11   different format.  And I should know for certain,

12   hopefully, by the end of today but for sure by

13   Friday.

14            THE COURT:  And why the delay?  Why don't

15   we know today?

16            MR. KERN:  Because I need to make certain

17   that it was, in fact, the same data.  I have

18   received something that shows a column saying last

19   change date, but I'm waiting for confirmation that

20   that is the same data that would appear in a payment

21   reconciliation history if that report can still be

22   generated.  I'm just waiting on that last

23   confirmation.

24            THE COURT:  I understand what you are

25   waiting for, Mr. Kern.  I'm just trying to be able

1    to articulate.  We had a three-week delay to get

2    this question answered, and it sounds like we still

3    don't have it answered, so I'm just wanting to make

4    sure that I appreciate what has happened over the

5    past few weeks.

6              MR. KERN:  Well, I can tell you that there

7    has been -- we have been working on it diligently.

8    There has been multiple communications with Ocwen,

9    technical teams were involved, there has probably

10   been, I would estimate, about five people internally

11   working on this issue.  I really can attest to the

12   Court the effort to get this info has been diligent.

13   We have been making every effort.  You know, we

14   really are pushing it.  It finally looks like we

15   have got the right people to get the right question.

16             THE COURT:  Okay.

17             MR. KERN:  And I don't want to use

18   Thanksgiving as an excuse, but that did delay things

19   due to people's travel times and things of that

20   nature.

21             THE COURT:  Understood.  So we think that

22   by Friday we can confirm in what format it can be

23   given, or are you saying we still don't know if the

24   last payment date change data is available?

25             MR. KERN:  No, it appears that it would

1  be, that it is available, it just may not be able to

2  be reproduced in the exact format that, I guess, was

3  represented in the Saccameno case.  And I know

4  Mr. Wooten provided what was produced in that case,

5  and it was a payment reconciliation history with an

6  extra column.  It does not appear we can produce it

7  in that format, but the data itself it appears we

8  can produce.

9           THE COURT:  All right.  Thank you very

10 much.

11           Anything additional, Mr. Wooten, or

12 Mr. Cohron on that topic?

13           MR. WOOTEN:  Your Honor, for the

14 plaintiff, Mr. Wooten.  If we may, on that issue, if

15 we have that data, we think we may be able to sort

16 that out.  We would just need to see exactly what

17 they gave us to represent that data.

18           THE COURT:  And Mr. Kern has represented

19 we should know the answer to that by this Friday.

20           MR. WOOTEN:  Yes.  And we will make all

21 effort to get our hands on that and look at it

22 immediately and determine what we can from it and

23 make our way back to the Court if we need to.

24           THE COURT:  Okay.  Issue two, in regards

25 to the policy and procedure manuals that have been

 1   provided -- and agreeing to provide those in

 2   unredacted manuals by December 2nd, subject to the

 3   conditions of the protective order, was the

 4   agreement by Mr. Kern and Mr. Wooten.  You both --

 5   and Mr. Cohron, you had until December 6th to object

 6   to the confidentiality designation on those policy

 7   manuals.  The Court did not receive an objection,

 8   and so it will reflect that the plaintiff is not

 9   objecting to the designation of confidential.

10          MR. COHRON:  That is correct, Judge.  And

11   we did receive them.  Just to get ahead of the -- we

12   received both the unredacted policy and procedure

13   manual and the policy and procedure manual regarding

14   the correct reporting.

15          THE COURT:  All right.  Thank you very

16   much.  The third issue was the request for all email

17   correspondence related to those proposed three

18   search terms, and we were given -- I had given

19   defendants until yesterday to agree on a method of

20   conducting the search or to select a third-party

21   vendor.  So let me turn it over to Mr. Kern to

22   address that issue.

23          MR. KERN:  Yes, Your Honor, I believe

24   Travis and I had a meet-and-confer about that I want

25   to say the Wednesday just before Thanksgiving.  At

1  that time he mentioned that he was -- their thought

2  was to go the route of engaging a third-party

3  vendor.  We were operating under -- and I think he

4  was going to provide proposed vendors.  We were

5  operating under the assumption that was the route we

6  were going to go until I believe we had another

7  meet-and-confer on -- Travis, it might have been

8  Monday, correct me if I'm wrong, maybe even

9  yesterday -- and the -- I guess the direction has

10  since changed on how to conduct the search.  On

11  Monday, or even Tuesday morning -- I get the dates

12  maybe confused -- Mr. Cohron did provide me a list

13  of custodians whose emails to search using those key

14  terms.  And the list is going to be about 40

15  custodians.  So I went ahead and forwarded that list

16  on to Ocwen to determine a time frame to conduct a

17  search given that there are 40 custodians.  As soon

18  as Mr. Cohron provided that list to me, I forwarded

19  it over.  And as soon as I have a word on the time

20  frame of that search, I will update Mr. Cohron and

21  Mr. Wooten.

22          THE COURT:  Thank you, Mr. Kern.

23          Mr. Cohron, would you -- do you need to

24  respond?

