UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROGER TODD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:19-cv-00085-JMS-DLP ) |
| OCWEN LOAN SERVICING, INC., and DEUTSCHE BANK NATIONAL TRUST CO., as Trustee for NovaStar Mortgage Funding Trust, Series 2007-1, | ) ) ) ) ) |
| Defendant. | ) ) |

## DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION FOR PROTECTIVE ORDER WITH INCORPORATED BRIEF IN SUPPORT

Defendant Ocwen Loan Servicing, LLC ("Defendant"), incorrectly named in the caption as Ocwen Loan Servicing, Inc., through its undersigned counsel, respectfully requests that the Court enter a protective order to prevent Plaintiff Roger Todd ("Plaintiff") from deposing Defendant's 30(b)(6) representative regarding topics 40, 41, and 42 identified in Plaintiff's Notice of 30(b)(6) Deposition. In support, Defendant states as follows:

## INTRODUCTION

Plaintiff and his counsel are not state or federal regulators—yet they seek to put at issue settlements Defendant reached with various state and federal regulators almost six years ago. Plaintiff was not a party to the settlements nor did the settlements specifically reference or mention his mortgage loan that is the subject of the instant litigation (the "Loan"). Defendant made no admissions when it entered into these earlier settlements, and in fact, two of the three settlements expressly stated that they could not be used as evidence against Defendant. The third settlement was a settlement Defendant reached with the New York Department of Financial Services ("NYDFS") in 2014 regarding New York loans and New York borrowers. This case

involves an Indiana loan, Indiana property, and Indiana borrower (i.e., Plaintiff).

Plaintiff's attempt to put six year old settlements at issue and seek depose Defendant's 30(b)(6) representative about them is improper for at least five reasons: 1) the settlements are not relevant to the claims or defenses as there is no connection between the settlements and Plaintiff's Loan; 2) Rule 408 of the Federal Rules of Evidence prohibits Plaintiff from using the settlements as evidence against Defendant; 3) the express terms of the settlements prohibit Plaintiff from using them as evidence against Defendant; 4) Rule 404 of the Federal Rules of Evidence prohibits Plaintiff from using the settlements as evidence against Defendant; and 5) any alleged violation of the settlements and/or the conduct referenced in them cannot form the basis of any claim by Plaintiff against Defendant. The Court should, for these reasons, enter a protective order to prevent Plaintiff from deposing Defendant's 30(b)(6) representative about the settlements.

## PLAINTIFF'S 30(B)(6) NOTICE OF DEPOSITION AND THE SETTLEMENTS

Plaintiff requests that Defendant designate a 30(b)(6) representative to testify about the "facts and circumstances specifically related to or addressed by the Consent Judgment in the United States District Court for the District of Columbia in *Consumer Fin. Prot. Bureau, et al. v. Ocwen Fin. Corp., et al.*, Case No. 13-cv-2025" (referred to herein as the "2013 Consent Judgment"). *See* Plf.'s Notice of 30(b)(6) Deposition attached as **Exhibit A** at Topic #40. Plaintiff also requests that Defendant designate a 30(b)(6) representative to testify about the "facts and circumstances specifically related to or addressed by the Settlement Agreement and Consent Order in *In Re: Ocwen Financial Corporation and Ocwen Loan Servicing, LLC*, Case No. C-13-1153" (referred to herein as the "2013 Settlement Agreement"). *Id*. at Topic #41. Finally, Plaintiff requests that Defendant designate a 30(b)(6) representative witness to testify

about the "facts and circumstances specifically related to or addressed by the Consent Order Pursuant to New York Banking Law § 44 in *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC* (Dec. 22, 2014)" (referred to herein as the "2014 New York Consent Order"). *Id*. at Topic #42. Defendant entered into the 2013 Consent Judgment, 2013 Settlement Agreement, and 2014 New York Consent Order (collectively the "Settlements") to settle and/or resolve disputes with various state or federal regulators. Plaintiff was not a party to the Settlements—nor do they specifically reference his Loan that is the subject of the instant litigation. Plaintiff does not reference or mention the Settlements in his second amended complaint (i.e., the operative complaint). Defendant made no admissions when it entered into the Settlements and two of the three settlements expressly stated that they could not be used as evidence against Defendant.

