# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Indianapolis Division**

| | | |
|---|---|---|
| ROGER TODD, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No.    2:19-cv-85-JMS-DLP |
| | ) | |
| OCWEN LOAN SERVICING, INC., and | ) | |
| DEUTSCHE BANK NATIONAL TRUST CO., as | ) | |
| Trustee for NovaStar Mortgage Funding Trust, | ) | |
| Series 2007-1, | ) | |
| | ) | |
| *Defendants.* | ) | |

## NOTICE OF RULE 30(B)(6) DEPOSITION OF OCWEN

TO:  OCWEN LOAN SERVICING, LLC and ALL COUNSEL OF RECORD.

PLEASE TAKE NOTICE that, under Federal Rule of Civil Procedure 30(b)(6), Plaintiff Roger Todd, notices the deposition of OCWEN LOAN SERVICING, LLC as an organization on the topics described in Exhibit A to Notice of Rule 30(b)(6) Deposition of Ocwen attached hereto. This deposition may or may not be videotaped, and Plaintiff provides notice to OCWEN LOAN SERVICING, LLC and the other parties to this cause that the deposition may be used at the time of trial. Defendant OCWEN LOAN SERVICING, LLC shall identify the person or persons who will speak on its behalf on each of the described topics at least seven days before the deposition(s). The taking of this deposition may be adjourned from day to day until completed, and may occur over several days if more than one person is designated to provide testimony on the topics described.

DATE AND TIME:  **November 26, 2019, commencing at 9:30 a.m. Eastern Time.**
LOCATION:  **ADVANCED DEPOSITIONS/SIGNATURE COURT REPORTING, INC., 105 SOUTH NARCISSUS AVENUE, SUITE 400, WEST PALM BEACH, FL  33401.**

Respectfully submitted,

*/s/Michael P. Maxwell, Jr.*
Michael P. Maxwell, Jr. No. 10875-49
Travis W. Cohron, No. 29562-30
CLARK QUINN MOSES SCOTT & GRAHN LLP
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
Fax: (317) 687-2344
mmaxwell@clarkquinnlaw.com
tcohron@clarkquinnlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served by first class United States mail, postage prepaid, on October 21, 2019, to:

David M. Schultz
Joseph D. Kern
Hinshaw & Culbertson
151 North Franklin Street Suite 2500
Chicago, IL 60606
dshultz@hinshawlaw.com
jkern@hinshawlaw.com
Telephone: (312) 704-3000
*Counsel for Defendants*

*/s/ Michael P. Maxwell, Jr.*
Michael P. Maxwell, Jr., No. 10875-49

CLARK QUINN MOSES SCOTT & GRAHN, LLP
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
tcohron@clarkquinnlaw.com
mmaxwell@clarkquinnlaw.com

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Terre Haute Division

| | | |
|---|---|---|
| ROGER TODD, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No.   2:19-cv-85-JMS-DLP |
| | ) | |
| OCWEN LOAN SERVICING, INC., and | ) | |
| DEUTSCHE BANK NATIONAL TRUST CO., as | ) | |
| Trustee for NovaStar Mortgage Funding Trust, | ) | |
| Series 2007-1, | ) | |
| | ) | |
| *Defendants.* | ) | |

## EXHIBIT A TO NOTICE OF RULE 30(B)(6) DEPOSITION OF OCWEN

Pursuant to Rule 30(B)(6) of the Federal Rules of Trial Procedure, the individual(s) designated to testify on each of the topics listed must be prepared to testify about information known or reasonably available to Ocwen as an organization. Preparation should include:

a) Reviewing materials, exhibits, evidence, documents and other sources of information relevant to each specific topic;

b) Obtaining information from employees or others with personal knowledge on each specific topic; and

c) Being ready and able to testify as to Ocwen's positions and conclusions regarding each specific topic.

## DEFINITIONS FOR PURPOSES OF RULE 30(B)(6) DEPOSITION

1. "Loan" means collectively the note and mortgage alleged in paragraph 3 of *Plaintiff's First Amended Complaint and Demand for Jury Trial.*

3

2. "Bankruptcy Case" means the bankruptcy case filed by Todd pursuant to Chapter 13 of the United States Bankruptcy Code on March 4, 2011, in the United States Bankruptcy Court for the Southern District of Indiana, Case No. 11-80256-JJG-13.

3. "Deutsche Bank" means the Defendant, Deutsche Bank National Trust Co., as Trustee for NovaStar Mortgage Funding Trust, series 2007-1.

