UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROGER TODD,<br><br>    Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, INC., and DEUTSCHE BANK NATIONAL TRUST CO., as Trustee for NovaStar Mortgage Funding Trust, Series 2007-1,<br><br>    Defendant. | Case No. 2:19-cv-00085-JMS-DLP |

**DEFENDANT OCWEN LOAN SERVICING, LLC'S
MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF ROGER TODD'S
NON-PARTY SUBPOENA TO STONE TURN GROUP, LLP WITH INCORPORATED
BRIEF IN SUPPORT**

Defendant Ocwen Loan Servicing, LLC ("Defendant"), incorrectly named in the caption as Ocwen Loan Servicing, Inc., through its undersigned counsel, respectfully requests that, pursuant to Federal Rules of Civil Procedure 26 and 45, the Court enter a protective order to prevent non-party Stone Turn Group, LLP ("Stone Turn") from having to produce the documents Plaintiff Roger Todd ("Plaintiff") requested from Stone Turn by virtue of subpoena.  In support, Defendant states as follows:

**INTRODUCTION**

This case involves a single plaintiff and a single mortgage loan.  The single question at issue is whether Defendant improperly serviced ***Plaintiff's mortgage loan*** in violation of the various state and federal statutes on which Plaintiff bases his claims.  Nothing else is at issue. Despite this, Plaintiff seeks broad, sweeping, irrelevant, and grossly disproportionate discovery from non-party Stone Turn.  Stone Turn served as a "Compliance Monitor" in connection with consent orders Defendant entered into with the New York Department of Financial Services

("NYDFS") between 2011 and 2014 to resolve disputes with that state regulator. The consent orders concerned **_New York_** borrowers and **_New York_** mortgage loans. There is no connection between Stone Turn's work regarding Defendant's settlements with a **_New York_** regulator (from more than five years ago) and Plaintiff (i.e., an Indiana resident and borrower) or his Indiana mortgage loan.

Despite the lack of any connection or relevance to his mortgage loan or this case, Plaintiff subpoenaed Stone Turn requesting the following irrelevant information:

> Copies of **_all_** Compliance Review Reports, findings, or official correspondence, **_provided_** to the New York State Department of Financial Services with regard to Ocwen Loan Servicing, LLC (or any related entity of Ocwen Loan Servicing, LLC) from January 1, 2013 to December 31, 2018.

*See* Subpoena to Stone Turn Group, LLP (the "Stone Turn Subpoena"), attached hereto as **Exhibit A** (emphasis added).

The documents Plaintiff seeks from Stone Turn do not concern Plaintiff's mortgage loan or the servicing of mortgage loans in Indiana—nor do they have any bearing on whether Defendant improperly serviced Plaintiff's mortgage loan as alleged in his second amended complaint (i.e., the operative complaint). In fact, Plaintiff does not reference or mention the New York consent orders in his second amended complaint. *See generally* Plf.'s Sec. Am. Compl., Doc. 40. Plaintiff's attempt to subpoena the above documents from Stone Turn is nothing more than an abuse of the discovery process.[1] At least one court has already quashed a similar subpoena that another plaintiff served on Stone Turn in another consumer action against Defendant. *See* Order Granting Motion for Protective Order, *Ponder v. Ocwen Loan Servicing*, Case No. 1:16-cv-04125-ODE-LTW (N.D. Ga. July 16, 2019), Doc. 158. This Court should do the same.

---

[1] Stone Turn served objections to Plaintiff's subpoena on or around November 19, 2019. Attached as **Exhibit B** is a copy of such objections.

## **ARGUMENT**

Discovery is not limitless. Rule 26(b) of the Federal Rules of Civil Procedure limits discovery to "nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Noble Roman's Inc. v. Hattenhauer Distributing Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016). "The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's Inc.*, 314 F.R.D. 304 at 307. A "court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: . . . (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). The tool available to courts to limit discovery that runs afoul of Rule 26(b)(1) includes the issuance of a protective order under Rule 26(c). *Noble Roman's*, 314 F.R.D. at 309.

When deciding whether to exercise their discretion to limit discovery, courts should do so with the understanding that the fundamental principle of Rule 26(b)(1) of the Federal Rules of Civil Procedure is "that lawyers must size and shape their discovery requests to the requisites of a case." *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016). This is even more true following the 2015 amendments to Rule 26(b)(1), which emphasized the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. Discovery is intended to provide the parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id*.

