UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROGER TODD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00085-JMS-DLP |
| | ) | |
| OCWEN LOAN SERVICING, INC., | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| CO., as Trustee for NovaStar Mortgage | ) | |
| Funding Trust, Series 2007-1, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on the Plaintiff's Motion to Compel and for an Order Imposing Sanctions, Dkt. [66]. The motion was referred to the Undersigned for ruling and, for the reasons that follow, is hereby **GRANTED IN PART** and **DENIED IN PART**.

**I.  Background**

Plaintiff, Roger Todd, holds a mortgage loan with NovaStar Mortgage, Inc. ("the Loan"). The Loan is held in trust by Defendant Deutsche Bank National Trust Co., and is serviced by Defendant Ocwen Loan Servicing, Inc[1] ("Ocwen"). On March 2, 2011, Plaintiff filed for bankruptcy in the Southern District of Indiana, in order to cure all pre-petition defaults on the Loan. Plaintiff entered into a Chapter 13

---

[1] The Defendant consistently notes in filings that the Plaintiff improperly sued "Ocwen Loan Servicing, Inc.," when the entity's proper name is "Ocwen Loan Servicing, LLC." The Defendant, however, has yet to file a motion to correct the caption, so the Court will use the Defendant's name as it appears on the docket at this time.

1

repayment plan and made his last payment on the Loan on May 2, 2016. (Dkt. 40 at 10-11). The trustee and Ocwen agreed that Plaintiff had cured his pre-bankruptcy petition default and on July 23, 2016, the bankruptcy plan was discharged, and the Loan was reinstated according to the original terms. (Dkt. 40 at 11).

In June 2018, the Plaintiff obtained a copy of the loan mortgage transactional history for the Loan from Ocwen. (Dkt. 40 at 12). Plaintiff alleges that upon review of this history, he discovered "a myriad of unexplainable and errant servicing conduct." (Id). This allegedly improper servicing conduct led to the instant case, wherein the Plaintiff alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Telephone Consumer Protection Act ("TCPA"), the Indiana Deceptive Consumer Sales Act ("IDCSA"), the Indiana Crime Victims' Relief Act ("ICVRA"), and the Truth in Lending Act ("TILA"). (*See* Dkt. 40).

During the discovery process in this action, Plaintiff has requested that the Defendant produce various documents that the Defendant has objected to producing. The parties met and conferred regarding this issue and discussed it with the Court during telephonic discovery conferences conducted on October 30, 2019 and November 7, 2019. With the Court's permission, the Plaintiff filed the present Motion to Compel and for an Order Imposing Sanctions on November 20, 2019. The Defendant filed a response on December 11, 2019, and the Plaintiff filed a reply on December 25, 2019. (Dkts. 78, 95).

## II. Legal Standard

Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial. 8 Wright & Miller, *Federal Practice and Procedure* § 2001, at 44-45 (2d ed. 1994). To effectuate these purposes, the federal discovery rules are liberally construed. *Spier v. Home Ins. Co.*, 404 F.2d 896 (7th Cir. 1968). See also 8 Wright & Miller, *Federal Practice and Procedure* § 2001, at 44 (2d ed. 1994).

Rule 26 of the Federal Rules of Civil Procedure permits the discovery of nonprivileged matter "that is relevant" to a party's claim or defense and "proportional" to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Rule 26(b)(1). "Discovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy." *McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 WL 5348536, at *7 (S.D. Ind. Sept. 24, 2013).

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). The party opposing a motion to compel has the burden to show the discovery requests are improper and to explain *precisely* why its objections are proper given the broad and liberal construction of the federal discovery rules. *In re Aircrash Disaster Near Roselawn, Inc. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D.

Ill. 1997); *Cunningham v. Smithkline Beecham*, 255 F.R.D 474, 478 (N.D. Ind. 2009).

