**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Terre Haute Division**

| | |
|---|---|
| ROGER TODD, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | **Case No.**   2:19-cv-85-JMS-DLP |
| ) | |
| OCWEN LOAN SERVICING, LLC., and ) | |
| DEUTSCHE BANK NATIONAL TRUST CO., as ) | |
| Trustee for NovaStar Mortgage Funding Trust, ) | |
| Series 2007-1, ) | |
| ) | |
| *Defendants*. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**MOTION FOR PROTECTIVE ORDER [Doc. 107]**

Plaintiff Roger Todd ("Todd") files this *Response In Opposition to Defendant Ocwen Loan Servicing, LLC.'s Motion for Protective Order* and respectfully shows the Court as follows:

**Introduction**

Beginning in July of 2013, following the completion of a multi-state examination of alleged deficiencies in Ocwen's servicing platform and loss mitigation infrastructure, including "(a) robo-signing, (b) inaccurate affidavits and failure to properly validate document execution processes, (c) missing documentation, (d) wrongful foreclosure, (e) failure to properly maintain books and records ....", the StoneTurn Group, LLC ("StoneTurn") was retained as a compliance monitor to "report directly to" the New York State Department of Financial Services ("NYDFS"). StoneTurn was tasked with conducting "a comprehensive review of Ocwen's servicing operations", to identify "needed corrective measures to address identified … deficiencies in Ocwen's servicing practices", and to make recommendations to the Superintendent of the NYDFS to ensure compliance. In turn, StoneTurn's audit and review were

1

integrated into a Consent Order signed by NYDFS and Ocwen requiring the resignation of Ocwen's founder and chairman William Erbey (also the founder of Altisource, owner of REALServicing). A true and accurate copy of the Consent Order is attached hereto as "***Exhibit A***."

Despite the NYDFS's regulatory authority being limited to loans tied to the State of New York, Ocwen does not, by in large, treat loans differently based upon the location of the property securing them. Different states may require minor deviations such as different notices or collection procedures, but the application of payments, assessment of fees, borrower dispute procedures, credit reporting, all occur on a national level using the same systems, protocols, and offshore personnel. Ocwen indisputably used the REALServicing platform to service its New York loans just the same as its Indiana loans. Thus, even if StoneTurn's audit and review was limited to loans secured by property in New York, its findings are indicative of servicing violations in Indiana and Ocwen's knowledge of the same.

On October 28, 2019, Todd served a subpoena seeking production of the documents StoneTurn provided to the NYDFS related to their audits of Ocwen. A true and accurate copy of the specific request included with the subpoena is attached hereto as "***Exhibit B***." The subpoena's "return date" was November 22, 2019. The subpoena does not seek the production of documents or borrower files that Ocwen provided to StoneTurn. Despite Todd's efforts to find common ground on the subpoena's scope and language, Ocwen seeks to prevent the production of the StoneTurn documents, arguing they are not relevant to the claims or defenses at issue, would force an undue burden upon it and its counsel – not StoneTurn, and are protected by the New York state bank examination privilege and the federal common law bank examination

privilege. StoneTurn has not filed a motion to quash. Likewise, the NYDFS has not intervened to assert any privilege or objection to the documents sought.

## Legal Standard

A protective order is appropriately entered upon a showing of "good cause", to protect a party or person from annoyance, oppression, undue burden or expense. Fed. R. Civ. P. 26(c). *See also Jepson, Inc. v. Makita Electric Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). In determining whether there is good cause for a protective order, the court must balance the interests involved. *Doe v. Marsalis*, 202 F.R.D. 233, 237 (N.D. Ill. 2001). A court should "weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Beauchem v. Rockford*, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002) (comparing the parties' hardship and "giving more weight to interests that have a distinctively social value than to purely private interests"); *see also Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002) ("before restricting discovery, a court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking into account society's interest in furthering "the truthseeking function" in the particular case before the court.").

## Argument

### A. Ocwen's Motion for Protective Order is Untimely.

Ocwen's Motion for Protective Order (the "Motion") is untimely, filed after the StoneTurn subpoena's return date despite receiving an advance copy one week prior to it being served. Thus, the Motion should be summarily denied: "When ruling on whether to grant a protective order, the court first considers the timeliness of the motion. Ordinarily, the movant must obtain the protective order before the date set by the Federal Rules of Civil Procedure for

compliance with the discovery request." *Stewart v. Kaplan,* 1988 U.S. Dist. LEXIS 1023 at *2 (N.D. Ill. Feb. 8, 1988); s*ee also In re Coordinated Pretrial Proceedings in Petroleum Prods Antitrust Litig.,* 669 F.2d 620, 622 n. 2 (10th Cir. 1982)( "Unless the movant has no opportunity to seek a protective order in a timely fashion, the time limitation applies and precludes a movant's objection later."); *Stewart,* 1988 U.S. Dist. LEXIS 1023 at *3.

