UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROGER TODD,<br><br>    Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, INC., and<br>DEUTSCHE BANK NATIONAL TRUST CO.,<br>as Trustee for NovaStar Mortgage Funding<br>Trust, Series 2007-1,<br><br>    Defendant. | Case No. 2:19-cv-00085-JMS-DLP |

**DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO RECONSIDER THE MAGISTRATE JUDGE'S JANUARY 30, 2020 ORDER REGARDING THE RISK CONVERGENCE REPORTS**

Defendant Ocwen Loan Servicing, LLC ("Defendant"), incorrectly named in the caption as Ocwen Loan Servicing, Inc., through its undersigned counsel, respectfully requests that the Court reconsider its January 30, 2020 order, in which it ordered Defendant to produce "all" Risk Convergence Reports from January 1, 2014 through August 31, 2016. In support, Defendant states as follows:

**INTRODUCTION**

The Court entered an order on January 30, 2020 order, in which it ordered Defendant to produce "*all*" Risk Convergence Reports from January 1, 2014 through August 31, 2016. It did so despite the fact that these reports reference issues like "Identifying Title issues related to Outstanding Lien, Legal Description, Chain of Title, Encroachment, etc."; "Flood Zone Validation"; "Third Party Liens in Texas"; "Skip Tracing Flag Issues"; "Hawaii Mediation Correspondence"; "Ability to rapidly shift printers"; "Titling of Custodial Bank Accounts"; "VT Mediation Process"; "Nevada Mediation Requirement"; "Short Sale Workflow Queues"; "Flood Policies on Multiple Structures"; "Condominium Master Policies Review"; "W-9 Form

Completion by Contractors"; "Anti Money Laundering Training"; and "Spanish Language on Demand Letters." These issues have no relation to Plaintiff's claims and have no bearing on Defendant's liability. In fact, it is difficult to imagine any connection whatsoever.

This is a simple case. It is not a class action. It involves a single plaintiff and a single mortgage loan. It relates to Defendant's alleged wrongful servicing of Plaintiff's mortgage loan. In fact, Judge Jane Magnus-Stinson, in denying Plaintiff's motion to consolidate cases, explained that the "[t]he gist of the narrative is that Mr. Todd completed a Chapter 13 bankruptcy proceeding, and thereafter Ocwen engaged in practices that violated the law, including charging improper fees, misapplying payments, mishandling funds, increasing payments or balances owed without explanation or notice, attempting to collect amounts not actually owed, failing to respond to requests for information or to correct errors, failing to disclose information or provide required notices, and failing to provide a proper accounting of the payment history." Court's February 6, 2020 Order, Dkt. 120 at 2.

Despite the above limited issues and simplicity of this case, Plaintiff has repeatedly engaged in wasteful, irrelevant, and disproportionate discovery. This includes Plaintiff's request that Defendant produce "***all*** Risk Convergence Reports created between January 1, 2014 and August 31, 2016" regardless of their content. The reports Plaintiff requests reference issues and/or potential issues regarding Defendant's entire servicing operations, including issues that have nothing to do with this case (as explained above). A plain reading of the requested Risk Convergence Reports confirms this. Thus, while Defendant respects the Court's January 30, 2020 order, it respectfully asks the Court to reconsider the portion of that order that ordered Defendant to produce "***all*** Risk Convergence Reports"—including those entirely unrelated to Plaintiff's claims and the mortgage servicing conduct at issue in this case. *Champion Pro*

*Consulting Group v. Impact Sports Football, Inc.*, 2014 U.S. Dist. LEXIS 165825, *10 (M.D.N.C. November 26, 2014) ("a request for all documents relating to a subject is usually subject to criticism as overbroad since . . . all documents relate to others in some remote fashion. Such a request unfairly places the onus of production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request.").

Defendant offers to send to the Court one report (or more) so it can view it (them) while considering whether to require production of the entire document (and other ones like it).

