# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### Terre Haute Division

| | |
|---|---|
| ROGER TODD, | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. 2:19-cv-85-JMS-DLP |
| OCWEN LOAN SERVICING, LLC., and DEUTSCHE BANK NATIONAL TRUST CO., as Trustee for NovaStar Mortgage Funding Trust, Series 2007-1, | ) |
| *Defendants*. | ) |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### MOTION FOR PROTECTIVE ORDER [Doc. 106]

Plaintiff Roger Todd ("Todd") submits this *Response In Opposition to Defendant Ocwen Loan Servicing, LLC.'s Motion for Protective Order*. In support, Todd states the following:

### Introduction

On July 29, 2019, Todd served a Notice of Deposition requesting Ocwen designate a corporate representative to testify about: 1.) the Consent Judgement entered in the United States District Court of Columbia in *Consumer Fin. Prot. Bureau, et al v. Ocwen Fin. Corp., et al*., Case No. 13-cv-2025 (the "2013 CFPB Consent Judgment"); 2.) the Consent Order in *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC*. (the "2014 NYDFS Consent Order"); and, 3.) the Settlement Agreement and Consent Order in *In Re: Ocwen Financial Corporation and Ocwen Loan Servicing, LLC*., Case No. C-13-1153 (the "2013 State Mortgage Regulators Settlement Agreement")(collectively, the "Deposition Topics"). On August 14, 2019, Ocwen provided written objections to the Deposition Topics. On January 17, 2020, Ocwen filed the instant Motion for Protective Order.

Todd seeks to depose Ocwen's corporate representative about the Deposition Topics to identify whether, when, and to what extent Ocwen had prior notice or knowledge of: 1.) systemic failings with its servicing platform REALServicing rendering it largely incapable of maintaining accurate records or meeting its servicing duties; 2.) a lack of sufficient systems and safeguards for servicing loans involved in a Chapter 13 bankruptcy; 3.) an inability to handle, investigate, and correct items in response to consumer disputes including without limitation NOEs and ACDVs; and, 4.) an inability to, or the absence of systems or procedures to, ensure accurate information was being provided to borrowers and consumer credit reporting agencies. Todd also seeks to depose Ocwen's corporate representative about the Deposition Topics to identify what Ocwen did in response. In sum, because the Deposition Topics implicate the same type of misconduct alleged by Todd, they are highly relevant to his claims and the defenses raised in response.

## The 2013 CFPB Consent Judgment

On December 19, 2013, the Consumer Financial Protection Bureau filed a complaint against Ocwen containing the following allegations:

- In the course of its mortgage servicing activities, Ocwen engaged in the following acts and practices:

    a. failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;

    b. charging unauthorized fees for default-related services;

    c. imposing force-placed insurance when the Servicers knew or should have known that borrowers already had adequate coverage;

    d. providing false or misleading information in response to borrower complaints;

    e. providing false or misleading information to borrowers regarding loans that have been transferred from other servicers;

> p. preparing, executing, notarizing, and presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments).

The CFPB Complaint culminated in the creation and entry of the 2013 CFPB Consent Judgement, signed on behalf of Ocwen by former CEO Mr. Ron Faris. A true and accurate copy of the 2013 CFPB Consent Judgment is attached hereto as **Exhibit A**. The 2013 CFPB Consent Judgment required Ocwen to adhere to the following obligations:

> Unless otherwise specified, these provisions shall apply to bankruptcy and foreclosures in all jurisdictions … regardless of whether a statement is submitted during the foreclosure or bankruptcy process in the form of an affidavit, sworn statement or declarations under penalty of perjury (to the extent stated to be based on personal knowledge) ("Declaration").

