**IN RE:**

**OCWEN FINANCIAL CORPORATION**        **Administrative Proceeding**
**and OCWEN LOAN SERVICING, LLC,**        **No.**

        **Respondents.**

_____/

## SETTLEMENT AGREEMENT AND CONSENT ORDER
## OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

**WHEREAS**, Ocwen Financial Corporation is a publicly traded Florida corporation headquartered in Atlanta, Georgia and Ocwen Loan Servicing, LLC is a limited liability company and wholly owned subsidiary servicing company of Ocwen Financial Corporation located in Palm Beach, Florida (collectively, "Ocwen").

**WHEREAS,** on or about September 1, 2011, Ocwen acquired Litton Loan Servicing, LP ("Litton"), a servicer of residential mortgages and a Delaware limited partnership.

**WHEREAS**, on or about December 27, 2012, Ocwen acquired Homeward Residential Holdings, Inc., including its subsidiary Homeward Residential, Inc. (together, "Homeward"), which previously operated under the name American Home Mortgage Servicing, Inc., a servicer of residential mortgages and a Delaware corporation.

**WHEREAS**, the Alabama State Banking Department, Alaska Division of Banking and Securities, Arizona Department of Financial Institutions, Arkansas Securities Department, California Department of Business Oversight, Connecticut Department of Banking, Delaware Office of the State Bank Commissioner, District of Columbia Department of Insurance, Securities and Banking, Florida Office of Financial Regulation, Georgia Department of Banking and Finance, Idaho Department of Finance, Illinois Department of Financial and Professional Regulation, Indiana Department of Financial Institutions, Iowa Division of

Exhibit C

Banking, Kansas Office of the State Bank Commissioner, Kentucky Department of Financial Institutions, Louisiana Office of Financial Institutions, Maryland Office of Financial Regulation, Massachusetts Division of Banks, Michigan Office of Financial and Insurance Regulation, Minnesota Department of Commerce, Mississippi Department of Banking and Consumer Finance, Missouri Division of Finance, Montana Division of Banking and Financial Institutions, Nebraska Department of Banking and Finance, Nevada Department of Business and Industry, New Hampshire State Banking Department, New Jersey Department of Banking and Insurance, New Mexico Financial Institutions Division, North Carolina Office of the Commissioner of Banks, North Dakota Department of Financial Institutions, Ohio Division of Financial Institutions, Oregon Division of Finance and Corporate Securities, Rhode Island Department of Business Regulation, South Carolina Department of Consumer Affairs, South Dakota Division of Banking, Tennessee Department of Financial Institutions, Texas Department of Savings and Mortgage Lending, Utah Department of Financial Institutions, Vermont Department of Financial Institutions, Virginia Bureau of Financial Institutions, Washington Department of Financial Institutions, West Virginia Division of Financial Institutions, Wisconsin Department of Financial Institutions, Wyoming Division of Banking, (hereinafter referred to as the "State Mortgage Regulators") are members of the Conference of State Bank Supervisors ("CSBS") and/or American Association of Residential Mortgage Regulators ("AARMR") and have agreed to address enforcement concerns with Ocwen in a coordinated manner, working through its Multi-State Mortgage Committee.

**WHEREAS**, the Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,

Exhibit C

Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming (collectively, "Participating States") have agreed, through their respective regulatory agencies to negotiate and enter into this Settlement Agreement and Consent Order (hereinafter referred to as the "Agreement"). For the purpose of this agreement, the law of the Participating States means the laws within the jurisdiction of the Participating States.

**WHEREAS**, the State Mortgage Regulators and Ocwen ("the Parties") enter into this Agreement with the understanding that the Consumer Financial Protection Bureau and Participating States Attorneys General, as plaintiffs, have entered a Consent Judgment against Ocwen in the United States District Court for the District of Columbia (the "Consent Judgment") with terms and conditions that are further outlined herein.

**WHEREAS**, Ocwen is licensed as a mortgage lender or servicer under the law of the Participating States.

**WHEREAS**, Litton and Homeward were licensed as mortgage lenders or servicers under the law of the Participating States prior to acquisition by Ocwen.

