UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

ROGER TODD,                                  )
                                             )
            Plaintiff,                       )
                                             )        Case No. 2:19-cv-00085-JMS-DLP
v.                                           )
                                             )
OCWEN LOAN SERVICING, INC., and              )
DEUTSCHE BANK NATIONAL TRUST CO.,            )
as Trustee for NovaStar Mortgage Funding     )
Trust, Series 2007-1,                        )
                                             )
            Defendant.                       )
                                             )

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

Defendant Ocwen Loan Servicing, LLC ("Ocwen"), incorrectly named in the caption as

Ocwen Loan Servicing, Inc. ("Defendant"), through its undersigned counsel, respectfully

submits this response in opposition to Plaintiff Roger Todd's motion for sanctions (Dkt. 142).

## INTRODUCTION

Plaintiff asks the Court to sanction Defendant for it alleged failure to preserve "Last

Change Date Data" regarding Plaintiff's mortgage loan at issue (the "Loan"). But Defendant

produced the exact "Last Change Date Data" Plaintiff alleges it failed to preserve. Plaintiff's

counsel has now confirmed this on multiple occasions. For this simple and obvious reason,

Plaintiff's request for sanctions with respect to the "Last Change Date Data" fails. *Barcroft*

*Media v. Coed Media*, 2017 U.S. Dist. LEXIS 164162, *2-3 (S.D.N.Y. 2017) (denying request

for sanctions under Rule 37(e) for the "simple reason" that the data at issue was not lost and was

in the possession of the party that sought sanctions—***the same as here***—and explaining that the

request for sanctions "border[ed] on frivolous").

Plaintiff next asks the Court to sanction Defendant for its alleged failure to preserve emails from January 1, 2015 through December 31, 2015.  But Defendant did not have a duty to preserve such emails because it had no reason to suspect any litigation regarding Plaintiff's Loan—much less imminent litigation.  *Doe v. City of Chicago*, 2019 U.S. Dist. LEXIS 113395, *12 (N.D. Ill. 2019) (a party only has duty to preserve relevant evidence when it knew or reasonably could foresee that litigation was ***imminent*** and that the evidence was ***material*** to that prospective litigation).  In fact, the emails Plaintiff claims Defendant had a duty to preserve pre-date the filing of this lawsuit by as much of four years.  They also pre-date Plaintiff's alleged correspondence dated July 2018 (i.e., the earliest event Plaintiff alleges triggered any duty to preserve) by as much as two and a half years.  Even if Defendant had a duty to preserve such emails, Plaintiff's request for sanctions still fails because Plaintiff does not (and cannot) establish that the emails are lost.  Plaintiff appears to concede this.  Plf.'s Motion for Sanctions (Dkt. 142) at 18 (acknowledging potential "access to the sought after data").

For the above reasons, and those set forth below, the Court should deny Plaintiff's motion for sanctions in its entirety.  The Court should also award Defendant its attorneys' fees associated with having to respond to Plaintiff's instant motion—which is frivolous.  *Barcroft Media*, 2017 U.S. Dist. LEXIS 164162 at 2-3 (denying request for sanctions under Rule 37(e) for the "simple reason" that the data at issue was not lost, and thus, explaining that the request for sanctions "border[ed] on frivolous").

## RELEVANT BACKGROUND

### I.    "Last Change Date Data"

Plaintiff has issued two sets of interrogatories, four sets of request for production, and nine sets of requests for admissions.  Not one mentioned the term "Last Change Date Data" or

1018199\305543790.v1

specifically requested such data.  A plain reading of Plaintiff's discovery requests confirm this. *See* Plaintiff's Discovery Requests attached as **Exhibit A**.

Plaintiff's counsel first mentioned anything about the "Last Change Date Data" around October 14, 2019.  *See* October 14, 2019 Email from Plaintiff's Counsel attached as **Exhibit B**. Interestingly, and despite Plaintiff's counsel interest in obtaining the "Last Change Date Data," Plaintiff's counsel still chose not to issue a specific request for such data pursuant to Rule 34 of the Federal Rules of Civil Procedure—and still has not.[1]  The Federal Rules of Civil Procedure thus did not impose any obligation on Defendant to produce the "Last Change Date Data." Despite this (and in the spirit of cooperation), Defendant worked to attempt to locate and produce the requested data.  The parties routinely communicated regarding the status of Defendant's efforts and/or ability to locate the "Last Change Date Data."  Around December 18, 2019, Defendant produced data in spreadsheet format that included a column entitled "Last Chg Date." *See* Plf.'s Motion for Sanctions at Ex. F (Dkt. 142-6).  The parties later appeared before the Court on February 10, 2020.  During that conference, Plaintiff's counsel expressed certain concerns about the "Last Chg Date" data Defendant previously produced.  Plaintiff still had not issued any discovery request pursuant to Rule 34 requesting the "Last Change Date Data" he purportedly sought.  However, and again in the spirit of cooperation, Defendant and its counsel

---

[1] This is not the first time Plaintiff asked the Court to order Defendant to produce documents and/or data it did not request in discovery based on an improper reading of his own requests.  The Court may recall that Plaintiff also incorrectly represented to the Court that he requested certain "Risk Convergence Reports" in his first set of requests for production.  After a conference with the Court, the Court determined he did not.  The Court also denied a motion to compel that Plaintiff previously filed regarding certain emails in part because Plaintiff never requested in any request for production the emails that he asked the Court to compel Defendant to produce.

