UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROGER TODD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:19-cv-00085-JMS-DLP |
| | ) |
| OCWEN LOAN SERVICING, INC., | ) |
| DEUTSCHE BANK NATIONAL TRUST | ) |
| CO., as Trustee for NovaStar Mortgage | ) |
| Funding Trust, Series 2007-1, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on Defendant Ocwen Loan Servicing, Inc.'s Motion for Protective Order, Dkt. [106]. The motion was referred to the Undersigned for ruling and, for the reasons set forth below, is hereby **DENIED**.

**I. Background**

Plaintiff, Roger Todd, holds a mortgage loan with NovaStar Mortgage, Inc. ("the Loan"). The Loan is held in trust by Defendant Deutsche Bank National Trust Co., and is serviced by Defendant Ocwen Loan Servicing, Inc[1] ("Ocwen"). On March 2, 2011, Plaintiff filed for bankruptcy in the Southern District of Indiana, in order to cure all pre-petition defaults on the Loan. Plaintiff entered into a Chapter 13 repayment plan and made his last payment on the Loan on May 2, 2016. (Dkt. 40 at

---

[1] The Defendant consistently notes in filings that the Plaintiff improperly sued "Ocwen Loan Servicing, Inc.," when the entity's proper name is "Ocwen Loan Servicing, LLC." The Defendant, however, has yet to file a motion to correct the caption, so the Court will use the Defendant's name as it appears on the docket at this time.

1

10-11). The trustee and Ocwen agreed that Plaintiff had cured his pre-bankruptcy petition default and on July 23, 2016, the bankruptcy plan was discharged, and the Loan was reinstated according to the original terms. (Dkt. 40 at 11).

In June 2018, the Plaintiff obtained a copy of the loan mortgage transactional history for the Loan from Ocwen. (Dkt. 40 at 12). Plaintiff alleges that upon review of this history, he discovered "a myriad of unexplainable and errant servicing conduct." (Id). This allegedly improper servicing conduct led to the instant case, wherein the Plaintiff alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Indiana Deceptive Consumer Sales Act ("IDCSA"), the Indiana Crime Victims' Relief Act ("ICVRA"), and the Truth in Lending Act ("TILA").[2] (*See* Dkt. 40).

During the discovery process in this action, the Plaintiff sought to conduct a Rule 30(b)(6) deposition of the Defendant's chosen representative and designated various topics that would be addressed during the deposition. The Defendant objected to three of the proposed topics. The parties met and conferred regarding this issue and discussed it with the Court during telephonic discovery conferences conducted on December 11, 2019 and January 16, 2020. With the Court's permission, the Defendant filed the present Motion for Protective Order on January 17, 2020. The Plaintiff filed a response on February 12, 2020, and the Defendant filed a reply on February 26, 2020. (Dkts. 124, 133).

---

[2] On April 14, 2020, the parties filed, and the Court approved, a Stipulation of Dismissal of Count II of Plaintiff's Complaint related to the Telephone Consumer Protection Act.

## II. Legal Standard

Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial. 8 Wright & Miller, *Federal Practice and Procedure* § 2001, at 44-45 (2d ed. 1994). To effectuate these purposes, the federal discovery rules are liberally construed. *Spier v. Home Ins. Co.*, 404 F.2d 896 (7th Cir. 1968). *See also* 8 Wright & Miller, *Federal Practice and Procedure* § 2001, at 44 (2d ed. 1994).

Rule 26 of the Federal Rules of Civil Procedure permits the discovery of nonprivileged matter "that is relevant" to a party's claim or defense and "proportional" to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. See Rule 26(b)(1). "Discovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy." *McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 WL 5348536, at *7 (S.D. Ind. Sept. 24, 2013).

Rule 26(b)(2)(C) requires the Court to limit the extent of discovery if it finds that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; ... or ... is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). The burden remains on the party seeking a protective order to establish good cause. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Hodgdon*

*v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007) ("[Rule 26] puts the burden on the party seeking the protective order to show some plainly adequate reason for its issuance.").

