UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROGER TODD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:19-cv-00085-JMS-DLP |
| | ) |
| OCWEN LOAN SERVICING, INC., | ) |
| DEUTSCHE BANK NATIONAL TRUST | ) |
| CO., as Trustee for NovaStar Mortgage | ) |
| Funding Trust, Series 2007-1, | ) |
| | ) |
| Defendants. | ) |

### ORDER

This matter comes before the Court on Defendant Ocwen Loan Servicing, Inc.'s Motion for Protective Order, Dkt. [107]. The motion was referred to the Undersigned for ruling and, for the reasons set forth below, is hereby **GRANTED IN PART** and **DENIED IN PART**.

**I.  Background**

Plaintiff, Roger Todd, holds a mortgage loan with NovaStar Mortgage, Inc. ("the Loan"). The Loan is held in trust by Defendant Deutsche Bank National Trust Co., and is serviced by Defendant Ocwen Loan Servicing, Inc[1] ("Ocwen"). On March 2, 2011, Plaintiff filed for bankruptcy in the Southern District of Indiana, in order to cure all pre-petition defaults on the Loan. Plaintiff entered into a Chapter 13

---

[1] The Defendant consistently notes in filings that the Plaintiff improperly sued "Ocwen Loan Servicing, Inc.," when the entity's proper name is "Ocwen Loan Servicing, LLC." The Defendant, however, has yet to file a motion to correct the caption, so the Court will use the Defendant's name as it appears on the docket at this time.

1

repayment plan and made his last payment on the Loan on May 2, 2016. (Dkt. 40 at 10-11). The trustee and Ocwen agreed that Plaintiff had cured his pre-bankruptcy petition default and on July 23, 2016, the bankruptcy plan was discharged, and the Loan was reinstated according to the original terms. (Dkt. 40 at 11).

In June 2018, the Plaintiff obtained a copy of the loan mortgage transactional history for the Loan from Ocwen. (Dkt. 40 at 12). Plaintiff alleges that upon review of this history, he discovered "a myriad of unexplainable and errant servicing conduct." (Id). This allegedly improper servicing conduct led to the instant case, wherein the Plaintiff alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Indiana Deceptive Consumer Sales Act ("IDCSA"), the Indiana Crime Victims' Relief Act ("ICVRA"), and the Truth in Lending Act ("TILA").[2] (*See* Dkt. 40).

During the discovery process in this action, the Plaintiff issued a non-party subpoena to StoneTurn Group, LLP seeking various documents that StoneTurn provided to the New York State Department of Financial Services as part of an investigation into Ocwen's regulatory practices. In response, StoneTurn submitted written objections to the Plaintiff on November 19, 2019. (Dkt. 107-2). The Defendant also submitted written objections on behalf of StoneTurn. The parties met and conferred regarding this issue and discussed it with the Court during telephonic discovery conferences conducted on November 21, 2019, December 11, 2019, and January 16, 2020. With the Court's permission, the Defendant filed the present

---

[2] On April 14, 2020, the parties filed, and the Court approved, a Stipulation of Dismissal of Count II of Plaintiff's Complaint related to the Telephone Consumer Protection Act.

Motion for Protective Order on January 21, 2020. The Plaintiff filed a response on February 4, 2020, and the Defendant filed a reply on February 13, 2020. (Dkts. 118, 125).

## II. Legal Standard

Rule 26 of the Federal Rules of Civil Procedure permits the discovery of nonprivileged matter "that is relevant" to a party's claim or defense and "proportional" to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Rule 26(b)(1). "Discovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy." *McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 WL 5348536, at *7 (S.D. Ind. Sept. 24, 2013).

When determining whether to enforce a discovery request, the court must weigh the need for the information, the breadth of the request, the time period the discovery covers, the particularity of the documents, and the burden imposed. *United States Securities and Exchange Commission v. Haab*, No. 1:15-cv-00659-JMS-MJD, 2016 WL 6610851, at *2 (S.D. Ind. Nov. 9, 2016) (citing *Charles v. Quality Carriers, Inc.*, No. 1:08-cv-00428-RLY-JMS, 2010 WL 396356, at *1 (S.D. Ind. Jan. 28, 2010)). The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45. *See,* Advisory Committee Note regarding 1970 amendments

to Rule 45 ("scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules").

