UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROGER TODD, <br><br> Plaintiff, <br><br> v. <br><br> OCWEN LOAN SERVICING, INC., and DEUTSCHE BANK NATIONAL TRUST CO., as Trustee for NovaStar Mortgage Funding Trust, Series 2007-1, <br><br> Defendant. | Case No. 2:19-cv-00085-JMS-DLP |

### DEFENDANT OCWEN LOAN SERVICING, LLC'S OBJECTION TO THE MAGISTRATE JUDGE'S AUGUST 21, 2020 ORDER WITH INCORPORATED BRIEF IN SUPPORT

Defendant Ocwen Loan Servicing, LLC ("Defendant"), incorrectly named in the caption as Ocwen Loan Servicing, Inc., through its undersigned counsel, respectfully objects to Magistrate Judge Doris L. Pryor's August 21, 2020 order, in which she ordered non-party Stone Turn Group, LLP ("Stone Turn") to produce certain "Compliance Review Reports" (the "Reports"). In support, Defendant states as follows:

### INTRODUCTION

This is a simple case. It is not a class action. It involves a single plaintiff and a single Indiana mortgage loan. It relates to Defendant's alleged wrongful servicing of Plaintiff's Indiana mortgage loan. The single question at issue is whether Defendant improperly serviced Plaintiff's Indiana mortgage loan in violation of the various state and federal statutes on which Plaintiff bases his claims. Nothing else is at issue. Despite this, Plaintiff seeks broad, sweeping, and irrelevant discovery related to consent orders Defendant entered into with the New York Department of Financial Service ("NYDS") in 2011 and 2014—which involved New York mortgage loans and New York borrowers. The consent orders, from nine and six years ago, did

not involve Plaintiff's Indiana mortgage loan or Indiana borrowers.  And Defendant's purported servicing operations from 2011 and 2014 long predate the alleged servicing conduct at issue which mostly occurred between 2017 to 2019.  Plaintiff does not reference or mention the New York consent orders in his second amended complaint nor do the consent orders mention or reference Plaintiff's mortgage loan.

For the above reasons, and because New York Banking Law statutorily protects the Reports from subpoena—including Plaintiff's, Magistrate Judge Doris L. Pryor (the "Magistrate Judge") erred when she ordered Stone Turn to produce **all** "Compliance Review Reports" that relate to consent orders from nine and six years ago.

At least two courts already have prevented non-party Stone Turn from having to produce such documents (or substantially similar documents).  *See* Order Granting Motion for Protective Order, *Ponder v. Ocwen Loan Servicing*, Case No. 16-cv-04125 (N.D. Ga. July 16, 2019), Dkt. 158; Order Granting Motion to Quash, *Ponder v. Ocwen Loan Servicing*, Case No. 19-mc-91215 (D. Mass. May 24, 2019), Dkt. 5.  The Court should do the same here.

## FACTUAL AND PROCEDURAL BACKGROUND

Stone Turn served as a "Compliance Monitor" in connection with the consent orders Defendant entered into with the NYDFS between 2011 and 2014.  The consent orders concerned New York borrowers and New York mortgage loans.  There is no connection between Stone Turn's work regarding Defendant's consent orders with a New York regulator (from nine and six years ago) and Plaintiff—an Indiana resident and borrower—or his Indiana mortgage loan.  Nor is there any connection between the consent orders and Stone Turn's work regarding the consent orders and Defendant's servicing of Plaintiff's mortgage loan from 2017 to 2019 (i.e., the primarily relevant time period at issue in Plaintiff's operative complaint).  The servicing conduct

at issue occurred at least six years after the 2011 consent order and almost three years after the 2014 consent order.

Despite the lack of any connection or relevance to his mortgage loan or this case, Plaintiff subpoenaed non-party Stone Turn requesting the following irrelevant information:

> Copies of all Compliance Review Reports, findings, or official correspondence, provided to the New York State Department of Financial Services with regard to Ocwen Loan Servicing, LLC (or any related entity of Ocwen Loan Servicing, LLC) from January 1, 2013 to December 31, 2018.

*See* Subpoena to Stone Turn Group, LLP (the "Stone Turn Subpoena"), attached hereto as **Exhibit A**.

