UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROGER TODD, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | 2:19-cv-00085-JMS-DLP |
| | ) | |
| OCWEN LOAN SERVICING, LLC, and | ) | |
| DEUTSCHE BANK NATIONAL TRUST CO., as | ) | |
| Trustee for NovaStar Mortgage Funding | ) | |
| Trust, Series 2007-1, | ) | |
| | ) | |
| *Defendants*. | ) | |

# **ORDER**

Plaintiff Roger Todd brings this lawsuit alleging that Defendant Ocwen Loan Servicing, LLC ("Ocwen") engaged in various types of misconduct while servicing his mortgage loan, in violation of federal and state law. During discovery, Mr. Todd issued a non-party subpoena to StoneTurn Group LLP ("StoneTurn"), a firm that was tasked with monitoring Ocwen's compliance with a consent decree resulting from a previous lawsuit. [Filing No. 107-1.] Ocwen filed a Motion for Protective Order, seeking to prevent StoneTurn from having to produce the requested information. [Filing No. 107.] Magistrate Judge Doris L. Pryor granted the motion in part and denied it in part. [Filing No. 170.] Presently pending before the Court is Ocwen's Federal Rule of Civil Procedure 72 Objection to Judge Pryor's decision. [Filing No. 173.]

## **I.**
## **LEGAL STANDARD**

Review of a magistrate judge's decision on a nondispositive motion is deferential, and the Court may sustain an objection to such an order only where it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous "only if

1

the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Pain Center of SE Ind., LLC v. Origin Healthcare Solutions, LLC,* 2014 WL 6674757, *2 (S.D. Ind. 2014) (citations and quotation marks omitted).

## II.
### BACKGROUND

Mr. Todd's Second Amended Complaint asserts claims for, *inter alia*, violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Indiana Deceptive Consumer Sales Act ("IDCSA"), the Indiana Crime Victims' Relief Act ("ICVRA"), and the Truth in Lending Act ("TILA"). [Filing No. 40 at 41-58.] Mr. Todd alleges that Ocwen violated these laws in numerous ways, including charging improper fees, misapplying payments, mishandling funds, increasing payments or balances owed without explanation or notice, attempting to collect amounts not actually owed, failing to respond to requests for information or to correct errors, failing to disclose information or provide required notices, and failing to provide a proper accounting of the payment history. [Filing No. 40 at 9-38.] These violations are alleged to have resulted from Ocwen's use of a servicing program called REALServicing, which Mr. Todd alleges is prone to producing inaccurate information and causing system errors, and Ocwen allegedly refused to remedy the situation despite knowing about flaws in the program. [Filing No. 40 at 39-41.]

During discovery, Mr. Todd subpoenaed StoneTurn, requesting that StoneTurn produce:

Copies of all Compliance Review Reports, findings, or official correspondence, provided to the New York State Department of Financial Services [("NYSDFS")] with regard to Ocwen Loan Servicing, LLC. (or any related entity of Ocwen Loan Servicing LLC.) from January 1, 2013 to December 31, 2018.

2

[Filing No. 107-1 at 5.] According to Ocwen, StoneTurn "served as a 'Compliance Monitor' in connection with consent orders [Ocwen] entered into with the [NYDFS] between 2011 and 2014 to resolve disputes with that state regulator." [Filing No. 107 at 1-2.]

Ocwen filed a Motion for Protective Order, arguing that: (1) the documents sought are not relevant to this case; (2) forcing StoneTurn to produce the documents would place an undue burden on Ocwen related to reviewing and "litigating over the documents"; and (3) the documents are privileged under New York Banking Law § 36.10 and the federal bank examination privilege. [Filing No. 107 at 4-12.][1]

After the Motion for Protective Order was fully briefed, [Filing No. 118; Filing No. 125], Judge Pryor granted it in part and denied it in part, [Filing No. 170]. As to the issue of relevance, Judge Pryor concluded that although the requested documents pertain to Ocwen's servicing of mortgage loans in New York several years ago, they are relevant to this case because they could show whether Ocwen was on notice of deficiencies in its servicing practices and whether it took meaningful corrective action to address those deficiencies. [Filing No. 170 at 6-7.] This information, Judge Pryor concluded, is relevant to establishing the knowledge and intent requirements of Mr. Todd's claims under the FCRA, FDCPA, RESPA, IDCSA, and ICVRA. [Filing No. 170 at 6.]