25          MR. COHRON:  I think Nick is probably in a

1    better position to respond on this issue, so I will

2    defer to him.

3              THE COURT:  All right, Mr. Wooten.

4              MR. WOOTEN:  Your Honor, I think, you

5    know, from our perspective it's, you know -- it's a

6    Gordian knot-type situation.  If we go the route of

7    the third-party vendor, we're talking about hundreds

8    of thousands of dollars in cost.  And of course we

9    know going in there will be a substantial amount of

10   difficulty with Ocwen being able to get complete

11   information.  We have already been told that they

12   won't be able to go back before 2016, so I think our

13   choices -- and none of which are good at the moment

14   -- would be to try to let them get what they can and

15   determine if that is something that we can live

16   with.  And if we can't live with that, then we --

17   you know, we may have to come back to the Court and

18   ask for, you know, an instruction or a finding on

19   the evidence on that issue, only because it would

20   see, you know -- unless the financial burden we put

21   on Ocwen, which I don't even think is fair to them,

22   I can't justify spending several hundred thousand

23   dollars trying to chase down emails, and that's a

24   tough spot to be in when, you know, it's the

25   defendant's choice that created the problem, but

 1   that seems to be where we are right now.

 2          THE COURT:  Mr. Kern, would you like to

 3   respond?

 4          MR. KERN:  I just disagree.  All of these

 5   presumptions about what Ocwen did or didn't do and

 6   trying to characterize it in a bad light, Ocwen can

 7   only retrieve the data that it has.  In terms of

 8   email, it is passed January of 2016.  And in terms

 9   of it looking like we're the party that didn't want

10   to go the third-party route, it is plaintiff's,

11   plaintiff's counsel who proposed doing the search of

12   the custodians.  So I just want to be clear, we were

13   doing -- I was under the opinion we were doing this

14   search this way by agreement and plaintiff requested

15   we do it this way.  It seems like if that's not the

16   agreement, I would like to make sure that we know

17   that now so we don't do this search and then we come

18   back in two or three weeks and, oh, well, we need

19   the third-party vendor now.  I think we should do

20   this once.  If they don't want to go the custodian

21   route, I think we should go back and consider the

22   third-party vendor route.

23          THE COURT:  I tend to agree with Mr. Kern.

24   Let's clear the air, Mr. Wooten.

25          MR. COHRON:  Judge, I think I can probably

 1    respond to that point.  I know we're committed to

 2    going forward with the list of custodians, yeah.  I

 3    think that what Nick is referring to as the, you

 4    know, third-party vendor route, while it sounds

 5    promising, it's just too burdensome and would create

 6    too much delay in trying to get to a point where we

 7    could agree to the parties.  So to Joe's point,

 8    absolutely we're committed to doing the custodian

 9    search.  We just want some definitive information

10    about how this is going to go forward in a time

11    frame.  Understanding this has kind of a switch

12    gears a little bit recently, but you know, the issue

13    has been out there.

14              THE COURT:  Have the parties agreed to a

15    custodian search at this point, Mr. Kern?

16              MR. KERN:  By "custodian," you mean --

17    that's kind of a technical term.  If you are

18    referencing the employees, we were told that the

19    email search would have to be conducted on an

20    employee email account by employee email account

21    basis, so we agreed to provide, pursuant to that, a

22    list of five employee names that were, you know,

23    Mr. Faris himself and then names pulled from the

24    servicing notes, as well as generally including all

25    of the employees that Ocwen identifies as handling,

1    having hands-on involvement or handling the

2    investigations at issue, meaning, you know,

3    preparing, investigating, responding to Mr. Todd's

4    notices of errors and in response to the ACDV credit

5    disputes.  So we thought it would be much more

6    efficient just to go ahead and go that route and

7    then see where it leads us.

8              THE COURT:  I think that the concern that

9    I'm hearing from Mr. Kern is that when you say where

10   it leads us, are you suggesting that you would want

11   to then re-visit the opportunity to go through a

12   third-party vendor to do a deeper dive?