## ARGUMENT

**I.       Plaintiff's Attempt to Depose Defendant's 30(B)(6) Regarding the 2013 Consent Judgment, 2013 Settlement Agreement, and 2014 New York Consent Order Is Improper.**

Discovery is not limitless and neither are the topics about which a plaintiff can depose a Rule 30(b)(6) witness. Fed. R. Civ. P. 26(c); *Dixon v. Experian Info. Solutions, Inc.*, 2014 U.S. Dist. LEXIS 86268, *24-25 (N.D. Ind. 2014). Rule 30(b)(6) depositions are limited by the scope of discovery in Rule 26(b). *Dixon*, 2014 U.S. Dist. LEXIS 86268 at 24-25. Rule 26(b) permits the discovery of nonprivileged matter "that is relevant" to a party's claim or defense and "proportional" to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. Fed. R. Civ. P. 26(b)(1). Where a plaintiff seeks to depose a Rule 30(b)(6) witness regarding topics beyond the scope of that allowed under Rule 26(b)—as is

the case here—Rule 26(c) of the Federal Rules of Civil Procedure empowers courts to enter a protective order to prevent testimony on such topics.  Fed. R. Civ. P. 26(c); *Dixon*, 2014 U.S. Dist. LEXIS 86268 at 24-25; *see also* the Court's December 13, 2019 Order in this Case, Doc. 84 (a "court may issue a protective order, on motion or its own initiative, to limit discovery if it is outside the scope permitted by Rule 26(b)(1)")

When deciding whether to limit discovery, courts should do so with the understanding that the fundamental principle of Rule 26(b)(1) of the Federal Rules of Civil Procedure is "that lawyers must size and shape their discovery requests to the requisites of a case."  *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016).  This is even more true following the 2015 amendments to Rule 26(b)(1), which emphasized the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality."  *Id*.  Discovery is intended to provide the parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery."  *Id*.

Honorable Doris L. Pryor explained in *Trupp v. Roche Diagnostics Corp.* that "[d]iscovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy."  2019 U.S. Dist. LEXIS 87764, *4 (S.D. Ind. 2019).  Judge Pryor also explained that "Federal Rule 26(b), describing the scope and limits of discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process." *Id*. at 5.

Here, Plaintiff's attempt to depose Defendant's 30(b)(6) representative regarding the Settlements that Defendant reached with various state and federal regulators approximately six years ago is nothing more than an exercise in "over-discovery" and an abuse of the discovery

process The Court should, therefore, enter a protective order to prevent Plaintiff from deposing Defendant's 30(b)(6) about the Settlements (i.e., topics 40, 41, 42 in Plaintiff's Notice of 30(b)(6) Deposition).

    **A.    The 2013 Consent Judgment (i.e. Topic #40 in Plaintiff's Notice of 30(b)(6) Deposition).**

In topic #40 of his Notice of 30(b)(6) Deposition, Plaintiff requests that Defendant designate a 30(b)(6) representative to testify about the 2013 Consent Judgment. Plaintiff's request is improper for last five reasons. *See* **Ex. A** at Topic #40.

    **1.    The 2013 Consent Judgment Is Not Relevant to the Claims and Defenses.**

Consent judgments, including the 2013 Consent Judgment are, in effect, settlements. *Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP*, 2006 U.S. Dist. LEXIS 65840, *17-18 (S.D. Ind. 2006) ("A consent decree, like any settlement, is inadmissible under Federal Rule of Evidence 408."). Defendant entered into the 2013 Consent Judgment in December 2013—more than six years ago and more than five years before Plaintiff filed the instant action—to resolve a dispute with various state and federal regulators. *See generally* 2013 Consent Judgment attached as **Exhibit B**.

Plaintiff was not party to the 2013 Consent Judgment—nor did the judgment specifically reference Plaintiff's Loan. *See generally* **Ex. B**. Plaintiff also fails to reference or mention the 2013 Consent Judgment in the Complaint. *See generally* Plf.'s Sec. Am. Compl., Doc. 40; *see also Trupp* 2019 U.S. Dist. LEXIS 87764 at 4 ("[d]iscovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy"). There is a reason for this: the 2013 Consent Judgment is not needed to prove or establish any of Plaintiff's claims nor does it have any connection to Defendant's alleged conduct that allegedly gives rise to Plaintiff's claims—all of which occurred