4. "Life of Loan History" means "Exhibit C" attached to *Plaintiff's First Amended Complaint and Demand for Jury Trial*.

## TOPICS FOR 30(B)(6) DEPOSITION

1. The facts and circumstances related to the matters alleged in *Plaintiff's Second Amended Complaint and Jury Demand*.

2. The matters about which Plaintiff has requested admissions of Ocwen in Plaintiff's *Request for Admissions to Ocwen*, served on July 10, 2019.

3. The facts and circumstances specifically related to the filing its *Proof of Claim*, dated March 14, 2011, in the Bankruptcy Case, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or filing it; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or filing it; (c) Ocwen's position and explanation as to whether and why the *Proof of Claim* was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

4. The facts and circumstances specifically related to the filing the *Response to Notice of Final Cure Payment* on May 13, 2016, in the Bankruptcy Case, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or filing it; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or filing it; (c) Ocwen's position and explanation as to whether and why the *Response to Notice of Final Cure Payment* was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

5. The facts and circumstances specifically related to the filing the *Addendum To Response to Notice of Final Cure Payment* on May 13, 2016, in the Bankruptcy Case, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or filing it; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or filing it; (c) Ocwen's position and explanation as to whether and why the *Addendum To Response to Notice of Final Cure Payment* was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

6. The facts and circumstances specifically related to each fee, expense and/or charge assessed against the Loan either during or after the Bankruptcy Case as shown in the Life of Loan

History, including: (a) the nature of each fee, expense and/or charge; (b) the identity of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with deciding or assessing each fee, expense and/or charge; (c) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to deciding or assessing each fee, expense and/or charge; (d) the identity of all persons or entities providing the service/s underlying each fee, expense and/or charge; (e) Ocwen's position and explanation as to whether and why each fee, expense and/or charge was or was not accurate, correct or justified; (f) whether Ocwen actually paid the whole amount of each fee, expense and/or charge to the person or entity providing the service for it; (g) whether Ocwen later received a refund of any portion of any fee, expense and/or charge; and (h) the identity of all invoices, memorandum, documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

7. The facts and circumstances specifically related to each surplus balance shown in Suspense by the Life of Loan History that exceeded Todd's monthly payment obligation for the month in which the surplus balance existed, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or maintaining each surplus balance; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, determining, creating or maintaining each surplus balance; (c) Ocwen's position and explanation as to whether and why each surplus balance was or was not

accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

8. The facts and circumstances specifically related to Ocwen reversing payments in the account on July 6, 2019, totaling $1,944.12, which had previously been paid from Suspense, and not returning said reversed payments to Suspense or applying them elsewhere in the Loan account, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or maintaining the reversed payments; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, determining, creating or maintaining the reversed payments; (c) Ocwen's position and explanation as to whether and why the reversed payments were or were not accurate, correct or justified; (d) the current whereabouts of the $1,944.12 in reversed payments; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

9. The facts and circumstances specifically related to Ocwen reversing payments on July 22, 2015, totaling $972.06, which had previously been paid from Suspense, and not returning $402.90 of said reversed payments to Suspense or applying it elsewhere in the Loan account, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or maintaining the reversed payments; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, determining, creating or

maintaining the reversed payments; (c) Ocwen's position and explanation as to whether and why the reversed payments were or were not accurate, correct or justified; (d) the current whereabouts of the $402.90 of said reversed payments not returned to Suspense or applied elsewhere in the Loan account; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

10. The facts and circumstances specifically related to Ocwen's transfer of $596.16 from Suspense on August 6, 2015, which has not been applied elsewhere in the Loan account, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or maintaining the transfer; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, determining, creating or maintaining the transfer; (c) Ocwen's position and explanation as to whether and why the transfer was or was not accurate, correct or justified; (d) the current whereabouts of the $596.16 comprising the transferred amount; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

11. The facts and circumstances specifically related to Ocwen's posting of Todd's payment of $600.00 to Suspense on August 2, 2016, which post did not increase the balance of Todd's Suspense account, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or maintaining the posting; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees,

agents, subcontractors, vendors or representatives in regard to investigating, determining, creating or maintaining the posting; (c) Ocwen's position and explanation as to whether and why the failure to increase the balance of Todd's Suspense account was or was not accurate, correct or justified; (d) the current whereabouts of the $600.00 in question; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

12. The facts and circumstances specifically related to Ocwen increasing the principle balance of the Loan in the amount of $4,343.35 on January 4, 2017, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or maintaining the balance increase; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, determining, creating or maintaining the balance increase; (c) Ocwen's position and explanation as to whether and why the balance increase was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