Honorable Doris L. Pryor explained in *Trupp v. Roche Diagnostics Corp.* that "[d]iscovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy." 2019 U.S. Dist. LEXIS 87764, *4 (S.D. Ind. 2019). Judge Pryor also explained that "Federal Rule 26(b), describing the scope and limits of discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process." *Id*. at 5.

Here, Plaintiff's subpoena to a non-party Stone Turn is invasive, harassing, and nothing more than an exercise in "over-discovery" and an abuse of the discovery process. There simply is no reason for Plaintiff to seek information from New York regulators relating to New York borrowers, when Plaintiff is an Indiana resident, the loan at issue in this case is an Indiana loan, and the property at issue is located in Indiana. The documents Plaintiff seeks from Stone Turn plainly are not relevant to the claims or defenses in this case—nor proportional to the needs of this case. And, even if they were, they are privileged under state and federal law. The Court should, therefore, enter a protective order to prevent Stone Turn from having to produce the requested documents.

**I.  The Documents Plaintiff Seeks from Non-Party Stone Are Not Relevant to the Claims or Defenses in this Matter Nor Proportional to the Needs of this Case.**

Judge Pryor correctly explained, when she granted Defendant's motion for protective order to prevent the deposition of Ocwen Financial Corporation's former chief executive officer, that "Plaintiff seeks to broaden the scope of this case by referring to other nationwide litigation that involves Defendant Ocwen or its related companies; what the Plaintiff forgets, however, is that this case is limited to a single-plaintiff consumer protection matter regarding the handling of Mr. Todd's mortgage loan. This is not a nationwide collective action . . ." *See* the Court's December 13, 2019 Order in this Case, Doc. 84. Indeed, the single question at issue is whether Defendant

improperly serviced **_Plaintiff's mortgage loan_** in violation of the various state and federal statutes on which Plaintiff bases his claims. The documents Plaintiff requests from non-party Stone Turn shed no light and have no bearing on this issue.

Liability in this case does not turn on the audits, analysis, or correspondence Stone Turn may have prepared in connection with the consent orders Defendant entered with the NYDFS. This especially is true because such documents concern New York borrowers and New York loans. They directly relate to an investigation and compliance monitoring by the **_New York_** Department of Financial Services regarding settlements Defendant reached with that department. This case involves an Indiana borrower, Indiana property, and Indiana loan—not a New York borrower, property, or mortgage loan. The consent orders with the NYDFS and any related reports or underlying documents have **_nothing_** to do with Plaintiff, his mortgage loan, or the claims he asserts in this case. This especially is true because Defendant entered into the purported New York consent orders more than five years ago (i.e., between 2011 – 2014)—and long before Defendant's alleged servicing errors with respect to Plaintiff's mortgage loan occurred. In particular, Plaintiff alleges Defendant violated the Real Estate Settlement Procedures Act ("RESPA") by failing to respond to various notices of error and requests for information. But, the first alleged notice of error and/or request for information at issue was allegedly sent by Plaintiff to Defendant on May 21, 2018. *See* Plaintiff's Sec. Am. Compl., Doc. 40, ¶206. Similarly, Plaintiff bases his claim under the Fair Credit Reporting Act ("FCRA") on Defendant's alleged failure to reasonably investigate a credit dispute Plaintiff alleges he submitted on August 27, 2018. *Id*. at ¶317. And, finally, Plaintiff bases his claim under the Telephone Consumer Protection Act ("TCPA") on calls Defendant allegedly made after October 7, 2017. *Id*. at ¶289. All of these events occurred after Defendant entered into the purported New York consent orders between 2011 and 2014.

Moreover, the irrelevance of the documents sought by Plaintiff is apparent on the face of what is at issue in this case. For example, and as briefly explained above, Plaintiff alleges that Defendant failed to meet its statutory obligations under RESPA by inadequately responding to alleged notices of error and requests for information. *See generally*, Pl.'s Sec. Am. Compl., Doc. 40. Liability on Plaintiff's RESPA claim thus will turn on (i) whether Plaintiff's correspondence constituted a notice of error or request for information under RESPA, and if so (ii) whether Defendant met its statutory obligations in investigating and responding to such correspondence. Similarly, Plaintiff's FCRA claim hinges on whether Defendant met it statutory obligations under that Act regarding a credit dispute Plaintiff alleges he submitted in August 2018. The New York consent orders and/or Defendant's compliance with those orders shed no light on either claim. The same is true for Plaintiff's other claims. In particular, Defendant's liability under the Fair Debt Collection Practices Act, the TCPA, or Indiana state law with respect to Defendant's handling of Plaintiff's Indiana mortgage loan is in no way influenced by what Stone Turn observed or reported to a ***New York*** regulator. In the same vein, Defendant's defenses have no connection to the information sought from Stone Turn either. Put simply, whether or not Defendant complied with the New York consent orders has no bearing on its alleged liability in this case and has no bearing on whether it complied with statutory obligations with respect to Plaintiff's Indiana mortgage loan. Defendant's liability also does not turn on what Stone Turn communicated to the NYDFS about compliance with the terms of consent orders relating to New York mortgage loans. There is no connection between Stone Turn and its role as "Compliance Monitor" and the instant case whatsoever. This renders any documents Stone Turn may have regarding such compliance as irrelevant and disproportional to the needs of this case. *See Noble Roman's*, 314 F.R.D. at 312.