Rule 26(b)(2)(C) requires the Court to limit the extent of discovery if it finds that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; ... or ... is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Federal Rule 26(b), describing the scope and limits of discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process. *United States ex rel. Conroy v. Select Med. Corp.*, 307 F. Supp. 3d 896 (S.D. Ind. 2018). Magistrate judges enjoy extremely broad discretion in controlling discovery. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013).

### III. Discussion

Plaintiff indicates that Defendant Ocwen used a software-based servicing system, called REALServicing, that was subject to various failings. (Dkt. 67 at 2). In the normal course of business, he argues, Ocwen maintained spreadsheets, called "Risk Convergence Reports," that tracked regulatory violations and potential areas for risk with the REALServicing platform. (Dkt. 67 at 2). In his requests for production, Plaintiff sought these Risk Convergence Reports ("RCR"), and any email correspondence containing reference to specific issues identified within them, because they allegedly contain information relevant to establishing Ocwen's knowledge, willful indifference, or deliberate violation of federal law. (Id). Finally,

4

Plaintiff notes that "this case is not merely about Todd's loan or an unforeseeable error that could not have been avoided – it involves a knowing 'pattern and practice' of mortgage servicing misconduct, Ocwen's refusal to address both curable and incurable deficiencies known to exist with regard to REALServicing and having the effect of creating manufactured states of default generally and with regard to Todd's loan specifically and, thus, willfully indifferent conduct." (Dkt. 67 at 3). Specifically, Plaintiff requested "all Risk Convergence Reports created between January 1, 2014 and August 31, 2016." (Dkt. 67-11 at 2). Additionally, the Plaintiff also requested all email correspondence from any employee of Ocwen between January 1, 2013 through today that contain twelve specific key words.

Defendant argues in response that the Plaintiff's requests are overly broad, unduly burdensome, not proportional to the needs of the case, seek information not relevant to the claims or defenses in this matter, seek information protected by the self-critical analysis privilege, and seek information protected by Federal Rule of Evidence 408. (Dkt. 78 at 2). The Plaintiff reiterates in reply that the requests are relevant, proportional, narrowly tailored, and not protected by any privilege. (Dkt. 95 at 2-5). The Court will address the Plaintiff's request to compel RCR and email correspondence separately.

### A. Risk Convergence Reports

As noted above, Plaintiff contends that "Ocwen tracks its regulatory violations, risk areas, and other failures in spreadsheets called 'Risk Convergence Reports.'" (Dkt. 67 at 2). These RCRs allegedly contain information about

REALServicing failures and limitations, including "the handling of loans involved in a Chapter 13 bankruptcy, the investigation and correction of consumer credit reporting disputes, payment misapplications, and the assessment of inappropriate fees and costs." (Id). The Defendant contends that the discovery request seeking RCRs asks for irrelevant information, is overly broad and not proportional to the needs of the case, is protected by the federal evidence rules, and is protected by the self-critical analysis privilege. (Dkt. 78 at 3-12). Because it is the Defendant's burden to prove the discovery request improper, the Court will address each of the Defendant's objections to production in turn.

### i. Relevance

The Defendant asserts that irrespective of whether it tracked potential regulatory violations through an RCR, that fact does not relate to the claims in this case, namely that the Defendant allegedly violated various state and federal statutes with respect to the Plaintiff's loan. (Dkt. 78 at 4). Ocwen further argues that the Plaintiff's request for *all* RCRs dating back to January 2014 will, by definition, have nothing to do with the present case because the RCRs are a "global self-analysis of Defendant's operations" and "not loan specific." (Id. at 5).

The Plaintiff argues that the RCRs are relevant to the claims in this matter because they are central to "establishing Ocwen's knowledge of systematic problems with its servicing platform RealServicing and the wholesale absence of procedures necessary to ensure compliance with the federal consumer protection laws implicated herein." (Dkt. 67 at 7). Specifically, these reports would help establish

the "willful" element of the FCRA, a pattern or practice of noncompliance for the RESPA, an incurable deceptive act for the IDCSA, the "knowingly or intentionally" element of the ICVRA, the knowledge element of the discharge injunction and automatic stay, and the "knowing or willful" element of the TCPA. (Dkt. 67 at 8).