In *Stewart,* the Northern District of Illinois considered the plaintiffs' motion to compel alongside the defendants' motion for a protective order. Although the requests at issue were propounded under F.R.C.P. Rule 34, and not Rule 45 as in the instant case, the court's reasoning is still applicable to the issues at bar. Specifically, the *Stewart* court held "[a]lthough in their correspondence with the plaintiffs the defendants mentioned the possibility that the defendants would seek a protective order, the defendants did not file the requisite motion until...almost two months after the discovery was due. The defendants do not complain in their motion that they did not have an opportunity to seek a protective order within the thirty-day time limit imposed by the Rules. The court therefore finds the defendants' motion to be untimely and consequently denies it." *Id.* at 2-3. *See also United States v. International Business Machines Corp.,* 79 F.R.D. 412, 414 (S.D. N.Y. 1978).

Here, Ocwen has had months to file their Motion—yet, much like the *Stewart* defendants, waited sixty days from the subpoena return date to do so. Ocwen provides no explanation for this delay. In fact, Ocwen filed its Motion on January 21, 2020--ninety-two days after the subpoena was first circulated to counsel for Ocwen.

### B. The StoneTurn Documents Are Relevant to the Claims in this Matter.

Despite Ocwen's use of the ***typographical trifecta*** to emphasize its arguments to the contrary, this case is not only about Todd's loan or loans secured by property in Indiana. This

case is, in part, about Ocwen's pattern and practice of deficient mortgage servicing practices: to wit, its prior knowledge and notice of issues with its servicing processes, the REALServicing system used to implement, track, execute, correct, and monitor those processes, and the refusal to correct known and specifically identified issues that have resulted in widespread consumer harm. The documents sought from StoneTurn are relevant and central to establish Ocwen's knowledge of issues with its REALServicing servicing platform and internal process. This alleged knowledge and failure to act is central to the establishment of intent or willfulness - requisite elements of Todd's claims for violation of the FCRA, 15 U.S.C. 1681n,[1] the IDCSA, Ind. Code § 24-5-0.5-2,[2] the discharge injunction and automatic stay, 11 U.S.C. § 524,[3] and the TCPA, 47 U.S.C. § 227, *et seq.*

In *Harte v. Ocwen Financial Corp.,* 2018 WL 1830811 at *40- 41 (E.D.N.Y. Feb. 8, 2018), the Eastern District of New York ordered production of the same documents, stating: "[n]ot only do the NYDFS's preliminary findings directly relate to Harte's class claims, insofar as they elaborate on the problems with Ocwen's systems, providing adequate notice, loan management, and communication to borrowers, but these findings also led the NYDFS to subsequently mandate Ocwen to 'identify an independent on-site monitor acceptable to the [NYDFS] [ ] who will report directly to the [NYDFS] to conduct a comprehensive review [ ] of Ocwen's servicing operations, including its compliance program and operational policies and procedures.'" *Id.* at *42-43. (internal citation omitted). In addition, a cursory review of *Harte*'s

---

[1] Todd contends Ocwen has acted "willfully" by taking actions entailing "an unjustifiably high risk of harm that [was] either known or so obvious that it should be known." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70-71 (2007); *see also Graham v. CSC Credit Servcs.*, 306 F.Supp.2d 873, 880-81 & n.1 (D. Minn. 2004); (An "intentional policy decision" not to change its system in the face of changing times or clear need raises a question of willfulness.").

[2] "Incurable deceptive act" means a deceptive act done by a supplier as part of a scheme, artifice, or device with *intent to defraud or mislead*.

[3] "To prove that a discharge injunction has been violated, "the debtor must show that the creditor acted intentionally, *with knowledge* that his act would be in violation of the automatic stay [or injunction].'" *Romanucci & Blandin, LLC v. Lempesis*, 2017 U.S. Dist. LEXIS 71526, at *12 (N.D. Ill. May 4, 2017).

citation to the compliance reports reveals that the information is relevant to show "problematic findings with: Ocwen's loan modification process; document management; paperwork submitted by borrowers; borrower financials; written correspondence with borrowers;...; misdating and inaccuracies in written correspondence; erroneous summaries of telephone conversations…" *Id*. To be sure, Magistrate Judge Ramon Reyes, Jr. stated: "Accordingly, I find it clear that the Reports are relevant evidence." *Id.* at *44. (emphasis added).