## RELEVANT BACKGROUND AND DISCOVERY CONDUCTED TO DATE

At the onset of the case, and before Defendant answered Plaintiff's first amended complaint, Plaintiff filed a motion in which he improperly asked the Court to take judicial notice of certain settlements Defendant entered into with various state and federal regulators. This necessitated Defendant having to incur the time and expense in opposing such motion (which bordered on frivolous). In fact, in denying Plaintiff's motion, Judge Magnus-Stinson stated as follows: "[n]o authority (and certainly none offered by Mr. Todd, who elected not to file a reply) suggests that a court may or should entertain a freestanding request to take judicial notice absent a ripe dispute between the parties (such as a motion touching on the substance of a claim or defense) or in preparation for trial, when the parties' claims and defenses must be pared down for presentation to the jury." Court's June 25, 2019 Order, Dkt. 33 at 2. Judge Magnus-Stinson further explained that "[c]ollateral motions waste the Court's time. Except for evidentiary motions preparatory for trial, requests for judicial notice should be made in briefs filed in support of merits-advancing motions. Otherwise, they simply divert scarce judicial resources, distract from the merits, and risk an advisory opinion that would have no value unless and until the judicially-noticed evidence is relied upon by a party." Court's June 25, 2019 Order, Dkt. 33 at 2.

1018199\305124807.v1

More recently, Plaintiff moved to consolidate this case with another case Plaintiff's counsel (not Plaintiff) has against Defendant in this district. This again necessitated Defendant having to incur the time and expense in opposing such a motion (which bordered on frivolous). On February 6, 2020, Judge Magnus-Stinson denied Plaintiff's motion. In doing so, she explained that "the differences between the cases are such that consolidation would not serve the interests of judicial economy and instead would create confusion and possibly result in prejudice to the litigants *Todd* [i.e., the instant case]." Court's February 6, 2020 Order, Dkt. 120 at 6.

Unfortunately, Plaintiff's wasteful motion practice did not end with the above. Plaintiff also filed a motion to compel asking the Court to order Defendant to search for and produce certain emails. Yet—Plaintiff never issued any request for production pursuant to Rule 34 of the Federal Rules of Civil Procedure requesting the emails he asked the Court to compel Defendant to search for and produce. Despite this, Defendant still had to incur the time and expense to oppose Plaintiff's motion. The Court denied Plaintiff's motion with respect to the purportedly requested emails on January 30, 2020. The Court explained that "it reviewed the cited Requests for Production, Nos. 22, 28, 29, 30, 31, 38, and 39, and concludes that the Plaintiff's purported request for email correspondence related to the eight remaining search terms does not exist." Courts' January 30, 2020 Order, Dkt. 114 at 17. The Court also explained that "Defendant correctly points out that the Plaintiff has not established the relevance of the requested email correspondence with these search terms." *Id*. at 18.

Similar to the above mentioned wasteful motion practice, Plaintiff has regularly engaged in wasteful discovery that is not relevant to the claims or defenses in this matter nor proportional to the needs of this case. For instance, Plaintiff improperly subpoenaed Defendant's parent company's former chief executive officer for deposition. This necessitated Defendant having to

incur the cost of filing a motion for protective order to prevent the deposition (after Plaintiff's counsel refused to withdraw the subpoena after several "meet and confers"). The Court granted Defendant's motion on December 13, 2019 and prevented the deposition. Court's December 13, 2019 Order, Dkt. 84. The Court explained that the "Plaintiff has yet to take a deposition in this case, but desires to start that process at the top of the food chain with the former CEO of the Defendant's parent company." *Id*. at 7. The Court also correctly found that "Plaintiff seeks to broaden the scope of this case by referring to other nationwide litigation that involves Defendant Ocwen or its related companies; what the Plaintiff forgets, however, is that this case is limited to a single-plaintiff consumer protection matter regarding the handling of Mr. Todd's mortgage loan. This is not a nationwide collective action . . ." *Id*.