> B. Requirements for Accuracy and Verification of Borrower's Account Information.
>
> 1. Servicer shall maintain procedures to ensure accuracy and timely updating of borrower's account information, including posting of payments and imposition of fees. Servicer shall also maintain adequate documentation of borrower account information, which may be in either electronic or paper format.
>
> 7. Servicer shall adopt enhanced billing dispute procedures, including for disputes regarding fees. These procedures will include:
>
>> b. Assessing and ensuring adequate and competent staff to answer and respond to consumer disputes promptly;
>>
>> c. Establishing a process for dispute escalation;
>>
>> d. Tracking the resolution of complaints; and
>
> 8. Servicer shall take appropriate action to promptly remediate any inaccuracies in borrowers' account information, including:
>
>> a. Correcting the account information;
>>
>> c. Correcting inaccurate reports to consumer credit reporting Agencies.

9. Servicer's systems to record account information shall be periodically independently reviewed for accuracy and completeness by an independent reviewer.

11. In active chapter 13 cases, Servicer shall ensure that:

a. prompt and proper application of payments is made on account of (a) pre-petition arrearage amounts and (b) postpetition payment amounts and posting thereof as of the successful consummation of the effective confirmed plan;

b. the debtor is treated as being current so long as the debtor is making payments in accordance with the terms of the then effective confirmed plan and any later effective payment change notices; and

c. as of the date of dismissal of a debtor's bankruptcy case, entry of an order granting Servicer relief from the stay, or entry of an order granting the debtor a discharge, there is a reconciliation of payments received with respect to the debtor's obligations during the case and appropriately update the Servicer's systems of record. In connection with such reconciliation, Servicer shall reflect the waiver of any fee, expense or charge pursuant to paragraph III.B.1.c.i or III.B.1.d. Consent Order, *Consumer Financial Protection Bureau, et al. v. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC* (D.C. Cir. 2013) at *A-1, A-4-8 .

III. BANKRUPTCY.

B. Chapter 13 Cases.

1. In any chapter 13 case, Servicer shall ensure that:

a. So long as the debtor is in a chapter 13 case, within 180 days after the date on which the fees, expenses, or charges are incurred, Servicer shall file and serve on the debtor, debtor's counsel, and the trustee a notice in a form consistent with Official Form B10 (Supplement 2) itemizing fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence, and (3) that the holder intends to collect from the debtor.

b. Servicer replies within time periods established under bankruptcy law to any notice that the debtor has completed all payments under the plan or otherwise paid in full the amount required to cure any pre-petition default.

      d. If the Servicer fails to provide information as required by paragraphs III.B.1.a or III.B.1.b and bankruptcy law with respect to a fee, expense or charge (other than an Independent Charge) incurred more than 45 days before the date of the reply referred to in paragraph III.B.1.b, then such fee, expense or charge shall be deemed waived and may not be collected from the borrower.

      e. Servicer shall file and serve on the debtor, debtor's counsel, and the trustee a notice in a form consistent with the current draft of Official Form B10 (Supplement 1) (effective December 2011) of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due. Servicer shall waive and not collect any late charge or other fees imposed solely as a result of the failure of the borrower timely to make a payment attributable to the failure of Servicer to give such notice timely. Consent Order, *Consumer Financial Protection Bureau, et al. v. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC* at \*A-15-16

## VI. RESTRICTIONS ON SERVICING FEES.

    A. General Requirements.

      1. All default, foreclosure and bankruptcy-related service fees, including third-party fees, collected from the borrower by Servicer shall be bona fide, reasonable in amount, and disclosed in detail to the borrower as provided in paragraphs I.B.10 and VI.B.1.

    C. Third-Party Fees.

      1. Servicer shall not impose unnecessary or duplicative property inspection, property preservation or valuation fees on the borrower, including, but not limited to, the following:

          b. No property inspection fee shall be imposed on a borrower any more frequently than the timeframes allowed under GSE or HUD guidelines unless Servicer has identified specific circumstances supporting the need for further property inspections.

    D. Certain Bankruptcy Related Fees.

      2. Servicer shall not collect late fees due to delays in receiving full remittance of debtor's payments….Consent Order, *Consumer Financial Protection Bureau, et al. v. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC* at \*A-39-41.

Clearly, whether the underlying allegations are true or not, the 2013 CFPB Consent Judgment implicates the very misconduct alleged by Todd, notified Ocwen of the same, and created certain going forward obligations.