**WHEREAS**, on or about December 1, 2010, the State Mortgage Regulators commenced a Multi-State Examination (the "Multi-State Examination") of Ocwen covering the period of December 1, 2010 to October 24, 2011, in order to determine Ocwen's compliance with applicable Federal and State laws and regulations, financial condition, and control and supervision of the licensed servicing operation. The Multi-State Examination of Ocwen was conducted pursuant to their respective statutory authorities, and in accordance with the protocols established by the CSBS/AARMR Nationwide Cooperative Protocol for

Exhibit C

Mortgage Supervision and the Nationwide Cooperative Agreement for Mortgage Supervision dated January 15, 2008.

**WHEREAS,** on or about November 29, 2010, the State Mortgage Regulators commenced an examination of Litton covering the period of January 1, 2009 to October 31, 2010, in order to determine Litton's compliance with applicable Federal and State laws and regulations, financial condition, and control and supervision of the licensed servicing operation. The Multi-State Examination of Litton was conducted pursuant to their respective statutory authorities, and in accordance with the protocols established by the CSBS/AARMR Nationwide Cooperative Protocol for Mortgage Supervision and the Nationwide Cooperative Agreement for Mortgage Supervision dated January 15, 2008. In addition, the Florida Office of Financial Regulation conducted an independent concurrent examination of Litton covering the period of January 1, 2008 to December 31, 2010.

**WHEREAS,** on or about October 29, 2010, the State Mortgage Regulators commenced a multi-state examination of Homeward covering the period of January 1, 2009 to November 5, 2010 in order to determine Homeward's compliance with applicable Federal and State laws and regulations, financial condition, and control and supervision of the licensed servicing operation.  The Multi-State Examination of Homeward was conducted pursuant to their respective statutory authorities, and in accordance with the protocols established by the CSBS/AARMR Nationwide Cooperative Protocol for Mortgage Supervision and the Nationwide Cooperative Agreement for Mortgage Supervision dated January 15, 2008. In addition, the Florida Office of Financial Regulation conducted an independent concurrent examination of Homeward covering the period of January 1, 2008 to December 31, 2010.

**WHEREAS,** reports of examination were issued pursuant to the Multi-State

Exhibit C

Examinations of Ocwen, Litton, and Homeward and the independent concurrent examinations of Litton and Homeward by the Florida Office of Financial Regulation (collectively, the "Reports of Examination"). Ocwen, Litton, and Homeward subsequently responded to the Reports of Examination as required by the State Mortgage Regulators.

**WHEREAS**, Ocwen acknowledges that it has full knowledge of its rights to notice and hearing pursuant to the law of the Participating States.

**WHEREAS**, Ocwen enters into this Agreement solely for the purpose of resolving disputes with the State Mortgage Regulators concerning their findings as communicated in the Reports of Examination in their entirety and without admitting any allegations or implications of fact, and without admitting any violations of applicable laws, regulations, or rules governing the conduct and operation of its mortgage servicing business. Ocwen acknowledges that the State Mortgage Regulators have and maintain jurisdiction over the underlying dispute and subsequent authority to fully resolve the matter.

**WHEREAS**, the intention of the State Mortgage Regulators in effecting this settlement is to remediate harms resulting from the alleged unlawful conduct of Ocwen, Litton, and Homeward identified in the Reports of Examination and related inquiries and investigations undertaken by the State Mortgage Regulators in the course of supervision.

### EXAMINATION FINDINGS

**WHEREAS**, "Examination Findings" means Reports of Examination and related inquiries and investigations by the State Mortgage Regulators that identified practices that may otherwise violate the laws and regulations of the Participating States and related Federal law,

Exhibit C

including but not limited to the allegations and Releases that are the basis of the Consent Judgment and specifically including:

    a.  Lack of controls related to document execution, including evidence of robo-signing, unauthorized execution, assignment backdating, improper certification and notarization, chain of title irregularities, and other related practices affecting the integrity of documents relied upon in the foreclosure process;

    b.  Deficiencies in loss mitigation and loan modification processes, including but not limited to:

        1.  Failure to effectively communicate with borrowers regarding loss mitigation and other foreclosure avoidance alternatives;

        2.  Failure to account for documents submitted in tandem with application for loss mitigation assistance;

        3.  Lack of reasonable expedience in approving or denying loss mitigation applications;

        4.  Providing false or misleading reasons for denial of loan modifications; and

        5.  Failure to honor the terms loan modifications for transferred accounts and continued efforts to collect payments under the original note terms.

    c.  Lack of controls related to general borrower account management, including but not limited to:

        1.  Misapplication of borrower payments;

        2.  Inaccurate escrow accounting and statements; and

        3.  Assessment of unauthorized fees and charges.

    d.  Inadequate staffing and lack of internal controls related to customer service;

Exhibit C

    e.   Deficiencies in control and oversight of third-party providers, including but not limited to, local foreclosure counsel;

    f.   Deficiencies in document maintenance processes, including but not limited to, failure to produce documents requested in tandem with examinations; and

    g.   Deficiencies in management control and supervision necessary to ensure compliance with applicable laws and regulations.