1018199\305543790.v1

sought to address Plaintiff's apparent concerns (i.e., that the data Defendant previously produced may not have been the data Plaintiff purportedly sought).[2]

On March 9, 2020—twenty-eight days after the February 10, 2020 conference at which Plaintiff expressed certain concern regarding the earlier produced data—Defendant supplemented its discovery responses. It produced a spreadsheet of data that included a column entitled "CHANGEDATE," a slightly different term that Plaintiff's counsel continuously referred to throughout the discovery process (i.e., "Last Change Date"). Plaintiff's counsel has now ***confirmed***—on ***multiple*** occasions—that the data in the column entitled "CHANGEDATE" is in fact the "Last Change Date Data" he purportedly sought (and the data he alleges Defendant failed to preserve). This should have resolved the issue. It did not.

Instead, Plaintiff now requests that the Court sanction Defendant pursuant to Rule 37(e) of the Federal Rules of Civil Procedure for its alleged failure to preserve the exact data Plaintiff now has in his possession—a fact Plaintiff's counsel confirmed.[3] This makes no sense. The Court should thus deny Plaintiff's request for one simple reason: Defendant produced the exact "Last Change Date Data" Plaintiff alleges it failed to preserve.

---

[2] Defendant flatly rejects any suggestion that it falsified the earlier produced data.

[3] This is consistent with Plaintiff's counsel's pattern of filing motions that border on frivolous. Plaintiff's counsel filed a motion asking the Court to take judicial notice of certain facts at the onset of this case and before Defendant answered Plaintiff's first amended complaint. Judge Magnus-Stinson denied the motion and stated as follows: "[n]o authority (and certainly none offered by Mr. Todd, who elected not to file a reply) suggests that a court may or should entertain a freestanding request to take judicial notice absent a ripe dispute between the parties . . ." and she further that "[c]ollateral motions waste the Court's time . . . simply divert scarce judicial resources, distract from the merits, and risk an advisory opinion that would have no value unless and until the judicially-noticed evidence is relied upon by a party." Court's June 25, 2019 Order (Dkt. 33) at 2. Plaintiff also filed moved to consolidate this case with another case that Plaintiff's counsel (not Plaintiff) has against Defendant in this district. Judge Magnus-Stinson denied Plaintiff's motion outright due to the stark differences between the cases and/or the stages of each case. Court's February 6, 2020 Order (Dkt. 120).

1018199\305543790.v1

## II.     Emails from January 1, 2015 through December 31, 2015

As mentioned, Plaintiff has issued four sets of requests for production in this case.  The first three sets did not specifically identify the emails Plaintiff purportedly sought nor did they set forth a specific time period for which he sought such emails.  They also did not provide any search terms to use to conduct an email search or identify the names of any custodians' whose emails Plaintiff wanted Defendant to search.  A plain reading of Defendants' first three sets of requests for production confirms all this.  *See* **Ex. A**.  It also confirms Plaintiff never specifically requested the emails he now alleges Defendant failed to preserve through a Rule 34 request (until potentially January 31, 2020 when he issued a fourth set of requests for production).

Despite Plaintiff's failure to specifically identify the emails he sought in his first three sets of requests for production, his failure to set forth a time period for which he sought emails, and his failure to set forth any search terms to use to conduct a search for the emails he sought (which is typical when seeking ESI such as emails), Defendant cooperated with Plaintiff in an effort to determine which emails he sought.  Plaintiff then proposed a list of search terms and a list of 36 custodians whose emails it wanted Defendant to search.  Defendant then conducted a search of those custodians using the following terms: 1) Roger Todd; 2) 8800 East Washboard Road; or 3) Loan No. 7110452443.  The search included a time period from January 1, 2016 through the present (i.e., date of the search).  Defendant then produced the non-privileged email correspondence the search returned.  Defendant objected to conducing a search using Plaintiff's other proposed search terms based on relevance.  The Court later agreed that Plaintiff had failed to establish the relevance of such terms when it denied Plaintiff's motion to compel on January 30, 2020.  Court's January 30, 2020 Order (Dkt. 114) at 18.