Magistrate judges enjoy extremely broad discretion in controlling discovery. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013). A court may issue a protective order, on motion or its own initiative, to limit discovery if it is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26, 2015 Advisory Committee Notes.

### III. Discussion

On July 29, 2019, Plaintiff served a Notice of 30(b)(6) deposition on the Defendant, requesting that a designated corporate representative discuss various topics, three of which are at issue here. (Dkt. 106-1). Specifically, the Plaintiff requested to discuss the facts and circumstances concerning: (1) the Consent Judgment entered in the United States District Court for the District of Columbia in *Consumer Fin. Prot. Bureau, et al v. Ocwen Fin. Corp., et al.*, Case No. 13-cv-2025 (the "2013 Consent Judgment"); (2) the Consent Order in *In the Matter of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC* (the "2014 NYDFS Consent Order"); and (3) the Settlement Agreement and Consent Order in *In Re: Ocwen Financial Corporation and Ocwen Loan Servicing, LLC*, Case No. C-13-1153 (the "2013 Settlement Agreement") (collectively, the "Settlements").

Here, the Defendant argues that the Court should enter a protective order prohibiting Plaintiff from asking questions about the Settlements because (1) they are not relevant to Plaintiff's claims; (2) Federal Rule of Evidence 408 prevents their

4

usage as evidence in this case³; (3) the plain language of the Settlements expressly prohibits their use for any purpose⁴; (4) Federal Rule of Evidence 404 prevents their usage in this case; and (5) Plaintiff is not a state or federal regulatory and has no authority to enforce or bring a private right of action under the Settlements. (Dkt. 106 at 5-11). It is the Defendant's burden to prove that the Plaintiff's proposed deposition topics are improper; thus, the Court will address each of the Defendant's objections in turn.

### i. Relevance

The Defendant primarily contends that because the Plaintiff's proposed deposition topics are irrelevant to his claim, the Court should enter a protective order pursuant to Rule 26(c) to prevent discovery on these topics. Ocwen generally argues that the Settlements are not relevant because they are not needed to prove or establish any of the Plaintiff's claims and cannot form the basis of the Plaintiff's claims in this matter. (Dkt. 106 at 5-6).

The Plaintiff argues in response that the proposed deposition topics are relevant to establishing Plaintiff's claims, establishing punitive damages, and refuting Defendant's affirmative defenses. (Dkt. 124 at 9-13). Specifically, Plaintiff notes that asking questions about the Settlements would help the Plaintiff establish the "willful" element of FCRA; the "pattern and practice of servicing misconduct" element of RESPA, and the "incurable deceptive act" element of IDCSA. (Id. at 9). In

---

³ The Defendant's second and fourth arguments will be discussed by the Court together.
⁴ The Defendant's third and fifth arguments will also be discussed by the Court together because those arguments are heavily intertwined.

addition, the Plaintiff asserts that these deposition topics will help evaluate any potential punitive damage award, by looking to whether the Defendant's conduct in this case was willful or the result of a pattern or practice. (Dkt. 124 at 12). Finally, the Plaintiff argues that the deposition topics, or information gleaned from asking the Defendant's 30(b)(6) representative about them, would be relevant in refuting the Defendant's affirmative defenses that the Plaintiff's harm was caused by the conduct of other parties or the result of unintentional behavior. (Id. at 12-13).

Similar to the Court's reasoning with regard to the Risk Convergence Reports, the Court tends to agree with the Plaintiff here. As part of the Plaintiff's claims under the FCRA, FDCPA, RESPA, IDCSA, and ICVRA, the Plaintiff must demonstrate that the Defendant had knowledge of the various servicing errors and misconduct and that, despite knowledge of said errors, it did not act appropriately to prevent future violations. The Settlements are relevant to the general concept of the Plaintiff's Complaint.

The Court's inquiry, however, does not end there. The Defendant next argues that the individual facts and circumstances of each of the Settlements prevents their usage in the present case. Ocwen addresses each of the Settlements separately, and the Court will follow suit.