Rule 26(b)(2)(C) requires the Court to limit the extent of discovery if it finds that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; ... or ... is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). The burden remains on the party seeking a protective order to establish good cause. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007) ("[Rule 26] puts the burden on the party seeking the protective order to show some plainly adequate reason for its issuance."). That burden requires the movant to provide "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." *Patt v. Family Health Systems, Inc.,* 189 F.R.D. 518, 522 (E.D. Wisc. 1999), *aff'd*, 280 F.3d 749 (7th Cir. 2002).

Magistrate judges enjoy extremely broad discretion in controlling discovery. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013). A court may issue a protective order, on motion or its own initiative, to limit discovery if it is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26, 2015 Advisory Committee Notes.

### III. Discussion

On October 28, 2019, Plaintiff served a Subpoena to Produce Documents, Information, or Objects on non-party StoneTurn Group, LLP (the "Subpoena") (Dkt. 107-1). In 2013, StoneTurn was tasked to be a Compliance Monitor that reported

directly to the New York State Department of Financial Services in identifying various deficiencies in Ocwen's loan servicing practices and making recommendations to ensure compliance with certain remedial measures Ocwen was required to take. (Dkt. 107 at 1-2; Dkt. 118 at 1-2). Specifically, the Plaintiff requested from StoneTurn: "Copies of all Compliance Review Reports, findings, or official correspondence, provided to the New York State Department of Financial Services with regard to Ocwen Loan Servicing, LLC (or any related entity of Ocwen Loan Servicing LLC) from January 1, 2013 to December 31, 2018." (Id).

Ocwen argues that the Court should enter a protective order relieving StoneTurn of the duty to respond to the Subpoena because (1) the documents sought are not relevant to Plaintiff's claims; (2) StoneTurn's obligation to respond would impose an undue burden on Ocwen; and (3) the documents sought are protected by privilege. (Dkt. 107 at 4-9). It is Ocwen's burden to prove that Plaintiff's Subpoena is improper; thus, the Court will address each of Ocwen's objections in turn.

### i. Relevance

The Defendant primarily contends that because the Plaintiff's Subpoena request is irrelevant to his claim, the Court should enter a protective order pursuant to Rule 26(c) to prevent StoneTurn from having to respond. Ocwen generally argues that the information requested by the Subpoena is not relevant because it is not needed to prove or establish any of the Plaintiff's claims and cannot form the basis of the Plaintiff's claims in this matter. (Dkt. 107 at 4-6).

5

The Plaintiff argues in response that the Subpoena requests information relevant to establishing the "willful" element of FCRA; the "pattern and practice of servicing misconduct" element of RESPA, the "knowledge" element of a discharge injunction violation, and the "incurable deceptive act" element of IDCSA. (Dkt. 118 at 5). Additionally, Plaintiff contends that "the documents sought from StoneTurn are relevant and central to establish Ocwen's knowledge of issues with its REALServicing servicing platform and internal process." (Id).

Similar to the Court's reasoning with regard to the Risk Convergence Reports as proposed 30(b)(6) deposition topics, the Court tends to agree with the Plaintiff here. (Dkts. 114, 164). As part of the Plaintiff's claims under the FCRA, FDCPA, RESPA, IDCSA, and ICVRA, the Plaintiff must demonstrate that Ocwen has been on notice of its deficiencies with respect to loan servicing for a substantial amount of time and that it has not taken meaningful corrective action since first being put on notice. The information requested in the StoneTurn Subpoena is relevant to the general allegations contained in the Plaintiff's Complaint.

The Defendant claims again that the Subpoena requests information from the distant past and cannot be relevant to a claim that arose from conduct occurring 6-7 years later; the Court, again, disagrees. The Plaintiff consistently notes that he would like to use the information gleaned from the Subpoena to establish that the Defendant had knowledge of various servicing errors and misconduct and that, despite knowledge of said errors, it did not act appropriately to prevent future violations, including the Plaintiff's alleged violations.