Plaintiff's attempt to subpoena the above documents from non-party Stone Turn is nothing more than an abuse of the discovery process, in which he seeks information that has no bearing on the claims or defenses in this action.[1] On top of this, New York Banking Law statutorily bars production of the Reports. Defendant thus filed a motion for protective order on January 21, 2020. The Magistrate Judge granted Defendant's motion in part and denied it part. *See* Dkt. 170. In particular, the Magistrate Judge denied Defendant's motion as it applied to the Reports but granted it as it applied to the other documents Plaintiff requested. *Id*. The Magistrate Judge then ordered non-party Stone Turn to produce the Reports. *Id*. The Magistrate erred when she did so because: 1) the Reports are not relevant to the claims and defenses in this matter and exceed the scope of discovery Rule 26 of the Federal Rules of Civil Procedure permits and 2) New York Banking Law statutorily protects the Reports from Plaintiff's subpoena.

---

[1] Stone Turn served objections to Plaintiff's subpoena on or around November 19, 2019. Attached as **Exhibit B** is a copy of such objections. Plaintiff has not moved to compel production or filed any motion to in the appropriate district court to overcome non-party Stone Turn's objections.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 72(a) provides that, for non-dispositive matters, this Court should set aside any portion of the Magistrate Judge's order that is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies only to findings of fact, and the Magistrate Judge here made no such findings. *See Jernryd v. Nilsson*, 117 F.R.D. 416, 417 (N.D. Ill. 1987) ("Because Magistrate Weisberg's order is based upon legal conclusions and not on his findings of fact, the clearly erroneous standard does not apply and the scope of our review on this motion is plenary."). That leaves the "contrary to law" standard, which, according to the Seventh Circuit, allows the district court to conduct a "full review" of the Magistrate Judge's order. *Henry v. Centeno*, 2011 U.S. Dist. LEXIS 94749 (N.D. Ill. 2011) (citing *United States v. Frans*, 697 F.2d 188, 193 n.10 (7th Cir. 1983)). Here, the Magistrate Judge's August 21, 2020 order is contrary to law for the below reasons.

**ARGUMENT**

**I.    The Magistrate Judge Improperly Allowed Discovery Beyond of the Scope Rule 26 Permits Because the Reports Are Irrelevant.**

Discovery is not limitless. Rule 26(b) of the Federal Rules of Civil Procedure limits discovery to "nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *Trupp v. Roche Diagnostics Corp.*, 2019 U.S. Dist. LEXIS 87764, *3-4 (S.D. Ind. 2019); *Noble Roman's Inc. v. Hattenhauer Distributing Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016). "The

limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's Inc.*, 314 F.R.D. 304 at 307.

Rule 26 and the other discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 U.S. Dist. LEXIS 2712, *4-5 (N.D. Ill. 1994). "Parties are entitled to a reasonable opportunity to investigate the facts—and no more." *Id*. "Experience has demonstrated that the discovery rules can be and sometimes are abused, and there is presently an ongoing effort to curb such abuses." *Id*. at 3. The U.S. Supreme Court has cautioned that the requirement of Rule 26(b)(1), that the material sought in discovery be "relevant," **_should be firmly applied_** and that "judges should not neglect their power to restrict discovery . . ." *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (emphasis added).

Courts "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: . . . (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). The tool available to courts to limit discovery that runs afoul of Rule 26(b)(1) includes the issuance of a protective order under Rule 26(c). *Noble Roman's*, 314 F.R.D. at 309.

When deciding whether to exercise their discretion to limit discovery, courts should do so with the understanding that the fundamental principle of Rule 26(b)(1) of the Federal Rules of Civil Procedure is "that lawyers must size and shape their discovery requests to the requisites of a case." *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016). This is even more true following the 2015 amendments to Rule 26(b)(1), which emphasized the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. In fact, "Federal Rule 26(b), describing the scope and limits of

discovery, was amended effective December 1, 2015, to once again protect against over-discovery and to emphasize judicial management of the discovery process." *Trupp*, 2019 U.S. Dist. LEXIS 87764 at 5. Discovery is intended to provide the parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Roberts*, 312 F.R.D. at 603.

Unless the requesting party can demonstrate the relevancy of the materials sought, judges "should not hesitate to exercise appropriate control over the discovery process . . . 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'" *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 U.S. Dist. LEXIS 26386, *9 (N.D. Ill. 2018). Indeed, the Seventh Circuit has often said that "discovery is not to be used as a fishing expedition." *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971-972 (7th Cir. 1996).