---

[1] As exhibits to its initial Motion for Protective Order and its Rule 72 Objection to Judge Pryor's ruling on that motion, Ocwen submitted copies of StoneTurn's objections to Mr. Todd's subpoena. [Filing No. 107-2; Filing No. 173-2.] According to Ocwen, these objections were served on Mr. Todd on or around November 19, 2019. [Filing No. 107 at 2 n.1.] In the objections, StoneTurn states that it will not produce documents pending the resolution of Ocwen's Motion for Protective Order in this case and "Defendant's Motion to Quash Plaintiff's Subpoena to StoneTurn, to be filed in the United States District Court for the District of Massachusetts." [Filing No. 107-2 at 7; Filing No. 173-2 at 7.] Ocwen has not provided the Court with any further information about a potential motion to quash filed in the District of Massachusetts, and the Court was unable to locate any such motion through PACER.

Judge Pryor noted that Ocwen "offers nothing but a conclusory statement that the burden [imposed by the production of the requested documents] would be undue," but nevertheless considered whether Mr. Todd's subpoena was proportional to the needs of this case. [Filing No. 170 at 7.] Judge Pryor determined that the request for StoneTurn's compliance review reports relating to Ocwen from January 1, 2013 through December 31, 2018 was proportional to the needs of this case, but the request for all of StoneTurn's findings and correspondence submitted to the NYSDFS during the same time period was exceedingly broad and not well defined, because that information would undoubtedly be contained within the compliance reports. [Filing No. 170 at 8-9.] Accordingly, Judge Pryor required StoneTurn to respond to the subpoena but limited the scope to require production of "all Compliance Review Reports provided to the [NYSDFS] with regard to Ocwen (or any related entity of Ocwen Loan Servicing LLC) from January 1, 2013 to December 31, 2018." [Filing No. 170 at 9.]

Turning to the privilege issues, Judge Pryor observed that Federal Rule of Civil Procedure 45(e)(2)(A) describes the procedures that must be followed by a party withholding subpoenaed information under a claim of privilege and concluded that "[t]he rule does not contemplate a party asserting privilege on behalf of a non-party." [Filing No. 170 at 9.] Judge Pryor therefore ordered that "[i]f StoneTurn desires to withhold documents on the basis of privilege, it, not Ocwen, must expressly make that claim and promptly produce a privilege log detailing the withheld information." [Filing No. 170 at 9.]

Ocwen filed a Rule 72 Objection to Judge Pryor's decision, arguing that Judge Pryor erred in: (1) concluding that the requested documents are relevant and do not exceed the scope of discovery allowable under Federal Rule of Civil Procedure 26; and (2) failing to apply New York

4

Banking Law § 36.10 to prohibit production of the documents. [Filing No. 173.] The Objection is now ripe for the Court's review.

## III.
### DISCUSSION

### A. Relevance

Ocwen argues that Judge Pryor erred in allowing discovery beyond the scope of Rule 26 because the requested documents are irrelevant. [Filing No. 173 at 4-11.] First, Ocwen asserts that the compliance reports are too far removed in time because they stemmed from consent decrees that were entered into between 2011 and 2014, and the purported servicing errors related to Mr. Todd's mortgage loan are alleged to have occurred between 2017 and 2019. [Filing No. 173 at 6-7.] Second, Ocwen contends that the consent decrees involved New York borrowers and New York mortgage loans, whereas this case involves an Indiana borrower, property in Indiana, and an Indiana loan. [Filing No. 173 at 7-10.] Ocwen argues that "[w]hether Defendant improperly serviced New York mortgage loans regarding New York borrowers dating as far back as 2011 sheds no light and has no bearing on whether Defendant improperly serviced Plaintiff's Indiana mortgage loan almost six years later." [Filing No. 173 at 9.] Ocwen also points out that two other courts have already prevented StoneTurn from producing documents substantially similar to those Mr. Todd requests. [Filing No. 173 at 10-11 (citing Order Granting Motion for Protective Order, *Ponder v. Ocwen Loan Servicing*, Case No. 16-cv-04125 (N.D. Ga. July 16, 2019), Dkt. 158 ("*Ponder Georgia*"); Order Granting Motion to Quash, *Ponder v. Ocwen Loan Servicing,* Case No. 19-mc-91215 (D. Mass. May 24, 2019), Dkt. 5 ("*Ponder Massachusetts*")).]