13             MR. COHRON:  No, Judge.  I guess what

14   we're concerned about when I say we'll see where it

15   leads us, we're a bit skeptical about where there is

16   path will take is, where there is concern about what

17   is going to happen is now we have an agreement to do

18   a search for these 40 individuals and that that is

19   somehow going to turn into, you know, objections

20   about, you know, the number of people and/or that,

21   you know, it's going to take a year to get this

22   information, et cetera.  So I guess I'm cautious in

23   committing to that's going to be the end of the

24   email issue, because, you know, as you know, we

25   can't predict that.  Certainly we don't want to go

1    the third-party vendor route.  We're hopeful we can

2    work with Mr. Kern and Ocwen to avoid that, but of

3    course that requires us to get something in response

4    to the list of custodian, list of employee names.

5              THE COURT:  From your description,

6    Mr. Cohron, it sounds as though you are anticipating

7    a substantial amount of ESI from this email

8    correspondence of almost 40 -- 40 employees.  Why

9    would there not be a supplement put in place to

10   address that on the front end so that defense would

11   not have to incur this cost?

12             MR. COHRON:  Your Honor, we don't

13   anticipate there being that much.  I know that there

14   is a good number of individuals that are named

15   there.  Again, that's a product of the search that

16   Ocwen contends that they can conduct, but we don't

17   anticipate there being, you know, thousands and

18   thousands of emails, certainly one wouldn't expect

19   that.  Now, that could be wrong, but despite the

20   number of individuals, we don't anticipate this

21   being a mass amount of ESI, by any means.

22             THE COURT:  With a third-party vendor,

23   though, putting -- essentially putting the protocol

24   in place on the front end reduces the what-if two or

25   three months down the road.

```
 1              MR. COHRON:  Agreed, Judge.  Let me be a

 2   little bit more specific about our call with the ESI

 3   vendor and what prompted this.  They had specific

 4   questions when trying to get a quote, and really it

 5   was due to the uncertain nature of what they were

 6   getting into, so based on the descriptions and the

 7   conversations with Mr. Kern and the Court, you know,

 8   this is clearly not a system, or at least we don't

 9   believe it's a system, that can be accessed

10   remotely, it's not a system where they can produce a

11   hard file and then a search can be performed.  We do

12   not have any information that suggests that an

13   on-site visit could be performed reasonably, you

14   know, via one of their locations, so when we talk

15   with them in going through this process, there was

16   not enough information there to be able to, one, get

17   an idea of cost or time, but get a commitment that

18   it could even be done.  So one of those, one reason

19   for that is that, you know, if this stuff is

20   piecemeal on multiple systems on multiple servers,

21   you know, for instance, Mr. Kern is saying that they

22   can't get emails before January 2016 because those

23   documents are in the possession of Altisource, what

24   we are potentially talking about is three different

25   sources, one of Ocwen's current system for emails
```

 1   after 2016; two, emails through Altisource which

 2   would be another hurdle for the emails previous to

 3   that date; and then three, depending on how those

 4   emails and ESI are backed up or stored and Ocwen's

 5   document retention policy, there may be a

 6   requirement to access information from barred tapes

 7   of which we don't have enough information about the

 8   type of technology that they're held on.  You know,

 9   at this point in time, I don't think that anybody

10   knows or whether Joe can represent whether or not

11   these backup emails, should they exist, are stored

12   on eight tracks.  We just don't know.

13          THE COURT:  I don't care what happens the

14   rest of the day, but I'm going to work eight track

15   into my dialogue this afternoon.  That brought a

16   smile to my face and reminded me of when I destroyed

17   my brother's favorite eight track.  He still doesn't

18   let it go.  I just couldn't take one more repeat of

19   that song.

20          Let's see, well, it sounds like at this

21   point, Mr. Kern, we are headed down this path, but

22   the --

23          MR. KERN:  Yes, Your Honor.

24          THE COURT:  Go ahead.

25          MR. KERN:  I was just going to say, and I

 1   thought we -- as soon as me and Travis spoke on

 2   Monday and I saw subsequent communication regarding

 3   the list of custodians or employee emails to search,

 4   I thought we had a plan and we were in agreement and

 5   that plan is I think still there, but I think when

 6   Mr. Wooten spoke I just got a little confused as to

 7   whether we're forcing them to go this route or we're

 8   doing this by agreement and that they were reserving

 9   the right to engage a third-party vendor in the

10   future.  But from hearing Travis talk, I think

11   everybody is on the same page on this issue.

12            THE COURT:  All right.  If nothing else,

13   we can work eight track into our explanation

14   throughout the day today.  That was -- I appreciate

15   that clarity, Mr. Cohron, as well.  So we have

16   decided on that issue.