long after Defendant entered into the 2013 Consent Judgment.  Put another way, liability does not hinge on whether Defendant improperly serviced other loans (as may have been alleged by regulators in the action that led to the 2013 Consent Judgement).  Nor does liability hinge on whether Defendant allegedly failed to comply with the 2013 Consent Judgment.  This especially is true because Plaintiff—under the plain language of the 2013 Judgment—has no authority to enforce the 2013 Consent Judgment or bring a claim for any alleged violation of that judgment. *See* **Ex. B**. at D-13; D-14 ("an enforcement action under this Consent Judgment may be brought by any Party to this Consent Judgment or the Monitoring Committee").  Moreover, any alleged violation of the 2013 Consent Judgment does not and cannot form the basis of any claim by Plaintiff against Defendant.  *See Ross*, *Ross v. Am. Red Cross*, 2012 U.S. Dist. LEXIS 77475, *9-11 (S.D. Ohio 2012) (explaining that the consent decree at issue did not create a private right of action and excluding such).  In fact, Plaintiff does not allege Defendant violated the 2013 Consent Judgment.  *See generally* Plf.'s Sec. Am. Compl., Doc. 40.

Judge Pryor correctly explained, when she granted Defendant's motion for protective order to prevent the deposition of Ocwen Financial Corporation's former chief executive officer, that "Plaintiff seeks to broaden the scope of this case by referring to other nationwide litigation that involves Defendant Ocwen or its related companies; what the Plaintiff forgets, however, is that this case is limited to a single-plaintiff consumer protection matter regarding the handling of Mr. Todd's mortgage loan. This is not a nationwide collective action . . ." *See* the Court's December 13, 2019 Order in this Case, Doc. 84.  Indeed, the single question at issue is whether Defendant improperly serviced ***Plaintiff's Loan*** in violation of the various state and federal statutes on which Plaintiff bases his claims.  The 2013 Consent Judgment sheds no light and has no bearing on this issue (in part because Defendant entered into that judgment in December 2013

6

based on conduct that occurred prior thereto—and long before Defendant's alleged wrongful conduct with respect to Plaintiff's Loan occurred).

Importantly, the 2013 Consent Judgment expressly stated that it "shall remain in full force and effect for three years from the date it is entered ("the Term"), at which time Defendant's obligations under the Consent Judgment shall expire . . ." **Ex. B** at 12. Accordingly, the 2013 Consent Judgment and Defendant's obligations under that judgment expired in or around December 2016 (i.e., three years after Defendant entered into it in December 2013). *Id*. Here, a plain reading of the Complaint confirms that Defendant's alleged wrongful conduct and servicing errors with respect to Plaintiff's Loan occurred long after Defendant entered into the 2013 Consent Judgment and long after that judgment expired. *Comp.* Plf.'s Sec. Am. Compl., Doc. 40 with **Ex. B**. In particular, Plaintiff alleges Defendant violated the Real Estate Settlement Procedures Act ("RESPA") by failing to respond to various notices of error and requests for information. But, the first alleged notice of error and/or request for information at issue was allegedly sent by Plaintiff to Defendant on May 21, 2018. *See generally* Plaintiff's Sec. Am. Compl., Doc. 40, ¶206. Similarly, Plaintiff bases his claim under the Fair Credit Reporting Act ("FCRA") on Defendant's alleged failure to reasonably investigate a credit dispute Plaintiff alleges he submitted on August 27, 2018. *See* Plaintiff's Sec. Am. Compl., Doc. 40, ¶317. And, finally, Plaintiff bases his claim under the Telephone Consumer Protection Act ("TCPA") on calls Defendant allegedly made after October 7, 2017. *See* Plaintiff's Sec. Am. Compl., Doc. 40, ¶289. All of these events occurred after Defendant entered into the 2013 Consent Judgment and after it expired in or around December 2016.

Under circumstances similar to those here, courts have declared consent judgments as irrelevant and as having "no possible bearing" on subsequent lawsuits. *Lipsky v. Commonwealth*

*United Corp.*, 551 F.2d 887, 893-894 (2d Cir. 1976) (a consent judgment between a federal agency and a private corporation has "***no possible bearing***" on a subsequent litigation between that corporation and another party) (emphasis added); *Block v. Abbott Labs., Inc.*, 2001 U.S. Dist. LEXIS 19884, *7-8 (N.D. Ill. 2001) (rejecting the plaintiff's attempt to depose the defendant regarding a consent decree it entered into with the Food and Drug Administration and finding the consent decree as ***irrelevant*** and inadmissible); *Ross*, 2012 U.S. Dist. LEXIS 77475 at 9-11 (excluding consent decree entered into with the United States in a prior litigation as ***irrelevant***).