13. The facts and circumstances specifically related to Ocwen increasing the principle and interest portion of Todd's monthly payment from $435.51 to $488.15, beginning on February 2, 2017, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or maintaining the increase in question; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, determining, creating or

9

maintaining the increase in question; (c) Ocwen's position and explanation as to whether and why the increase was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

14. The facts and circumstances specifically related to Ocwen's failure to notify Todd or the Trustee during the Bankruptcy Case of any escrow deficiency or of any change in the payment amount on the Loan, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or sending such notices; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, determining, creating or sending such notices; (c) Ocwen's position and explanation as to whether and why the failure to send any notice was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

15. The facts and circumstances specifically related to Ocwen applying from Loan payments $163.64 to escrow from April of 2011 to November of 2011, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding or making each application in question; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, deciding or making each application in question; (c) Ocwen's position and explanation as to whether and why each application in question was or was not accurate,

correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

16. The facts and circumstances specifically related to Ocwen applying $163.64 from Loan payments to escrow from December of 2011 to August of 2012, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding or making each application in question; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, deciding or making each application in question; (c) Ocwen's position and explanation as to whether and why each application in question was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

17. The facts and circumstances specifically related to each and every negative escrow balance shown in the Life of Loan History, including:  (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, creating or maintaining each of these negative escrow balances; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks used by Ocwen's employees, agents, subcontractors, vendors or representatives to investigate, decide, create or maintain each of these negative escrow balances; (c) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to determining when to provide Todd notice about a negative or insufficient escrow balance; (d) Ocwen's position and explanation as to whether and why each negative escrow balances

was or was not correct, accurate or justified; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

18. The facts and circumstances specifically related to each and every time Ocwen sent to Todd correspondence, a notice or other documentation (including without limitation Mortgage Account Statements, Delinquency Notices, Notices of Default and Pre-Foreclosure Notices) that sought from Todd immediate payment of claimed past due amounts on the Loan ("Payment Demand/s"), including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, deciding, drafting, making or sending each Payment Demand; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, deciding, drafting, making or sending each Payment Demand; (c) Ocwen's position and explanation as to whether and why each Payment Demand was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

19. The facts and circumstances specifically related to each telephone call regarding the Loan made to Todd by any employee, agent, subcontractor, vendor or representative of Respondent, including:  (a) The date and time each call was made; (b) the telephone number to which each call was made; (c) the identity of Respondent's employees, persons, agents, subcontractors, vendors or representatives directly involved in making each call; (d) the purpose and content of each call; (e) the details about the actual processes, programs, procedures, equipment and equipment operation involved with the making of each call; (f)

the identity the persons or entities who own any part of any of the equipment or programs used in making each call; (g) whether and why making each call was or was not done by means of an automatic telephone dialing systems as defined under the Telephone Consumer Protection Act; (h) the identity and explanation of each policy, practice or procedure of Ocwen regarding Ocwen's use of automatic dialing systems, predictive dialers, or equipment with the capacity to dial telephone numbers with limited or no human intervention or involvement; (i) whether and why each call was or was not made with the express consent of Todd to receive such calls; (j) whether and why each call was or was not made after Todd had revoked any alleged consent; and (k) the identity of all documents and other sources of information upon which any answers in response to questions for this topic are based.

20. The facts and circumstances specifically related to each and every instance in which Ocwen refused, rejected or returned a payment from Todd on the Loan, including: (a) the identity of the Ocwen employees, agents, subcontractors, vendors or representatives directly involved with each refusal, rejection or return of a payment; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks used by Ocwen's employees, agents, subcontractors, vendors or representatives related to each refusal, rejection or return of a payment; (c) Ocwen's position and explanation as to whether and why each refusal, rejection or return of a payment was or was not correct, accurate or justified; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

21. The facts and circumstances related specifically to Ocwen's response to Todd's communications to Ocwen about the Loan, which response is identified in paragraph 188 of *Plaintiff's First Amended Complaint and Demand for Jury Trial*, including: (a) the identity

of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or making the response; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making the response; (c) the specific steps taken to reasonably investigate and/or correct the claimed errors described in Todd's communication to which Ocwen responded; (d) Ocwen's position and explanation as to whether and why the response was or was correct, accurate or adequate; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