At least one court has already quashed a similar subpoena that another plaintiff served on Stone Turn in another consumer action against Defendant. *See* Order Granting Motion for Protective Order, *Ponder v. Ocwen Loan Servicing*, Case No. 1:16-cv-04125-ODE-LTW (N.D. Ga. July 16, 2019), Doc. 158. In *Ponder*—a consumer action brought under RESPA, the FCRA, and the FDCPA—the plaintiff served a non-party subpoena to Stone Turn and several other entities seeking the same information that Plaintiff seeks here. Defendant moved for a protective on substantially the same grounds as those here and prevailed. *Id.*, Doc. 112-3. In the same matter, the United States District Court for Massachusetts also granted Defendant's motion to quash the subpoena to Stone Turn. *See* Order Granting Motion to Quash, *Ponder v. Ocwen Loan Servicing*, Case No. 1:19-mc-91215-ADB (D. Mass. May 24, 2019), Doc. 5. The facts and law require the same result in this case.

Accordingly, because the documents and information Plaintiff seeks from Stone Turn wholly are irrelevant to Plaintiff's claims and Defendant's defenses, the Court should enter a protective order to prevent their production.

**II.     Allowing the Documents to Be Produced by Stone Turn Creates an Undue Burden on Defendant.**

This Court has found that, among others, "[o]ne ground for issuing a protective order is 'undue burden,'" and that "one reason a party may be deemed unduly burdened by discovery is that the discovery falls outside its proper scope and limits under Rule 26(b)." *Noble Roman's*, 314 F.R.D. at 309. That is the case here.

As explained above, the information sought in the Stone Turn subpoena wholly is irrelevant to Plaintiff's claims in this case. The burden of reviewing the documents (i.e., employee time and effort, as well as substantial attorney time, effort, and expense) and litigating over the documents (i.e., conducting or defending depositions on the matters contained in the documents and/or

7

challenging admissibility through motions in limine) greatly outweighs any benefit (there is none) that this information would have in this case. To that end, the request for these documents—and the burden that would ensue—is not proportional to the needs of the case. In fact, there is absolutely no need for the requested documents in this case as they have no bearing on Defendant's liability. They are nothing more than a distraction from the actual issues at hand. This precisely is the type of burden that this Court found warrants issuance of a protective order. *Noble Roman's*, 314 F.R.D. at 312.

**III.    New York Law and the Federal Bank Examination Privilege Bar Production of the Documents Plaintiff Seeks from Stone Turn.**

    **A.    New York Banking Law § 36.**

The Court should entered a protective order to prohibit the production of the documents Plaintiff seeks from Stone Turn because they are privileged and protected from disclosure under New York law. Specifically, New York Banking Law § 36 provides broad protection from disclosure all documents concerning or arising from a regulatory examination or investigation:

> All reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examination and investigation . . . **shall be confidential communications, shall not be subject to subpoena and shall not be made public** unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof, in which event the superintendent may publish or authorize the publication of a copy of any such report or any part thereof in such manner as may be deemed proper or unless such laws specifically authorize such disclosure.

N.Y. Banking Law § 36.10 (emphasis added).

New York courts have consistently enforced the protections provided under New York Banking Law § 36. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 U.S. Dist. LEXIS 158455, *26-30 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel production of documents in part under N.Y. Banking Law § 36.10 because that provision protected the sought materials from

8

disclosure); *Clark v. Flynn*, 9 A.D.2d 249, 251-252 (N.Y. App. Div. 1959) (holding that a letter from the banking department fell within the scope of documents subject to the New York banking privilege); *Matter of Estate of Saxon*, 176 Misc. 2d 724, 727 (N.Y. Sur. 1998) ("witness by law [was] prohibited from revealing any aspect of the bank examiner reports conducted by the Superintendent of Banks and the Federal Reserve Bank").