The Court tends to agree with the Plaintiff. As part of his claims under various state and federal laws, he must demonstrate that Ocwen had knowledge that various violations would or could occur and that, despite that knowledge, it did not act to prevent those violations. Plaintiff has explained numerous times, over repetitious discovery conferences, that, if provided, the RCRs will be used to show that Ocwen was aware of the widespread problems related to the REALServicing platform, had been aware for a significant period of time, and had not engaged in the appropriate corrective behavior. Accordingly, the Court finds that the Plaintiff's request for the RCRs is relevant.

### ii. Proportionality

The Defendant next argues that the Plaintiff's request for all RCRs between January 1, 2014 and August 31, 2016 is overly broad and not proportional to the needs of this case. (Dkt. 78 at 6-7). Ocwen further notes that the request seeks RCRs dating back to more than five years before the present suit was filed, almost three years before the termination of Plaintiff's bankruptcy, and more than four years before Plaintiff's first correspondence with the Defendant. (Id). Defendant concludes, therefore, that the Plaintiff's discovery request "goes well beyond the

7

scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure." (Id).

The Plaintiff contends that the discovery request is sufficiently narrowly tailored. (Dkt. 67 at 17). Given "the CFPB's description of Risk Convergence Reports, the limited number of spreadsheets at issue, and the ease of producing them electronically, the request simply cannot be construed more narrowly." (Id). Moreover, Plaintiff argues, the request is proportional to the needs of the case when considering the relevant factors. (Id. at 18).

Under Rule 26, the discovery sought must not only be relevant, but it must be "proportional" to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.,* 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Proportionality, like other concepts, requires a common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018) ("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'").

In looking to the importance of the issues at stake here, the Plaintiff argues that the issues of "systematic mortgage servicing errors resulting in manufactured states of default and wrongful foreclosure" could hardly be more important. (Dkt. 67 at 18-19). Although the Defendant listed the relevant proportionality factors in its brief, it does not address or analyze them with respect to the RCRs. Thus, the Court must glean its arguments from the remaining portions of its brief. The Defendant seems to suggest that because the Plaintiff is one individual, with one mortgage loan, that the issues in this case are limited in importance. (Dkt. 78 at 4).

As to the amount in controversy, the Plaintiff contends that his case is worth "in the millions of dollars." (Dkt. 67 at 19). The Defendant does not appear to contest this valuation.

Next, the Court considers the parties' relative access to relevant information and the parties' resources. The Defendant maintains sole access to the reports requested, and the information contained in those reports is not available to the Plaintiff through any other avenue. Similarly, the Plaintiff is one man, while the Defendant is a billion dollar, publicly traded corporation. Both the issue of access and resources weigh in favor of the Plaintiff.

The Court must also contemplate the importance of the requested discovery in resolving the issues in the case. Here, the Defendant notes generally that liability only "hinges on whether Defendant improperly sought to collect amounts discharged in bankruptcy, failed to properly complete a bankruptcy reconciliation following the termination of the bankruptcy action, and failed to adequately respond to the

9

Correspondence Plaintiff alleges he submitted to Defendant from May 21, 2018 through January 29, 2019." (Dkt. 78 at 4). The Plaintiff, on the other hand, alleges that the requested information will lead to the Plaintiff establishing necessary elements of each statute under which he brings a claim against Ocwen, most of which involve Ocwen's knowledge or notice of insufficiencies in the mortgage servicing process. The Court is inclined to agree with the Plaintiff.

The Defendant is correct insofar as the case's liability does hinge on whether it improperly engaged in actions related to Plaintiff's mortgage loan and subsequent bankruptcy. The Defendant does not acknowledge, however, the importance of its own knowledge and notice of the deficiencies prior to the events alleged in Plaintiff's complaint. This discovery will address these necessary issues in the case.