Similarly, the analysis recently provided by Judge Brookman in *O'Gara v. Equifax Information Services, LLC*., No., 2018 WL 513535 (S.D. Ind. Jan. 23, 2018) favors the Motion being denied. In *O'Gara,* the plaintiff sought information related to a New York Attorney General ("NYAG") investigation, settlement, and Equifax's subsequent compliance with the settlement "to show Equifax was aware of widespread problems with mixing files." *Id.* at *35. The court agreed, reasoning that the NYAG settlement and information pertaining to Equifax's subsequent compliance was relevant to the "willful" issue. *Id.* ("The fact that only a small number of mixed files occur through the CRA's matching information processes does not negate the relevancy of the evidence..."). In addition, the court acknowledged that although the natural broader scope of the evidence would encompass information "broader than the evidence relevant to O'Gara's claims," that "there [are]certainly aspects of the investigation and subsequent happenings that are relevant to O'Gara's claims." *Id.* at *36.

Here, as in *Harte* and *O'Gara*, the balance of interests favors Todd; the StoneTurn documents because they are relevant to Todd's claims, the establishment of requisite "willfulness", a "pattern and practice" of servicing misconduct and necessary to the pursuit of truth.

### C. The Case of *Ponder v. Ocwen* is Distinguishable.

In its Motion, Ocwen cites to *Ponder* in support of shielding the StoneTurn documents from production. *Ponder v. Ocwen Loan Servicing, LLC.,* Cause No. 1:16-cv-04125-ODE-LTW (N.D. Ga. July 16, 2019). However, the circumstances and breadth of documents requested in *Ponder* are very different from those before the Court. In *Ponder*, the plaintiff requested: "(1) All Ocwen Loan Servicing, LLC (Ocwen) borrower electronic or printed loan files produced or provided to you by Ocwen for audits in connection with any Consent Order entered by Ocwen with the New York Department of Financial Services (NYDFS), (2) All audits, reports, evaluations, business plans (or the like), summaries or communications generated or received by you regarding the violations, complaints, problems, or compliance issues reported or discovered by you during and after the audits of Ocwen borrowers' files pursuant to the Consent Orders identified at ¶ 1, *supra*, (3) All documents and communications that refer or relate to Fred Ponder, and (4) All communications and other documents, whether electronic or printed, which evidence or relate to Ocwen's compliance with federal or state laws; including, but not limited to, the Consent Orders identified at ¶ 1, *supra*." *Ponder v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 87616 at *2-3 (D.Mass. May 24, 2019).

Ultimately, the court in *Ponder* found the subpoena to have placed an undue burden StoneTurn because the documents sought were in Ocwen's possession - and the plaintiff had not sought them from Ocwen. Thus, the court concluded he was obligated to do so first. *Id.* at *5. In the same vein, the court provided leave to the plaintiff to reissue the subpoena to StoneTurn following receipt of Ocwen's production of discovery material and the resolution of other pending discovery motions. *Id.* at *6.

7

Here, Todd only requests documents StoneTurn provided to the NYDFS—not documents Ocwen provided to StoneTurn or borrower files. Likewise, Ocwen has not produced the documents or ever objected on the basis they had them in their possession. This distinction alone renders *Ponder* inapposite. Additionally, Todd's request is far narrower than the request examined in *Ponder*. Todd seeks "all Compliance Review Reports, findings, or official correspondence, *provided to the New York State Department of Financial Services* with regard to [Ocwen] (or any related entity of Ocwen Loan Servicing LLC.) from January 1, 2013 to December 31, 2018." Pl.'s Subpoena to StoneTurn Attach. *emphasis added.* Thus, Todd's request provides a temporal limitation and is unequivocally far less burdensome than a sweeping four-part probe for documents. Finally, in accordance with the charge of the *Ponder* court, Todd has already waited to review discovery produced [by Ocwen] before "burden[ing] a third-party with requests." *Id*. at *5.