The non-party discovery did not stop with Plaintiff's improper attempt to subpoena Defendant's parent company's former chief executive officer—far from it. Plaintiff has issued an additional 15 subpoenas on non-parties, including three subpoenas on non-party Altisource Solutions, Inc. ("Altisource") (and Plaintiff's counsel indicated a fourth was coming). At least two of these non-parties (i.e., The Stone Turn Group[1] and Altisource) engaged in their own counsel to respond to Plaintiff's subpoenas. The rest—undoubtedly—had to spend countless employee time and effort in having to respond to Plaintiff's subpoenas, many of which seek information not relevant to the claims or defenses in this matter or proportional to the needs of this case.

Notably, in one of his subpoenas to Altisource, Plaintiff requested that Altisource produce and/or search for the same emails that were the subject of his above mentioned motion

---

[1] The Stone Turn Group is the subject of a pending motion for protective order pending before the Court.

to compel. To refresh, the Court denied Plaintiff's motion holding that Plaintiff "has not established the relevance of the requested email correspondence with these search terms." Courts' January 30, 2020 Order, Dkt. 114 at 17.

Plaintiff's abuse of the discovery process does not stop with the above mentioned non-party discovery. He also has abused the process with respect to party discovery. Plaintiff has issued two sets of interrogatories, four sets of requests for production, and ***nine*** sets of requests to admit. Defendant has timely responded to all requests (except for those whose responses are not yet due). And, despite questioning the relevancy of some of the discovery sought, Defendant largely complied with Plaintiff's requests. In fact, Defendant produced approximately 2,500 documents, along with call logs and approximately 35 call recordings. Plaintiff has also indicated he intends to seek to depose at least ***seven*** current or former employees of Defendant.

The above mentioned level of discovery is more akin to that conducted in class actions—not cases involving a single plaintiff and single mortgage loan. To be sure, discovery has become the centerpiece of this litigation because of its burden and expense (and Plaintiff's continuous effort to engage in irrelevant, wasteful, and unnecessary discovery). Honorable Doris L. Pryor cautioned against exact type of discovery in *Trupp v. Roche Diagnostics Corp.* 2019 U.S. Dist. LEXIS 87764, *4-5 (S.D. Ind. 2019) ("[d]iscovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy" and explaining that "Federal Rule 26(b), describing the scope and limits of discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process"). Thus, when Plaintiff requested that Defendant produce "***all*** Risk Convergence Reports created between

January 1, 2014 and August 31, 2016" without limiting his request to portions of the reports that have any relation to the mortgage servicing issues involved in this case, Defendant objected.

Against the above backdrop, Defendant respectfully requests that the Court reconsider its January 30, 2020 order, in which it ordered Defendant to produce "**_all_** Risk Convergence Reports."

## LEGAL STANDARD

It is well established that courts have the inherent power to reconsider interlocutory orders. *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993). In fact, courts "practically [have] **_unbridled_** discretion . . . to reconsider a previous interlocutory order"—unlike reconsideration of a final judgment, which must meet the requirements of Federal Rules of Civil Procedure 59 or 60.[2] *Fisher*, 152 F.R.D. at 149; *see also Spencer Cnty. Redevelopment Comm'n v. AK Steel Corp.*, 2011 U.S. Dist. LEXIS 7985, *3 (S.D. Ind. 2011). Relevant here, magistrate judges have the ability to review their own orders. *Cox v. Sherman Capital LLC*, 12-cv-01654, Dkt. 300 (Honorable Magistrate Judge Mark J. Dinsmore reconsidered his own discovery order and granted the defendant's motion to reconsider in part and denied it in part).