### The 2014 NYDFS Consent Order

Beginning in July of 2013, following the completion of *a multi-state examination* of alleged deficiencies in Ocwen's servicing platform and loss mitigation infrastructure, a compliance monitor was retained to report directly to the New York State Department of Financial Services ("NYDFS"). In turn, the compliance monitor's audit and review were integrated into a Consent Order entered by NYDFS and Ocwen, signed by Ocwen's former CEO Mr. Ron Faris . A true and accurate copy of the 2014 NYDFS Consent Order is attached hereto as "**Exhibit B**." The 2014 NYDFS Consent Order contains the following "facts" relevant to these proceedings:

- In 2010 and 2011, the Department participated in a multistate examination of Ocwen … The examination of Ocwen identified, among other things, deficiencies in Ocwen's servicing platform …, including (e) failure to properly maintain books and records… *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC,* Consent Order Pursuant to New York Banking Law § 44 (N.Y.D.F.S. 2014) at ¶ 2

- The Department and [StoneTurn Group, LLC] also identified, among other things, (a) inadequate and ineffective information technology systems and personnel, and (b) widespread conflicts of interest with related parties. *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC,* Consent Order Pursuant to New York Banking Law § 44 (N.Y.D.F.S. 2014) at ¶ 13

- In the course of its review, the Compliance Monitor determined that Ocwen's information technology systems are a patchwork of legacy systems and systems inherited from acquired companies, many of which are incompatible. A frequent occurrence is that a fix to one system creates unintended consequences in other systems. As a result, Ocwen regularly gives borrowers incorrect or outdated information, sends borrowers backdated letters, unreliably tracks data for investors, and maintains inaccurate records. There are insufficient controls in place— either manual or automated—to catch all of these errors and resolve them. *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing,*

> *LLC,* Consent Order Pursuant to New York Banking Law § 44 (N.Y.D.F.S. 2014) at ¶ 14

- For example, Ocwen's Chief Financial Officer recently acknowledged, in reference to its offshore customer care personnel, that Ocwen is simply "training people to read the scripts and the dialogue engines with feeling." Ocwen's policy is to require customer support staff to follow the scripts closely, and Ocwen penalizes and has terminated customer support staff who fail to follow the scripts that appear on their computer screens. *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC,* Consent Order Pursuant to New York Banking Law § 44 (N.Y.D.F.S. 2014) at ¶ 18.

- The Department's review of Ocwen's mortgage servicing practices also uncovered a number of conflicts of interest between Ocwen and four other public companies (the "related parties"),[1] all of which are chaired by Mr. Erbey, who is also the largest individual shareholder of each and the Executive Chairman of Ocwen. In addition to serving as chairman of the board for Ocwen and each related company, Mr. Erbey's holdings in these companies total more than $1 billion. Other Ocwen executives and directors also own significant investments in both Ocwen and the related parties. Yet, Ocwen does not have a written policy that explicitly requires potentially conflicted employees, officers, or directors to recuse themselves from involvement in transactions with the related companies. *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC,* Consent Order Pursuant to New York Banking Law § 44 (N.Y.D.F.S. 2014) at ¶ 20.

Here again, whether or not the allegations contained in the 2014 NYDFS Consent Order are true, its contents dovetail with the misconduct complained of by Todd.

### 2013 State Mortgage Regulators Settlement Agreement

On December 1, 2010, the State Mortgage Regulators commenced a multi-state examination of Ocwen's compliance with applicable Federal and State laws and regulations, financial condition, and control and supervision of the licensed servicing operation. The product of this examination is the 2013 State Mortgage Regulators Settlement Agreement. A true and accurate copy of the 2013 State Mortgage Regulators Settlement Agreement is attached hereto as **Exhibit C**. The 2013 State Mortgage Regulators Settlement Agreement contains the following "Examination Finds" relevant to these proceedings:

---

[1] Including Altisource Portfolio Solutions, S.A., owners of REALServicing - the servicing platform used by Ocwen.

      c. Lack of controls related to general borrower account management, including but not limited to:

          1. Misapplication of borrower payments;

          2. Inaccurate escrow accounting and statements; and

          3. Assessment of unauthorized fees and charges.

      d. Inadequate staffing and lack of internal controls related to customer service;

      e. Deficiencies in control and oversight of third-party providers, including but not limited to, local foreclosure counsel;

      g. Deficiencies in management control and supervision necessary to ensure compliance with applicable laws and regulations.