## AGREEMENT OBLIGATIONS

1. *Consent Judgment.* This Agreement incorporates the Consent Judgment as entered in the United States District Court for the District of Columbia in the matter brought against Ocwen by the Consumer Financial Protection Bureau and Participating State Attorneys General, as plaintiffs. The Consent Judgment, including all of its exhibits, are fully integrated into this Agreement and appended hereto, and the Consent Judgment, along with its exhibits, set forth the terms and conditions applicable to Ocwen and the State Mortgage Regulators, apart from and supplemented by the terms and conditions in this Agreement. To the extent that the terms and conditions contained in this Agreement conflict with any provisions of the Consent Judgment or its exhibits, the terms and conditions of this Agreement shall control.

2. *Servicing Standards, Cash Payments, and Other Consumer Relief.* Ocwen shall comply with the following servicing standards, payment obligations, and other consumer relief:

    a.   Servicing Standards. Ocwen shall comply with the Servicing Standards set forth in Exhibit A of the Consent Judgment.

Exhibit C

b.  Payments to Foreclosed Borrowers. Ocwen shall pay or cause to be paid the sum of $127.3 million (the "Borrower Payment Amount") pursuant to the terms of the Consent Judgment and Exhibit B into an interest bearing escrow account to provide cash payments to borrowers whose homes were sold in a foreclosure sale between and including January 1, 2009 and December 31, 2012 and who otherwise meet criteria set forth by the Monitoring Committee as set forth in the Consent Judgment, and to pay the reasonable costs and expenses of the Administrator, including taxes and fees for tax counsel, if any. This payment obligation shall be satisfied through payment under the Consent Judgment.

c.  Other Consumer Relief. Ocwen shall provide $2 billion of relief pursuant to the Consent Judgment and Exhibit C to consumers who meet the eligibility criteria in the forms and amounts described under the Consent Judgment to remediate harm to consumers caused by the alleged unlawful conduct of Ocwen, Litton, and Homeward.

**MONITORING AND ENFORCEMENT**

3.  *No Restriction on Existing Examination and Investigative Authority.* This Agreement shall in no way preclude the State Mortgage Regulators from exercising their examination or investigative authority authorized under the law of the Participating States; however, retention of examination and investigative authority shall not be construed as affecting the scope of the release in Paragraph 8 of this Agreement. Retention of examination and investigative authority shall not be construed as affecting or limiting the terms or conditions set forth in Paragraph 5 of this Agreement for bringing

Exhibit C

an enforcement action for a violation of this Agreement or the Consent Judgment.

4. *Sharing of Information and Cooperation.*   The State Mortgage Regulators may collectively or individually request and receive any information or documents in the possession of the Administration and Monitoring Committee (the "Monitoring Committee") established under the Consent Judgment subject to the procedural safeguards for documents designated as "CONFIDENTIAL" as set forth in Paragraph F of Exhibit D.  This Agreement shall not limit Ocwen's obligations, as a licensee of the State Mortgage Regulators, to cooperate with any examination or investigation, including but not limited to, any obligation to timely provide requested information or documents to the State Mortgage Regulators upon request.

5. *Reserved Enforcement Authority.*  Any failure to comply with the terms and conditions of this Agreement shall be treated as a violation of an Order of the State Mortgage Regulators and may be enforced as such pursuant to the laws of the Participating States subject to the terms and conditions set forth in this paragraph. The State Mortgage Regulators, collectively or individually, may take any administrative enforcement action authorized under the law of the Participating States. In the course of any such action, the State Mortgage Regulators may admit into evidence Monitor Report(s) and Quarterly Report(s). Such admissibility shall not prejudice Ocwen's right and ability to challenge the findings and/or the statements in the Monitor Report as flawed, lacking in probative value or otherwise.  The Monitor Report with respect to a particular Potential Violation shall not be admissible or used for any purpose if Ocwen cures the Potential Violation pursuant to Section E of Exhibit D of the Consent Judgment.   In addition, unless immediate action is necessary in order to prevent irreparable and immediate harm, prior