1018199\305543790.v1

Plaintiff did not issue any request for production pursuant to Rule 34 that specifically set forth the emails he purportedly sought until January 31, 2020.  In his January 31, 2020 request, Plaintiff asked Defendant to produce all emails that contain any of the following terms: "(1) Metric 4.C (including variations of the same, eg., 'Reconciliation of certain waived fees' and 'Metric 10 ( 4.C)'); (2) Metric 5.E (including variations of the same, eg., 'affidavit of indebtedness integrity', 'AOI integrity', and 'Metric 16 (5.E)'); and (3) Bankruptcy Compliance."  Plaintiff also identified 36 custodians' whose emails he requested that Defendant search using the terms in the request.  Notably, Plaintiff issued the request after the Court already held he had "not established the relevance of the requested email correspondence with" the above search terms.  Court's January 30, 2020 Order, Doc. 114. *Id*. at 18.  Defendant objected to Plaintiff's request accordingly.

Against the above backdrop, Plaintiff purportedly asks the Court to sanction Defendant for its alleged failure to preserve emails from January 1, 2015 through December 31, 2015.  But Defendant does not possess emails from this time period and has not possessed such emails since 2016.  In 2016, Defendant completed an information technology separation (the "IT Separation") from Altisource Solutions, Inc. ("Altisource").  As part of the IT Separation, emails from January 1, 2015 through December 31, 2015 were left with Altisource.  Altisource is a stand-alone, publicly traded company and has been since 2009, which Plaintiff admits.  Plf.'s Motion for Sanctions (Dkt. 142) at 2.  Importantly, the IT Separation occurred more than two years before Plaintiff filed the instant lawsuit in February 2019 and at least a year and half before Plaintiff alleges he sent a notice of error to Defendant in July 2018 (i.e., the first instance Plaintiff alleges triggered Defendant's duty to preserve).

1018199\305543790.v1

## ARGUMENT

I.   **Defendant Produced the "Last Change Date Data" Plaintiff Alleges It Failed to Preserve—a Fact Plaintiff's Counsel Has Confirmed.**

Rule 37(e) gives courts authority to sanction a party for failure to preserve electronically stored information ("ESI").  Fed R. Civ. P. 37(e).  To impose sanctions under Rule 37(e), a court must determine that: (1) the ESI should have been preserved in anticipation of litigation; (2) the ESI is ***lost***; (3) the party failed to take reasonable steps to preserve it; and (4) it cannot be restored or replaced through additional discovery.  *Doe*, 2019 U.S. Dist. LEXIS 113395 at 4; *Snider v. Danfoss, LLC*, 2017 U.S. Dist. LEXIS 107591, *9-10 (N.D. Ill. 2017).  If any of these perquisites are not met—as is the case here—the analysis stops and a court cannot impose sanctions under Rule 37(e).  *Snider*, 2017 U.S. Dist. LEXIS 107591 at 9-10; *Lavite v. Dunstan*, 2018 U.S. Dist. LEXIS 25100, *10 (S.D. Ill. 2018).

Here, the analysis is simple (despite Plaintiff's attempt to complicate it).  Plaintiff seeks sanctions under Rule 37(e) for Defendant's alleged failure to preserve the "Last Change Date Data" regarding the Loan.  But the "Last Change Date Data" is not ***lost***.  Defendant produced the "Last Change Date Data" Plaintiff alleges it failed to preserve (and it produced the data before Plaintiff filed the instant motion).  Plaintiff's counsel confirmed—on multiple occasions—that the "Last Change Date Data" Defendant produced is the exact "Last Change Date Data" he purportedly sought (and the same data Plaintiff now alleges Defendant failed to preserve).  Put simply, the "Last Change Date Data" at issue is not ***lost***—making Plaintiff's request for sanctions improper (and frivolous).  *Barcroft Media*, 2017 U.S. Dist. LEXIS 164162 at 2-3 (denying request for sanctions under Rule 37(e) for the "simple reason" that the data at issue was not lost and was in the possession of the party that sought sanctions—***the same as here***—and explaining that the request for sanctions "border[ed] on frivolous"); *Lavite*, 2018 U.S. Dist.

7

LEXIS 25100 at 10-11 (denying request for sanctions under Rule 37(e) because the ESI at issue was not lost); *Crow v. Cosmo Specialty Fiber*, 2017 U.S. Dist. LEXIS 43643, *10-12 (W.D. Wash. 2017) (denying request for sanctions for the alleged failure to produce an email after a more careful search indicated it had not been lost or destroyed and explaining that the Rule 37(e) only applies where the ESI/data at issue was lost); *Exe v. Fleetwood RV, Inc.*, 2013 U.S. Dist. LEXIS 141905, *25 (N.D. Ind. 2013) (denying request for sanctions because the party "[u]ltimately" was "able to recover the data . . . and thus the evidence has not been destroyed . . . or spoliated"); *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 U.S. Dist. LEXIS 42239, *69-70 (S.D. Fla. 2011) (denying request for sanctions because the evidence at issue was not "missing" or lost); *see also* Fed. R. Civ. P. 37(e), Ad. Comm. Notes to 2015 Amendment (the new rule applies only when such information is lost).