### a. 2013 Consent Judgment

The Defendant maintains that the 2013 Consent Judgment is not relevant to the Plaintiff's claim because (1) the Plaintiff was not a party to it and (2) the Plaintiff's Complaint does not rely on the Settlements to prove or establish any of

Plaintiff's claims or refute any of the Defendant's defenses. (Dkt 106 at 5-6). Put another way, Ocwen argues that liability in this matter does not hinge on whether it improperly serviced the loans at issue in the 2013 Consent Judgment. (Dkt 106 at 5-6). According to the terms, the Defendant's obligations under the 2013 Consent Judgment expired around December 2016, well before the conduct that led to the Plaintiff's Complaint, and could have no bearing on the Plaintiff's claims here. (Dkt. 106 at 7).

The Plaintiff contends that Ocwen has mischaracterized his intended use of the 2013 Consent Judgment in this case – the Plaintiff does not seek to question Ocwen's 30(b)(6) representative about the 2013 Consent Judgment to prove the truth of its contents, but rather to establish that Ocwen had notice and knowledge of its deficient loan servicing practices. (Dkt. 124 at 10-11).

The Court understands that the Defendant claims the Settlements are in the far distant past and cannot be relevant to a claim that arose from conduct occurring 6-7 years later; the Court, however, disagrees. The Plaintiff consistently notes that he would like to question the Defendant's 30(b)(6) representative about the 2013 Consent Judgment in order to establish that Ocwen has been on notice of its deficiencies with respect to loan servicing for a substantial amount of time and that it has not taken meaningful corrective action since first being put on notice. Simply put, because the Plaintiff seeks to use 2013 Consent Judgment only to prove Ocwen's knowledge, it makes no difference that the Plaintiff was not a party to the 2013 Consent Judgment or that Ocwen's obligations under it expired before the conduct

leading to the Plaintiff's claims in this case. The 2013 Consent Judgment is relevant to the issue of notice because it shows that the regulators had made Ocwen aware of their concerns related to Ocwen's loan servicing practices. *See Saccameno v. Ocwen Loan Servicing, LLC,* 372 F. Supp. 3d 609, 647 (N.D. Ill. 2019).

      b. *2013 Settlement Agreement*

The Defendant maintains that because the 2013 Settlement Agreement involved an investigation of servicing operations from December 1, 2020 to October 24, 2011, it could not be relevant to the Plaintiff's claims that resulted from conduct that occurred in 2017 and 2018. (Dkt. 106 at 12-13). The Defendant further argues that the 2013 Settlement Agreement stated Ocwen did not admit any allegations or implication of fact and, thus, could not form the basis of any liability in the present matter. (Id).

Just as with the 2013 Consent Judgment, the Plaintiff argues that he wants to question Ocwen's 30(b)(6) representative about the 2013 Settlement Agreement to demonstrate Ocwen's notice and knowledge of widespread loan servicing deficiencies. (Dkt. 124 at 12).

The Court finds that the 2013 Settlement Agreement is relevant for the same reasons as the 2013 Consent Judgment. The Plaintiff does not seek to prove the truth of the 2013 Settlement Agreement's contents and does not seek to use any alleged violations contained within it to form the basis of liability in the present matter; instead, the Plaintiff intends to question the Defendant's 30(b)(6) representative

8

about the 2013 Settlement Agreement in order to show that Ocwen was on notice of potential issues with its loan servicing practices.

### c. *2014 NYDFS Consent Order*

The Defendant argues finally that the 2014 NYDFS Consent Order only involved New York loans, New York properties, and New York borrowers and could not possibly be relevant to a claim regarding an Indiana property owned by an Indiana resident. (Dkt. 106 at 13-14). The Plaintiff notes again that it does not seek to prove the contents of the Consent Order, but rather seeks to demonstrate that Ocwen had been made aware by both federal and state regulators that its loan servicing practices were deficient. (Dkt. 124 at 10-11).

The Court is inclined to agree with the Plaintiff. The parties have disputed the relevance of the Settlements at numerous discovery dispute conferences and through multiple rounds of briefing and the Plaintiff has been consistent in his contention that he wants to use the Settlements for the purpose of showing Ocwen's notice of deficient loan servicing practices. The Defendant is correct in noting that the 2014 NYDFS Consent Order was limited to New York properties and New York loans, but fails to recognize that the order arose out of "a broader multistate investigation into Ocwen's loan servicing practices" and "makes reference to many of the same general problems noted in the [2013 Consent Judgment]." *Saccameno*, 372 F. Supp. 3d at 647. By using the 2014 NYDFS Consent Order to prove notice of widespread deficiencies, the Plaintiff overcomes any relevance issues related to location.