6

Put another way, even though StoneTurn's investigation only related to New York loans and New York borrowers, that investigation was part of a broader multistate investigation into Ocwen's loan servicing practices. StoneTurn's compliance review reports, findings, and correspondence are relevant to the issue of notice because they show that the regulators had made Ocwen aware of their concerns related to Ocwen's loan servicing practices. *See Saccameno v. Ocwen Loan Servicing, LLC,* 372 F. Supp. 3d 609, 647 (N.D. Ill. 2019). Thus, the Court concludes that the Subpoena requests information relevant to the Plaintiff's claims.

### ii.    Undue Burden

Ocwen next contends that the Subpoena would cause an undue burden, manifesting in the form of document review and litigating over document production. (Dkt. 107 at 7-8). Second, the Defendant argues that burden imposed by the Subpoena would be undue because the Subpoena is not proportional to the needs of this case. (Id). The Federal Rules and this Circuit require the party seeking a protective order to demonstrate with specific facts, either by affidavit or some other evidentiary proof, that the burden imposed is undue. In this case, however, Ocwen offers nothing but the conclusory statement that the burden would be undue. Despite Ocwen's failure to present any evidence, pursuant to Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, the Court finds it appropriate to evaluate the proportionality of Plaintiff's Subpoena.

In determining whether the Subpoena is proportional to the needs of this case, the Court must consider such things as the amount in controversy, the importance of

7

the information in resolving contested issues, whether the burden of the discovery outweighs its likely benefits, whether the information can be obtained from other and more convenient sources, or whether the information is cumulative to other discovery the Plaintiff has obtained. *See* Rule 26(b). StoneTurn served as one Compliance Monitor who evaluated Ocwen's response to a 2012 consent decree, in order to investigate and determine whether Ocwen was complying with its obligations. As previously discussed, although this case involves Ocwen's handling of a single Indiana mortgage loan rather than a nationwide class action, StoneTurn's investigation of Ocwen's compliance with a consent decree could help the Plaintiff establish the notice, knowledge, and intent elements of the various statutes under which he brought this suit. As such, StoneTurn's compliance review reports from January 1, 2013 through December 31, 2018 are relevant and proportional to the needs of this case.

Where the Plaintiff falls off course, however, is in his request for all of StoneTurn's findings and correspondence submitted to the New York State Department of Financial Services ("NYSDFS") in that same time period. That information will undoubtedly be contained within the compliance reports that were submitted to NYSDFS. Moreover, that request is exceedingly broad and not well-defined, leading the Court to question whether it falls within the proper scope and limit of this case. At this time, the Court concludes that the Plaintiff's Subpoena request for StoneTurn's findings and correspondence is cumulative to other discovery Plaintiff has requested and obtained and outside of the scope permitted by Rule 26(b).

If, after StoneTurn responds to the Subpoena, the Plaintiff determines that a further request for those findings and correspondence becomes necessary, the Court can revisit this request at that time.

For now, StoneTurn is only required to respond to the Subpoena's request for "all Compliance Review Reports provided to the New York State Department of Financial Services with regard to Ocwen (or any related entity of Ocwen Loan Servicing LLC) from January 1, 2013 to December 31, 2018."

### iii. Privilege

Finally, Ocwen claims that the information requested from StoneTurn is privileged and protected from disclosure by New York law and the Federal Bank Examination Privilege. (Dkt. 107 at 8). The Plaintiff maintains that Ocwen lacks standing to assert privilege on behalf of StoneTurn. (Dkt. 118 at 10). Federal Rule of Civil Procedure 45(e)(2)(A) states that "[a] person withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner than, without revealing information itself privileged or protected, will enable the parties to assess the claims. Fed. R. Civ. P. 45(e)(2)(A). The rule does not contemplate a party asserting privilege on behalf of a non-party, and the Court will not permit such an action here. If StoneTurn desires to withhold documents on the basis of privilege, it, not Ocwen, must expressly make that claim and promptly produce a privilege log detailing the withheld information.

### IV. Conclusion

For the foregoing reasons, Defendant Ocwen Loan Servicing, Inc.'s Motion for Protective Order, Dkt. [107], is **GRANTED IN PART** and **DENIED IN PART**. Consistent with this opinion, StoneTurn Group, LLP shall respond to the Plaintiff's Subpoena within ten (10) days of this Order.

So ORDERED.

Date: 8/21/2020

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record.