Here, the Magistrate Judge erred when she ordered non-party Stone Turn to produce the Reports because they are too removed in time to have any relevancy to this action. Defendant entered into the consent orders at issue with the NYDFS between 2011 and 2014. And those consent orders relate to Defendant's New York (not Indiana) servicing operations that date at least as far back as 2011—almost six years before Defendant's alleged servicing errors with respect to Plaintiff's mortgage loan occurred. Plaintiff's own allegations confirm this. In particular, Plaintiff alleges Defendant violated the Real Estate Settlement Procedures Act ("RESPA") by failing to respond to various notices of error and requests for information. But Plaintiff allegedly sent the first alleged notice of error and/or request for information to Defendant on May 21, 2018. *See* Plaintiff's Sec. Am. Compl., Dkt. 40, ¶206. Similarly, Plaintiff bases his claim under the Fair Credit Reporting Act ("FCRA") on Defendant's alleged

failure to reasonably investigate a credit dispute Plaintiff alleges he submitted on August 27, 2018. *Id*. at ¶317. Both of these events—and all other alleged servicing errors—occurred long after Defendant entered into the consent orders with the NYDFS in 2011 and 2014 and long after Stone Turn purportedly monitored Defendant's compliance with those orders. Put simply, there is no connection between Stone Turn's work regarding Defendant's consent orders with a New York regulator from nine and six years ago and Plaintiff (i.e., an Indiana resident and borrower), nor is there any connection to Plaintiff's Indiana mortgage loan and Defendant's servicing of such mortgage loan from 2017 to 2019 (i.e., the primarily relevant time period at issue in Plaintiff's operative complaint). *See generally* Plf.'s Sec. Am. Compl., Dkt. 40.

Moreover, the consent orders involved New York borrowers and New York loans. This case involves an Indiana borrower, Indiana property, and Indiana loan—not a New York borrower, property, or mortgage loan. Defendant's New York servicing operations dating back to 2011 and/or it compliance with any settlements reached with the NYDFS between 2011 and 2014 are not relevant to the claims and defenses in this matter. Plaintiff's request for "all Compliance Review Reports, findings, or official correspondence, provided to the New York State Department of Financial Services with regard to Ocwen Loan Servicing, LLC . . . from January 1, 2013 to December 31, 2018" thus far exceeds the scope of this case and seeks information far beyond that related to the mortgage servicing conduct at issue. *Noble Roman's, Inc.*, 314 F.R.D. at 312 (preventing production of documents and depositions because the discovery sought was "too far afield from the contested issues" and because the party seeking discovery could not establish relevancy or why the discovery was necessary); *Sirazi v. Panda Express, Inc.*, 2009 U.S. Dist. LEXIS 109558, *10 (N.D. Ill. 2009) (preventing production where there was no basis in the record to support theory underlying discovery requests, reasoning:

"without some reason to conclude that the pond might be stocked, one cannot demand to 'fish.'"). *Champion Pro Consulting Group*, 2014 U.S. Dist. LEXIS 165825 at 10 ("a request for all documents relating to a subject is usually subject to criticism as overbroad since . . . all documents relate to others in some remote fashion.  Such a request unfairly places the onus of production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request.").

The Magistrate Judge also erred when she ordered non-party Stone Turn to produce the Reports because Plaintiff's own statements confirm the Reports are not relevant.  In particular, Plaintiff claimed the documents he requested from Stone Turn, including the Reports the Magistrate Judge ordered non-party Stone Turn to produce, were relevant because they involve "(a) robo-signing, (b) inaccurate affidavits and failure to properly validate document execution processes, (c) missing documentation, (d) wrongful foreclosure, (e) failure to properly maintain books and records . . ." Plf.'s Opp., Dkt. 118 at 1.  Yet—this case does not involve "(a) robo-signing, (b) inaccurate affidavits and failure to properly validate document execution processes, (c) missing documentation, (d) wrongful foreclosure, (e) failure to properly maintain books and records . . ." *Id*.  A plain reading of Plaintiff's second amended complaint (i.e., the operative complaint) confirms this, and in particular, confirms this case does not involve a "wrongful foreclosure."  *See generally* Plf.'s Sec. Am. Compl., Dkt. 40.  There is a reason for this: Defendant never sought to foreclose Plaintiff's mortgage nor did it file a foreclosure action.