In response, Mr. Todd argues that Judge Pryor did not clearly err or fail to apply relevant caselaw in concluding that the requested compliance reports were within the scope of Rule 26. [Filing No. 189 at 4-5.] Specifically, Mr. Todd asserts that *Ponder Georgia*, upon which Ocwen

5

primarily relies, is distinguishable from this case to the extent that the court did not conclude in that case that the requested documents were irrelevant, but instead determined that the documents were already in Ocwen's possession. [Filing No. 189 at 4.] Mr. Todd points to two other cases, *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2015 WL 3942900 (E.D. Tex. June 26, 2015), and *Harte v. Ocwen Fin. Corp.*, 2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018), in which courts required StoneTurn to produce similar compliance reports. [Filing No. 189 at 4-5.]

In reply, Ocwen reiterates its argument that the compliance reports are not relevant to this action and not within the scope of permitted discovery under Rule 26. [Filing No. 198 at 2-6.] Ocwen argues that *Ponder Georgia* is not distinguishable and that this Court should follow the reasoning of that decision. [Filing No. 198 at 6-8.] Ocwen also asserts that Mr. Todd's reliance on *Harte* is misplaced. [Filing No. 198 at 8-9.]

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "For the purpose of discovery, relevancy will be construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (citing *TIG Ins. Co. v. Giffin, Winning, Cohen & Bodewes*, 2001 WL 969037, *1 (N.D.Ill.2001) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978))). Magistrate judges and district courts "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

Mr. Todd alleges in his Second Amended Complaint that Ocwen has engaged in a pattern of abusive and unlawful behavior related to its servicing of his mortgage loan. Some of his claims

6

require that he demonstrate that Ocwen had knowledge of its unlawful practices or defects in its servicing system and failed to correct those problems or that Ocwen acted with the intent to defraud or deceive. *See, e.g., Abdollahzadeh v. Mandarich Law Grp., LLP*, 922 F.3d 810, 815 (7th Cir. 2019) (discussing the bona fide error defense, which is an affirmative defense to civil liability for unintentional violations of the FDCPA); *Perron ex rel. Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017) (citing 12 U.S.C. § 2605(f)(1)(B) and stating that "[s]tatutory damages of up to $2,000 are available if the borrower proves that the servicer engaged in a 'pattern or practice of noncompliance' with its RESPA duties"); *Whiting v. Harley-Davidson Fin. Servs.*, 534 F. Supp. 2d 823, 831 (N.D. Ill. 2008) (explaining that a claim for willful noncompliance with the FCRA requires evidence of deliberate and purposeful actions); *Palmer Dodge, Inc. v. Long*, 791 N.E.2d 788, 791 (Ind. Ct. App. 2003) (explaining that to establish liability under the ICVRA for conversion, the plaintiff must establish all elements of the crime of conversion, including that the defendant acted "knowingly or intentionally"); *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998) (holding that intent to defraud or mislead is an essential element of an "incurable defective act" under the IDCSA). To the extent that the compliance reports could show that Ocwen was aware that certain of its practices did not comply with the law or that its servicing system led to errors in previous instances, the reports are relevant to Mr. Todd's claims and to proving his overall theory of the case.

Nothing in Ocwen's objection demonstrates that Judge Pryor's conclusion to this effect was erroneous. As for Ocwen's arguments regarding the *Ponder* decisions, the Court notes at the outset that the *Ponder Georgia* ruling appears to have been made orally by the magistrate judge, and without a written order or transcript of the relevant proceeding, this Court cannot examine or consider the decision. *See* Defendant's Response to Plaintiff's Objection to Magistrate Judge's

7

Order, Case No. 16-cv-04125 (N.D. Ga. Aug. 9, 2019), Dkt. 169 (arguing that Mr. Ponder's assertion that the magistrate judge "did not provide grounds other than stating at the hearing that Plaintiff exceeds the scope of discovery" was untrue and stating that "[o]nce Ocwen is able to obtain a transcript from the hearing, it will supplement this Response with proof of Judge Walker's well-articulated reasons for her ruling").

In *Ponder Massachusetts*, the court granted Ocwen's motion to quash a subpoena sent to StoneTurn, which sought, among other things, all "loan files produced or provided to [StoneTurn] by Ocwen for audits in connection with any Consent Order entered by Ocwen with the [NYSDFS]"; "[a]ll audits, reports, evaluations, business plans (or the like), summaries or communications generated or received by [StoneTurn] regarding the violations, complaints, problems, or compliance issues reported or discovered by [StoneTurn] during and after the audits"; and "[a]ll communications and other documents, whether electronic or printed, which evidence or relate to Ocwen's compliance with federal or state laws." Case No. 19-mc-91215 (D. Mass. May 24, 2019), Dkt. 5. The court noted that the "documents sought from StoneTurn appear[ed] to largely consist of documents given to StoneTurn by Ocwen," and "there [was] no indication that obtaining these documents from StoneTurn [would] be more expeditious than obtaining them from Ocwen." *Id*. at 4. Given that the subpoena sought information that was likely duplicative of the discovery sought from Ocwen, the court concluded that the subpoena placed an undue burden on StoneTurn. *Id*. at 5. No determination was made as to the relevance of the documents, *see id*. at 1-5, although that issue was raised in Ocwen's motion to quash, *see* Memorandum of Law in Support of Motion to Quash, Case No. 19-mc-91215 (D. Mass. May 17, 2019), Dkt. 2 at 9-11.