17            The last one that we had that was a

18   leftover from Thanksgiving was defendant's --

19   regarding the quality analyst policy manuals and

20   wanted to determine, Mr. Kern, whether or not those

21   existed.

22            MR. KERN:  Yes, Your Honor.  We did

23   produce those policies and procedures.  They should

24   have them.

25            THE COURT:  Okay.  Is that correct,

 1   Mr. Wooten?  Mr. Cohron?

 2            MR. COHRON:  That is correct, Judge.

 3            Skipping back, Your Honor, just for the

 4   sake of clarity and to create a timeline here, you

 5   know, as far as the emails are concerned, Joe, can I

 6   get you to commit to, you know, a time frame for us

 7   to be able to know what we're looking at as far as

 8   the, you know, the search for the emails, you know,

 9   the post-2016 emails, those --

10            MR. KERN:  What do you propose?  As you

11   know, I just -- you guys did switch gears completely

12   100 percent on Monday, so, you know, I forwarded

13   that list along.  I'm trying to get this done

14   quickly.  But what do you propose, keeping in mind

15   that this sort of gear switch just happened on

16   Monday?

17            MR. COHRON:  You know, a couple weeks.

18   I'm not proposing that the documents be actually

19   produced.  I understand there is more to that.  What

20   we're trying to determine, what I think we all need

21   to be able to ascertain is, okay, we know we're

22   going to do this search or in this method, so what

23   does that actually entail, and are there going to be

24   other issues that arise, you know, what kind of time

25   frame?  Is this going to take six months?  Do we

1   need to come back to the Court and seek extension of

2   case management deadlines?  You know, any of those

3   other issues.

4          MR. KERN:  I'm glad to talk, but I don't

5   know that I'm quite sure what you're asking and what

6   time frame you are proposing.  If you are say, Joe,

7   when do you think you will have an update as to when

8   the search will be completed, if you want me to try

9   to commit to a date on that, is that what you are

10  asking?

11         MR. COHRON:  No, I guess what I'm seeking

12  is a deadline to know, you know, or to have

13  information regarding how long the search will take,

14  you know, within reason.  And I'm not saying within

15  a week.  Is this going to take eight months?  Is it

16  going to take a month?  And information about other

17  cost-prohibitive, et cetera, issues that may arise.

18         MR. KERN:  Yeah, what are you proposing in

19  terms of timeline for that information?

20         MR. COHRON:  I don't necessarily have one.

21  I guess I could defer to the Court.  I just would

22  hope that we know with some certainty what we're

23  looking at here within a couple of weeks just to

24  move the ball.

25         THE COURT:  Maybe at our next telephone

1    status conference Mr. Kern will be able to address

2    that.

3              MR. COHRON:  Okay.

4              THE COURT:  As far as a timeline.  I think

5    that's more of a call from his IT side of the house

6    to make that determination.

7              MR. WOOTEN:  Your Honor, may I clarify

8    something with Mr. Kern on this issue of emails,

9    just to try to make sure we're on the same page.

10             Joe, the emails that you are searching,

11   are they in the possession of Ocwen, or are they

12   still in the possession of Altisource?

13             MR. KERN:  Nick, I don't know.  I'm not a

14   technical person.  That question was not something I

15   asked.  What I asked is how do we go about searching

16   certain custodian's emails, and from what I have --

17   how I understand it, put it that way, I believe that

18   these emails are something that Ocwen has.  Now,

19   that's my understanding based on the information I

20   received.  I could be wrong.  I don't want to say

21   that this is something I'm 100 percent representing,

22   but that's my understanding and then anything

23   pre-January 2016 would be something Altisource has.

24             MR. COHRON:  Can we get confirmation on

25   that by email on that time frame?  As we stand now

1   we don't know if we need to send a third-party

2   vendor to Altisource, we don't even know for

3   certain, based on what you are saying, that all of

4   these emails are not in Ocwen's possession -- or

5   Altisource's possession.

6          MR. KERN:  You provided a list of

7   custodians whose emails you are requesting we search

8   using the three search terms.  That is a search that

9   we're trying to conduct.  I don't know how else to

10  answer your question.  I can't tell you what

11  Altisource has.

12         THE COURT:  Why don't you all use your

13  time differently and so the Court has limited time

14  and I need to get off of here.  There is a few more

15  issues we need to cover, so let's see if we can't

16  resolve that amongst yourselves.  Okay?

17         MR. COHRON:  Very good, judge.

18         MR. WOOTEN:  Yes, ma'am.

19         THE COURT:  On the 30(B)(6) deposition --

20  I'm moving now to the filing that the Court

21  received, the email we received on December 9th.