For all of the above reasons, the 2013 Consent Judgment is not relevant to the claims or defenses in this matter and thus not discoverable under Rule 26(b) of the Federal Rules of Civil Procedure.

### 2. Rule 408 of the Federal Rules of Evidence Prohibits Plaintiff from Using the 2013 Consent Judgment.

Plaintiff's request to depose Defendant's 30(b)(6) representative about the 2013 Consent Judgment also fails because he seeks to use the judgment as evidence against Defendant in direct violation of Rule 408 of the Federal Rules of Evidence, which prohibits the use of settlements and/or comprises as evidence against a party. Fed. R. Evid. 408. It is well-settled that consent judgments, consent orders, and consent decrees are comprises within the meaning of Rule 408. *Paul Harris Stores, Inc.*, 2006 U.S. Dist. LEXIS 65840 at 17-18 ("A consent decree, like any settlement, is inadmissible under Federal Rule of Evidence 408.").

In *Block v. Abbott Labs., Inc.*, the court faced the identical issue the Court faces here. *Block*, 2001 U.S. Dist. LEXIS 19884 at 7-8. The plaintiffs in *Block* attempted to depose the defendant about a consent decree it entered into with the Food and Drug Administration. *Id*. The court in *Block* did not allow it and held that the consent decree was irrelevant and

inadmissible. *Id*. In particular, the court in *Block* held the plaintiffs "have not demonstrated that discovery relating to the Consent Decree is 'reasonably calculated to lead to the discovery of admissible evidence' . . . [and] that the Consent Decree [was] not relevant to Plaintiffs' claims." *Id*. The *Block* court stated it "will not permit Plaintiffs to engage in a fishing expedition into an area that Plaintiffs cannot show is related to the present suit." *Id*. The *Block* court also expressly held that "to the extent Plaintiffs seek to question Mr. White [i.e., the proposed deponent] about the Consent Decree, the Court finds that such discovery would be irrelevant." *Id*. at 6.

Other courts also have prohibited plaintiffs from using consent judgments, consent decrees, or consent orders under similar circumstances. *Bowers v. NCAA*, 563 F. Supp. 2d 508, 535-36 (D.N.J. 2008) (excluding consent decree entered into with the Department of Justice); *Wilson v. Parisi*, 2009 U.S. Dist. LEXIS 3970, *9 (M.D. Pa. 2009) (excluding consent decrees with various state regulators).

In fact, in *Ely v. Cabot Oil & Gas Corp.*, the court excluded the use of a consent judgment or decree that the defendant entered into with a state regulator and expressly stated "it would be error to rely on evidence of the consent orders." 2014 U.S. Dist. LEXIS 180162,*46-47 (M.D. Pa. 2014)

The policy behind Rule 408 (i.e., to promote settlements) supports Defendant's position. Conversely, Plaintiff's attempt use the 2013 Consent Judgment against Defendant runs contrary to the policy behind Rule 408 (i.e., it would discourage settlements for fear that such settlements may later be used against a settling party). *Meyer v. Ward*, 2017 U.S. Dist. LEXIS 70431 (N.D. Ill. 2017) (allowing the use of consent decrees "would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements.")

> 3. **The Plain Language of the 2013 Consent Judgment Expressly Prohibits Plaintiff from Using It Regardless of the Purpose.**

Plaintiff's request to depose Defendant's 30(b)(6) representative about the 2013 Consent Judgment also is improper because that judgment contemplated the exact scenario presented here (i.e., a plaintiff in a subsequent, unrelated litigation attempting to use it judgment against Defendant) and expressly prohibited such use. In particular, the 2013 Consent Judgment expressly stated (and made clear) that Defendant made no admissions by entering into that judgment and that the judgment shall not constitute "evidence against Defendant." *See* **Ex. B** at 8. The 2013 Consent Judgment also expressly stated that the parties entered into that agreement "without trial or adjudication of any issue of fact or law." *Id*.