22. The facts and circumstances related specifically to Ocwen's response to Todd's communications to Ocwen about the Loan, which response is identified in paragraphs 195 and 196 of *Plaintiff's First Amended Complaint and Demand for Jury Trial*, including:  (a) the identity of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or making the response; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making the response; (c) the specific steps taken to reasonably investigate and/or correct the claimed errors described in Todd's communication to which Ocwen responded; (d) Ocwen's position and explanation as to whether and why the response was or was correct, accurate or adequate; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

23. The facts and circumstances related specifically to Ocwen's response to Todd's RFI No. 1, which response is identified in paragraphs 207, 209 and 210 of *Plaintiff's First Amended Complaint and Demand for Jury Trial*, including: (a) the identity of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or making the response; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making the response; (c) the specific steps taken to reasonably review RFI No. 1 and obtain documents responsive thereto; (d) Ocwen's position and explanation of whether and why the response was or was not correct, accurate or adequate; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

24. The facts and circumstances related specifically to Ocwen's response to Todd's NOE No. 1, which response is identified in paragraphs 216 and 221 of *Plaintiff's First Amended Complaint and Demand for Jury Trial*, including: (a) the identity of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or making the response; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making the response; (c) the specific steps taken to reasonably investigate and/or correct the claimed errors identified in NOE No. 1; (d) Ocwen's position and explanation as to whether and why the response was or was not correct, accurate or

adequate; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

25. The facts and circumstances related specifically to Ocwen's response to Todd's NOE No. 2, which response is identified in paragraphs 229 and 239 of *Plaintiff's First Amended Complaint and Demand for Jury Trial*, including: (a) the identity of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or making the response; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making the response; (c) the specific steps taken to reasonably investigate and/or correct the claimed errors identified in NOE No. 2; (d) Ocwen's position and explanation as to whether and why the response was or was not correct, accurate or adequate; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

26. The facts and circumstances related specifically to any responses by Ocwen to Todd's RFI No. 3, which RFI No. 3 is identified in paragraph 245 *Plaintiff's First Amended Complaint and Demand for Jury Trial*, including: (a) the identity of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or making any responses; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making any responses; (c) the specific steps taken to reasonably review RFI No. 1 and obtain documents responsive thereto; (d) Ocwen's position and explanation of whether

and why any responses were or were not correct, accurate or adequate; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

27. The facts and circumstances related specifically to Ocwen's response to Todd's NOE No. 3, which response is identified in paragraphs 248 and 258 of *Plaintiff's First Amended Complaint and Demand for Jury Trial*, including: (a) the identity of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or making the response; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making the response; (c) the specific steps taken to reasonably investigate and/or correct the claimed errors identified in NOE No. 3; (d) Ocwen's position and explanation as to whether and why the response was or was not correct, accurate or adequate; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

28. The facts and circumstances related specifically to any responses by Ocwen to Todd's NOE No. 4, which NOE No. 4 is identified in paragraphs 260 of *Plaintiff's First Amended Complaint and Demand for Jury Trial*, including: (a) the identity of all Ocwen employees, agents, subcontractors, vendors or representatives directly involved with investigating, preparing, drafting or making any responses; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making any responses; (c) the specific steps taken to reasonably

investigate and/or correct the claimed errors identified in NOE No. 4; (d) Ocwen's position

and explanation as to whether and why any responses to NOE No. 4 were or were not

correct, accurate or adequate; and (e) the identity of all documents, persons and other sources

of information upon which any answers in response to questions for this topic are based.

29. The facts and circumstances related specifically to any responses by Ocwen to the

correspondence sent to Ocwen on behalf of Todd, dated February 26, 2019, and entitled Fifth

Notice of Error Pursuant to Section 1024.35 of Regulation X ("NOE No. 5"), including:  (a)

the identity of all Ocwen employees, agents, subcontractors, vendors or representatives

directly involved with investigating, preparing, drafting or making any responses; (b) the

details about the actual processes, programs, procedures, safeguards and/or quality control

checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives

in regard to investigating, preparing, drafting or making any responses; (c) the specific steps

taken to reasonably investigate and/or correct the claimed errors identified in NOE No. 5; (d)

Ocwen's position and explanation as to whether and why any responses to NOE No. 5 were

or were not correct, accurate or adequate; and (e) the identity of all documents, persons and

other sources of information upon which any answers in response to questions for this topic

are based.