Here, the documents Plaintiff seeks from Stone Turn precisely are those that New York Banking Law § 36.10 prohibits the disclosure of. The Stone Turn subpoena asks for "all Compliance Review Reports, findings . . ." *See* **Ex. A**. The first type of document prohibited by the New York law is "reports of examinations and investigations." N.Y. Banking Law § 36.10. The Stone Turn subpoena next asks for "official correspondence." *See* **Ex. A**. The next type of document prohibited from disclosure by the New York law is "correspondence." N.Y. Banking Law § 36.10. In other words, each item sought in the Stone Turn subpoena is explicitly protected from disclosure and subpoena. The Court should, therefore, enter a protective order to prevent the production and disclosure of the documents Plaintiff seeks from Stone Turn.

### B.   Federal Banking Examination Privilege.

The Court should also enter a protective order because the documents Plaintiff seeks from Stone Turn sought are privileged pursuant to the federal banking examination privilege.

"Federal courts 'have long recognized that the report of a bank examiner is protected by a qualified privilege.'" *Rouson ex rel. Estate of Rouson v. Eicoff*, 2006 U.S. Dist. LEXIS 74019, *12 (E.D.N.Y. 2006) (citing *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992)). This privilege, often referred to as the bank examination privilege, "is firmly rooted in practical necessity[,]" *In re Subpoena Served on Comptroller*, 967 F.2d at 633, and is "designed to promote the effective functioning of an agency by allowing the agency and the

9

regulated banks the opportunity to be forthright in all communications." *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995).

The bank examination privilege "protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of the banks." *Linde v. Arab Bank, PLC*, 2009 U.S. Dist. LEXIS 86021, *7 (E.D.N.Y. 2009). The privilege specifically "covers the opinions and recommendation of bank examiners and the banks' responses to the examiners' inquiries." *Id.* at 7-8; *see also Bank of China v. St. Paul Mercury Ins. Co.*, 2004 U.S. Dist. LEXIS 23364, *11-18 (S.D.N.Y. 2004) (denying discovery in part based on the bank examination privilege). Moreover, "[c]ourts have justified the privilege because of the distinctively continuous and informal process of bank regulation, which especially requires candor from regulated entities." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013). Indeed, the court in *JPMorgan Chase* stated:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency. This relationship is both extensive and informal . . . in the sense that it calls for adjustment, not adjudication . . . These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Id.*

Here, the Stone Turn subpoena seeks documents that would contain the opinions, recommendations, analysis, and findings of Stone Turn in its role as a "Compliance Monitor" pursuant to the consent orders Defendant entered into with the NYDFS, which concerns Defendant's handling of New York mortgage loans. The banking examination privilege protects these exact types of opinions, recommendations, analysis, and findings.

## **CONCLUSION**

The focus of this case has shifted from conducting discovery on the facts related to this case to litigating over what discovery should be permitted. Disputes over discovery have become the centerpiece of this case. That is because Plaintiff continues to abuse the discovery process. And, rather than focus on obtaining the information needed to prove his claims, Plaintiff and his counsel instead appear to be more concerned about other regulatory actions that Defendant was involved in years ago and the settlements Defendant entered into to resolve those actions. Those earlier settlements and Defendant's compliance with such settlements have no bearing on the instant action. For these reasons, and the above reasons, the Court should enter a protective order to prevent the production of the documents Plaintiff seeks in the Stone Turn subpoena.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: */s/ Joseph D. Kern*
David M. Schultz
Joseph D. Kern
Hinshaw & Culbertson, LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
T: 312-704-3000
F: 312-704-3001
E-mail: dschultz@hinshawlaw.com
E-mail: jkern@hinshawlaw.com

## CERTIFICATE OF SERVICE

      I, Joseph D. Kern, an attorney, certify that on January 21, 2020, caused to be served a copy of the foregoing **DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF ROGER TODD'S NON-PARTY SUBPOENA TO STONE TURN GROUP, LLP WITH INCORPORATED BRIEF IN SUPPORT** by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

☒ ECF
☐ Facsimile
☐ UPS
☐ U.S. Mail
☐ E-Mail
☐ Messenger Delivery

To:   All Parties of Record

                                               */s/ Joseph D. Kern*
                                               Joseph D. Kern

1018199\305002513.v1