Finally, the Court must weigh the possible burdens of producing the information with the benefits elicited by its production. Based on the parties' briefing, the burden involved in producing the RCRs seems minimal at best. Fewer than 50 RCR spreadsheets exist that are readily available for Ocwen to produce. Thus, the benefit of the information, that it may prove necessary elements of the Plaintiff's claim, outweighs the burden in producing the documents.

In sum, the Defendant here relies on the *ipse dixit* that the Plaintiff's discovery request is not proportional to the case, without providing any analysis or factual support to that assertion. As stated previously, the burden remains on Ocwen to support its objection that the Plaintiff's request is not proportional to the needs of this case. The Defendant has not met that burden – accordingly, the

Plaintiff's discovery request for the Risk Convergence Reports is proportional to the needs of this case.

### iii. Federal Rule of Evidence 408

The Defendant argues that the RCRs were prepared to track compliance with legal obligations under various consent decrees[2] that Ocwen entered into and, therefore, those RCRs are subject to protection by Federal Rule of Evidence 408. (Dkt. 78 at 7). Ocwen further notes that the consent decrees contained language making clear that Ocwen made no admission by entering into them and that they could not be used as evidence against Ocwen for any purpose. (Id. at 8). Defendant finally notes that, contrary to the Plaintiff's contention, the Court may prohibit discovery of the RCRs under FRE 408. (Id. at 9).

The Plaintiff argues that the Defendant is raising an evidentiary objection to the admission of certain documents into evidence, rather than raising a valid objection to discovery. (Dkt. 67 at 16). Furthermore, Plaintiff states: "it is important to again note the Risk Convergence Reports were prepared and kept in the ordinary course of business, not in anticipation of litigation. . . . Ocwen was using Risk Convergence Reports to monitor regulatory exposure *before* any particular regulatory action and they continue[d] to be created and utilized long *after* any particular regulatory action. (Dkt. 95 at 3-4) (emphasis original).

---

[2] The consent decrees at issue in this case are: Settlement Agreement and Consent Order, *In re: Ocwen Financial Corporation and Ocwen Loan Servicing, LLC*, No. C-13-1153-14-C001, at 1-2 (Dec. 19, 2013) and Consent Judgment, *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 13-2025 (RMC) (D.D.C. Dec. 19, 2013). The Plaintiff moved the Court for judicial notice of these decrees on April 26, 2019, and that request was denied on June 25, 2019 for improper timing insofar as no dispute between the parties was presently pending before the Court. (Dkts. 21, 33).

11

The Defendant focuses much of its brief on whether consent decrees are subject to protection by FRE 408 – that, however, is not the issue here. The Plaintiff is not requesting the consent decrees in discovery, nor is he seeking to admit those consent decrees into evidence at this time. The cases cited by the Defendant largely reference parties' attempts to use consent decrees at trial or as designated evidence in summary judgment motions. Again, that is not the situation here. The consent decrees do not mandate that Ocwen maintain RCRs – rather, it appears from the briefing that Ocwen prepared the RCRs for internal use in order to track and prevent any further issues that may result in a subsequent consent decree.

The Undersigned has not been able to find any other Court in the country that has confronted the issue of whether RCRs are discoverable, let alone whether they are subject to protection by FRE 408. On this matter of first impression, the Court tends to agree with the Plaintiff. The RCRs, while potentially a result of the nationwide consent decrees, do not necessarily hinge on the terms of those decrees, nor do they reveal any confidential information from the settlement negotiation process. Instead, the RCRs appear to be spreadsheets created in the normal course of Ocwen's business, in an attempt to track potential points of liability and forestall future regulatory action.

Moreover, even if the RCRs did sufficiently relate to the consent decrees, the commentary to FRE 408 provides that the 2006 amendment "does not affect the case law providing that Rule 408 is inapplicable when evidence of the compromise is

12

offered to prove notice. *See, e.g. United States v. Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful)." As discussed above, the Plaintiff seeks the RCRs to prove that Ocwen was on notice that its loan-servicing practices, especially with regard to individuals who have a loan and declare bankruptcy, were inadequate and noncompliant with state and federal law. Accordingly, FRE 408 does not prohibit the Plaintiff from requesting and obtaining the RCRs in discovery.