### D. The Subpoena at Issue Does Not Cause an Undue Burden

"Undue burden or expense, actual or potential, must be shown by 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, (1981)). Conclusory statements that a request is burdensome and would require the expenditure of employee time and effort and the expense of the same is insufficient to establish that a request imposes an undue burden. *EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 371 (7th Cir. 2011) ("Konica asserts that the information sought would constitute an undue burden because the company would have to obtain, organize, and produce the materials. Konica's argument merely recognizes that any request for information requires the provider to collect and tender materials. This argument falls far short of what is required…"); *Murillo v. Kohl's Corp.*, 2016 U.S. Dist. LEXIS 144053, at * 7

8

(E.D. Wis. Oct. 18, 2016) ("conclusory statements of hardship are not sufficient."). If a party asserts an undue burden, it "must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request. Phrased differently, one claiming undue burden must do more than intone the phrase." *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, 2017 U.S. Dist. LEXIS 51274, at *10 (N.D. Ill. Apr. 4, 2017). A particular and specific demonstration of fact must be shown, as distinguished from mere conclusory statements. *Id.* (internal citation omitted). The Seventh Circuit's observation in *United States v. 5443 Suffield Terrace, Skokie, Ill*., 607 F.3d 504, 510 (7th Cir.2010) applies here: "unfortunately... saying so doesn't make it so...."

Here, Ocwen's position is unsupported by any sort of "particular and specific demonstration of fact." It has wholly failed to put forth an affidavit or the like demonstrating the review of documents produced by StoneTurn would be extensive or differ from any other routine discovery request. In fact, there has been no representation whatsoever about the number of documents potentially at issue. Thus, Ocwen has only "intone[d] the phrase" without any supporting evidence of burdensomeness in disregard of the warning in *Papst*. In fact, it is hard to fathom how Ocwen could be an conclusory: "The burden of reviewing the documents (i.e., employee time and effort, as well as substantial attorney time, effort, and expense) and litigating over the documents (i.e., conducting or defending depositions on the matters contained in the documents and/or challenging admissibility through motions in limine) greatly outweighs any benefit (there is none) that this information would have in this case." (parentheticals in original). Def. Mot. for Protective Order, page 7. Such barebones and conclusory assertions are *precisely* the type of statements that courts in this jurisdiction have held insufficient time and time again: "Lawyers' talk is no substitute for data." *Phillips v. Allen,* 668 F.3d 912, 916 (7th Cir. 2012).

### E. Ocwen Cannot Assert a Privilege on Behalf of Another.

Ocwen also argues the Court should prohibit the production of the StoneTurn Group documents because they are privileged pursuant to the federal common law bank examination privilege and the bank examination privilege codified under New York Banking Law § 36(10). However, Ocwen lacks standing to assert New York banking Law § 36 or the much narrower federal common law bank examination privilege because they "belong[] solely to the … banking regulatory entities, and may not be asserted by third parties on behalf of the banking agencies." *United States ex rel. Fisher v. Ocwen Loan Servicing quoting Merchants Bank v. Vescio*, 205 B.R. 37, 42 (D. Vt. 1997). Here, as stated above, the NYDFS has not intervened or sought to assert any privilege.

### Conclusion

The documents sought from StoneTurn are relevant because they show Ocwen's knowledge of its violations at issue (and thus its false statements, records, and certifications). *See, e.g. Wultz v. Bank of China Ltd.*, 2013 WL 1453258 (S.D.N.Y. April 9, 2013)(noting that "the opinions, analysis, and deliberations communicated by the OCC to BOC are themselves relevant to the issue of scienter.) The extent and timing of Ocwen's knowledge of problems with REALServicing and its failure to implement system safeguards for almost a decade will be offered to establish willfulness. Given that Todd cannot peer into the mind of Ocwen, he must rely on the documents sought. Finally, the request to StoneTurn Group places no burden on Ocwen other than that which would be ordinarily expected of the litigation process. For all these reasons, Todd respectfully requests that this Court deny Ocwen's Motion for Protective Order (Doc. 107).

*Respectfully submitted,*

/s/ *Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
tcohron@clarkquinnlaw.com
***Counsel for the Plaintiff***

*/s/ Nick Wooten*
Nick Wooten
**NICK WOOTEN, LLC**
5125 Burnt Pine Drive
Conway, Arkansas 72034
nick@nickwooten.com
***Counsel for the Plaintiff***

/s/ Rusty A. Payton
Rusty A. Payton
**PAYTON LEGAL GROUP**
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
info@payton.legal
*Counsel for the Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 4, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David M. Schultz
Joseph D. Kern
**HINSHAW & CULBERTSON**
dshultz@hinshawlaw.com
dkern@hinshawlaw.com

*Counsel for Defendants*

                              */s/ Travis W. Cohron*
                              Travis W. Cohron, No. 29562-30