On a motion to reconsider, the court can "correct manifest errors of law or fact or present newly discovered evidence." *Stamatio v. Hurco Companies, Inc.*, 892 F. Supp. 214, 215 (S.D. Ind. 1995) (quoting *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Thus, where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error

---

[2] Courts "always has the power to modify earlier orders in a pending case without relying on Rule 60(b)." *Fisher*, 152 F.R.D. at 149.

not of reasoning but of apprehension . . . .[,]" the court appropriately may grant a motion for reconsideration.  *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Spencer Cnty. Redevelopment Comm'n v. AK Steel Corp.*, 2011 U.S. Dist. LEXIS 7985 (S.D. Ind. 2011) (same).  "Not only is a motion to reconsider an allowable method of reviewing a prior order, it is the most appropriate and advantageous method of seeking relief from an interlocutory order for a party to pursue." *Fisher*, 152 F.R.D. at 149.

## ARGUMENT

**I.  "All" Risk Convergence Reports and "All" Content in Such Reports Are Not Relevant.**

Rule 26 of the Federal Rules of Civil Procedure permits the discovery of nonprivileged matters that are relevant to a party's claim or defense and proportional to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Fed. R. Civ. P. 26; *Trupp*, 2019 U.S. Dist. LEXIS 87764 at 3-4.  But, Rule 26 and the other discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest.  *Vakharia v. Swedish Covenant Hosp.*, 1994 U.S. Dist. LEXIS 2712, *4-5 (N.D. Ill.1994).  "Parties are entitled to a reasonable opportunity to investigate the facts—and no more." *Id*. "Experience has demonstrated that the discovery rules can be and sometimes are abused, and there is presently an ongoing effort to curb such abuses." *Id*. at 3. The U.S. Supreme Court has cautioned that the requirement of Rule 26(b)(1), that the material sought in discovery be "relevant," should be firmly applied and that "judges should not neglect their power to restrict discovery . . ." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Failure to exercise this control results in needless and enormous costs to the litigants.  Judicious use of the court's case-management authority during a litigation can help to check over-lawyering and

limits on discovery "can effectively channel the efforts of counsel before excessive time and resources are expended." *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014).

Judge Pryor explained in *Trupp* that "[d]iscovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy." 2019 U.S. Dist. LEXIS 87764 at 4. Judge Pryor also explained that "Federal Rule 26(b), describing the scope and limits of discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process." *Id*. at 5.

Consistent with the above principles, courts frequently restrict discovery based on relevancy objections. *See West v. Miller*, 2006 U.S. Dist. LEXIS 56243, *6-8 (N.D. Ill. Aug. 11, 2006) (denying a motion to compel because party that filed the motion failed to meet its burden to establish the information sought was relevant); *see also Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003); *Diak v. Dwyer, Costello, and Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994). And, where a party moves to compel production of documents that party—***including Plaintiff here***—carries the initial burden of establishing that the requested documents are relevant. *West*, 2006 U.S. Dist. LEXIS 56243 at 6-8; *see also Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993) (holding that the district court did not abuse its discretion in denying a motion to compel discovery for lack of a persuasive showing on relevance). In fact, this Court correctly applied this standard when it denied Plaintiff's motion to compel in party and held that "Plaintiff has not established the relevance of the requested email correspondence with these search terms." Court's January 30, 2020, Dkt. 114 at 18.

Unless the requesting party can demonstrate the relevancy of the materials sought, judges "should not hesitate to exercise appropriate control over the discovery process . . . 'fishing

9

expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'" *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 U.S. Dist. LEXIS 26386, *9 (N.D. Ill. 2018). Indeed, the Seventh Circuit has often said that "discovery is not to be used as a fishing expedition." *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971-972 (7th Cir. 1996).