Here, again, whether or not the foregoing allegations are true, the 2013 State Mortgage Regulators Settlement Agreement implicates the very misconduct alleged by Todd, notified Ocwen of the same, and created certain going forward obligations.

## **Legal Standard**

The burden of establishing good cause for a protective order rests upon the party seeking it. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007) ("[Rule 26] puts the burden on the party seeking the protective order to show some plainly adequate reason for its issuance."). Before restricting discovery, a court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking into account society's interest in furthering "the truthseeking function" in the particular case before the court. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).[2]

---

[2] This function is of particular import given there are now two other matters before this Court entailing nearly identical allegations of misconduct against Ocwen: *Demona Freeman v. Ocwen Loan Servicing, LLC.*, Cause No. 1:18-cv-03844-TWP-DLP, and *Roderick Converse v. Ocwen Loan Servicing, LLC.*, Cause No. 1:19-cv-04872-SEB-MPB.

**Argument**

**A.     The Deposition Topics Are Relevant To Todd's Claims, The Standard For An Award Of Punitive Damages, And To Ocwen's Affirmative Defenses**

**I.     The Deposition Topics Are Relevant to Todd's Claims**

Ocwen contends the Deposition Topics have absolutely no bearing on Todd's claims, seeking to tie the scope of discovery to the "four corners" of the operative complaint. Todd argues the Deposition Topics are highly relevant to the establishment of requisite elements of Todd's claims for violation of the FCRA, 15 U.S.C. 1681n,[3] the RESPA, 12 U.S.C. § 2601 *et seq.*,[4] the IDCSA, Ind. Code § 24-5-0.5-2,[5] and the TCPA, 47 U.S.C. § 227 *et seq.*[6]

In support of the proposition the Deposition Topics have "no possible bearing" on this matter and are therefore an inappropriate line of inquiry, Ocwen relies heavily on *Block v. Abbott Labs, Inc.*, 2001 Dist. LEXIS 19884, *7-8 (N.D. Ill. 2001). In *Block*, a consolidated action involving allegations that Abbot's beta-hCG test produced false positives, the parties agreed the depositions of Abbot employees taken during the course of an ancillary matter, would be treated as if taken therein to avoid duplicative deposition testimony. Thereafter, the plaintiff nonetheless sought to redepose several Abbott employees about a consent decree the company entered into with the Food and Drug Administration ("FDA"). The consent decree was the product of an FDA warning letter regarding several products alleged to be out of compliance with certain FDA

---

[3] Todd contents Ocwen has acted "willfully" by taking actions entailing "an unjustifiably high risk of harm that [was] either known or so obvious that it should be known." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70-71 (2007); *see also Graham v. CSC Credit Servcs.*, 306 F.Supp.2d 873, 880-81 & n.1 (D. Minn. 2004); (An "intentional policy decision" not to change its system in the face of changing times or clear need raises a question of willfulness.).

[4] Todd alleges Ocwen has engaged in a pattern and practice of servicing misconduct. "Pattern and practice"may entail allegations and analysis into similar servicing misconduct affecting other borrowers. *See, e.g. Quimby v. Caliber Home Loans,* 2015 WL 3751511, at *2 (S.D. Ind. Apr. 22, 2015); *see, also Obazee v. Bank of NY Mellon*, 2015 WL 8479677 (N.D. Tex. Dec. 10, 2015).

[5] "Incurable deceptive act" means a deceptive act done by a supplier *as part of a scheme*, artifice, or device with *intent to defraud or mislead*.