Exhibit C

to commencing any action the State Mortgage Regulators shall provide notice to the Monitoring Committee of its intent to bring an action as set forth in paragraph I(2) of Exhibit D of the Consent Judgment. As set forth in Exhibit D, upon notice, the members of the Monitoring Committee shall have no more than 21 days to determine whether to bring an enforcement action. If the members of the Monitoring Committee decline to bring an enforcement action, the State Mortgage Regulator must wait 21 additional days after such a determination by the members of the Monitoring Committee before commencing an enforcement action. Subject to the notification requirements set forth above, the State Mortgage Regulators, as licensing authority for Ocwen, may pursue violations of this Agreement independently of the Consumer Financial Protection Bureau and Participating State Attorneys General, plaintiffs to the Consent Judgment. In the event of an action to enforce the obligations of Ocwen and to seek remedies for an uncured Potential Violation for which Ocwen's time to cure has expired, the State Mortgage Regulators sole relief available in such an action will be the forms of relief set forth in Paragraph I(3) of Exhibit D to the Consent Judgment. The State Mortgage Regulators shall not initiate an enforcement action if barred by the release in Paragraph 8 of this Agreement. In the event a Potential Violation, as defined in Exhibit D to the Consent Judgment, is cured as provided in Paragraph E of Exhibit D, then no State Mortgage Regulator shall have any remedy under this Agreement or the Consent Judgment (other than the remedies in Paragraph E(5) of Exhibit D) with respect to such Potential Violation.

**GENERAL PROVISIONS**

Exhibit C

6.  *Consent.* Ocwen hereby knowingly, willingly, voluntarily, and irrevocably consents to the execution of this Agreement pursuant to the authority of the State Mortgage Regulators and agrees that it understands all of the terms and conditions contained herein. By voluntarily entering into this Agreement, Ocwen waives any right to administrative hearing, administrative review of a hearing, or appeal concerning the terms, conditions, and related obligations set forth in this Agreement.

7.  *Effectiveness.* This Agreement shall become effective upon entry of the Consent Judgment and execution of by all of the named State Mortgage Regulators (the "Effective Date").

8.  *Release.* Upon payment of the Borrower Payment Amount, the State Mortgage Regulators shall individually and collectively release and forever discharge Ocwen, Litton, and Homeward from any administrative enforcement actions pertaining to or relating to the practices identified herein as Examination Findings that occurred between January 1, 2009 and December 31, 2012 (the "Release Period"). This release shall not otherwise preclude or impair the State Mortgage Regulators from taking enforcement action for any other violations of law not released herein, even if such other violations fall within the Release Period

9.  *Related Parties.* The Release set forth under Paragraph 8 shall extend to all parties liable for the Examination Findings of Ocwen, Litton, and Homeward, which are the basis of this Agreement, which parties are otherwise subject to the jurisdiction of the State Mortgage Regulators, exclusively in their capacity as mortgage licensing authorities, for any violation under the laws or regulations of the Participating States and related Federal law arising from Examination Findings.

Exhibit C

10. *Fees Assessed to Consumers Not Subject to Release.* Any fee assessed to a consumer by Ocwen, Litton, or Homeward, which is later determined to have been specifically prohibited by the laws of the Participating States remains unauthorized and is not otherwise affected by the terms of the Release as set forth under Paragraph 8. As such, claims against Ocwen for reimbursement to mortgage borrowers are not released by this Agreement. Nothing in this Agreement, however, shall require the reimbursement of fees duplicative of any prior voluntary or involuntary payment to the affected borrower, whether directly or indirectly, from any governmental program or other source.

11. *Standing and Choice of Law.* Each State Mortgage Regulator has standing to enforce this Agreement in the judicial or administrative process otherwise authorized under the Laws of the Participating State.  Upon entry, this Agreement shall be deemed a final order of the State Mortgage Regulators unless adoption of a subsequent order is necessary under the laws of the Participating States. In the event of any disagreement between any State Mortgage Regulator and Ocwen regarding the enforceability or interpretation of this agreement and compliance therewith, the courts or administrative agency authorized under the laws of the Participating State shall have exclusive jurisdiction over the dispute, and the laws of the Participating State shall govern the interpretation, construction, and enforceability of this Agreement.