In sum, Plaintiff's requests for sanctions regarding the "Last Change Date Data" fails, as a matter of law and fact, because Defendant produced the exact data Plaintiff alleges it failed to preserve.  Put another way, Plaintiff now possess the exact data he alleges Defendant failed to preserve—a fact Plaintiff's counsel has confirmed.  Rule 37(e) expressly prohibits sanctions under the circumstances.

## II.    Defendant Did Not Fail to Preserve the Purported Emails at Issue in Violation of any Federal Rule.

Plaintiff requests that the Court sanction Defendant under Rule 37(e) for its alleged failure to preserve emails.  Plaintiff does not identify the specific email correspondence he alleges Defendant failed to preserve.  Notably, Plaintiff does not express any concern regarding Defendant's email search regarding emails from January 1, 2016 through the present (i.e., the date of the search).  Nor does Plaintiff allege Defendant failed to preserve emails from January 1,

1018199\305543790.v1

2016 through the present.  Plaintiff's request for sanctions thus appears limited to emails from January 1, 2015 through December 31, 2015 that may have been sent or received.

As explained, to impose sanctions under Rule 37(e), a court must determine that: (1) the ESI should have been preserved in anticipation of litigation; (2) the ESI is lost; (3) the party failed to take reasonable steps to preserve it; and (4) it cannot be restored or replaced through additional discovery.  *Doe*, 2019 U.S. Dist. LEXIS 113395 at 4; *Snider*, 2017 U.S. Dist. LEXIS 107591 at 9-10.  If any of these perquisites are not met, the analysis stops and a court cannot impose sanctions under Rule 37(e).  *Snider*, 2017 U.S. Dist. LEXIS 107591 at 9-10; *Lavite*, 2018 U.S. Dist. LEXIS 25100 at 10.  Here, the first, second, and fourth requirements are not met.

### A.    Defendant Had No Duty to Preserve Emails that Date Back More than Five Years.

No Federal Rule (or other rule or authority for that matter) imposed any duty on Defendant to preserve all emails on a company-wide basis from January 1, 2015 through December 31, 2015.  It is well-settled that a party only has duty to preserve relevant evidence when it knew or reasonably could foresee that litigation was ***imminent*** and that the evidence was ***material*** to that prospective litigation.  *Doe*, 2019 U.S. Dist. LEXIS 113395 at 12.  It also is well-settled that a party does not need to preserve every single scrap of paper in its business, nor does it have to go to "extraordinary measures" to preserve all potential evidence.  *Danis v. USN Communications, Inc.*, 2000 U.S. Dist. LEXIS 16900, *99 (N.D. Ill. 2000); *Wiginton v. CB Richard Ellis, Inc.*, 2003 U.S. Dist. LEXIS 19128, *12-13 (N.D. Ill. 2003)

Defendant does not possess the emails purportedly at issue (i.e., emails from January 1, 2015 through December 31, 2015) and has not possessed such emails since 2016.  In 2016, Defendant and Altisource completed an IT Separation.  As part of the IT Separation, emails and/or email data from January 1, 2015 through December 31, 2015 were left with Altisource.

Altisource is a stand-alone, publicly traded company and has been since 2009, which Plaintiff admits.  Plf.'s Motion for Sanctions (Dkt. 142) at 2.

Plaintiff claims five events triggered Defendant's duty to preserve the emails at issue.  In particular, Plaintiff claims the alleged notices of error he sent Defendant on July 24, 2018; November 8, 2014; December 10, 2014; and January 29, 2019 and/or his filing of the instant lawsuit on February 18, 2019 triggered Defendant's duty to preserve the emails at issue.  Plf.'s Motion for Sanctions (Dkt. 142) at 4.  Plaintiff is wrong.  All of these events occurred long after Defendant's and Altisource's IT Separation in 2016—a process that left Altisource, not Defendant, with email data from the timeframe at issue (i.e., from January 1, 2015 through December 31, 2015).  In fact, Plaintiff did not send his first alleged notice of error until July 24, 2018.  This is the earliest potential instance Plaintiff claims triggered a duty by Defendant to preserve the emails at issue.  But Plaintiff did not send the first alleged notice of error until at least a year and half after Defendant and Altisource completed the IT Separation in 2016.  Put simply, at the earliest potential instance that Defendant could have anticipated any litigation— much less imminent litigation (even construing all facts in favor of Plaintiff), it no longer possessed the emails Plaintiff alleges it failed to preserve.  And it had not possessed them for almost a year a half.  Put another way, Defendant did not have the emails Plaintiff alleges it had a duty to preserve at the time Plaintiff alleges Defendant should have anticipated imminent litigation regarding Plaintiff's Loan.  Plaintiff's request for sanctions fails for this reason.  *Love v. City of Chicago*, 2017 U.S. Dist. LEXIS 184081, *12-13 (N.D. Ill. 2017) (denying sanctions because a party does not have a duty to preserve data that does not exist);  *Baker v. AIG Claim Servs.*, 2005 U.S. Dist. LEXIS 46174, *22 (N.D. Ind. 2005) ("a claim of spoliation requires that evidence be in the ***exclusive possession*** of the accused party") (emphasis added); *Point Blank*

1018199\305543790.v1

*Solutions, Inc*, 2011 U.S. Dist. LEXIS 42239 at 76-77 ("It is well-settled that the duty to preserve potentially relevant evidence arises when the ***party in possession of the evidence*** knows that litigation by the party seeking the evidence is pending or probable.") (emphasis added).