Thus, the Court concludes that the Plaintiff's proposed deposition topics are relevant to the Plaintiff's claims.

### ii. Federal Rules of Evidence 408 and 404

The Defendant argues that the Plaintiff should not be permitted to question the Defendant's 30(b)(6) representative about the Settlements "because he seeks to use the judgment as evidence against Defendant in direct violation of Rule 408 of the Federal Rules of Evidence . . . ." (Dkt. 106 at 8). The Defendant cites several cases that stand for the proposition that consent decrees are inadmissible pursuant to FRE 408. (Id. at 8-9). Additionally, the Defendant contends that Federal Rule of Evidence 404 prevents the Plaintiff from using the Settlements and any alleged wrongful conduct mentioned in them "as propensity evidence to cast Defendant as a 'bad actor' or as evidence to prove Plaintiff's claim in this case." (Dkt. 106 at 10-11).

The Defendant used this argument in a prior attempt to prevent the Plaintiff from obtaining Risk Convergence Reports. Just as he did then, the Plaintiff argues here that the Defendant is misusing evidentiary objections in an attempt to limit Plaintiff's access to discovery. (Dkt. 124 at 13-14). According to the Plaintiff, the issue is not whether the Settlements can be admitted into evidence, but rather whether the Plaintiff is permitted to question the Defendant's 30(b)(6) representative about them. (Id). Additionally, the Plaintiff maintains that the Defendant has mischaracterized the use of the Settlements in this case and overlooks the second part of FRE 404, which permits a party to use propensity evidence if used to prove "intent, . . . knowledge, . . . absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Defendant is correct in noting that Courts are reluctant to permit parties to enter consent decrees into evidence, either attached to a summary judgment motion or for trial purposes; that, however, is not the issue presently before this Court. The Plaintiff does not ask the Court to admit into evidence the three Settlements – indeed, the Plaintiff is quite clear in his request for permission to ask the Defendant's 30(b)(6) representative about the Settlements. None of the cases cited by the Defendant support the proposition that parties are prohibited from asking questions about consent decrees during a 30(b)(6) deposition.

Although Ocwen is correct in noting that the court in *Block v. Abbott Labs., Inc.* found a consent decree not relevant to the plaintiffs' claims, Ocwen failed to provide any context for its citation. In *Block*, the plaintiffs alleged that their lawsuits were a result of design defects and a failure to warn related to a particular medical test. *Block v. Abbott Labs., Inc.*, No. 99C7457, 2001 WL 1539159 at *2 (N.D Ill. Dec. 3, 2001). During discovery, the plaintiffs sought to take the depositions of three of the defendant's employees, including the CEO and two upper-level managers, and ask questions regarding a consent decree the defendant had previously entered into with the FDA. The particular medical test that formed the basis of the plaintiffs' claims was not one of the tests involved in the defendant's consent decree with the FDA; moreover, the consent decree evaluated the defendant's manufacturing processes, rather than its design processes. Thus, the *Block* court concluded, because the consent decree involved a different medical test and evaluated a different portion of the defendant's business that did not relate to any element of the plaintiffs' claims,

11

the consent decree could not be relevant. By contrast, the Settlements in this case involved a thorough, wide-ranging evaluation of Ocwen's loan servicing practices, the exact type of conduct which forms the basis of the Plaintiff's Complaint here. Additionally, as far as the Court is aware at this time, the Plaintiff has yet to take a deposition of an employee of the Defendant and, thus, could not be engaging in the duplicative deposition practice prohibited in *Block*.