In fact, Plaintiff previously summarized this case as follows: whether Defendant engaged in servicing misconduct with respect to "the misapplication of payments, assessment and collection of unjust fees, mismanagement of borrower escrow accounts, wrongful and deceptive collection activities, and manufactured states of default during and immediately following a

8

Chapter 13 bankruptcy proceeding." Plf.'s Motion to Consolidate, Dkt. 92 at 5. The Court also previously summarized this case as follows: "[t]he gist of the narrative is that Mr. Todd completed a Chapter 13 bankruptcy proceeding, and thereafter Ocwen engaged in practices that violated the law, including charging improper fees, misapplying payments, mishandling funds, increasing payments or balances owed without explanation or notice, attempting to collect amounts not actually owed, failing to respond to requests for information or to correct errors, failing to disclose information or provide required notices, and failing to provide a proper accounting of the payment history." Court's February 6, 2020 Order, Dkt. 120 at 2.

Plaintiff's own summary, along with the Court's, confirm this case does not involve "(a) robo-signing, (b) inaccurate affidavits and failure to properly validate document execution processes, (c) missing documentation, (d) wrongful foreclosure, (e) failure to properly maintain books and records . . ." Nor do such summaries hint this case involves such issues, which eviscerates Plaintiff's claimed relevance of the Reports. Plf.'s Opp., Dkt. 118 at 1. The Magistrate Judge thus erred when she ordered Stone Turn to produce the Reports.

In sum, Defendant entered into the consents orders with the NYDFS—a New York regulator. The consent orders concerned New York borrowers and New York loans. This case involves an Indiana borrower, Indiana property, and Indiana loan. The single question at issue is whether Defendant improperly serviced Plaintiff's mortgage loan in violation of the various state and federal statutes on which Plaintiff bases his claims. Whether Defendant improperly serviced New York mortgage loans regarding New York borrowers dating as far back as 2011 sheds no light and has no bearing on whether Defendant improperly serviced Plaintiff's Indiana mortgage loan almost six years later. Similarly, whether Defendant complied with the consent orders sheds no light and has no bearing on whether Defendant improperly serviced Plaintiff's Indiana

mortgage loan almost six years later.  This especially is true because the consent orders do not reference or mention Plaintiff or his mortgage loan.  After all—they would not—because Plaintiff is an Indiana resident with an Indiana mortgage loan.

Put simply, Defendant's New York servicing operations dating back to 2011 and/or its compliance with any consent orders reached with the NYDFS between 2011 and 2014 are "too far afield from the contested issues" in this case.  *Noble Roman's, Inc.*, 314 F.R.D. at 312 (preventing production of documents and depositions because the discovery sought was "too far afield from the contested issues" and because the party seeking discovery could not establish relevancy or why the discovery was necessary); *Sirazi*, 2009 U.S. Dist. LEXIS 109558 at 10 (preventing production where there was no basis in the record to support theory underlying discovery requests, reasoning: "without some reason to conclude that the pond might be stocked, one cannot demand to 'fish.'").

At least two courts already have prevented non-party Stone Turn from having to produce the documents Plaintiff requested (or substantially similar documents).  *See* Order Granting Motion for Protective Order, *Ponder v. Ocwen Loan Servicing*, Case No. 16-cv-04125 (N.D. Ga. July 16, 2019), Dkt. 158; Order Granting Motion to Quash, *Ponder v. Ocwen Loan Servicing*, Case No. 19-mc-91215 (D. Mass. May 24, 2019), Dkt. 5.  In *Ponder v. Ocwen Loan Servicing*, the plaintiff brought claims against Defendant for alleged violations of RESPA, the FCRA, and the Fair Debt Collection Practices Act—the same statues under which Plaintiff brings its claims in this action.  *Id*.  The plaintiff in *Ponder* served a non-party subpoena on Stone Turn seeking the same or substantially the same information Plaintiff seeks from Stone turn here.  *Id*.  Defendant sought to prevent Stone Turn from having to produce such documents on substantially the same grounds as it does here.  Defendant prevailed.  *Id*.  The Magistrate Judge erred when

she chose not to follow the courts in *Ponder*. The Court should not do the same. It should, instead, should follow the holdings in *Ponder* and prevent non-party Stone Turn from having to produce the Reports.

## II. The Magistrate Judge Also Erred She Failed to Hold that New York Banking Law § 36.10 Statutorily Bars Production of the Reports.