On the other hand, Mr. Todd cites *Harte*, a report and recommendation ultimately adopted by the district court, which addressed a motion for class certification. In determining whether

8

reports generated by the NYSDFS were relevant and admissible in considering the motion for class certification, the magistrate judge concluded that the reports were relevant to the class claims relating to unfair, misleading, deceptive, and unlawful acts and practices under New York General Business Law § 349 and promissory estoppel under New York Law. *See Harte*, 2018 WL 1830811, at *16 (noting that the reports "elaborate on the problems with Ocwen's systems, providing adequate notice, loan management, and communication to borrowers," and caused the NYSDFS to mandate Ocwen to obtain an independent monitor to conduct a comprehensive review and report directly to the NYSDFS).

None of these decisions demonstrate that Judge Pryor's ruling was clearly erroneous or contrary to law. Even if the Court accepts Ocwen's representation that the *Ponder Georgia* court concluded that the requested documents were not relevant to the case before it, what results is, at most, a split of authority in which the *Ponder Georgia* court concluded that the documents were irrelevant to the claims before it while the *Harte* court concluded that the documents were relevant to the claims before it. These decisions are not binding on this Court, and for the reasons articulated above, this Court concludes that Judge Pryor's determination that the compliance reports requested by Mr. Todd are indeed relevant to the claims presented in this case is not clearly erroneous or contrary to law. In fact, the decision is sound. Accordingly, Ocwen's objection is **OVERRULED** to the extent it is based on relevance.

### B. New York Banking Law § 36.10

Ocwen argues that Judge Pryor erred in failing to recognize that New York Banking Law § 36.10 statutorily bars production of the compliance reports. [Filing No. 173 at 11-13.] Ocwen asserts that Mr. Todd did not specifically address this issue in his response to Ocwen's initial Motion for Protective Order, and therefore Judge Pryor should have deemed the issue waived and

9

ruled in Ocwen's favor. [Filing No. 173 at 11.] Furthermore, Ocwen asserts, regardless of its standing to assert privilege, New York Banking Law § 36.10 protects the compliance reports from disclosure. [Filing No. 173 at 12-13.]

Mr. Todd responds that Judge Pryor did not err in declining to apply New York Banking Law § 36.10 to bar production of the compliance reports. [Filing No. 189 at 5-11.] Mr. Todd asserts that New York Banking Law § 36.10 is a state statutory privilege, but because this is a case in federal court based on federal question jurisdiction, federal common law regarding evidentiary privileges controls. [Filing No. 189 at 5-6.] Mr. Todd further argues that § 36.10 is not an absolute bar to the production of the requested documents in this case because, even where it applies, it "protects only expressions of opinion or recommendations in intragovernmental documents; it does not protect purely factual material," and the privilege contained in § 36.10 "is a discretionary one that depends upon Ad hoc considerations of competing policy claims." [Filing No. 189 at 6-7 (quoting *Rouson ex rel. Estate of Rouson v. Eicoff*, 2006 WL 2927161, at *4 (E.D.N.Y., Oct. 11, 2006) and *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. 577, 582 (E.D.N.Y. 1979).] Mr. Todd also points to *Fisher*, 2015 WL 3942900, in which the court concluded that the § 36.10 privilege did not apply. [Filing No. 189 at 7-8.] Mr. Todd asserts that no court in the Seventh Circuit has ever applied § 36.10 in a federal question case and argues that Ocwen misinterprets *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901 (S.D.N.Y. Nov. 16, 2016), the only case it cites in support of its position. [Filing No. 189 at 9-11.]

In reply, Ocwen reiterates its argument that production of the compliance reports is statutorily barred, relying on *Alaska Electric*. [Filing No. 198 at 9-10.]

10

Pursuant to New York Banking Law § 36, the NYSDFS has the authority to investigate and examine banking organizations and related companies. *See generally* N.Y. Banking Law § 36. Section 36.10 provides, in relevant part:

> All reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examination and investigations . . . shall be confidential communications, shall not be subject to subpoena and shall not be made public unless, in the judgment of the superintendent [of NYSDFS], the ends of justice and the public advantage will be subserved by the publication thereof, in which event the superintendent may publish or authorize the publication of a copy of any such report or any part thereof in such manner as may be deemed proper or unless such laws specifically authorize such disclosure.