22  This had come in around 3:00 on December 9th, and so

23  I believe this one is from Mr. Kern.  For these, I

24  had not anticipated walking through these on this

25  call today.  When we didn't receive anything on

1    December 6th, I had only allocated a limited window

2    of time for these, but if we look at the 30(B)(6)

3    depositions, I have had a chance to review those.   I

4    think it's topic 38, 40, 41, and 42.   I did not

5    know -- and thank you for providing the case law as

6    well, Mr. Kern.   I did not know if -- I did see the

7    response to topic 38, but I didn't know if

8    plaintiff's counsel had an opportunity to respond

9    to, in particular, the consent judgments or the

10   other remaining topics.

11           MR. KERN:   Yes, Your Honor, I believe --

12   and during our last call we talked about these

13   30(B)(6) topics and at that time I think we all

14   determined that the parties did not adequately have

15   a meet-and-confer to discuss and at that time.

16   Travis and I have since spoken about this.   At that

17   time I think we agreed and I actually made that

18   clear in our last call, that no more meet-and-confer

19   would be productive.   We have sort of gotten to an

20   impasse on these issues, so except for the one topic

21   he agreed to narrow, which we did not even discuss

22   him narrowing that request, the first time I saw him

23   narrowing that request was the correspondence he

24   submitted to you I believe 10:00 p.m. Monday night.

25   I think except for that topic, unless Travis or Nick

1    say otherwise, I think we're at an impasse on that,

2    and we need the Court's intervention either through

3    what we have already submitted or we would ask to

4    file a -- we would ask the Court to allow us to file

5    a motion for protective order. I.

6              THE COURT:  I understand that's your

7    position, Mr. Kern.  What I was asking of

8    plaintiff's counsel if have they responded.  I have

9    not seen their response to 40, 41, and 42.

10             MR. COHRON:  Judge, I apologize if I

11   wasn't clear in our submission.  Where we stand on

12   these and where the impasse is, is we want to be

13   able to ask questions about some of the contents and

14   the information that are in those documents.  We

15   stand willing to, you know, narrow the scope as to

16   certain things within those documents, but I

17   don't -- I think the concern is that they are still

18   kind of hot-button issues that, one, we're not going

19   to move away from, and I don't expect that Joe or

20   Ocwen just to roll over on.  So really the only

21   potential progress would be narrowing the scope.

22   Again, I don't think that is --

23             THE COURT:  Okay.  I think we're talking,

24   I think we're two ships passing in the night.  Let's

25   look at our first one, topic 38 on the deposition

1   topic.  And so first the objection was that this

2   information is overly broad, unduly burdensome, as

3   well as vague.  And the request specifically is

4   requesting for a designation of a witness that would

5   talk about all consumer complaints about Ocwen to

6   the Consumer Financial Protection Bureau related to

7   the issue characterized by the consumer financial

8   foreclosure during the time period January 2016 to

9   the present.

10          My question, Mr. Kern, is have you had an

11   opportunity first, before we delve into the

12   objections, to review plaintiff's proposed revision.

13          MR. KERN:  I have, Your Honor.

14          THE COURT:  okay.  And just so I could

15   have that, what is your position in regards to that,

16   the narrowing the scope of the topic?  It's on page

17   3 of 5 of plaintiff's submission.

18          MR. KERN:  Yes, Your Honor.  And I

19   appreciate your efforts to narrow it, but it still

20   is over the two-year window.  Essentially of all

21   consumer complaints filed with the CFPB, they limit

22   it to wrongful foreclosure, attempts to collect

23   amounts not owed, and those previously scheduled in

24   chapter 13 bankruptcy.  The thought that one person

25   can adequately testify about all complaints, even

 1   with those narrow issues over a two-year time

 2   period, I don't think is possible.  I have not

 3   checked, but there could be thousands.  There likely

 4   is thousands.  For one person to have knowledge of

 5   all of those complaints and the basis of those

 6   complaints, I think it's just beyond the scope of

 7   rule 26.  It's unduly burdensome, it's asking about

 8   stuff that is relevant to this case.  For example,

 9   foreclosure is not even an element to this case, so

10   I think our objections would be the same and are the

11   same, although I do appreciate the efforts to try to

12   narrow it.

13           THE COURT:  Let's first, Mr. Cohron and

14   Mr. Wooten, let's first address the issue that we

15   keep hearing which is this is not relevant to the

16   claims or defenses.  Specifically I know that you

17   have responded that it is relevant as to notice and

18   willfulness, so let's first address that argument.