Given the above language, Plaintiff's attempt to use the 2013 Consent Judgment against Defendant—regardless of the purpose—violates the plain terms of the 2013 Consent Judgment. Courts have refused to allow plaintiffs to use consent judgments, consent decrees, or consent orders under similar circumstances. *Lipsky*, 551 F.2d 887 at 893-894 ("a consent judgment between a federal agency and a private corporation ***which is not the result of an actual adjudication of any of the issues*** . . . and not to be used as evidence in subsequent litigation between that corporation and another party" and has "***no possible bearing***" on the action) (emphasis added); *Ross*, 2012 U.S. Dist. LEXIS 77475 at 9-11 (excluding evidence of a consent decree entered into with the United States in a prior litigation where no admissions were made by virtue of entering into the consent decree as irrelevant and substantially prejudicial).

> 4. **Rule 404 of the Federal Rules of Evidence Prohibits Plaintiff from Using the 2013 Consent Judgment.**

Plaintiff's request also is improper because Rule 404 of the Federal Rules of Evidence prohibits Plaintiff from using the 2013 Consent Judgment and any alleged wrongful conduct

mentioned in that judgment as propensity evidence to cast Defendant as a "bad actor" or as evidence to prove Plaintiff's claims in this case.  *See* Fed. R. Evid. 404; *see also Lipsky*, 551 F.2d 887 at 893-894 ("a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . and not be used as evidence in subsequent litigation between that corporation and another party").  This is especially true considering the 2013 Consent Judgment—as explained above—expressly stated Defendant made no admissions by entering in that judgment and that the judgment could not be used as evidence against Defendant.

> **5.     Plaintiff Is Not a State or Federal Regulator and Has No Authority to Enforce the 2013 Consent Judgment or Bring a Private of Action Under the Judgment.**

Finally, Plaintiff's attempt to depose Defendant's 30(b)(6) representative about the 2013 Consent Judgment also fails because it is nothing more than a back-door attempt to bring a private right of action under that judgment and/or enforce that judgment.  Plaintiff and his counsel were not parties to the 2013 Consent Judgment.  They are not state or federal regulators.  They thus have no authority—under the plain language of the 2013 Consent Judgment—to bring a private right of action under that judgment or to enforce that judgment.  In fact, the 2013 Consent Judgment expressly stated that "an enforcement action under this Consent Judgment may be brought by any Party to this Consent Judgment or the Monitoring Committee." **Ex. B**. at D-13; D-14.  Any alleged violation of 2013 Consent Judgment thus cannot form the basis of any claim against Defendant by Plaintiff—rendering Plaintiff's attempt to depose Defendant's 30(b)(6) representative about the judgment improper.  *Ross*, 2012 U.S. Dist. LEXIS 77475 at 9-11 (explaining that the consent decree at issue did not create a private right of action and excluding such); *Block*, 2001 U.S. Dist. LEXIS 19884 at 7-8 (rejecting the plaintiff's attempt to

depose the defendant regarding a consent decree it entered into with the Food and Drug Administration and finding the consent decree as irrelevant and inadmissible).

      **B.    2013 Settlement Agreement (i.e. Topic #41 in Plaintiff's Notice of 30(b)(6) Deposition).**

In topic #41 of his Notice of 30(b)(6) Deposition, Plaintiff requests that Defendant designate a witness to testify about the 2013 Settlement Agreement.  *See* **Ex. A** at Topic #41.  Defendant entered into the 2013 Settlement Agreement in December 2013—like the 2013 Consent Judgment—to resolve a dispute with various state and federal regulators.  *See generally* 2013 Settlement Agreement attached as **Exhibit C**.  In fact, the 2013 Settlement Agreement expressly referenced the 2013 Consent Judgment and expressly stated that it "incorporates the [2013] Consent Judgment . . .[and that] [t]he [2013] Consent Judgment, including all of its exhibits, are fully integrated into" it.  **Ex. C** at 7.  The 2013 Settlement Agreement—like the 2013 Consent Judgment—also expressly stated that Defendant entered into the agreement "without admitting any allegations or implications of fact, and without admitting any violations of applicable laws, regulations, or rules governing the conduct and operation of its mortgage servicing business."  **Ex. C**. at 5.  For these reasons, Plaintiff's attempt to depose Defendant's 30(b)(6) about 2013 Settlement Agreement fails for the same or similar reasons that his attempt to depose Defendant about the 2013 Consent Judgment fails.  This especially is true because the 2013 Settlement Agreement expressly incorporated the 2013 Consent Judgment into it.