30. The facts and circumstances related specifically to any responses by Ocwen to the

correspondence sent to Ocwen on behalf of Todd, dated March 4, 2019, and entitled Sixth

Notice of Error Pursuant to Section 1024.35 of Regulation X ("NOE No. 6"), including:  (a)

the identity of all Ocwen employees, agents, subcontractors, vendors or representatives

directly involved with investigating, preparing, drafting or making any responses; (b) the

details about the actual processes, programs, procedures, safeguards and/or quality control

checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to investigating, preparing, drafting or making any responses; (c) the specific steps taken to reasonably investigate and/or correct the claimed errors identified in NOE No. 6; (d) Ocwen's position and explanation as to whether and why any responses to NOE No. 6 were or were not correct, accurate or adequate; and (e) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

31. The facts and circumstances specifically related to each time payments on the Loan by Todd were not properly applied to principle, interest, escrow, and/or fees and charges, including: (a) the identity of Ocwen employees, agents, subcontractors, vendors or representatives directly involved with or responsible for applying each of these payments to principle, interest, escrow, and/or fees and charges; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to applying each of these payment to principle, interest, escrow, and/or fees and charges; (c) Ocwen's position and explanation as to whether and why its employees, agents, subcontractors, vendors or representatives did or did not correctly apply these payments to principle, interest, escrow, and/or fees and charges; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

32. The facts and circumstances specifically related to related to each time payoff statements requested by Todd in regard to the Loan were not provided, including: (a) the identity of Ocwen employees, agents, subcontractors, vendors or representatives directly involved with or responsible for providing these payoff statements; (b) the details about the actual

processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents, subcontractors, vendors or representatives in regard to providing these payoff statements; (c) Ocwen's position and explanation as to whether and why its employees, agents, subcontractors, vendors or representatives did or did not provide the payoff statements as alleged; and (d) the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

33. The facts and circumstances specifically related to any servicing agreements, servicing contracts, or other memoranda, setting forth or describing the terms, limitations, and/or scope of Ocwen's servicing duties as they relate to Deutsche Bank and the Loan, and the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

34. The facts and circumstances specifically related to all servicing manuals, memoranda, notes, polices, and employee training materials for reviewing, analyzing, and responding to Notices of Errors pursuant to 12 C.F.R. §1024.35 and/or responding to any other correspondence from a borrower regarding errors or potential errors with their loans, including the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

35. The facts and circumstances specifically related to all contracts and vendor policies that Ocwen has with any outside entity or vendor that Ocwen utilizes for the mailing of any notices related to the Loan, including without limitation for mailing acknowledgments of, or responses to, Notices of Error pursuant to 12 C.F.R. § 1024.35, and the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

36. The facts and circumstances specifically related to all policies or directives of Ocwen regarding treatment of loans and mortgage accounts of debtors involved in a Chapter 13 bankruptcy, including any post-petition payment application policies and directives, the processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents or representatives in regard to handling and management of loans included in a Chapter 13 bankruptcy, the identity of persons most knowledgeable about the processes, programs, procedures, safeguards and/or quality control checks followed by Ocwen's employees, agents or representatives in regard to handling and management of loans included in a Chapter 13 bankruptcy, and the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

37. The facts and circumstances specifically related to any operational and system deficiencies of Ocwen's REALServicing record system, including specifically operational and system deficiencies in the context of borrowers filing for and completing Chapter 13 bankruptcy proceedings.

38. The facts and circumstances specifically related to all consumer complaints about Ocwen to the Consumer Financial Protection Bureau related to the issue characterized by the Consumer Financial Protection Bureau's Consumer Complaint Database as "Loan modification, collection, foreclosure" during the time period from January of 2016 to the present, and Ocwen's responses thereto, including the identity of all documents, persons and other sources of information upon which any answers in response to questions for this topic are based.

39. The facts and information specifically related to understanding the meaning and implications of each item of information in each document produced by Ocwen to Todd in response to any request for production served by Todd on Ocwen.

40. The facts and circumstances specifically related to or addressed by the Consent Judgment in the United State District Court for the District of Columbia in *Consumer Fin. Prot. Bureau, et al. v. Ocwen Fin. Corp., et al.,* Case No. 13-cv -2025 (RMC)(D.D.C.).

41. The facts and circumstances specifically related to or addressed by the Settlement Agreement and Consent Order in *In Re: Ocwen Financial Corporation and Ocwen Loan Servicing, LLC.,* Case No. C-13-1153.

42. The facts and circumstances specifically related to or addressed by the Consent Order Pursuant to New York Banking Law § 44 in *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC.* (Dec. 22, 2014).

43. The facts and circumstances specifically related to or addressed by the Settlement in *Snyder, et al., v. Ocwen Loan Servicing, LLC, No. 1:14-cv-08461 (N.D. Ill.).*