### iv. Self-Critical Analysis Privilege

The Defendant's final objection is that the Plaintiff's discovery request is barred by the self-critical analysis privilege. (Dkt. 78 at 9). The Defendant urges the Court to protect its RCRs because forcing their production "would result in companies not conducting [a self-critical] analysis out of fear that any information from the analysis would be used against them in litigation." (Id. at 11). Finally, Ocwen argues that the Plaintiff's contention that the privilege is not recognized in this Circuit is false and misleading. (Id. at 12).

The Plaintiff responds that the case law in the Seventh Circuit does not definitively establish the existence of the self-critical analysis privilege. (Dkt. 67 at 11). Based on the fact that neither the district courts in the Circuit, nor the Seventh Circuit itself, have adopted the privilege, the Plaintiff urges this Court to similarly refuse to recognize the privilege. (Id. at 12).

The self-critical analysis privilege protects internal and confidential performance evaluations, internal investigations records, and other documents containing an organization's self-critical analyses. *Lund v. City of Rockford*, No. 17 CV 50035, 2017 WL 5891186, at *4 (N.D. Ill. Nov. 29, 2017). The rationale behind this privilege is that disclosing these documents will deter or suppress socially useful investigations and evaluations or compliance with the law, and that individuals and organizations will not candidly evaluate their compliance with regulatory or legal requirements out of fear of creating evidence that may be used against them. *Id*.

The Defendant argues that the self-critical analysis privilege has been recognized by the Seventh Circuit and by courts within the Circuit, citing mainly to *Tice v. American Airlines, Inc.*, 192 F.R.D. 270 (N.D. Ill. 2000). *Tice* begins the discussion by stating: "[a]ssuming that federal common law recognizes the self-critical analysis privilege . . . ." *Tice*, 192 F.R.D at 272. It also notes that the "parameters of the privilege, like the existence of the privilege itself, are rather vague." *Id*. Contrary to the Defendant's assertions, *Tice* does not provide affirmative proof that the privilege is recognized in this Circuit. The Defendant also cites to *Coates v. Johnson & Johnson,* 756 F.2d 524, 551 (7th Cir. 1985) for support in proving that the self-critical analysis privilege exists. This reliance, too, is misplaced. *Coates* held the limited view that the self-critical portions of affirmative action plans were privileged, but did not venture out into any wider realm of application. 756 F.2d at 551. A few years later, the Seventh Circuit revisited the

14

topic of privilege with regard to documents prepared for an intergovernmental agency tasked with assessing liability – in that case, the Seventh Circuit concluded that the self-critical analysis privilege has never been recognized in this Circuit. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003).

The court in *Lund* exhaustively examined the existence of the self-critical analysis privilege among all appellate courts and within the district courts of the Seventh Circuit. 2017 WL 5891186, at *11-12. That court concluded that no appellate court recognized the privilege, and that only a handful of cases within the Seventh Circuit had ever done so. *Id*. Furthermore, the Southern District of Indiana had not confronted this issue in any case. *Id*. Because the Seventh Circuit has explicitly declined to adopt the self-critical analysis privilege, the Undersigned concludes the same. Accordingly, the Plaintiff's discovery request here could not be barred by a privilege that does not exist in this Circuit.

The Undersigned has determined that the Plaintiff's discovery request is relevant, proportional to the needs of the case, not protected by the Federal Rules of Evidence, and not protected by the self-critical analysis privilege. The Defendant must produce the requested documents within ten (10) days of this Order.