Here, Plaintiff did not meet his burden to establish that "**_all_** Risk Convergence Reports" from January 2014 through August 31, 2016" and "**_all_**" content in all such reports are relevant. There is a reason for this: they are not. For this reason, and those set forth below, Defendant respectfully requests that this Court reconsider its January 30, 2020 order, in which the Court said it "tend[ed] to agree with the Plaintiff" that "**_all_**" reports and "**_all_**" of their content were relevant and ordered Defendant to produce same (without any redactions or removing entirely unrelated portions). Courts' January 30, 2020 Order, Dkt. 114 at 7; *Champion Pro Consulting Group*, 2014 U.S. Dist. LEXIS 165825 at 10 ("a request for all documents relating to a subject is usually subject to criticism as overbroad since . . . all documents relate to others in some remote fashion. Such a request unfairly places the onus of production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request.").

As explained above, this is a simple case. It involves a single mortgage loan and a single plaintiff. It involves a limited number of issues and a very limited portion of Defendant's mortgage servicing operations. In fact, Plaintiff summarized this case as follows: whether Defendant engaged in servicing misconduct with respect to "the misapplication of payments, assessment and collection of unjust fees, mismanagement of borrower escrow accounts, wrongful and deceptive collection activities, and manufactured states of default during and immediately following a Chapter 13 bankruptcy proceeding." Plf.'s Motion to Consolidate, Dkt.

92 at 5. Plaintiff further confirmed the limited issues in this case when he argued that he needs the Risk Convergence Reports because they allegedly contain information regarding "the handling of loans involved in a Chapter 13 bankruptcy, the investigation and correction of consumer credit reporting disputes, payment misapplications, and the assessment of inappropriate fees and costs." Dkt. 67 at 2.

Judge Stinson similarly explained that the "[t]he gist of the narrative is that Mr. Todd completed a Chapter 13 bankruptcy proceeding, and thereafter Ocwen engaged in practices that violated the law, including charging improper fees, misapplying payments, mishandling funds, increasing payments or balances owed without explanation or notice, attempting to collect amounts not actually owed, failing to respond to requests for information or to correct errors, failing to disclose information or provide required notices, and failing to provide a proper accounting of the payment history." Court's February 6, 2020 Order, Dkt. 120 at 2.

Plaintiff's request for "***all*** Risk Convergence Reports" and "***all***" content in such reports far exceeds the scope of this case and seeks information far beyond that related to the mortgage servicing conduct at issue as Plaintiff himself (and Judge Magnus-Stinson) summarized such conduct. Put simply, every issue or potential issue Defendant ever identified or included in the requested Risk Convergence Reports regarding its entire operation for a more than two and half year period are not at issue here. A plain reading of the requested Risk Convergence Reports confirms this. For instance, the Risk Convergence Reports include and/or identify issues—entirely unrelated to those involved in this case, such as: "Identifying Title issues related to Outstanding Lien, Legal Description, Chain of Title, Encroachment, etc."; "Flood Zone Validation"; "Third Party Liens in Texas"; "Skip Tracing Flag Issues"; "Hawaii Mediation Correspondence"; "Ability to rapidly shift printers"; "Titling of Custodial Bank Accounts"; "VT

11

Mediation Process"; "Nevada Mediation Requirement"; "Short Sale Workflow Queues"; "Flood Policies on Multiple Structures"; "Condominium Master Policies Review"; "W-9 Form Completion by Contractors"; "Anti Money Laundering Training"; and "Spanish Language on Demand Letters." There are other examples.

The above issues are not relevant to the claims and defenses in this matter, which Plaintiff summarizes as "the misapplication of payments, assessment and collection of unjust fees, mismanagement of borrower escrow accounts, wrongful and deceptive collection activities, and manufactured states of default during and immediately following a Chapter 13 bankruptcy proceeding" and/or "the handling of loans involved in a Chapter 13 bankruptcy, the investigation and correction of consumer credit reporting disputes, payment misapplications, and the assessment of inappropriate fees and costs." Dkt. 67 at 2; *see also Sirazi v. Panda Express, Inc.*, 2009 U.S. Dist. LEXIS 109558, *10 (N.D. Ill. Nov. 24, 2009) (denying motion to compel where there was no basis in the record to support theory underlying discovery requests, reasoning: "without some reason to conclude that the pond might be stocked, one cannot demand to 'fish.'").