[6] Damages may be trebled to $1,500 per violation upon a finding of a *knowing or willful* violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

regulations. However, the beta-hCG test was not among the products covered by the FDA warning letter. Likewise, the consent decree was focused upon manufacturing deficiencies and differentiated between the products the FDA allowed Abbot to continue distributing and those it would not. The beta-hCG test at issue in *Block* was among those permitted to continue to be distributed. Thus, Abbot objected and sought a protective on the basis the depositions were duplicative and a fishing expedition into irrelevant matters.

In granting Abbot's protective order, finding the proposed depositions to be duplicative and their subject matter irrelevant, the court in *Block* primarily based its decision on three things: First, it noted how neither the FDA warning letter or consent decree identified the beta-hCG test as one of the Abbott products of concern. Second, the consent decree was focused upon Abbot's manufacturing processes, not the integrity of certain tests. Thirdly, the plaintiff had already been afforded the opportunity to depose the employees.

In short, the facts in *Block* warranted the entry of the protective order, and are easily distinguishable from the instant matter: Unlike the FDA warning letter and consent decree in *Block*, the Deposition Topics implicate the very same type of misconduct alleged by Todd.

On the contrary, despite Ocwen's wholesale failure to make reference to it, guidance on the issue of whether portions of the NYSDFS Consent Order and 2013 CFP Consent Judgement are relevant [and admissible] to establish notice, knowledge, willfulness, intent or lack of mistake, can be found in *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 647 (N.D. Ill. 2019). In *Saccameno,* Hon. Judge Gottschal admitted portions of the NYDFS Consent Order and 2013 CFPB Consent Judgment into the evidentiary record during the trial. Afterwards, Ocwen renewed a motion for judgment as a matter of law arguing the decision to admit the foregoing over its objections amounted to clear error. Summarily rejecting Ocwen's position,

Hon Judge Gottschal stated: "The CFPB consent judgment's allegations are relevant to the issue of notice regardless of whether Ocwen disputes their truth. Put differently, even if Ocwen believed that the state regulators' findings were mistaken, the consent orders nonetheless show that the regulators had made Ocwen aware of their concerns." *Id*. "Like the CFPB consent judgment, the NYSDFS consent order arose out of the broader multistate investigation into Ocwen's loan servicing practices. As a result, the NYSDFS consent order makes reference to many of the same general problems noted in the CFPB consent judgment."

Here, just as in *Saccameno*, Ocwen's arguments mischaracterize the Deposition Topics. While they may entail some conduct or issues not specific tied to the specific averments found in the operative complaint, they also implicate Ocwen's "[l]ack of controls related to general borrower account management," and to its "[i]nadequate staffing and lack of internal controls related to customer service." The latter forms the foundation of the allegations at issue.

Further guidance in direct contradiction of Ocwen's position can be found in *O'Gara v. Equifax Information Services, LLC*., No., 2018 WL 513535 (S.D. Ind. Jan. 23, 2018).  In *O'Gara*, the plaintiff (an Indiana resident) sought information related to a New York Attorney General ("NYAG") investigation, settlement, and Equifax's subsequent compliance with the settlement. In ordering Equifax to produce the information, Hon. Judge Brookman reasoned  the NYAG settlement and information pertaining to Equifax's subsequent compliance was also relevant to the "willful" issue. *Id.* at *13.

      **II.**      **The Deposition Topics Are Relevant to the Issue of Punitive Damages.**

Todd also contends the The Deposition Topics, or more specifically information obtained with regard to the the Deposition Topics, is assuredly probative of whether Ocwen's alleged conduct satisfies the standards set forth in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) and

cases addressing the appropriateness of sanctions in the form of punitive damages for the violation of the discharge injunction and F.R.B.P. 3002 like *In re Gravel,* 556 B.R. 561, 579 (Bankr. D. Vt. Sept. 12, 2016).