12. *Adoption of Subsequent Orders to Incorporate Terms.* Ocwen consents to the issuance by each State Mortgage Regulator, if deemed necessary under the law of the Participating States by the State Mortgage Regulator, of a separate administrative order to adopt and incorporate the terms and conditions of this Agreement.  Ocwen hereby waives review and approval of any such subsequent orders prior to entry provided the subsequent order

12

Exhibit C

does not amend, alter, or otherwise change the terms of the Agreement. In the event a subsequent order amends, alters, or otherwise changes the terms of the Agreement, the terms of the Agreement as set forth herein will control.

13. *Attorney's Fees.* Ocwen waives and shall not assert any claim for fees, costs or expenses against the State Mortgage Regulators, or any of their agents or employees, related in any way to this enforcement matter or the Consent Judgment or Settlement Agreement and Consent Order, whether arising under common law or under the terms of any statute; for these purposes, the Parties agree that neither Ocwen nor the State Mortgage Regulators are the prevailing party in this action because the Parties have reached a good faith settlement.

**WHEREFORE**, in consideration of the foregoing, including the recital paragraphs, the State Mortgage Regulators and Ocwen intending to be legally bound do hereby execute this Agreement.

*(The rest of this space is left intentionally blank).*

Exhibit C

**BY:   OCWEN FINANCIAL CORPORATION**

By: _____          _____

*Signature*                                                         *Date*

Its: _____

*Title*

_____

*Print Name*


State of Florida

County of _____

     Before me, the undersigned notary public, personally appeared

_____ as _____ of Ocwen Financial Corporation,

who upon being duly sworn, states that (s)he has read and understands the foregoing Stipulation

and voluntarily signed same.  Sworn to and subscribed before me this ___ day of _____,

2013.

                                                _____

                                                Notary Public

Personally Known ____OR Produced Identification ____.

Type of Identification Produced _____.

Exhibit C

**BY:    OCWEN LOAN SERVICING, LLC**

By:    _____          _____

       *Signature*                                                    *Date*

Its:    _____

       *Title*

       _____

       *Print Name*

State of Florida

County of _____

      Before me, the undersigned notary public, personally appeared

_____ as _____ of Ocwen Loan Servicing, LLC,

who upon being duly sworn, states that (s)he has read and understands the foregoing Stipulation

and voluntarily signed same.  Sworn to and subscribed before me this ___ day of _____,

2013.

                     _____

                     Notary Public

Personally Known _____OR Produced Identification _____.

Type of Identification Produced _____.

Exhibit C

**BY:**

_____     _____

Exhibit C

## Ocwen Settlement State Mortgage Regulator Signatures



John D. Harrison
Superintendent of Banks
State of Alabama State Banking Department



Kevin Anselm
Director, Alaska Division of Banking & Securities
Department of Commerce, Community and Economic Development



Lauren W. Kingry
Superintendent of Financial Institutions
Arizona Department of Financial Institutions



A. Heath Abshure, Securities Commissioner
Arkansas Securities Department

**CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT**

JAN LYNN OWEN
Commissioner of Business Oversight
1515 K Street, Suite 200
Sacramento, CA 95814
Tel: 916-324-9011
Fax: 916-322-1559

Exhibit C



Howard F. Pitkin
Banking Commissioner
Department of Banking
State of Connecticut



Robert A. Glen
State Bank Commissioner
State of Delaware



Interim Commissioner
Distric of Columbia Department of Insurance
Securities and Banking



Drew Breakspear
Commissioner
Florida Office of Financial Regulation



Commissioner
Department of Banking and Finance
State of Georgia

Exhibit C



Gavin M. Gee
Director
Idaho Department of Finance



Manuel Flores
Acting Secretary
Illinois Department of Financial and
Professional Regulation



David Mills
Commissioner
Indiana Department of Financial Institutions



James M. Schipper, Superintendent
Iowa Division of Banking



Judi M. Stork
Acting Bank Commissioner
Office of the State Bank Commissioner
State of Kansas

Exhibit C



Commissioner
Kentucky Department of Financial Institutions



John Ducrest
Commissioner
Louisiana Office of Financial Institutions



Mark A. Kaufman
Commissioner of Financial Regulation
Maryland Department of Labor, Licensing and Regulation



Commissioner
Massachusetts Division of Banks



Annette E. Flood
Director
Michigan Department of Insurance and Financial Services

Exhibit C



Mike Rothman
Commerce Commissioner
Minnesota Department of Commerce



Jerry Wilson
Commissioner
Mississippi Department of Banking and Consumer Finance



_____

Richard J. Weaver
Commissioner of Finance
Missouri Division of Finance



Melanie G. Hall
Commissioner
Division of Banking and Financial Institutions
State of Montana