> **B.      The Emails at Issue Are Not Lost.**

"Pure speculation is not enough" to find that relevant ESI is lost and/or not available from another source. *Air Products v. Wiesemann*, 2017 U.S. Dist. LEXIS 26818, \*5 (D. Del. 2017).   Accordingly, to prevail on his instant motion, Plaintiff must meet "the threshold requirement under Fed. R. Civ. P. 37(e) of showing that ESI was actually lost." *Id*. at 2-3. Plaintiff does not and cannot meet this threshold.  There is a reason for this: the ability to search for the emails at issue (i.e., those from January 1, 2015 through December 31, 2015) is not lost.

As explained, as part Defendant's and Altisource's IT Separation, email data from January 1, 2015 through December 31, 2015 were left with Altisource.  This prompted Plaintiff to subpoena non-party Altisource for the emails at issue.  Non-party Altisource objected to Plaintiff's subpoena on the basis that it was unduly burdensome and sought information neither relevant to the claims or defenses in this matter nor proportional to the needs of this case. Importantly, Altisource (nor Defendant for that matter) never claimed the emails at issue did not exist or were ***lost***.  In fact, Altisource indicated "[t]here may be certain Ocwen emails prior to June 11, 2017 on back-up tapes maintained by Iron Mountain."   February 14, 2020 Correspondence attached to Plf.'s Motion for Sanctions as Exhibit I (Dkt. 142-9).  Altisource further explained that the cost to "recall, restore, and search the back-up tapes" for the requested emails "would cost tens of thousands of dollars, and potentially much more based on the open-ended search that Plaintiff's counsel" requested. *Id*.

Rather than respond to Altisource's objections or pursue a motion to compel against Altisource to overcome its objections (which is the procedurally proper way to address the issue and one Plaintiff's counsel contemplated during the parties' March 5, 2020 conference with the Court), Plaintiff chose to file the instant motion seeking sanctions against Defendant for failing to preserve emails in has not possessed since 2016.  Plaintiff's counsel likely chose to file the instant motion because he did not want to incur the time, effort, or expense of having to file a motion to compel against Altisource in the appropriate District Court in Georgia.

Regardless, Rule 37(e) does now allow for sanctions here because the ability to search for the emails is not lost nor has Plaintiff established they cannot be retrieved.  *Air Products*, 2017 U.S. Dist. LEXIS 26818 at 2-3, 5, 9.  (denying request for sanctions because the emails at issue were available from another source and explaining that "[p]ure speculation is not enough" to find that relevant ESI was destroyed); *Lavite*, 2018 U.S. Dist. LEXIS 25100, *10-11 (denying request for sanctions under Rule 37(e) because the ESI at issue was not lost).  Plaintiff appears to concede this.  Plf.'s Motion for Sanctions (Dkt. 142) at 18 (acknowledging potential "access to the sought after data").  At a minimum, this apparent concession confirms Plaintiff has not met "the threshold requirement under Fed. R. Civ. P. 37(e) of showing that ESI was actually lost" and confirms his entire motion is based on "[p]ure speculation," which is not enough.  *Air Products*, 2017 U.S. Dist. LEXIS 26818 at 2-3, 5.

C.     **The Emails at Issue Are Not Relevant.**

A party must only preserve evidence that is properly ***discoverable*** under Rule 26.  *Wiginton*, 2003 U.S. Dist. LEXIS 19128 at 12; *Perry v. City of Gary*, 2009 U.S. Dist. LEXIS 103673, *6-7 (N.D. Ind. 2009) ("Under the Federal Rules of Civil Procedure, parties to any litigation have the duty to preserve documents commensurate with the scope of discovery

12

allowed under Rule 26."). Courts have also consistently held that Rule 37(e) only applies to **_relevant_** ESI. *Snider*, 2017 U.S. Dist. LEXIS 107591; *Doe*, 2019 U.S. Dist. LEXIS 113395 at 12 (a party only has duty to preserve relevant evidence when it knew or reasonably could foresee that litigation was imminent and that the evidence was **_material_** to that prospective litigation); *see also Eshelman v. Puma Biotechnology, Inc.*, 2017 U.S. Dist. LEXIS 87282, *11-19 (E.D.N.C. 2017).