In *Ross v. Amer. Red Cross*, the plaintiff wanted to enter into evidence at trial a consent decree the defendant had entered into with the United States regarding safety in blood donations. No. 2:09–cv–00905–GLF–MRA, 2012 WL 2004810, at *3 (S.D. Ohio June 5, 2012). The plaintiff's purpose of admission was to demonstrate the reason why the defendant had adopted an internal policy that she alleged was violated and led to her complaint. *Id*. The *Ross* court concluded that the consent decree was irrelevant and inadmissible as evidence because the plaintiff's only justification was to explain the reason the rule was adopted – this, the court found, did not relate to the key issue of the case of whether the defendant was negligent in drawing the plaintiff's blood. *Id*. As previously stated, the Plaintiff here is not trying to admit into evidence the Settlements – instead, he is attempting to ask the Defendant's 30(b)(6) representative about them. Additionally, the Plaintiff has provided a justification for these questions, namely whether Ocwen was on notice or had knowledge of the various deficiencies in its loan servicing practices, that goes to the heart of the Plaintiff's claims in his Complaint.

In *Lipsky v. Commonwealth United Corp.*, the district court struck from the plaintiff's complaint any reference to a consent judgment between the SEC and the defendant in another matter. 551 F.2d 887, 892-93 (2d Cir. 1976). The Second Circuit affirmed because the consent judgment was not the result of an actual adjudication of any issues and could not be used as evidence in subsequent litigation between the defendant and another party. *Id.* at 894. This quotation on its own seems to support Ocwen's position in this case that the Plaintiff may not use the Settlements as evidence, but once again Ocwen failed to provide proper context for its citation. After *Lipsky*, the Second Circuit clarified its position and stated that consent decrees are inadmissible as evidence of liability, but are admissible for other purposes, including proof of knowledge. *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008) ("A consent decree may properly be admitted to demonstrate that a defendant was aware of its legal obligations."). As previously stated, the Plaintiff here is not trying to admit the Settlements into evidence; even if he were, the very line of cases cited by the Defendant suggest that the Plaintiff would be permitted to admit them into evidence to prove notice.

Moreover, the Plaintiff seeks to depose the Defendant's representative on the consent decrees not to prove the truth of their contents, but instead to prove that Ocwen was on notice that its loan-servicing practices were deficient and noncompliant with state and federal law. The commentary to FRE 408 notes that the 2006 amendment "does not affect the case law providing that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice." *See, e.g. United States v.*

13

*Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful). The Defendant has cited no authority that would permit the Court to prohibit the Plaintiff from asking questions about the Settlements in a 30(b)(6) deposition. Accordingly, Federal Rules of Evidence 408 and 404 do not prohibit the Plaintiff from asking the Defendant's 30(b)(6) representative about the proposed deposition topics.

### iii. Language of the Agreements

Lastly, the Defendant asserts that the Plaintiff may not depose the Defendant's 30(b)(6) representative about the deposition topics because the consent decrees contain language indicating that the Defendant made no admissions and that they could not be used as evidence against the Defendant. (Dkt. 106 at 10). The Defendant cites to two cases that purportedly support the notion that consent decrees between a federal agency and a private corporation cannot be used as evidence in subsequent litigation. (Id). Additionally, the Defendant argues that the Plaintiff may not question the Defendant's 30(b)(6) representative about the Settlements because that would be "nothing more than a back-door attempt to bring a private right of action under that judgment and/or enforce that judgment." (Dkt. 106 at 11).

The Plaintiff does not respond to this argument directly, but generally argues that the Plaintiff does not seek to use the consent decrees as evidence, but rather only intends to question the Defendant's 30(b)(6) representative about them. (Dkt. 124).

As the Court has discussed previously, the Plaintiff is not requesting to admit the consent decrees into evidence, attach them to a dispositive motion, or even to enforce them. Instead, the Plaintiff wants to ask the Defendant's 30(b)(6) representative questions about the proposed depositions topics. Defendant's argument is premature at best. Thus, the Defendant's motion is denied on this issue.

### IV. Conclusion

For the foregoing reasons, Defendant Ocwen Loan Servicing, Inc.'s Motion for Protective Order, Dkt. [106], is **DENIED**. The Plaintiff is permitted to ask the Defendant's 30(b)(6) representative about the proposed deposition topics.

So ORDERED.

Date: 6/1/2020

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record.