Defendant explained in its briefs in support of it motion for protective order that New York Banking Law § 36.10 statutorily bars production of the documents the exact documents Plaintiff seeks from Stone Turn, including the Reports. *See* Def.'s Opening Brief, Dkt. 107 at 8-10 and Def.'s Reply Brief, Dkt. 125. Plaintiff did not substantively respond to Defendant's assertion—nor did he attempt to. *See generally* Plf.'s Opp., Dkt. 118. Courts have made clear that a plaintiff's failure—which was the case here—to respond to an argument raised in a motion forfeits any argument on that issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) ("acquiescence operates as a waiver" when a party fails to respond to a nonfrivolous argument). Plaintiff thus waived his right to substantively challenge whether New York Banking Law § 36.10 bars production of the Reports—and the Court erred in ordering such production due to Plaintiff' waiver.

Rather than substantively address or dispute Defendant's assertion that New York Banking Law § 36.10 statutorily bars production of the documents he seeks from Stone Turn, Plaintiff conclusorily alleged—in one sentence and without any factual support—that Defendant lacked standing to seek to exclude the documents under New York Banking Law § 36.10. But Plaintiff confused standing and privilege with a statutory bar on production.

Under New York Banking Law § 36, the NYDFS is empowered to examine a number of banking organizations and financial institutions, including registered mortgage loan servicers.

*See* N.Y. Banking Law § 36.10.  When it does, as it did with Defendant by virtue of the consent orders, investigation leading to such orders, and Defendant's compliance with such orders as monitored by non-party Stone Turn, New York Banking Law statutorily bars from disclosure all documents concerning or arising from a regulatory examination or investigation.  N.Y. Banking Law § 36.10.  In particular, New York Banking Law § 36.10 states a follows:

> All reports of examinations and investigations, correspondence and memorandum concerning or arising out of such examination and investigation . . . shall be confidential communications, **shall not be subject to subpoena** and shall not be made public unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof, in which event the superintendent may publish or authorize the publication of a copy of any such report or any part thereof in such manner as may be deemed proper or unless such laws specifically authorize such disclosure.

N.Y. Banking Law § 36.10 (emphasis added).

Courts have enforced New York Banking Law § 36.10 to statutorily bar the production of subpoenaed and/or requested documents—regardless of whether the entity seeking to bar production was the NYDFS.  Put differently, New York Banking Law § 36.10's statutory bar does not only apply in circumstances where the NYDFS seeks to bar production of subpoenaed and/or requested documents (as Plaintiff suggested).  A plain reading of the statute make this clear.  And so have courts.  *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 U.S. Dist. LEXIS 158455, *26-30 (S.D.N.Y. 2016) (holding that New York Banking Law protected subpoenaed and/or requested materials from disclosure—where the defendants—not NYDFS opposed production and stating as follows "relevant precedent makes clear that some of the materials Plaintiffs seek cannot . . . be obtained via subpoena from Defendants").

Here, New York Banking Law § 36.10 statutorily bars production of the exact documents Plaintiff seeks from Stone Turn via subpoena, including the Reports, and expressly states they

are not "subject to subpoena." N.Y. Banking Law § 36.10. For example, Plaintiff seeks "all Compliance Review Reports, findings . . ." *See* Ex. A. The first type of document statutorily protected by New York Banking Law is "reports of examinations and investigations." N.Y. Banking Law § 36.10. The Magistrate Judge thus erred in ordering non-party Stone Turn to produce the Reports in response to Plaintiff's subpoena.

## CONCLUSION

For the foregoing reasons, the Court should sustain Defendant's objection to the Magistrate Judge's August 21, 2020 order and enter a protective order that prevents non-party Stone Turn from having to produce the Reports.

Respectfully submitted,
HINSHAW & CULBERTSON LLP

By: */s/ Joseph D. Kern*
David M. Schultz
Joseph D. Kern
Hinshaw & Culbertson, LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
T: 312-704-3000
E-mail: dschultz@hinshawlaw.com
E-mail: jkern@hinshawlaw.com

**CERTIFICATE OF SERVICE**

I, Joseph D. Kern, an attorney, certify that on September 4, 2020, caused to be served a copy of the foregoing by: depositing same in the U.S. Mail box at 151 North Franklin Street, Chicago, Illinois 60606, prior to 5:00 p.m., postage prepaid; messenger delivery; UPS; facsimile transmitted from (312) 704-3001; email; or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

☒ ECF
☐ Facsimile
☐ UPS
☐ U.S. Mail
☐ E-Mail
☐ Messenger Delivery

To:   All Parties of Record

*/s/ Joseph D. Kern*
Joseph D. Kern

1018199\306541798.v1