N.Y. Banking Law § 36.10.

As an initial matter, Ocwen does not directly dispute the premise underlying Judge Pryor's ruling, which is that the Federal Rules of Civil Procedure do not contemplate Ocwen asserting a privilege on behalf of StoneTurn, a nonparty, which has not itself followed the proper procedure for asserting a claim of privilege. *See* Fed. R. Civ. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."). Ocwen seems to suggest that, regardless of whether it has standing to assert a privilege, § 36.10 applies because it is a statutory bar to production, which is something different than a privilege. [*See* Filing No. 173 at 11 (Ocwen arguing that "Plaintiff confused standing and privilege with a statutory bar on production").] However, Ocwen has not identified any authority for drawing a meaningful distinction in this context between a statutory bar to the production of documents pursuant to a subpoena and a privilege protecting those documents, or for not applying ordinary privilege rules to the consideration of § 36.10. *See Rouson*, at *4 (considering whether "the *privilege* provided for in New York State Banking Law § 36(10)" applied (emphasis added)).

11

Moreover, Ocwen has not shown that Judge Pryor's decision was clearly erroneous or contrary to law. In federal question cases, federal courts apply federal law regarding privileges, not state law. *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004) (noting that "the evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law" (citing Fed. R. Evid. 501)); *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003) ("State-law privileges are not 'legally applicable' in federal-question cases like[] this one."). Accordingly, § 36.10 does not apply to this case. *See Saint-Jean v. Emigrant Mortg. Co.*, 2015 WL 8490989, at *4 (E.D.N.Y. Dec. 10, 2015) (concluding that § 36.10 did not apply to a federal question case); *Rouson*, 2006 WL 2927161, at *4 (concluding that § 36.10 did not apply because "[a]ssertions of privilege in federal question cases, even those involving pendant state law claims, are governed by federal common law, rather than state law").

In addition, although Ocwen relies upon the decision in *Alaska Electric* in support of its proposition that § 36.10 applies even in situations where someone other than the NYSDFS is challenging the subpoena, nothing in *Alaska Electric* demonstrates that Judge Pryor's ruling was contrary to law. The motion to compel in that case was denied primarily on the grounds of relevancy and overbreadth, and the court addressed § 36.10 and other privilege issues only "because they [were] fully briefed and would almost certainly arise again." *See Alaska Electric*, 2016 WL 6779901, at *4 (noting that "[t]he foregoing discussion [regarding relevance and overbreadth was] sufficient to resolve the instant motion," but going on to address privilege issues). In doing so, the court noted that § 36.10 "protects [NYS]DFS materials from disclosure" and then went on to say that "[a]lthough case law in this area is limited, relevant precedent makes clear that some of the materials Plaintiffs seek cannot — at least in the first instance — be obtained via subpoena from Defendants." *Id*. at *5-6. However, the court supports that conclusion with

12

citations to several cases relating to the procedures for obtaining information from the Board of Governors of the Federal Reserve System and the federal Office of the Comptroller of the Currency and in the following sentence states that "with respect to some of the materials at issue, Plaintiffs would have to seek relief 'through the established administrative process' before coming back to this Court" to compel their production. *Id.* at *6. In other words, it is not clear that the court's statement regarding the ability to obtain documents via subpoena was based on or in any way related to § 36.10. A more recent decision from another New York District Court supports the conclusion that such was not the case. *See Chery v. Conduent Educ. Servs.*, LLC, 2020 WL 4783167, at *9 (N.D.N.Y. Aug. 18, 2020) (noting that although § 36.10 "appears to render confidential all documents in the possession of a licensed student loan servicer that were generated in connection with a NYSDFS investigation, the undersigned was unable to find any caselaw applying that statutory provision to prohibit disclosure of such documents by a private entity").

In sum, Ocwen has not demonstrated that Judge Pryor's decision declining to apply New York Banking Law § 36.10 was clearly erroneous or contrary to law, and therefore its objection as to that issue is **OVERRULED**.

### IV.
#### CONCLUSION

Based on the foregoing, the Court **OVERRULES** Ocwen's Rule 72 Objection to the Magistrate Judge's Order, [173], and **AFFIRMS** Judge Pryor's decision granting in part and denying in part Ocwen's Motion for Protective Oder.

Date: 10/30/2020

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**