19           MR. WOOTEN:  Your Honor, this is

20   Mr. Wooten.  Let me see if I can help us with this

21   topic, generally.  We could consent to asking simply

22   for Ocwen to acknowledge the total number of

23   complaints in those categories in that window and

24   acknowledge that they, in fact, received a copy of

25   those complaints from the CFPB without going into

1    any details of each of those complaints.  If that

2    would make the issue easier for a 30(B)(6), which I

3    think we could all sort of get to those would almost

4    be stimulated facts at the end of the day, but that

5    would be the two things that I would want to take

6    away from that topic without necessarily going into

7    the details of every one of those complaints.

8                THE COURT:  The number of complaints, and

9    what was the second thing?

10               MR. WOOTEN:  And that Ocwen was furnished

11   those complaints by the CFPB.  I mean, my

12   understanding of the process is when a consumer

13   submitted a complaint, the Consumer Financial

14   Protection Bureau would then submit it to the

15   servicer for a response.

16               THE COURT:  Mr. Kern, I will allow you to

17   respond.

18               MR. KERN:  Your Honor, I wish we could

19   have a meet-on-confer on this, because I think we

20   could have resolved this issue, but what I -- my

21   follow-up question is the CFPB does track these

22   complaints by category, it's my understanding.  It's

23   been a while since I have been on their website, but

24   I believe that they do, perhaps Nick knows -- do you

25   know, Nick, if these are sort of drop-down sort of

 1    categories by which you can sort complaints to the

 2    CFPB or not?  And if not, then Ocwen would have to

 3    go through all of the complaints it's received and

 4    categorize them and see if they fall into one of

 5    these categories.  Perhaps that's already done and

 6    it's easily retrievable, but we have not spoken

 7    about this.  Like I said, I got this Monday.  There

 8    has been no further communication on it.  But it

 9    seemed that if what Mr. Wooten is asking, the scope

10    of this request seems -- I think the parties can

11    probably get there, but I think that would be a

12    better use of time to do so not on the call with

13    Your Honor.

14           MR. WOOTEN:  I was about to suggest, Your

15    Honor, maybe if you will pass this particular topic,

16    understand that that would be our goal, I believe I

17    can define a universal topic of complaints in that

18    category.  I just need to check back on the Consumer

19    Financial Protection Bureau's website because there

20    has been some changes since the administration

21    rolled over, but the last time I did this it was

22    highly sortable, as Mr. concern suggested.

23           THE COURT:  All right.  I will do that.

24    Topic 40, plaintiff requests the defendant designate

25    a witness to testify to the facts and circumstances

1    related to consent judgment I believe out of the

2    district of Columbia, and defense has provided their

3    objections articulated on page 2 of their submission

4    dated December 9th.  And so the Court has had an

5    opportunity to review that, and I will turn it over

6    to plaintiff's counsel if you would like to respond.

7              MR. WOOTEN:  Your Honor, on this issue, I

8    actually can tell you that not only topic 40 but 41

9    and 42 would also follow this same point.  Part of

10   this, whether we would even need to examine this

11   issue would be whether we were allowed to depose

12   Mr. Faris, because Mr. Faris obviously had a key

13   role in each of these documents as a high level or

14   chief executive for Ocwen.  I know that he signed

15   off on one or more of these documents personally.

16   So if he is allowed to testify, we would probably

17   not even ask a question about this of Ocwen's

18   30(B)(6).  If he is excluded, then the questions

19   we're primarily concerned with are Ocwen's

20   acknowledgement that they executed these documents,

21   Ocwen's acknowledgement that their company

22   leadership authorized the execution of these

23   documents, and Ocwen's acknowledgement that they

24   were bound by the terms of these documents.  And the

25   reason for that is that we were obviously -- I may

1    have described it to your honor, it runs to

2    together, but at trial in Saccameno we were

3    sandbagged on this issue.  Ocwen brought a corporate

4    rep to trial who then denied any personal knowledge

5    of the documents that Judge Gottschall had ruled a

6    month earlier were going to be admitted as exhibits,

7    so we ended up having to get those documents entered

8    through judicial notice rather than testimony and

9    Ocwen was able to avoid any examination on the

10   contents of the documents even as Judge Gottschall

11   had limited them very specifically to the facts of

12   Saccameno, so in an effort to avoid that, we sought

13   to deposed Mr. Faris and in the alternative we

14   would, you know, talk to Ocwen's 30(B)(6) on this

15   issue.  But our purpose would be to gain their

16   acknowledgement that they were bound to these

17   agreements and they have corporate authority to

18   execute them and they were doing so under their

19   corporate authority and then highlight upon the

20   topics in these consent decrees that represented

21   either notice of past problems or obligations going

22   forward that Ocwen agreed to.