Plaintiff's attempt to depose Defendant's 30(b)(6) representative about the 2013 Settlement Agreement also fails because the 2013 Settlement Agreement related to investigations into Defendant's servicing operations "covering the period of December 1, 2010 to October 24, 2011."  **Ex. C**. at 5.  Defendant did not start servicing Plaintiff's Loan until April 2012—after the investigatory period.  Moreover, as explained above, the alleged conduct on which Plaintiff bases

his claims occurred long after the investigatory period (i.e., he bases his RESPA claim on a May 21, 2018 submission (and later ones), his FCRA claim on an August 27, 2018 submission, and his TCPA claim on calls made after October 7, 2017). *See generally* Plf.'s Sec. Am. Compl., Doc. 40. Put simply, Defendant's servicing operations from December 1, 2010 through October 24, 2011 and the 2013 Settlement Agreement regarding those operations are not relevant to the claims or defenses in this matter. This is even more true given Plaintiff filed this action on February 18, 2019—more than eight years after time period at issue in the 2013 Settlement Agreement.

### C.  2014 New York Consent Order (i.e. Topic #42 in Plaintiff's Notice of 30(b)(6) Deposition).

In topic #42, Plaintiff requested Defendant designate a witness to testify about the 2014 New York Consent Order. *See* **Ex. A** at Topic #42. Defendant entered into the 2014 New York Consent Order in 2014 to resolve a dispute with the NYDFS. *See generally* 2014 New York Consent Order attached as **Exhibit D**. Plaintiff's attempt to depose Defendant's 30(b)(6) about 2014 New York Consent Order thus fails for the same or similar reasons that his attempts to depose Defendant about the 2013 Consent Judgment and 2013 Settlement Agreement fail (see above). His attempt also fails because the 2014 New York Consent Order did not specifically relate to, address, or reference the servicing of loans in Chapter 13 bankruptcy or responding to notices of errors or requests for information submitted by borrowers—whereas Plaintiff's claims in this action primarily relate to Defendant's alleged treatment of the Loan surrounding Plaintiff's Chapter 13 bankruptcy and Defendant's alleged failure to respond to Plaintiff's alleged notices of error and requests for information. *Comp.* **Ex. D** with Plf.'s Sec. Am. Compl., Doc. 40. Moreover, the 2014 New York Consent Order involved New York loans, New York properties, and New York borrowers. *See generally* **Ex. D**. It did not apply to Indiana

borrowers, loans, or properties. *Id*. Plaintiff is an Indiana resident, the subject property is located in Indiana, and the Loan is secured by an Indiana property. *See* generally Plf.'s Sec. Am. Compl., Doc. 40. Put simply, there is no connection between the 2014 New York Consent Order and Plaintiff's mortgage loan related to a property located in Indiana.

## CONCLUSION

The focus of this case has shifted from conducting discovery on the facts related to this case to litigating over what discovery should be permitted. Disputes over discovery have now become the centerpiece of this case. That is because Plaintiff continues to abuse the discovery process. And, rather than focus on obtaining the information needed to prove his claims, Plaintiff and his counsel instead appear to be more concerned about other regulatory actions that Defendant was involved in years ago and the Defendant entered into to resolve those actions. Plaintiff and his counsel are state and federal regulators and have no authority to enforce the Settlements or bring a claim under them. Moreover, any violation of such Settlements cannot form the basis of any claim by Plaintiff against Defendant. The Settlements have no bearing on the instant action. For these reasons and the above reasons, the Court should enter a protective order to prevent Plaintiff from deposing Defendant's 30(b)(6) representative regarding topics #40, #41, and #42.

Respectfully submitted,

HINSHAW & CULBERTSON LLP


By: <u>*/s/ Joseph D. Kern*</u>
David M. Schultz
Joseph D. Kern
Hinshaw & Culbertson, LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
T: 312-704-3000
F: 312-704-3001
E-mail: dschultz@hinshawlaw.com
E-mail: jkern@hinshawlaw.com

1018199\304996083.v1

## **CERTIFICATE OF SERVICE**

I, Joseph D. Kern, an attorney, certify that on January 17, 2020, caused to be served a copy of the foregoing **DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION FOR PROTECTIVE ORDER WITH INCORPORATED BRIEF IN SUPPORT** by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

☒ ECF
☐ Facsimile
☐ UPS
☐ U.S. Mail
☐ E-Mail
☐ Messenger Delivery

To:   All Parties of Record

*/s/ Joseph D. Kern*
Joseph D. Kern

1018199\304996083.v1