**B. Email Correspondence**

The Plaintiff also requests all email correspondence responsive to the following [non-exact] search terms: (1) Roger Todd; (2) 880 East Washboard Road; (3) Loan No. 711045244; (4) Metric Remediation; (5) Metric 1.A; (6) Metric 2.A; (7) Metric 2.B; (8) Metric 2.C; (9) Metric 4.C; (10) Metric 5.E; (11) Metric 5.A; (12)

15

Metric Failure; (13) QWR Responses; (14) IRG Testing Results; and (15) Bankruptcy Compliance. (Dkt. 67 at 5). The Plaintiff agreed to limit this request for all emails generated from January 1, 2013 through today (November 20, 2019). (Id). During the November 7, 2019 discovery conference with the Court, the parties agreed that search terms 1-3 were relevant and proportional and that the Defendant would produce all emails that contained those terms from various Ocwen custodians, the list of which would be resolved by the parties independently. Accordingly, the Court need only consider the present Motion to Compel with regard to search terms 4-15.

The Defendant objects to the production of email correspondence on two grounds: first, because the Plaintiff never requested that email correspondence in any request for production; and second, because even if the Court construes the Plaintiff's other requests for production as necessarily including the requested email correspondence, the requests seek irrelevant information, are overly broad and not proportional to the needs of the case, and are prohibited by Federal Rule of Evidence 408 and the self-critical analysis privilege.

In his reply brief, the Plaintiff agreed to reduce the scope of his request by limiting the search to the same custodians' emails that were searched previously, and to remove search terms 4, 12, 13, and 14. (Dkt. 95 at 3). Thus, the Undersigned will only consider search terms 5-11 and 15 in this opinion. The Court will consider each of the Defendant's objections in turn.

As an initial matter, the Court notes that it reviewed the cited Requests for Production, Nos. 22, 28, 29, 30, 31, 38, and 39, and concludes that the Plaintiff's purported request for email correspondence related to the eight remaining search terms does not exist. While the Plaintiff is correct in stating that the Defendant had not previously lodged this specific objection, the issue is nevertheless properly before this Court – the Undersigned cannot compel production of documents pursuant to a request that does not exist. Even after being presented with the objection in Defendant's response brief, the Plaintiff does not attempt to demonstrate to the Court how his requests for email correspondence on these search terms are subsumed within any of the other requests for production. Accordingly, the Plaintiff's request to compel production of email correspondence for search terms 5-11 and 15 is **DENIED**.

Even if the Court were to construe the listed Request for Productions as requests for email correspondence with the specified search terms, the Plaintiff's motion would still be denied. The Plaintiff has likewise not demonstrated how the purported requests for email correspondence are relevant to the claims in this case. The Plaintiff spent many pages of his brief discussing the importance and relevance of the Risk Convergence Reports, but barely touches on the importance and relevance of the email correspondence with the specified search terms. Although the Court may venture a guess as to how search term 15, regarding bankruptcy compliance, may be relevant to this case, the Court cannot, without more

17

information, discern the relevance of search term 8, related to Motion for Relief from Stay affidavit errors, or of the remaining terms. The Defendant correctly points out that the Plaintiff has not established the relevance of the requested email correspondence with these search terms. The Plaintiff's arguments related to the email correspondence are lacking in any specificity. This order shall not be construed, however, to prevent the Plaintiff from issuing further written discovery related to email correspondence.

### C. Sanctions

Plaintiff's Motion also asks the Court to impose sanctions on Ocwen for having to bring this motion. Under Federal Rule of Civil Procedure 37, if a motion to compel is granted "the Court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees . . . [unless] the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust."

The Court notes initially that the Plaintiff only mentions sanctions twice in his motion: once in the title of the document and once in the opening paragraph. After that, the Plaintiff engages in no analysis and offers no explanation for why he deserves an award of attorney's fees and expenses. Consequently, the Undersigned declines to impose sanctions at this time and the Plaintiff's request is **DENIED**.

**IV. Conclusion**

Accordingly, the Plaintiff's Motion to Compel and for an Order Imposing Sanctions, Dkt. [66], is **GRANTED IN PART** and **DENIED IN PART**. The request for Risk Convergence Reports is **GRANTED**. The request for email correspondence is **DENIED**. The request for sanctions is **DENIED**.

So ORDERED.

Date: 1/30/2020

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record.