In fact, when the Court denied Plaintiff's attempt to depose Defendant's parent company's chief executive officer, it Court correctly explained that "Plaintiff seeks to broaden the scope of this case by referring to other nationwide litigation that involves Defendant Ocwen or its related companies; what the Plaintiff forgets, however, is that this case is limited to a single-plaintiff consumer protection matter regarding the handling of Mr. Todd's mortgage loan. This is not a nationwide collective action . . ." Court's December 13, 2019 Order, Dkt. 84 at 7. Plaintiff, in his attempt to persuade the Court that "all" Risk Convergence Reports and "all" of their content are relevant, improperly attempted to again broaden the scope of this case. In

12

particular, Plaintiff argued he needed "all" reports and "all" of their content to establish Defendant's "knowledge of systematic problems with its servicing platform RealServicing." Dkt. 67 at 7.  But, Defendant's knowledge of potential issues with its servicing platform RealServicing that do not involve the mortgage servicing conduct at issue in this case are not relevant or discovery under Rule 26(b)(1) of the Federal Rules of Civil Procedure.  For instance, even if Defendant identified or learned of potential issues with "W-9 Form Completion by Contractors," "Hawaii Mediation Correspondence," "Third Party Liens in Texas," "Anti Money Laundering Training," and "Spanish Language on Demand Letters," Defendant's knowledge or identification of such issues has no bearing on this case.  This case does not involve any of these issues.  This especially is true as to "Third Party Liens in Texas," "Hawaii Mediation Correspondence," or "Spanish Language on Demand Letters."  This case involves an English speaking Indiana resident, Indiana mortgage loan, and Indiana property.

      Plaintiff's request for "all" Risk Convergence Reports, and in turn, the Court's order compelling Defendant to produce "all" reports (without any redactions), results in Defendant having to produce reports that identify every single issue and/or potential issue regarding its entire operation over a more than two and half year period.  This includes issues that have nothing to do with this case.  Rule 26(b)(1) and the amendments thereto directly seek to prohibit this exact type of request and exercise in over-discovery.  *Trupp,* 2019 U.S. Dist. LEXIS 87764 at 5 (Judge Pryor explained that "Federal Rule 26(b), describing the scope and limits of discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process"); *see also Champion Pro Consulting Group*, 2014 U.S. Dist. LEXIS 165825 at 10 ("a request for all documents relating to a subject is usually subject to criticism as overbroad since . . . all documents relate to

13

others in some remote fashion. Such a request unfairly places the onus of production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request."); *Sirazi*, 2009 U.S. Dist. LEXIS 109558 at 10 (denying motion to compel where there was no basis in the record to support theory underlying discovery requests, reasoning: "without some reason to conclude that the pond might be stocked, one cannot demand to 'fish.'").

Defendant offers to send to the Court one report (or more) so it can view it (them) while considering whether to require production of the entire document (and other ones like it).

> II. **Defendant Respectfully Requests that the Court Stay Production of the Risk Convergence Reports Pending Its Ruling on the Instant Motion to Reconsider.**

Requests for stays of a magistrate judge's order usually occur where a party files an objection to such order, pursuant to Rule 72 of the Federal Rules of Civil Procedure, with the district court judge. *Lineback v. Coupled Prods., LLC*, 2012 U.S. Dist. LEXIS 89835 (N.D. Ind. 2012). This is not the case here. But, out of an abundance of caution, and to the extent Defendant's instant motion to reconsider does not automatically stay production of the requested Risk Convergence Reports, Defendant respectfully requests a stay.