In *Gravel*, the court found that the mortgage servicer failed to comply with F.R.B.P. 3002.1 and violated the bankruptcy discharge. In issuing sanctions, the court looked to the following three factors: (1) whether the mortgage servicer had notice of the need to comply; (2) whether the mortgage servicer had previously failed to fulfill its duties under Rule 3002.1 and/or has previously been sanctioned for similar misconduct; and, (3) whether the mortgage servicer was given an opportunity to rectify processes leading to and/or causing the defalcations, and if so, whether it fulfilled its commitment to do so. *Id*. at 571

In turn, should Ocwen's alleged conduct be found to justify an award of punitive damages, information gleaned from deposing its corporate representative about the Deposition Topics will almost assuredly be relevant in assessing the appropriateness of such an award. *See, eg., Campbell*, 538 U.S. at 419 (The first guidepost is the reprehensibility of the defendant's conduct, which is judged based on factors including whether the conduct involved repeated actions and whether the harm was the result of intentional malice, trickery, or deceit, or mere accident.); *See also, Williams v. First Advantage*, 947 F.3d 735 (11th Cir. 2020)("It is true that Plaintiff never introduced evidence breaking down how many of these 13,000+ errors arose when Defendant had failed to use three identifiers in a common-name situation. This failure of specific proof constitutes a lapse by Plaintiff that will come back to haunt him when we explore the question whether the extremely high <u>amount</u> of punitive damages awarded by the jury here can be sustained.")

### III. The Topics are Relevant to Confronting Ocwen's Defenses

The Deposition Topics, or information obtained from a line of inquiry about the Deposition Topics, are also relevant in confronting the affirmative defenses raised by Ocwen. These include: 3.) "Plaintiff's claims are barred, in whole or in part, because Defendant did not cause Plaintiff's alleged harm. Plaintiff's alleged harm was caused by the acts and/or omissions and/or negligence and/or intentional conduct *of other parties*;" 10.) "Defendant denies it violated the FDCPA. However, to the extent it did, Defendant affirmatively states that any alleged violations of the FDCPA *were not intentional* and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such errors."

Similarly, Todd's proposed inquiry is relevant to confronting other defense narratives such as mistake or "an isolated 'miscoding' error committed by a lone employee." *Saccameno v. United States Bank Nat'l Ass'n,* 943 F.3d 1071, 1082 (7th Cir. 2019). Paraphrasing Judge St. Eve: "Ocwen cannot pin this case on [another] Marla." *Id.*

### B. FRE 408 Is Not An Appropriate Basis For Prohibiting Todd from Deposing Ocwen's 30(b)(6) Representative about the Deposition Topics.

Ocwen next argues that Todd deposing its 30(b)(6) representative about the Deposition Topics would run afoul of F.R.E. 408. In support of this proposition, another conflation of discoverability versus admissibility, Ocwen ignores voluminous guidance from the Seventh Circuit Court of Appeals in favor of *Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP,* 2006 U.S. Dist. LEXIS 65840, *17-18 (S.D. Ind. Sept. 14, 2006). *See, e.g., United States v. Austin,* 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was so offered to prove that the defendant was on notice that subsequent similar conduct was wrongful); *see also Cates v. Morgan Portable Bldg. Corp.,* 708 F.2d 683 (7th Cir. 1985).

However, the issue in *Paul Harris Stores, Inc.* was not whether portions of a consent

decree were appropriate for further inquiry in discovery, or even whether the same was admissible for the purpose of establishing prior knowledge or notice, but rather whether a consent decree could be attached *in its entirety* in support of a motion in opposition to summary judgment, *ie.*, to create a question of fact on the issue of liability. Todd does not pursue this line of inquiry to establish liability.[7]

Ocwen's reliance on *Ely v. Cabot Oil & Gas Corp.*, 2014 U.S. Dist. LEXIS 180162,*46-47 (M.D. Pa. 2014) is equally misplaced. In *Ely,* the court confronted the issue of whether a consent order entered into between an oil company and a state environmental agency was admissible for the purpose of proving the former breached the applicable standard of care in a negligence action, i.e., to prove liability. *Ely,* 2014 U.S. Dist. LEXIS 180162 at 46-47. ("However, consent orders and related agreements will be deemed inadmissible when offered to prove liability, *which is precisely what the Plaintiffs seek…"*) (emphasis added).