John Munn
Director
Department of Banking and Finance
State of Nebraska

Exhibit C



JAMES WESTRIN
COMMISSIONER
State of Nevada, Department of
Business and Industry, Division of
Mortgage Lending



Glen Perlow
New Hampshire Bank Commissioner
New Hampshire Banking Department



By: _____
KENNETH E. KOBYLOWSKI, Commissioner
New Jersey Department of Banking & Insurance



Cynthia Richards
Commissioner
New Mexico Financial Institutions Division



Commissioner
North Carolina
Office of Commissioner of Banks

Exhibit C



Robert J. Entringer
Commissioner
North Dakota Department of Financial Institutions



Commissioner
Division of Financial Institutions
State of Ohio



Administrator
David Tatman
Oregon Division of Finance and Corporate Securities



Paul McGreevy
Director
Rhode Island Department of Business Regulation
Division of Banking



Carri Gruber Lybarker
Administrator
South Carolina Department of Consumer Affairs

Exhibit C



Bret Afdahi

Director

SD Division of Banking



Greg Gonzales
Commissioner
Tennessee Department of Financial Institutions



Douglas B. Foster
Commissioner
Texas Department of Savings and Mortgage Lending



G. Edward Leary
Commissioner
State of Utah, Department of Financial Institutions



Thomas J. Candon
Acting Commissioner
Vermont Department of Financial Regulation

Exhibit C



E. J. Face, Jr.
Commissioner of Financial Institutions
Bureau of Financial Institutions
State Corporation Commission of Virginia



Scott Jarvis, Director
Washington State Department of Financial Institutions



Sara M. Cline
Commissioner
West Virginia Division of Financial Institutions



Peter Bildsten
Secretary
Wisconsin Department of Financial Institutions



Albert L. Forkner
State Banking Commissioner
Wyoming Division of Banking

Exhibit C

these purposes, the Parties agree that neither Ocwen nor the State Mortgage Regulators are the prevailing party in this action because the Parties have reached a good faith settlement.

**WHEREFORE**, in consideration of the foregoing, including the recital paragraphs, the State Mortgage Regulators and Ocwen intending to be legally bound do hereby execute this Agreement.

**BY:  OCWEN FINANCIAL CORPORATION**

By: ▮▮▮▮▮▮▮▮▮▮▮                          12-19-13
*Signature*                                          *Date*

Its: ~~Secretary~~ Executive Vice President & General Counsel
*Title*

Timothy M. Hayes
*Print Name*

~~State of Florida~~ Territory of the United States Virgin Islands

County of  St. Croix

Before me, the undersigned notary public, personally appeared

Timothy M. Hayes as EVP & General Counsel of Ocwen Financial Corporation,

who upon being duly sworn, states that (s)he has read and understands the foregoing Stipulation and voluntarily signed same.  Sworn to and subscribed before me this 19th day of December 2013.

▮▮▮▮▮▮▮▮▮▮▮
Notary Public

Personally Known _____ OR Produced Identification ✓ .

Type of Identification Produced  Passport # 212671913 .
                                  Exp  01/27/2015

**BEATRICE MCMAHON**
**NOTARY PUBLIC**
COMMISSION # 080-11
MY COMMISSION EXPIRES SEPTEMBER 21, 2015

13

**Exhibit C**

**BY:   OCWEN LOAN SERVICING, LLC**

By: ████████████████                    12-19-13
      *Signature*                                    *Date*

Its: Secretary
      *Title*
      Timothy M. Hayes
      *Print Name*

Territory of the United States Virgin Islands
~~State of Florida~~

County of St. Croix

     Before me, the undersigned notary public, personally appeared

Timothy M. Hayes   as   Secretary   of Ocwen Loan Servicing, LLC,

who upon being duly sworn, states that (s)he has read and understands the foregoing Stipulation

and voluntarily signed same. Sworn to and subscribed before me this 19th day of December

2013.

████████████████
                    Notary Public

                                        **BEATRICE MCMAHON**
                                        **NOTARY PUBLIC**
                                        **COMMISSION # 080-11**
Personally Known ____OR Produced Identification ✓ .  **MY COMMISSION EXPIRES SEPTEMBER 21, 2015**

Type of Identification Produced   Passport #212671.913
                                         Exp: 01/27/2015

Exhibit C