Rule 26 of the Federal Rules of Civil Procedure permits the discovery of nonprivileged matters that are relevant to a party's claim or defense and proportional to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Fed. R. Civ. P. 26; *Trupp v. Roche Diagnostics Corp.* 2019 U.S. Dist. LEXIS 87764, *3-4 (S.D. Ind. 2019). But Rule 26 and the other discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 U.S. Dist. LEXIS 2712, *4-5 (N.D. Ill. 1994). "Parties are entitled to a reasonable opportunity to investigate the facts—and no more." *Id*. "Experience has demonstrated that the discovery rules can be and sometimes are abused, and there is presently an ongoing effort to curb such abuses." *Id*. at 3. The U.S. Supreme Court has cautioned that the requirement of Rule 26(b)(1), that the material sought in discovery be "relevant," should be firmly applied and that "judges should not neglect their power to restrict discovery . . ." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Failure to exercise this control results in needless and enormous costs to the litigants. Judicious use of the court's case-management authority during a litigation can help to check over-lawyering and limits on discovery "can effectively channel the efforts of counsel before excessive time and resources are expended." *Montanez v. Simon*, 755

13

F.3d 547, 552 (7th Cir. 2014).

Judge Doris L. Pryor explained in *Trupp* that "[d]iscovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy."   2019 U.S. Dist. LEXIS 87764 at 4.   Judge Pryor also explained that "Federal Rule 26(b), describing the scope and limits of discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process." *Id*. at 5.

Consistent with the above principles, courts frequently restrict discovery based on relevancy objections. *West v. Miller*, 2006 U.S. Dist. LEXIS 56243, *6-8 (N.D. Ill. Aug. 11, 2006) (denying a motion to compel because party that filed the motion failed to meet its burden to establish the information sought was relevant); *see also Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003); *Diak v. Dwyer, Costello, and Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994).   Unless the requesting party can demonstrate the relevancy of the materials sought, judges "should not hesitate to exercise appropriate control over the discovery process . . . 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'" *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 U.S. Dist. LEXIS 26386, *9 (N.D. Ill. 2018).   Indeed, the Seventh Circuit has often said that "discovery is not to be used as a fishing expedition." *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971-972 (7th Cir. 1996).

Here, Plaintiff purportedly asks the Court to sanction Defendant for failing to preserve email correspondence from January 1, 2015 through December 31, 2015 that include the following search terms: (1) Roger Todd; (2) 8800 East Washboard Road; (3) Loan No. 7110452443; (4) Metric Remediation; (5) Metric 1.A; (6) Metric 2.A; (7) Metric 2.13; (8) Metric

14

2.C; (9) Metric 4.C; (10) Metric 5.E; (11) Metric 5.A; (12) Metric 6.A; and (13) Bankruptcy Compliance.   See generally Plf.'s Motion for Sanctions (Dkt. 142).   Plaintiff's request is improper because he does not and cannot establish that these emails—all of which predate the conduct at issue by almost two years—are relevant.

The Court already (and correctly) held, when it denied Plaintiff's motion to compel on January 30, 2020, that Plaintiff had "not established the relevance of the requested email correspondence" regarding above search terms four through thirteen. Court's January 30, 2020, Dkt. 114 at 18.   Accordingly, Plaintiff's request to sanction Defendant for its alleged failure to preserve emails from January 1, 2015 through December 31, 2015 that may contain search terms four through thirteen fails.

Plaintiff also fails to show that emails from January 1, 2015 through December 31, 2015 that contain above search terms one through three are relevant—and he bears this initial burden. *BankDirect Capital Fin., LLC*, 2018 U.S. Dist. LEXIS 26386 at 9 (unless the requesting party can demonstrate the relevancy of the materials sought, judges "should not hesitate to exercise appropriate control over the discovery process"); *Sirazi v. Panda Express, Inc.*, 2009 U.S. Dist. LEXIS 109558, *10 (N.D. Ill. Nov. 24, 2009) (denying motion to compel where there was no basis in the record to support theory underlying discovery requests, reasoning: "without some reason to conclude that the pond might be stocked, one cannot demand to 'fish.'").

The crux of Plaintiff's claims in this case relate to Defendant's alleged improper attempts to collect amounts discharged in bankruptcy, failure to properly complete a bankruptcy reconciliation following the termination of the bankruptcy action, and failure to adequately respond to Plaintiff's correspondence dated July 24, 2018, November 8, 2018, December 10, 2018, and January 29, 2019. *See generally* Sec. Am. Compl.  Judge Magnus-Stinson similarly

15

characterized Plaintiff's case when she denied his motion to consolidate cases (which Defendant asserts bordered on frivolous).  She explained that the "[t]he gist of the narrative is that Mr. Todd completed a Chapter 13 bankruptcy proceeding, ***and thereafter Ocwen engaged*** in practices that violated the law, including charging improper fees, misapplying payments, mishandling funds, increasing payments or balances owed without explanation or notice, attempting to collect amounts not actually owed, failing to respond to requests for information or to correct errors, failing to disclose information or provide required notices, and failing to provide a proper accounting of the payment history."  Court's February 6, 2020 Order, Dkt. 120 at 2 (emphasis added).