23           THE COURT:  It seems to be somewhat

24   contingent upon the Court's ruling to quash the

25   deposition of the former CEO.  My question is where

 1   does the CEO live, the former CEO?

 2           MR. WOOTEN:  He lives in West Palm Beach,

 3   Florida, Your Honor.  That's where he was served,

 4   and he noticed his deposition at a location within,

 5   I think, five to seven miles of his home.

 6           THE COURT:  All right.  Let me just take a

 7   note here, West Palm Beach.  All right.  Thank you.

 8   And that was a question that I had.

 9           Mr. Kern, I will give you an opportunity,

10   you have heard Mr. Wooten present that, that maybe

11   this topic is not exactly ripe until we have a

12   ruling on the motion to quash the deposition.  What

13   are your thoughts?

14           MR. KERN:  Your Honor, I do think there is

15   a lot of overlap on these issues.  I think to the

16   extent -- I'm sure Your Honor is probably familiar

17   with their motions and our motion to quash, but at

18   this point, but if Your Honor's ruling is first

19   depose a 30(B)(6) or lower level employees on these

20   issues, then I don't think it's tied to the motion

21   to quash, because we would need to know going into

22   our 30(B)(6) whether our witnesses need to be

23   prepared on these topics or not.  If your ruling is

24   I'm not going to allow Faris' deposition at all,

25   then I -- I think that this still needs to be

1    addressed before we do our 30(B)(6).  There is some

2    overlap, but I think going into the 30(B)(6) we do

3    need to -- we do need to probably know how Your

4    Honor is going to rule on the motion to quash the

5    Faris deposition, whether it's quashed in its

6    entirety or whether it is delayed pending completion

7    of a 30(B)(6).

8              THE COURT:  So let's do this, you have

9    already requested the parties have met and

10   conferred, you have requested permission to file a

11   motion for a protective order or permission to -- on

12   these topics, I think it's -- let me look again --

13   40 through 42, so we have that in the pipeline.  The

14   Court is going to give you permission to do that,

15   Mr. Kern, so that we can keep discovery moving on

16   this issue.

17             MR. KERN:  Okay.  Thank you, Your Honor.

18             THE COURT:  Uh-huh.  Our last topic that

19   was presented by Mr. Kern was the StoneTurn Group.

20             MR. COHRON:  Your Honor, may I interrupt

21   for one second while we're still on the topic of the

22   depositions?

23             THE COURT:  Yes, uh-huh.

24             MR. COHRON:  Those are presently scheduled

25   for next Tuesday and Wednesday.

1          THE COURT:  The 30(B)(6)?

2          MR. COHRON:  Correct, so...go ahead.

3          MR. WOOTEN:  We had scheduled both --

4    Mr. Faris was scheduled -- we scheduled Mr. Faris

5    for Tuesday and the 30(B)(6) for Wednesday.