Courts consider the following factors when determining whether to stay a magistrate judge's order: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *FDIC v. Fid. & Deposit Co. of Md.*, 2013 U.S. Dist. LEXIS 202806, *4 (S.D. Ind. 2013). Here, these factors favor staying Defending having to produce the Risk Convergence Reports until the Court rules on Defendant's instant motion to reconsider.

Defendant, for the above reasons, respectfully contends it has "has made a strong showing" that it "is likely to succeed" on its instant motion and that the Court erred when it ordered Defendant to produce "all" Risk Convergence Reports and "all" portions of such reports (without any redactions)—despite the fact that a plain reading of such reports confirms they reference issues entirely unrelated to this case (i.e., "Third Party Liens in Texas"; "Hawaii Mediation Correspondence"; "Ability to rapidly shift printers"; "Titling of Custodial Bank Accounts"; "VT [Vermont] Mediation Process"; "Nevada Mediation Requirement"; "Short Sale Workflow Queues"; "Flood Policies on Multiple Structures"; "Condominium Master Policies Review"; "W-9 Form Completion by Contractors"; "Anti Money Laundering Training"; and "Spanish Language on Demand Letters").

Serious, irreversible injury would also result if the Court does not stay production of the Risk Convergence Reports. For instance, if Plaintiff sees "all" Requested Reports and "all" portions of such reports, the Court could not "un-ring that bell" even if it later grants Defendant's instant motion to reconsider. Put another way, if the Court does not stay production but later grants Defendant's instant motion to reconsider in whole or in part, by then Plaintiff's counsel presumably would have reviewed the highly sensitive and irrelevant information in the requested reports. Once Plaintiff's counsel obtains the reports, including portions of such reports irrelevant to the instant case, Plaintiff's counsel likely will use such information to prosecute the other cases he has pending against Defendant (and/or to solicit future clients to bring new lawsuits against Defendant based on the irrelevant information in the reports). This, in effect, eviscerates Defendant's procedural right to ask the Court to reconsider its January 30, 2020 order.

Finally, staying production of the Risk Convergence Reports until the Court rules on Defendant's instant motion to reconsider would not prejudice—much less "substantially"

prejudice—Plaintiff. Plaintiff has not yet deposed Defendant's 30(6) representative or any of its current or former employees. In fact, none are scheduled. This motion will be fully briefed pursuant to the deadlines set under the local rules by March 1, 2020. Defendant's 30(6) representative's deposition will not proceed before March 1, 2020—nor will the depositions of any its current or former employees. Fact discovery does not close until June 15, 2020. This leaves Plaintiff more than enough time after the Court rules on Defendant's instant motion to depose Defendant's 30(b)(6) representative. Even if it was not, Defendant would agree to extend the June 15, 2020 fact discovery deadline, if necessary. This eliminates any potential prejudice.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendant's response to Plaintiff's motion to compel, Dkt. 78, the Court should grant Defendant's motion to reconsider and enter an order denying Plaintiff's motion to compel regarding the Risk Convergence Reports. The Court should also enter an order, to the extent necessary, that stays Defending having to produce the Risk Convergence Reports until the Courts rules on its instant motion to reconsider.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: /s/ *Joseph D. Kern*
David M. Schultz
Joseph D. Kern
Hinshaw & Culbertson, LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
T: 312-704-3000
F: 312-704-3001
E-mail: dschultz@hinshawlaw.com
E-mail: jkern@hinshawlaw.com

## CERTIFICATE OF SERVICE

      I, Joseph D. Kern, an attorney, certify that on February 9, 2020, caused to be served a copy of the foregoing **DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO RECONSIDER THE MAGISTRATE JUDGE'S JANUARY 30, 2020 ORDER REGARDING THE RISK CONVERGENCE REPORTS** by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

☒ ECF
☐ Facsimile
☐ UPS
☐ U.S. Mail
☐ E-Mail
☐ Messenger Delivery

To:    All Parties of Record

                                                          */s/ Joseph D. Kern*
                                                          Joseph D. Kern

1018199\305124807.v1