### C. FRE 404 Is Not An Appropriate Basis To Prohibit Todd from Deposing Ocwen's 30(b)(6) Representative about the Deposition Topics.

Ocwen also contends deposing its 30(b)(6) representative about the Deposition Topics is improper because the information will be used as propensity evidence to cast it as a "bad actor" in violation of Fed. R. Evid. 404. This argument, another attempt by Ocwen to sell a myopic view of the issues and allegations raised against them, ignores FRE 404(b)(2), which plainly states propensity evidence "may be admissible for another purpose such as … , intent, … knowledge, … absence of mistake, or lack of accident …" (emphasis added) Fed. R. Evid. 404(b)(2).

### D. Ocwen's Motion for Protective Order  Underscores Todd's Attempt to

---

[7] Additionally, the court in *Paul Harris Stores, Inc.* made specific note about how consent decrees *could be* properly introduced into evidence for certain purposes.

### Depose Its Former CEO Ronald Faris

As the Court is aware, Todd previously sought to depose Ocwen's former CEO Ron Faris about topics including the Deposition Topics. Ocwen opposed this for reasons including Todd had not exhausted less intrusive discovery means:

- "It is thus well-settled that a party cannot depose a high-level executive, such as Mr. Faris, unless …, which the party first tried to obtain through less-intrusive means. Neither is true here." Ocwen's Mot. to Quash the Subpoena for Ronald M. Faris' Depo. and for Protect. Order and Incorp. Br. in Supp. at *2.

- "On top of that, Plaintiff has not yet deposed Defendant's 30(b)(6) corporate representative or any of its lower level employees (i.e., those lower than the CEO level). If and when he does, the testimony and information provided at such depositions may negate the need for Mr. Faris' deposition altogether." Ocwen's Mot. to Quash the Subpoena for Ronald M. Faris' Depo. and for Protect. Order and Incorp. Br. in Supp. at *6.

- "It also is well-settled that a party cannot skip the critical step—as Plaintiff attempts to do here—of first exhausting less-intrusive means of discovery, including, but not limited to, deposing a defendant's 30(b)(6), before seeking to depose a high-level executive." Ocwen's Mot. to Quash the Subpoena for Ronald M. Faris' Depo. and for Protect. Order and Incorp. Br. in Supp. at *7.

In response, Todd argued permitting the deposition was nonetheless justified because Mr. Ronald Faris had personal knowledge of Ocwen's notice or knowledge of servicing deficiencies and problems with REALServicing, including without limitation the Deposition Topics, and because Ocwen was unlikely to willingly produce a suitably prepared 30(b)(6) representative to answer questions about the topics.

Thereafter, the Court granted Ocwen's Motion for Protective [Doc. 84] due in part because there was sufficient time to investigate the claims in the complaint through less intrusive discovery means. Now, only several months later, Ocwen seeks to prevent Todd from pursuing the "less intrusive discovery means" it previously argued was required.

### Conclusion

For the reasons identified herein, Plaintiff, Roger Todd respectfully requests the Court deny Defendant Ocwen Loan Servicing, LLC.'s Motion for Protective Order [Doc. 106] and order it to produce a corporate representative to answer questions about the Deposition Topics.

Respectfully submitted,

/s/ *Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
tcohron@clarkquinnlaw.com
*Counsel for the Plaintiff*

*/s/ Nick Wooten*
Nick Wooten
**NICK WOOTEN, LLC**
5125 Burnt Pine Drive
Conway, Arkansas 72034
nick@nickwooten.com
*Counsel for the Plaintiff*

*/s/ Rusty A. Payton*
Rusty A. Payton
**PAYTON LEGAL GROUP**
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
info@payton.legal
*Counsel for the Plaintiff*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on February 12, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

 David M. Schultz
 Joseph D. Kern
 **HINSHAW & CULBERTSON**
 dshultz@hinshawlaw.com
 dkern@hinshawlaw.com
*Attorneys for Ocwen Loan Servicing, Inc.*

            */s/ Travis W. Cohron*
            Travis W. Cohron, No. 29562-30

**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204