Plaintiff's most recent bankruptcy proceeding concluded on September 13, 2016 when the bankruptcy court terminated that action.  *See* Sec. Am. Compl., ¶69; Docket Report for Case Number 11-80256-JJG-13 (Bankr. S.D. Ind.).[4]  As Judge Magnus-Stinson correctly explained, Defendant's alleged wrongful conduct that forms the basis of Plaintiff's claims all occurred after Plaintiff's bankruptcy proceeding concluded.  Emails from January 1, 2015 through December 31, 2015—all of which long predate the conclusion of Plaintiff's bankruptcy proceeding and conduct at issue (and some by as much as almost twenty months)—are thus not relevant to the claims or defenses in this matter.

### D.   Plaintiff's Reliance on a Document He Refers to as a "Term Sheet" Is Misplaced.

Plaintiff confusingly refers to a term sheet Altisource allegedly filed with the Securities and Exchange Commissions  ("SEC") in February 2019 to attempt to establish Defendant failed to preserve the emails at issue.  A plain reading of the term sheet Plaintiff references confirms it

---

[4] Plaintiff also filed for bankruptcy in 1999.

does not mention or refer to any emails—much less the emails at issue.  *See* the Term Sheet Plaintiff references.[5]  The term sheet also does not mention anything about the preservation of any emails and/or who controls the emails at issue.  *Id*.  Moreover, as Plaintiff points out, Altisource appears to have filed the term sheet with the SEC in February 2019.  It is left to the reader's imagination how a purported term sheet filed by a third party (i.e., not Defendant) more than four years after some of the emails at issue were allegedly sent or received sheds any light on whether the Court should sanction Defendant under Rule 37(e).

For all of the above reasons, the Court should deny Plaintiff's motion for sanctions regarding emails from January 1, 2015 through December 31, 2015.

**III.     Rule 37(e) Is the Sole Basis to Sanction a Party for Failing to Preserve ESI.**

Plaintiff suggests the Court has "inherent power" to sanction Defendant for failing to preserve the "Last Change Date Data" and emails at issue.  Plaintiff is wrong.

Rule 37(e) is the sole basis to sanction a party for failing to preserve ESI.  *Snider*, 2017 U.S. Dist. LEXIS 107591 at 9-10, fn. 8.  The Advisory Committee Notes for the December 1, 2015 amendments to the Federal Rules of Civil Procedure make clear that amended Rule 37(e) "forecloses reliance on inherent authority" to impose sanctions for failure to preserve ESI. *Id*.; *see also Flair Airlines, Ltd. v. Gregor, LLC*, 2018 U.S. Dist. LEXIS 224424, *8 (N.D. Ill. 2018).  Accordingly, Plaintiff's request that the Court sanction Defendant under its "inherent power" fails as a matter of law.

Even if Rule 37(e) was not the sole basis to sanction a party for failing to preserve ESI, the "analysis is essentially the same" whether proceeding under Rule 37 or under a court's inherent powers.  *Diersen v. Walker*, 2003 U.S. Dist. LEXIS 9538, *8-9 (N.D. Ill. 2003)  Thus,

---

[5] https://www.sec.gov/Archives/edgar/data/873860/000162828019006084/a20190331ex101.htm

for the same or similar reasons Plaintiff's request to sanction Defendant under Rule 37(e) fails, his request to sanction Defendant under the Court's "inherent power" also fails.

## IV.     Plaintiff's Requested Relief Is Improper.

Defendant did not fail to preserve the "Last Change Date Data" or emails at issue (as explained above). The Court should thus deny Plaintiff's motion in its entirety. However, even if the Court finds—which it should not—that Defendant failed to preserve the data at issue, it still should deny the relief he requests.

Plaintiff asks the Court to "enter the following sanctions and relief against" Defendant: 1) "Enter an Order requiring Ocwen to bear the cost of retaining a Third Party ESI Agent of Todd's choice to access the sought after data, and reimburse Altisource for any costs inherent to the same" and 2) "Granting Todd leave to file its petition in support of Attorney Fees and Costs attributable to the pursuit of the Payment Reconciliation History and Email Correspondence as well as the preparation of the instant Motion." Plf.'s Motion for Sanctions (Dkt. 142) at 18-19.

The Court should deny Plaintiff's first request based on the doctrine of judicial estoppel. *Wiggins v. Citizens Gas & Coke Util.*, 2008 U.S. Dist. LEXIS 79415, *3-4 (S.D. Ind. 2008) ("Judicial estoppel is an equitable doctrine that serves to protect the integrity of the judicial process" by preventing a party from playing "fast and loose" by changing positions); *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992) (the purpose of judicial estoppel is "to protect the courts from being manipulated by chameleonic litigants"). The parties previously explored retaining a third party vendor to assist with searching for the emails at issue. On December 9, 2019, Plaintiff's counsel stated as follows:

> Despite my previous email stating a preference for retaining a third-party entity to conduct the email search, etc., upon further consideration we are willing to provide the list of requested names as a compromise. The cost, division of said cost, need to agree on

18

> a specific provider, and need to coordinate all the above is likely to cause the third-party route to taken on a life of its own.