6    Speaking only to the order of interrogation, we

7    would prefer to do Mr. Faris first to eliminate

8    these questions about the other topics that Mr. Kern

9    has objected to on the 30(B)(6) level.  And I'm not

10   aware of any case law that would mandate absolutely,

11   especially the case of a former CEO, that we go to

12   the 30(B)(6) first.  In a situation like this we

13   think that that actually would create conflict

14   unnecessarily and time on the Court.  But that being

15   said, we had discussed among ourselves that it might

16   be prudent to bump the 30(B)(6) back so that Your

17   Honor could address these issues if they were

18   outstanding.  And if Your Honor allowed the

19   deposition of Mr. Faris, we are prepared to proceed

20   next week, but if Your Honor determines she needs

21   more time to make a decision, then we would work

22   with Mr. Kern to try to reschedule dates for

23   January.

24          MR. KERN:  And Your Honor, this Mr. Kern,

25   we have already -- it is our position that with all

1   of these discovery issues floating out there, to

2   give the parties and Your Honor time to address the

3   issues, we think it's prudent to move the

4   depositions.  Discovery does not close until the end

5   of March, so we do have plenty of time.  Along those

6   lines, we have proposed three dates in January,

7   alternative dates in January, for the 30(B)(6), so

8   this would not be a lingering issue.  We do have

9   dates.  And I understand that Travis and Nick did

10  not want to agree to move it until we spoke today,

11  because if Your Honor was rushing to rule on the

12  motion to quash, we didn't want to make those

13  efforts for not, but our position is that let's move

14  these depositions, give the parties and the Court

15  time to address these issues, that way we go into

16  oral discovery, all of the issues decided.  If not,

17  I think there is going to be the risk that we do a

18  30(B)(6) subject to a redeposition or we get into an

19  issue they will agree to do the deposition on the

20  18th, subject to a redeposition after Your Honor

21  rules on some of these issues, and I just don't

22  think that is -- we would be doing things twice, and

23  I don't think that is a good use of resources for us

24  or the Court.  And one of the other issues, too, in

25  terms of the logistics of the depositions, the plan

1    was for obviously Mr. Faris, since he resides in

2    West Palm Beach, if that deposition was to proceed,

3    then the 30(B)(6) would also proceed in West Palm

4    Beach.  If not, if the Faris deposition would not be

5    proceeding at least on the 17th, then the 30(B)(6)

6    would be in Indianapolis at Travis' office.  We're

7    now on December 11th.  The 30(B)(6) is set for

8    December 18th.  We really don't know the location

9    because it's contingent upon a few things and I

10   think we all are traveling there and I don't think

11   any of us are local.  So that's another reason why

12   it might be prudent to move them is booking

13   traveling last minute, it adds unnecessary costs.

14   That's just one other element.  You know, if they're

15   stuck in moving forward on the 18th, I think we need

16   to know today where that 30(B)(6) will proceed

17   whether it's in West Palm or in Indianapolis.

18              THE COURT:  Are you prepared, Mr. Wooten

19   to answer that question on this call today?

20              MR. WOOTEN:  Your Honor, I think Mr. Kern

21   has appropriately stated the issue that we had made

22   a contingent agreement based on the outcome of your

23   honor's ruling on the motion to quash.  I do not see

24   from a logistical perspective why it would be

25   harmful for us to push back the 30(B)(6) for 30 days

1    or so.  Obviously Mr. Faris, being a fact witness

2    and having a relatively narrow universe of material

3    to cover, you know, we had anticipated the

4    deposition I would call it a half day, but I don't

5    really anticipate it being more than about two

6    hours, we thought it would be expedient to get that

7    over with if we were going to do it.  But if Your

8    Honor needs additional time, we can try to

9    reschedule them both.  We were concerned about the

10   17th with Mr. Faris because he is under subpoena and

11   we have received word from Mr. Kern that he

12   believed -- there wouldn't be a problem with him

13   appearing on that date, so that is why we were

14   trying to hold that date and not create another --

15   set a logistical problem with rescheduling

16   Mr. Faris' deposition, but we certainly can if Your

17   Honor needs additional time on the issue.

18          THE COURT:  The Court does not need the

19   additional time, and the Court anticipates having a

20   ruling out by this Friday, at least be docketed.

21   But by this Friday.  The Court has had an

22   opportunity to review the motion as well as the

23   responses.  I'm referring specifically to docket 58.

24   And so the Court's ruling should be out this Friday.

25   I know that doesn't help for travel plans, as

1    Mr. Kern has articulated, but that's -- when we had

2    spoken back in November, the parties had -- when we

3    had talked, the parties had agreed that the Court

4    would have the ruling by Friday as to the motion to

5    quash Faris' deposition, which was prior to our

6    scheduled telephone status conference of

7    December 19th.

8              MR. COHRON:  We will plan on going

9    forward, Judge, thank you.

10             THE COURT:  I have to -- I'm supposed to

11   be on the bench at 12:45.  I have a courtroom

12   waiting for me.  We do have this scheduled to pick

13   back up on the 19th for another telephone status

14   conference.  The issues that were presented on

15   Monday night, we have not been given opportunity to

16   cover those on this call.  I will be able to pick

17   those back up on the 19th.

18             MR. KERN:  Your Honor, for purposes of

19   clarification, I do understand you have to leave, is

20   the ruling going to be that the Faris deposition --

21   the motion will be denied, and Faris' deposition

22   shall proceed on the 17th?  I just need to know how

23   to instruct my client.

24             THE COURT:  No, the Court's ruling will be

25   out by Friday on the motion to quash Faris'

1    deposition.

2              MR. KERN:  Okay.

3              THE COURT:  And I did not need time beyond

4    Friday to make that ruling.

5              MR. COHRON:  Thank you, Judge.

6              MR. WOOTEN:  Thank you for your time, Your

7    Honor.

8              THE COURT:  Absolutely.  We will pick

9    right back up on the 19th.

10             MR. WOOTEN:  Thank you, Your Honor.

11             THE COURT:  Thank you.

12                       (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF COURT TRANSCRIBER

I, Jodie Franzen, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

s/s Jodie Franzen
Signature of Approved Transcriber