*See* Plaintiff's Counsel's Email Dated December 9, 2019 attached as **Exhibit C**.

Plaintiff's request for attorneys' fees also fails because Rule 37(e) does not expressly authorize the award of attorneys' fees and costs. Notably absent from Rule 37(e) is the mention of attorneys' fees as a sanction, either for having to file a motion or for the failure to preserve ESI. *See* Fed. R. Civ. P. 37(e); *Snider, LLC*, 2017 U.S. Dist. LEXIS 107591 at 12-13. The Advisory Committee Notes also are silent on the issue. *Snider, LLC*, 2017 U.S. Dist. LEXIS 107591 at 12-13. In fact, the minutes of the Advisory Committee meetings reflect that those in attendance recognized this absence, but simply chose not to do anything about it. *Id*. Significantly, every other provision of Rule 37 that addresses a discovery violation provides for the imposition of attorneys' fees. *Id*.; *see also* Fed. R. Civ. P. 37.

Here, Plaintiff requests that the Court sanction Defendant for its alleged failure to preserve ESI—which falls within the exclusive purview of Rule 37(e). His request for attorneys' fees thus fails because Rule 37(e) does not expressly allow for fees.

## V.   Defendant Requests the Court Award Its Attorneys' Fees and Costs Associated with Responding to Plaintiff's Instant Motion.

The Supreme Court has held that a district court may assess attorneys' fees under its inherent power when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2133 (1991). The requisite bad faith may be inferred from the absolute lack of merit in the litigant's actions. *United States ex rel. Horst Masonry Constr., Inc. v. ProControls Corp.*, 2000 U.S. App. LEXIS 3688, \*3-4 (8th Cir. 2000) (district court did not abuse its discretion in determining that general contractor and its surety acted in bad faith by asserting offset defense which contractor knew was without merit).

Here, Plaintiff filed the instant motion after Defendant produced the "Last Change Date Data" he alleges Defendant failed to preserve.  Plaintiff's counsel confirmed—on multiple occasions—that the "Last Change Date Data" Defendant produced is the exact data he alleges it failed to preserve.  Despite this, Plaintiff's counsel chose to file the instant motion.  He then refused to withdraw the motion even after again confirming Defendant produced the exact "Last Change Date Data" he alleges it failed to preserve.  Under the circumstances, Plaintiff's counsel acted in bad faith, such that the Court should award Defendants its attorneys' fees and costs associated with responding to Plaintiff's frivolous motion with respect to the "Last Change Date Data."

Plaintiff's counsel also acted in bad faith regarding his choice to file the instant motion with respect to the emails at issue.  Plaintiff's counsel knew that the Court already held he had not established the relevancy of above search terms four through thirteen, yet chose to file the instant motion seeking sanctions for Defendant's alleged failure to preserve emails with such terms.  Plaintiff's counsel also knew Altisource, not Defendant, was left with the email data from January 1, 2015 through December 31, 2015.  He even subpoenaed Altisource for such emails, but chose not to further pursue the subpoena against Altisource and instead chose to file the instant motion in bad faith.  Plaintiff's counsel also mispresented the contents of the term sheet (as explained above).  Finally, Plaintiff appears to concede that the ability to search for and/or access the emails at issue is not lost, yet chose to file the instant motion and refused to withdraw it.  Plf.'s Motion for Sanctions (Dkt. 142) at 18-19.

Plaintiff's counsel's bad faith forced Defendant to incur attorneys' fees to respond to the instant motion, and more importantly, forces the Court to waste its time and scarce resources to address Plaintiff's frivolous motion.  This is not the first time Plaintiff's counsel filed a frivolous

1018199\305543790.v1

motion, which has forced Defendant to incur unnecessary attorneys' fees and caused the Court to waste its already scare resources.[6]

For the above reasons, Defendant respectfully requests the Court award its attorneys' fees associated with having to respond to Plaintiff's instant motion and for leave to file a petition in support of such request.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion for sanctions (Dkt. 142) and award Defendant its attorneys' fees and costs associated with responding to such motion.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By:   */s/ Joseph D. Kern*
David M. Schultz
Joseph D. Kern
Hinshaw & Culbertson, LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
T: 312-704-3000
F: 312-704-3001
E-mail: dschultz@hinshawlaw.com
E-mail: jkern@hinshawlaw.com

---

[6] *See* footnote 3 above.

1018199\305543790.v1

## CERTIFICATE OF SERVICE

I, Joseph D. Kern, an attorney, certify that on April 13, 2020, caused to be served a copy of the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS** by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

☒ ECF
☐ Facsimile
☐ UPS
☐ U.S. Mail
☐ E-Mail
☐ Messenger Delivery

To:   All Parties of Record

*/s/ Joseph D. Kern*
Joseph D. Kern